**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| POMPANO BEACH POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| | CLASS ACTION |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | DEMAND FOR JURY TRIAL |
| OLO INC., NOAH GLASS, and PETER J. BENEVIDES, | |
| Defendants. | |

1

Plaintiff Pompano Beach Police and Firefighters' Retirement System ("Pompano Beach P&F"), by and through its attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief are based upon, among other things, counsel's investigation, which includes without limitation: (a) review and analysis of public filings made by Olo Inc. ("Olo" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on Olo's website concerning the Company's public statements; and (d) review of other publicly available information concerning Olo and the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities that purchased shares of Olo's Class A common stock between August 11, 2021 and August 11, 2022, inclusive (the "Class Period"), against Olo and certain of its officers (collectively "Defendants") seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "Exchange Act").

2.      Based in New York, New York, Olo provides software to restaurants to assist with online ordering and food-delivery coordination.  On February 12, 2020, Olo announced a partnership with Subway® restaurants ("Subway") to enable Subway's more than 20,000 U.S.-based restaurants to handle digital orders from third-party "marketplaces" such as Uber Eats or DoorDash.  Olo, short for "online ordering," then went public via an initial public offering ("IPO") in March 2021 as online ordering from restaurants and home-delivery services were enjoying

unprecedented popularity due to the COVID-19 pandemic.  In its IPO, Olo offered its shares for sale at $25 per share and opened trading at $32 per share.

3. Throughout the Class Period, the Company highlighted its "Active Locations" as a "Key Business Metric" that "demonstrates the growth and scale of our overall business and reflects our ability to attract, engage, and monetize our customers and [ ] drive revenue."  After the close of markets on August 10, 2021, Olo reported that it ended the second quarter of 2021 with approximately 74,000 active locations, which represented a 30% increase over the same period in the prior year.  The Company's reported active locations included approximately 15,000 Subway locations, which eventually represented approximately 20% of the Company's reported active locations.  As Olo reported increasing active locations, its stock price soared to trade above $45 per share.

4. With Olo stock price trading at inflated levels, on November 4, 2021, the Company completed a pivotal acquisition of competing restaurant software company Wisely, Inc. for $187 million, paid for in large part with $110 million in Olo stock.

5. Unbeknownst to investors, throughout the Class Period, Defendants misled investors as to the Company's success by citing active locations figures that included Subway locations that would imminently cease using the Company's services and by failing to disclose that Subway would be ending its relationship with Olo.

6. The true state of Olo's relationship with Subway was revealed after the markets closed on August 11, 2022.  That day, the Company reported its results for the second quarter of 2022 and reduced its guidance for full-year 2022.  Olo also revealed that 2,500 Subway locations had begun to directly integrate with third-party marketplaces and that the remaining 15,000 Subway locations would be removed from the Company's active locations count in the fourth

3

quarter of 2022 and the first quarter of 2023.  In a stunning admission, the Company acknowledged that the previously undisclosed Subway exodus had been known internally throughout the Class Period.  Indeed, Chief Financial Officer ("CFO") Peter J. Benevides ("Benevides") instructed analysts that "when we entered the year, there was an indication that Subway may plan to directly integrate with marketplaces."  In fact, CFO Benevides admitted Olo took the undisclosed pending Subway departure into account when providing guidance for the year.  Stunned analysts asked, "just to be clear, when you started the year, you've assumed less Subway contributions and it seems like that is playing out."

7.    In response to these revelations, the price of Olo stock plummeted approximately 36%, from a closing price of $12.99 per share on August 11, 2022, to a closing price of $8.26 per share on August 12, 2022.  More than $480 million of shareholder value was erased.

8.    As a result of Defendant's wrongful acts and omissions and the precipitous decline in the market value of the Company's shares, Plaintiff and putative Class members have suffered significant losses and damages.  Plaintiff and putative Class members seek damages for redress, reasonable attorneys' fees, injunctive relief, and all other relief this Court deems just and proper.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.§ 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act.  Many of the acts and omissions charged herein, including the

dissemination of materially false and misleading information to the investing public, and the omission of material information occurred in this District as Olo is headquartered in New York, New York. In addition, at all relevant times, Olo's common stock was offered, sold, and traded on the New York Stock Exchange (the "NYSE"), which is located in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities market.

## **PARTIES**

13.     Plaintiff Pompano Beach P&F provides retirement benefits to eligible general employees of the Pompano Beach Police and Fire Departments in Pompano Beach, Florida, and oversees more than $300 million in assets. As indicated in the certification submitted herewith, Plaintiff purchased shares of Olo's Class A common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities law alleged herein.

14.     Defendant Olo is, and all times herein mentioned was, a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York. Olo's common stock trades on the NYSE under the ticker symbol "OLO."

15.     Defendant Noah Glass is and was, at all relevant times, the Chief Executive Officer ("CEO") and a member of the Board of Directors of Olo.

16.     Defendant Peter J. Benevides is and was, at all relevant times, the CFO of Olo. Defendant Benevides has served as Olo's CFO since January 2020. Previously, Defendant Benevides held positions with Olo as Senior Vice President and Vice President of Finance.

17.     Defendants Glass and Benevides (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Olo's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Further, the Individual Defendants signed reports that Olo filed with the SEC during the Class Period, including the Company's 2021 Annual Report on Form 10-K, which was signed by the Individual Defendants, and the Company's Quarterly Reports on Form 10-Q for the Second and Third Quarters of 2021 and the First Quarter of 2022, which were also signed by the Individual Defendants.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations that were being made were then materially false and/or misleading.

18.     The Individual Defendants are liable as direct participants in the wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as senior executive officers, were "controlling persons" within the meaning of § 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, the Individual Defendants were able to and did, directly and indirectly, control the conduct of Olo's business.

19.     As senior executive officers and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act,

and was traded on the NYSE and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, and compliance with applicable laws, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of Olo's common stock would be based on truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

## SUBSTANTIVE ALLEGATIONS

### A.    Background

20.    Founded in 2005, Olo offers online ordering, delivery integration, and payment products.  Among its products, Olo offers "Rails," which is a program that enables digital orders from third-party marketplaces to be transmitted directly to restaurants where Rails has been set up.

21.    Even before its IPO, Olo began to aggressively pursue quick service restaurants ("QSR") because such brands represented a large number of locations.  As CEO Glass explained during a June 9, 2021 Stifel Cross Sector Insight Conference, "the QSR fast food segment . . . [is] just such a massive segment of the industry that is coming online, and represent[s] the largest number of locations and the largest number of transactions per location."

22.    In February 2020, Subway, one of the world's largest restaurant chains, agreed to use the Olo Rails software at 20,000 locations.  The Olo Rails software enabled Subway to integrate third-party delivery orders into the Subway Point-of-Sale system.

23.     As of December 31, 2020, Olo had approximately 400 brand customers, including Chili's, Wingstop, Shake Shack, Five Guys, and Subway.  These brand customers accounted for more than 90% of the Company's "Active Locations."

24.     While online ordering was enjoying an unprecedented surge due to the COVID-19 pandemic, Olo went public in an IPO on March 17, 2021, offering 18 million shares of Class A common stock to the investing public.  The offering documents filed on Form S-1/A in connection with the IPO informed investors that the Company's "average initial contract length is generally three years with continuous one-year automatic renewal periods," which provided the Company "visibility into our future financial performance."

25.     The Form S-1/A also touted impressive growth in Olo's "active locations," which the Company reported had grown 52% from December 31, 2019 to December 31, 2020.  In presentations to investors and filings with the SEC, Olo defined "active locations" to include any "unique restaurant location that is utilizing one or more" of the Company's products.  The Company described "active locations" as a "Key Business Metric," in that it "demonstrates the growth and scale of our overall business and reflects our ability to attract, engage and monetize our customers and thereby drive revenue, as well as provides a base to expand usage of our modules."

26.     With Olo stock trading above $27 per share, the Company used its stock to acquire competitor Wisely, Inc.  Specifically, on October 21, 2021, Olo entered into a definitive agreement to acquire Wisely for $187 million, comprising $77 million in cash and $110 million in Olo's Class A common stock.  The transaction was completed two weeks later, on November 4, 2021.

**B.    Defendants' Materially False and Misleading Statements Issued During the Class Period**

27.    The Class Period begins on August 11, 2021.  After the markets closed the day before, August 10, 2021, Olo announced its financial results for the second quarter of 2021.  The press release announcing the results touted that "active locations increased 30% year-over-year to approximately 74,000."  During the conference call accompanying the release of the second quarter results, CFO Benevides highlighted the importance of the Company's reported active locations, stating that Olo's "[p]latform revenue in the second quarter was $34.5 million, up 53% year-over-year primarily due to an increase in active locations coming onto the platform" and that "[g]rowth in active locations . . . reflect[s] the continued digital transformation occurring within the restaurant industry."  Indeed, CFO Benevides stated, "[i]n terms of key metrics, we ended the quarter with approximately 74,000 active locations on the platform, a 30% increase year-over-year and a 7% increase sequentially."

28.    As the Class Period continued, Defendants continued to proclaim the "key metric" of active locations was increasing.  On November 9, 2021, Olo announced financial results for the third quarter of 2021.  The press release announcing the results underscored that "active locations increased 26% year-over-year to approximately 76,000."  During the Company's conference call with analysts that day, CEO Glass repeated these results.  CFO Benevides noted the "76,000 active locations on the platform [represented] a 26% increase year-over-year and a 3% increase sequentially" and once again attributed the Company's revenue growth to "an increase in active locations."

29.    During the same call, Stifel analyst Brad Reback asked, "what should we think of as the durable growth rate of the business?"  CFO Benevides pointed Reback directly to the

Company's growing active location count, explaining, "I think in the most simplest [sic] form, continuing to add more active locations."

30.     On February 23, 2022, Defendants issued a presentation to investors providing financial results for the fourth quarter and full year of 2021.  Among the "fourth quarter 2021 highlights" described in the presentation was Defendants' representation that the Company had reached 79,000 active locations.  The presentation then listed "Active Locations" first among the Company's "Key Business Metrics," and defined "Active Locations" as "a unique restaurant location that is utilizing one or more of our modules at the end of a quarterly period."  Emphasizing the importance of "Active Locations," the presentation further explained that the "active location count is an important metric that demonstrates the growth and scale of our overall business and reflects our ability to attract, engage, and monetize our customers and thereby drive revenue."  The growth in Olo's reported active locations was depicted in the chart below, which appeared in the February 23, 2022 presentation:



31.     During the corresponding call with analysts on February 23, 2022, CEO Glass highlighted the 79,000 active restaurant locations and more than 500 restaurant brands on the

Company's platform.  CFO Benevides further explained that the 79,000 reported active locations

represented "a 23% increase year-over-year and a 4% increase sequentially."

32.     During the same call, Olo provided guidance for full-year 2022, instructing

investors that for the first quarter of 2022 "we expect revenue in the range of $41.5 million to

$42 million" and for the full fiscal year 2022, "we expect revenue in the range of $194 million to

$196 million."  In connection therewith, CFO Benevides stated that the "main drivers of revenue

growth" would include "increasing the number of active locations on the platform."

33.     During the call, RBC Capital analyst Matthew Hedberg inquired whether

Defendants anticipated adding "sort of the same or maybe more locations in 2022 [and] is that sort

of what's embedded in sort of the initial revenue guide?"  CFO Benevides responded flatly, "Yes.

So, our expectation for 2022 is to add a similar amount of net new locations to the platform."

34.     In Olo's Annual Report on Form 10-K filed with the SEC on February 25, 2022,

the Company again reported the results described above.  The report also included the following

language in Item 1.A. under the heading "Risk Factors" regarding the loss of its largest customers:

> ***We currently generate significant revenue from our largest
> restaurant customers, and the loss or decline in revenue from any
> of these customers could harm our business, results of operations,
> and financial condition.***
>
> For the year ended December 31, 2021, our 10 largest restaurant
> customers generated an aggregate of approximately 19% of our
> revenue.  Although these customers enter into long-term contracts
> with us, they may reduce or terminate their usage of our platform or
> decide not to renew their agreements with us.
>
> We have lost in the past, and we may lose in the future, one or more
> of our largest restaurant customers.  While no such losses have been
> material to date, in the event that any of our largest restaurant
> customers do not continue to use our platform, use fewer of our
> modules, use our modules in a more limited capacity, or not at all,
> or if the volume of transactions processed on our platform declines,

our business, results of operations, and financial condition could be adversely affected.

35.     On May 10, 2022, Defendants issued a presentation to investors reporting the results of the Company's first quarter of 2022, again reporting active locations had expanded, now reaching 82,000.  During the corresponding call with analysts that day, CEO Glass touted that the "ending active location counts increased 19% year-over-year to approximately 82,000, and we surpassed more than 600 restaurant brands utilizing our platform."  CFO Benevides explained that the 82,000 reported active locations represented a 4% sequential increase.

36.     The above statements in paragraphs 27 - 35 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) Subway was ending its contract with Olo; (2) Olo's key business metric – active locations – could not continue to grow as Defendants touted due to the loss of Subway's business; and (3) that, as a result of the above, Defendants' statements about Olo's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

## C.     **The Truth Comes to Light**

37.     On August 11, 2022, Olo reported its financial results for the second quarter of 2022 and lowered its revenue guidance for full-year 2022 to a range of $183 million and $184 million and its non-GAAP operating income to a range of $7.6 million and $8.4 million.

38.     In addition, although the Company reported deploying "roughly 3,000 new locations to the platform," Olo's reported active location count was "flat sequentially" at 82,000 active locations.  CEO Glass explained that the Company's active location count "was impacted by a change in our relationship with Subway."  CEO Glass acknowledged that "certain Subway

locations began directly integrating with marketplaces, impacting our ending active location count by roughly 2,500 locations in the second quarter." Moreover, CFO Benevides explained during the same call that the Company expected "the balance of Subway locations to directly integrate with marketplaces in the fourth quarter."

39.     In a stunning admission, CFO Benevides then admitted that, while the loss of Subway as a customer would "likely impact our ending active location counts in the fourth quarter of this year or the first quarter of 2023, it did not impact the third quarter or full year guide." Analysts were confused as to why the Company's reported guidance did not include Subway. CFO Benevides answered that "in terms of Subway and the implications on the guide . . . *when we entered the year*, there was indication that Subway may plan to directly integrate with marketplaces, but at that point in time, the timeline was unclear." Benevides further admitted, "we took that information, *we factored in the possibility that Subway may integrate directly* . . . and in turn, *reduc[ed] a portion of their revenue contribution throughout the year*." In other words, Defendants admitted that they knew Subway would be leaving as a customer with such certainty that, unbeknownst to investors, Defendants had factored the Subway departure into Olo's revenue forecasts for the year.

40.     RBC Capital analyst Matthew Hedberg sought clarification regarding this surprising news: "just to be clear, when you started the year, you've assumed less Subway contributions and it seems like that is playing out." In response, CFO Benevides confirmed that "what we had done entering the year is really start to tail that off in the second quarter through the balance of the year, really as a hedge to some of the indications that we had heard as we entered the year."

41.     Analysts immediately took the Company to task for failing to disclose that it knew about the Subway departure *for months* and emphasized how important Olo's relationship with Subway was to investors.  For example, Piper Sandler analysts downgraded Olo stock to "neutral," and described the Company's reported location count as a "downside surprise" that included an "unexpected reduction of 2.5k Subway locations, with another 12.5k locations expected to move off [ ] in early 2023."  RBC Capital Markets analysts lowered their price target for Olo stock from $17 per share to $12 per share and reported they were "disappointed to learn [Subway would] directly integrate to third party marketplaces."

42.     As the market digested this news, the price of Olo stock plummeted approximately 36%, from a closing price of $12.99 per share on August 11, 2022, to a closing price of $8.26 per share on August 12, 2022.  More than $480 million of shareholder value was erased, and the price of Olo stock continues to trade in the range of $8 per share.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Olo Class A common stock between August 11, 2021 and August 11, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least

hundreds or thousands of members in the proposed Class.  Throughout the Class Period, Olo common stock was actively traded on NYSE (an open and efficient market) under the symbol "OLO."  Millions of Olo shares were traded publicly during the Class Period on the NYSE.  As of August 8, 2022, the Company had more than 102 million shares of Class A common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Olo or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b.     whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c.     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Olo;

d. whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Olo;

e. whether the market price of Olo Class A common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f. the extent to which the members of the Class have sustained damages and the proper measure of damages.

48. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

49. The market for Olo's Class A common stock was an open, well-developed and efficient market at all relevant times. As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Olo's common stock traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased Olo's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Olo and have been damaged thereby.

50. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Olo's Class A common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as

set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Olo's business, operations, and prospects as alleged herein.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's Class A common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

51.     As alleged herein, the Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

52.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Olo, their control over, receipt, and/or modification of Olo's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Olo, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

53.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

54.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Olo who knew that the statement was false when made.

## LOSS CAUSATION

55.     Defendants' wrongful conduct, as alleged herein, directly, and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

56.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the prices of Olo's Class A common stock and operated as a fraud or deceit on the Class.   When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Olo's stock fell precipitously, as the prior artificial inflation came out of the price.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

57.    The market for Olo stock was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Olo common stock traded at artificially inflated and/or maintained prices during the Class Period.  Plaintiff and other members of the Class purchased the Company's Class A common stock relying upon the integrity of the market price of Olo common stock and market information relating to Olo and have been damaged thereby.

58.    At all times relevant, the market for Olo common stock was an efficient market for the following reasons, among others:

    a.    Olo was listed and actively traded on NYSE, a highly efficient and automated market;

    b.    As a regulated issuer, Olo filed periodic public reports with the SEC and/or the NYSE;

    c.    Olo regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

    d.    Olo was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

59.    As a result of the foregoing, the market for Olo common stock promptly digested current information regarding Olo from all publicly available sources and reflected such

information in Olo's stock price.  Under these circumstances, all purchasers of Olo stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

60.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.    Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

### COUNT I
### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

61.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Olo common stock; and (iii) cause Plaintiff and other members of the Class to

purchase Olo stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

63.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Olo common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Olo's business, operations, and prospects, as specified herein.  Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Olo's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Olo and its business, operations, and prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

65. Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects;; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

66. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Olo's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

67.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Olo common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased Olo common stock during the Class Period at artificially inflated prices and were damaged thereby.

68.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Olo was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Olo common stock, or, if they had purchased such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

69.     By virtue of the foregoing, Olo and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II
### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of Olo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control,  directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.  Further, the Individual Defendants signed the Company's Quarterly Reports on Form 10-Q for the Second and Third Quarters of 2021 and the first quarter of 2022 and the Company's 2021 Annual Report on Form 10-K.

73.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

74.     As set forth above, Olo and the Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

75.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)      Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)      Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)      Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)      Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: September 26, 2022                    Respectfully submitted,

                                             **SAXENA WHITE P.A.**
                                             By: /s/ *Steven B. Singer*
                                             Steven B. Singer
                                             Rachel Avan
                                             10 Bank Street, 8th Floor

White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611
ssinger@saxenawhite.com
ravan@saxenawhite.com

**SAXENA WHITE P.A.**
Maya Saxena
Lester R. Hooker
7777 Glades Road,
Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
msaxena@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Plaintiff the Pompano Beach
Police and Firefighters' Retirement System*

## CERTIFICATION AND AUTHORIZATION

I, Paul D. O'Connell, on behalf of the Pompano Beach Police and Firefighters' Retirement System ("Pompano Beach P&F"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I am the Chairman of Pompano Beach P&F.  I have reviewed a complaint ("Complaint") prepared against Olo Inc. ("Olo") alleging violations of the federal securities laws and authorized its filing.  I am authorized in my capacity as Chairman of Pompano Beach P&F to execute this Certification on behalf of Pompano Beach P&F.

2.  Pompano Beach P&F did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3.  Pompano Beach P&F is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  Pompano Beach P&F's transactions in Olo's Class A common stock during the Class Period are set forth in the attached Schedule A.

5.  Pompano Beach P&F has sought to serve and was appointed as lead plaintiff and/or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *Leventhal v. Chegg, Inc.*, No. 5:21-cv-09953 (N.D. Cal.)

6.  Pompano Beach P&F has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff, was not appointed lead plaintiff, or the lead plaintiff decision is still pending:

    *Batwara v. Infosys Ltd.*, No. 1:19-cv-05959 (E.D.N.Y.)

    *Ng v. Berkeley Lights, Inc.*, No. 4:21-cv-09457 (N.D. Cal.)

    *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, No. 1:22-cv-01167 (E.D.N.Y.)

7.  Pompano Beach P&F will not accept any payment for serving as a representative party on behalf of the Class beyond Pompano Beach P&F's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of September, 2022.

*Pompano Beach Police & Firefighters'*
*Retirement System*

Paul D. O'Connell, Chairman

**SCHEDULE A**
**Pompano Beach Police and Firefighters' Retirement System**
**Transactions in Olo Inc.**

| Common Stock Purchases | | | | Common Stock Sales | | |
|---|---|---|---|---|---|---|
| **Date** | **Shares** | **Price** | | **Date** | **Shares** | **Price** |
| 09/08/21 | 87 | $34.64 | | 11/01/21 | 530 | $27.95 |
| 09/08/21 | 950 | $34.76 | | | | |
| 09/08/21 | 231 | $35.14 | | | | |
| 09/09/21 | 92 | $34.29 | | | | |
| 09/09/21 | 258 | $34.93 | | | | |
| 09/09/21 | 506 | $35.15 | | | | |
| 09/10/21 | 466 | $35.17 | | | | |
| 09/13/21 | 130 | $33.14 | | | | |
| 09/13/21 | 335 | $33.58 | | | | |
| 09/14/21 | 415 | $33.24 | | | | |
| 09/15/21 | 415 | $32.21 | | | | |
| 10/05/21 | 90 | $28.28 | | | | |
| 10/05/21 | 45 | $28.80 | | | | |
| 10/06/21 | 55 | $28.27 | | | | |
| 10/06/21 | 225 | $28.38 | | | | |
| 10/07/21 | 110 | $29.30 | | | | |
| 10/07/21 | 240 | $29.38 | | | | |
| 10/08/21 | 488 | $28.67 | | | | |
| 10/08/21 | 137 | $28.96 | | | | |
| 01/07/22 | 130 | $18.71 | | | | |
| 01/07/22 | 305 | $18.89 | | | | |
| 01/10/22 | 56 | $17.88 | | | | |
| 01/10/22 | 136 | $18.08 | | | | |
| 01/10/22 | 442 | $18.17 | | | | |
| 01/11/22 | 586 | $19.35 | | | | |
| 01/20/22 | 180 | $16.08 | | | | |
| 01/20/22 | 630 | $16.50 | | | | |
| 01/21/22 | 475 | $15.18 | | | | |
| 01/24/22 | 1,600 | $14.50 | | | | |
| 01/25/22 | 365 | $14.78 | | | | |
| 01/25/22 | 565 | $15.00 | | | | |