Mcg2PomC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
POMPANO BEACH and
FIREFIGHTERS' RETIREMENT
SYSTEM,

     Plaintiff,     New York, N.Y.

    v.       22 Civ. 8228 (JSR)

OLO INC., *et al.*,

     Defendants.
------------------------------x  Conference

            December 16, 2022
            4:00 p.m.

Before:

      HON. JED S. RAKOFF,

           District Judge


        APPEARANCES

SCOTT & SCOTT, LLP
  Attorneys for Movant STA-ILA Pension Fund
BY:  AMANDA F. LAWRENCE

ROBBINS GELLER RUDMAN & DOWD, LLP
  Attorneys for Movant I.B.E.W Local Union No. 357
  Pension Trust Fund Plan A
BY:  SAMUEL H. RUDMAN

GOODWIN PROCTER, LLP
  Attorneys for Defendants
BY:  DEBORAH S. BIRNBACH
  JENNIFER LUZ


Also Present:

Richard P.  Krueger, III
Christopher L. Wile

Mcg2PomC

(Case called)

THE DEPUTY CLERK:  Will everyone please identify themselves for the record, speaking directly in front of a microphone, please.

MS. LAWRENCE:  Good afternoon, your Honor --

MR. WILE:  I could not hear that.  Did you ask me to state my name?  Is that correct, your Honor?

THE COURT:  Yes.  I will get to you in one minute. Let me -- I know you may not be able to hear some of the counsel, but they are just introducing themselves.  As soon as they are finished, I will ask you to identify yourself, as well.  But thank you for letting me know that.

MR. WILE:  Sorry, your Honor.  Thank you.

MS. LAWRENCE:  Good afternoon, your Honor.  Amanda Lawrence, from Scott & Scott, on behalf of movant Steamship Trade Association-International Longshoreman's Association Pension Fund, and with me today is Rich Krueger co-administrator of the fund.

MR. RUDMAN:  Good afternoon, your Honor.  Sam Rudman, for IBEW Local 357 Pension Fund movant, and on the phone, as you have heard, is my client, chairman of the fund, Chris Wile.

THE COURT:  And now, Mr. Wile, you should introduce yourself for the record.

MR. WILE:  My name is Christopher Lawrence Wile.  I represent IBEW Local 357.  I'm the system business manager of

the electrical union in Las Vegas.  We represent about 4,000 members, and I am the chairman of our health and welfare and both pension fund.

THE COURT:  Thank you very much.

Now we will hear some other parties and we will get back to you shortly.

MS. BIRNBACH:  Good afternoon, your Honor.  Deborah Birnbach, from Goodwin, counsel for defendants.

MS. LUZ:  Good afternoon, your Honor.  Jennifer Luz, also from Goodwin and also counsel for defendants.

THE COURT:  All right.  So this hearing is to determine who should be the lead plaintiff in this proposed class action, but we need to deal first with the situation involving Mr. Rudman and his client.

So my individual rules have contained for the last 26 plus years the same first two sentences which are:  "All communications with chambers must be by means of joint telephone calls.  Correspondence with the Court, whether by letter, e-mail, or otherwise, filing correspondence on the ECF or docketing correspondence with the Clerk of the Court and copying the court on correspondence with others is strictly forbidden," and "strictly forbidden" is underscored, "except as specifically authorized by these rules or expressly requested by the Court."

Now, Mr. Rudman and his firm have been before this

Court many times, and therefore I was quite taken aback when, just two days ago, there was filed on the docket of this action, with no prior telephone call and no prior permission, a two-paragraph submission from Mr. Rudman and his colleague, Mr. Rosenfeld, and the first paragraph says, "That the IBEW Local Union Number 357 Pension Trust Fund, Plan A, respectfully submits this response to the lead plaintiff motion."

I should add that I had authorized a response for an earlier date which had long passed when this was sent.

And then the second paragraph says that "based upon representations by STA-ILA's counsel, the pension trust has no reason to believe that the issues identified by the Court in an earlier case"——the *Monster* case that we will get to in a while——"are still present. The pension trust remains ready, willing, and able to serve as lead plaintiff if the Court determines otherwise. Counsel for the pension trust will therefore not attend the December 16, 2022 hearing."

This submission, in addition to being blatantly in violation of my rule was on its face totally ambiguous. I had no way to know what the position was. All I was being told is that they were still willing to serve, but some of their objections were no longer valid or being pursued, and that therefore they unilaterally would not attend today's hearing in violation of my order that they attend today's hearing.

So I convened a telephone call with counsel yesterday

and I made clear to Mr. Rudman how unhappy I was with the manner in which he and his firm had pursued this recent development. He indicated that he was familiar with my rule. He also indicated that what he really had meant to convey was that his client and he were withdrawing their opposition to the appointment of the other proposed lead plaintiff, and I then ordered him to appear today with the representative of his client.

Less than a half hour later, rather than reconvening the telephone call, and notwithstanding that I had just bawled him out for violating my rules, he sent an unsolicited e-mail to my law clerk, without permission, asking for permission to have his client's representative appear by telephone.

Now, the reason I have my rule and have maintained it for almost 27 years is twofold. One is -- threefold, really. One is to avoid letter wars, the second is to give the parties very prompt responses to any application, and the third is so that I know what the position of any other relevant party is. In Mr. Rudman's e-mail, he doesn't say whether or not he asked the other parties to this proceeding whether they had any objection to his client representative appearing by telephone, and my guess is that he probably never even asked either of the other parties what their position was. So it was clear to me that Mr. Rudman still didn't believe in abiding by my rule. Nevertheless, because I thought it was a reasonable request, I

Mcg2PomC

had my law clerk send him an e-mail saying we would allow

Mr. Wile to appear telephonically, as he has.

So my question to Mr. Rudman is, is there any reason I shouldn't impose sanctions?  You apparently just don't want to abide by the Court's rules.

MR. RUDMAN:  The answer to your question, your Honor, is, in the first instance, it was a filing and I mistakenly believed I could make a filing without -- obviously I am aware of your rules.  In the second instance, it was simply an effort to make sure my client could participate by phone given the press of time.

THE COURT:  Since the other parties had been on the phone less than a half hour earlier, it would have been simple to get them on the phone, and then I would have known before I ruled whether they had any objection.  Did you consult with them?

MR. RUDMAN:  I did not, but they were all on the e-mail.  I didn't have any reason to believe they wouldn't. But I don't --

THE COURT:  So --

MR. RUDMAN:  -- have --

THE COURT:  -- do you agree that you violated my rule once again, less than a half hour after I bawled you out for doing so previously?

MR. RUDMAN:  Yes, I do.

THE COURT:  Let's turn to the substance.

THE DEPUTY CLERK:  Judge, before you turn to another topic, this is another note from the jury.

(Pause)

THE COURT:  Going back to this proceeding, on the substance, do I understand that, Mr. Rudman, your client is no longer seeking to be lead counsel in this case?

MR. RUDMAN:  Well, lead plaintiff, your Honor.

THE COURT:  Lead plaintiff, I'm sorry.

MR. RUDMAN:  So they have no opposition -- so we raised issues in our -- I'm just going to repeat in the response, but we raised issues as to what happened in a prior case.  I met and conferred with counsel for the longshoremen. I was given certain assurances about changes that had been made to the fund.  Those were discussed with my client, and we determined to withdraw our opposition.  We, however, put language that's pretty standard in these cases to say that if for some reason the longshoremen weren't appointed, the IBEW stood ready, willing, and able to serve.  Even in this case, the Pompano --

THE COURT:  Excuse me.  In other words, because I haven't yet gotten a yes-or-no answer to what I think is a yes-or-no question, are you still seeking to be appointed lead counsel?  Yes or no.

MR. RUDMAN:  The answer is no.

Mcg2PomC

THE COURT:  Okay.  The answer is no.

Mr. Wile, you heard what I just asked your counsel?

MR. WILE:  Yes, your Honor.

THE COURT:  So let me see if you confirm.  You and your fund are no longer seeking to be appointed lead counsel in this case, is that correct?

MR. WILE:  That is correct, your Honor.

THE COURT:  All right.  All right.  Then on that basis I will excuse Mr. Wile from any further participation in this conference call.  Mr. Wile, thank you so much for being available, and I will hang up the phone with you now.

MR. WILE:  Thank you, your Honor.

THE COURT:  Mr. Rudman, short of sanctions, what do I have to do to get you to abide by my rules.

MR. RUDMAN:  Your Honor, I have appeared in front of you for many years.  I have always abided by your rules.  I would like a strong admonition and assurance from me that I will not in the future do it again.  I have had many cases in front of you over the years.  That's the best I can do at this point.

THE COURT:  All right.  Well, I will not impose sanctions, although I really found it utterly amazing that after the call you then sent that e-mail to my law clerk.  But nevertheless, it is true that you and your firm have performed professionally in many cases before me over the years.  So I

Mcg2PomC

will not impose sanctions unless it ever happens again.

MR. RUDMAN:  Judge, I would like to apologize in any event.

THE COURT:  All right.  Very good.  You can leave if you want to.  You are welcome to say.

MR. RUDMAN:  No, I think I will stay and see how it goes.

THE COURT:  All right.  Very good.

Now turning to the proposed lead counsel, who do we have as the representative of the proposed lead plaintiff?

MS. LAWRENCE:  Good afternoon, your Honor.  I have Rich Krueger, co-administrator of the fund, lead plaintiff.

THE COURT:  All right.  Have him take the stand.

RICHARD PATRICK KRUEGER, III

    called as a witness having been duly sworn,

    testified as follows:

THE COURT:  So what's your current position?

THE WITNESS:  Co-administrator for the STA-ILA pension fund.

THE COURT:  And what is your prior background?

THE WITNESS:  I was in public accounting with a specialty in employee benefit plans for about 16 years before taking this position.

THE COURT:  Have you read the complaint?

THE WITNESS:  I have.

Mcg2PomC

THE COURT:  Tell me what it says, in essence.

THE WITNESS:  In essence, there is claims that all incorporated, didn't disclose certain activity that is and will occur that can impact the financials, and there were losses to my fund of about $660,000, among other potential parties in the class.

THE COURT:  How did it come about that you decided to, you and your company, entity, decided to apply to be lead counsel?

THE WITNESS:  I have to defer to the legal counsel, because as I --

THE COURT:  No.  I'm not deferring to legal counsel.

THE WITNESS:  Based on the losses, we had the most significant losses, I am aware.  It was brought to our attention by our securities fraud monitoring company, Scott & Scott, and then it was discussed amongst our outside legal counsel, board of trustees, and was researched for about five weeks before they made the decision on the board -- at a board meeting to pursue it.

THE COURT:  Did counsel first approach you with the idea of serving as lead counsel -- lead plaintiff?

THE WITNESS:  Not initially.

THE COURT:  You approached them?

THE WITNESS:  No, they initially approached the trustees and there was -- there are several other events

Mcg2PomC

occurring with bargaining with them.

THE COURT:  I see.  But they initiated the request.

THE WITNESS:  Correct.

THE COURT:  And did you or the trustees understand what this would involve?

THE WITNESS:  Yes.

THE COURT:  What would it involve?

THE WITNESS:  Potential appearance here, commitment of time, oversight of the process of any action of the lawyers, and ultimate responsibility for making decisions on the actions that the lawyers could take on our behalf.

THE COURT:  Did you or your entity enter into a retainer agreement with counsel.

THE WITNESS:  Yes.

THE COURT:  Can I see that, please?

MS. LAWRENCE:  May I approach?

THE COURT:  Yes.

So this says that you are agreeing that Scott & Scott can seek up to one-third of any recovery in this litigation. Did you notice that?

THE WITNESS:  Yes, sir.

THE COURT:  You understand, do you not, that every dollar in a class action of this sort, every dollar paid to counsel is typically a dollar taken from what otherwise would be paid to the victims, the alleged victims?

Mcg2PomC

THE WITNESS:  I do.

THE COURT:  So why would you want a whole one-third to go to counsel?

THE WITNESS:  As I understand, it's a range, I believe, of between 15 and 33 percent.

THE COURT:  Well, what it says here is, "Amount not to exceed 33.33 percent."

THE WITNESS:  The selection that was based on reputation and our ability to pursue the case on behalf of the participants that were shortchanged.

THE COURT:  If I don't approve this as a class action, is Scott & Scott, to your understanding, still going to pursue it as your lawyers on behalf of your fund?

THE WITNESS:  I'm not aware if it weren't a class action.  I don't know what would occur in that event.

THE COURT:  So what that means, as you understand it, is that if they don't succeed as having this as a class action, they can just get out.

THE WITNESS:  I'm also not sure if they can just get out.  I have to reread everything.

THE COURT:  Well, there is this interestingly worded sentence.  "Scott & Scott also has the right to terminate the retainer agreement by giving plaintiff written notice if Scott & Scott determines that continuing to represent plaintiff in this litigation would be unethical," of course, "or" the

Mcg2PomC

next word is "impractical."  What the heck does that mean?  Doesn't that mean that if they can't get a class action they are going to skip town?

THE WITNESS:  I couldn't answer that, sir.  I don't know.

THE COURT:  It might be an improper question.

Have you ever been involved in any class actions?

THE WITNESS:  I have not.

THE COURT:  So one of the things that you are going to have to decide is, if there is a proposed settlement, whether or not to accept it.  Now, your counsel, of course, will have a view, but of course they also have an interest because they get maybe as much as one-third.  So they are not exactly giving a totally unbiased opinion.  So how are you going to figure out whether it's a good settlement or not?

THE WITNESS:  Such decisions are ultimately up to the board.  It will go to a full vote, considering the advice of counsel, but the decision lies with them.

THE COURT:  Are there attorneys on the board?

THE WITNESS:  No.

THE COURT:  How many people on the board?

THE WITNESS:  I believe 17 at the moment.

THE COURT:  All right.  In preparation for this hearing today, did counsel bring to your attention the decision of this Court in a case called *Monster*, *In re: Monster*

Mcg2PomC

*Worldwide Securities Litigation?*

THE WITNESS:  They did.

THE COURT:  And that was a case where I had appointed your fund as co-lead counsel, yes?

THE WITNESS:  Yes, sir.

THE COURT:  And when the case went to class certification discovery, your representative, Mr. Horace Austin, admitted that he did not know the name of the stock at issue in the case, did not know the name of either individual defendant, did not know whether STA-ILA ever owned *Monster* stock, did not know if an amended complaint had been filed, did not know whether he had ever seen any complaint in the action, did not know that defendant McKelvey had moved to dismiss the complaint, and did not know that STA-ILA had moved for prediscovery summary judgment.

So you became aware of that?

THE WITNESS:  I did.

THE COURT:  To put it bluntly, he was blatantly inadequate.

THE DEPUTY CLERK:  A jury note.

(Pause)

THE COURT:  So what assurance do I have that you are going to be a lot better than this clearly inadequate predecessor?

THE WITNESS:  I can't speak to the control environment

Mcg2PomC

at that point in time, but it's pretty sound in my opinion right now.  We monitor things a lot more closely, there are multiple levels of control, and it's an entirely different staff and board of trustees at this point in time.

THE COURT:  Is Mr. Austin still with you?

THE WITNESS:  He is not.

THE COURT:  You can step down.  Thank you.

(Witness excused)

THE COURT:  So let me ask proposed counsel for the proposed lead plaintiff, if I deny class certification, are you still going to represent the fund?

MS. LAWRENCE:  Your Honor, that would be up to the fund.

THE COURT:  Well, of course it's up to the fund.  But if they said they would like you to go ahead anyway and file a lawsuit paralleling the one that's here or seek to join this lawsuit even though it's not a class lawsuit on the basis of -- as a co-plaintiff, would you continue to represent them?

MS. LAWRENCE:  Your Honor, I have done it before and I feel obligated to do so.

THE COURT:  I'm sorry?

MS. LAWRENCE:  I have done it before and I feel obligated to do so if the client wants.

THE COURT:  Okay.  That's what I wanted to hear.

All right.  Anything defense counsel wanted to raise?

Mcg2PomC

MS. BIRNBACH:  No position on the motion, your Honor.

THE COURT:  All right.  So I'm going to appoint the STA-ILA as lead plaintiff and appoint Scott & Scott as their lawyers, and I will issue a written short memorandum giving the reasons.

But do you want to file a consolidated amended complaint?

MS. LAWRENCE:  Yes, your Honor.  We went as far as to work out some dates, looking at precedent from your Honor, understanding --

THE COURT:  So what are those dates?

MS. LAWRENCE:  So we were proposing, given the holidays, an amended complaint on January 17.

THE COURT:  Keep going.

MS. LAWRENCE:  The opposition thereto on February 16.

THE COURT:  Keep going.  I'm not going to approve this, but go ahead.

MS. LAWRENCE:  Well, it was 30 days because of the holidays.

THE COURT:  I'm not going to -- holiday schmolidays. I see no reason that a firm of your experience cannot file the consolidated amended complaint by early January, and I see no reason why defense counsel, who already know the gist of that complaint, can't move or answer within a couple of weeks thereafter and maybe give you a week for any reply if they

Mcg2PomC

move, and then we can have oral argument.  What about that?

MS. LAWRENCE:  Your Honor, I felt an obligation to the staff and to the clients, given the holiday schmolidays, to ask for more, but we will accept what your Honor --

THE COURT:  I don't mean by that to be dismissive of these important holidays.

MS. LAWRENCE:  Understood.

THE COURT:  I'm simply being dismissive of the need after the holidays for all the time you and your adversary have requested.

All right.  So work out those dates.  I will give you permission once you jointly worked out the dates along the lines of it to submit a proposed order for my signature sometime in the next -- by middle of next week and I will sign that order.

MS. LAWRENCE:  Thank you, your Honor.

For clarity, you would like us to submit that to your clerk directly?

THE COURT:  Sure.

MS. LAWRENCE:  Thank you.

THE COURT:  He is used to it by now in this case.

All right.  Very good.  I have to deal with this problem that's just come up, so you are all excused.

MS. LAWRENCE:  Thank you, your Honor.

oOo

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300