**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLO INC., NOAH GLASS, and PETER BENEVIDES, <br><br> Defendants. | Case No. 1:22-cv-08228-JSR |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION
COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

Deborah S. Birnbach
Jennifer B. Luz
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com

*Counsel for Defendants Olo Inc., Noah
Glass, and Peter Benevides*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................................ii

INTRODUCTION .......................................................................................................................... 1

I.      THE AC DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER. ................. 1

II.    THE AC DOES NOT PLEAD ANY ACTIONABLE MISSTATEMENTS. ................... 7

III.   THE AC FAILS TO PLEAD LOSS CAUSATION. ....................................................... 10

CONCLUSION............................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
   965 F.3d 165, 179-80 (2d Cir. 2020) .......................................................................................10

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343, 356 n.4 (2d Cir. 2022) .........................................................................................3

*Cheng v. Can. Goose Holdings Inc.*,
   2021 WL 3077469, at *7 (S.D.N.Y. July 19, 2021) .................................................................10

*City of Livonia Employees' Ret. Sys. v. Wyeth*,
   2010 WL 3910265, at *6-7 (S.D.N.Y. Sept. 29, 2010) ..............................................................6

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
   477 F. Supp. 3d 123, 135, 138 (S.D.N.Y. 2020)...................................................................9, 10

*Colbert v. Rio Tinto PLC*,
   392 F. Supp. 3d 329, 339 (S.D.N.Y. 2019)................................................................................5

*Dobina v. Weatherford Int'l Ltd.*,
   909 F. Supp. 2d 228, 243 (S.D.N.Y. 2012)................................................................................4

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171, 200 (S.D.N.Y. 2010)............................................................................2, 3

*Fresno Cnty. Employees Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526, 554 (S.D.N.Y. 2017)................................................................................4

*Gagnon v. Alkermes PLC*,
   368 F. Supp. 3d 750, 775-76 (S.D.N.Y. 2019) ..........................................................................5

*Gross v. AT&T Inc.*,
   2021 WL 9803956, at *6-8 (S.D.N.Y. Sept. 27, 2021) ..............................................................8

*Hutchins v. NBTY, Inc.*,
   2012 WL 1078823, at *6 (E.D.N.Y. Mar. 30, 2012)..................................................................3

*Ill. State Bd. of Inv. v. Authentidate Holding Corp.*,
   369 F. App'x 260, 263 & n.2 (2d Cir. 2010) ..............................................................................7

*In re AstraZeneca plc Sec. Litig.*,
   2022 WL 4133258, at *7 (S.D.N.Y. Sept. 12, 2022)..............................................................2, 7

*In re Check Point Software Techs. Ltd. Sec. Litig.*,
  2006 WL 1116699, at *3 (S.D.N.Y. Apr. 26, 2006)................................................................7

*In re Complete Mgmt. Inc. Sec. Litig.*,
  153 F. Supp. 2d 314, 320, 328 (S.D.N.Y. 2001).....................................................................4

*In re Express Scripts Holding Co. Sec. Litig.*,
  2017 WL 3278930, at *13 (S.D.N.Y. Aug. 1, 2017)................................................................8

*In re GeoPharma, Inc. Sec. Litig.*,
  411 F. Supp. 2d 434, 437 (S.D.N.Y. 2006).............................................................................9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2013 WL 6233561, at *14 (S.D.N.Y. Dec. 2, 2013) ...............................................................7

*In re MBIA, Inc., Sec. Litig.*,
  700 F. Supp. 2d 566, 591 (S.D.N.Y. 2010).............................................................................6

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620, 644-45 (E.D. Va. 2000) ........................................................................3

*In re Platinum-Beechwood Litig.*,
  2019 WL 2569653, at *6 (S.D.N.Y. June 21, 2019)................................................................3

*In re Plug Power Inc., Sec. Litig.*,
  2022 WL 4631892, at *16 (S.D.N.Y. Sept. 29, 2022).............................................................4

*In re PTC Therapeutics, Inc. Sec. Litig.*,
  2017 WL 3705801, at *16 (D.N.J. Aug. 28, 2017)..................................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
  389 F. Supp. 3d 221, 231 (S.D.N.Y. 2019)...........................................................................10

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259, 267 (2d Cir. 1993)................................................................................................7

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011).............................................................................5

*Johnson v. Siemens AG*,
  2011 WL 1304267, at *14 (E.D.N.Y. Mar. 31, 2011).............................................................3

*Karimi v. Deutsche Bank Aktiengesellschaft*,
  2022 WL 2114628, at *12 (S.D.N.Y. June 13, 2022)..............................................................7

*Lewis v. YRC Worldwide Inc.*,
  2020 WL 1493915, at *7 n.2 (N.D.N.Y. Mar. 27, 2020).........................................................9

*Lewy v. SkyPeople Fruit Juice, Inc.*,
  2012 WL 3957916, at *4, *17 (S.D.N.Y. Sept. 10, 2012)........................................................10

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706, 718-20 (2d Cir. 2011) ...........................................................................................8

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245, 250 (2d Cir. 2014)..................................................................................................7

*Nathel v. Siegal*,
  592 F. Supp. 2d 452, 464, 465 (S.D.N.Y. 2008)..........................................................................6

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
  455 F. App'x 10, 13-14, 16 (2d Cir. 2011) ..............................................................................7, 8

*Novak v. Kasaks*,
  216 F.3d 300, 311-12, 315 (2d Cir. 2000) ...............................................................................6, 10

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
  380 F.3d 1226, 1232 (9th Cir. 2004) ............................................................................................3

*Pehlivanian v. China Gerui Advanced Materials Grp.*,
  2016 WL 2859622, at *6 (S.D.N.Y. May 16, 2016).....................................................................4

*Saraf v. Ebix, Inc.*,
  2022 WL 4622676, at *5 n.5 (S.D.N.Y. Sept. 30, 2022)..............................................................8

*SEC v. Rio Tinto plc*,
  2019 WL 1244933, at *12 (S.D.N.Y. Mar. 18, 2019) ..................................................................8

*Setzer v. Omega Healthcare Invs., Inc.*,
  968 F.3d 204, 212-14 (2d Cir. 2020) ............................................................................................5

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
  248 F. Supp. 3d 428, 440 (S.D.N.Y. 2017)...................................................................................5

*Speakes v. Taro Pharm. Indus., Ltd.*,
  2018 WL 4572987, at *8-9 (S.D.N.Y. Sept. 24, 2018) ................................................................6

*Struogo v. Barclays PLC*,
  105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015)...................................................................................8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308, 314 (2007)..............................................................................................................1

*Wilson v. LSB Indus., Inc.*,
  2017 WL 7052046, at *3 (S.D.N.Y. Mar. 2, 2017) ......................................................................9

Olo's loss of a single, one-module, low-revenue customer may have been disappointing, but it is not securities fraud.[1] Neither is the alleged *de minimis* overstatement of Olo's publicly reported active locations. Plaintiff ignores many of the arguments in the Opening Brief, and instead argues the sheer variety of allegations in the AC must mean that Plaintiff has met its heightened pleading burden. But nothing in the Opposition or the AC suggests an inference of scienter that is more cogent or compelling than the non-fraudulent inferences. Olo waited to disclose the Subway Transition until August 2022 because it did not want to sabotage ongoing discussions with Subway, *not* to defraud investors about its growth prospects while the Individual Defendants *increased* their stock ownership. Plaintiff's competing inferences are implausible because the AC does not allege that the Individual Defendants *knew* the Subway Transition was certain or *knew* of the anecdotal allegations of two rank-and-file employees concerning Olo's active locations. Nor does the Opposition identify any duty to disclose every ebb and flow of the Subway relationship— one of over 600 Olo customers (dozens of which are publicly announced). Moreover, the Opposition does not adequately address the fact that every alleged false or misleading statement is a protected forward-looking statement, puffery, a genuinely held opinion, or that there are no allegations to support any inference of falsity. Plaintiff also fails to articulate loss causation. Accordingly, the Court should grant Defendant's Motion.

## I.      THE AC DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER.

Plaintiff protests that the Opening Brief presents Defendants' own "version of the facts." Opp. at 22. Not so. Rather, as the Court is required to assess under *Tellabs, Inc. v. Makor Issues*

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Opening Brief" or "Br.") (ECF No. 40). Plaintiff's Opposition to Defendants' Motion is referred to as the "Opposition" or "Opp." (ECF No. 44). All (i) internal alterations, citations, and quotation marks are omitted unless otherwise noted; and (ii) emphasis is added.

& Rts., Ltd., 551 U.S. 308, 314 (2007), Defendants presented the "competing inferences rationally drawn from the facts alleged." *See* Br. at 16-17. Those inferences are cogent, compelling, and more plausible than the inferences that Plaintiff asks the Court to draw from the AC's limited allegations. For the Subway Transition, the most plausible inference is that Defendants disclosed the Subway Transition once it was reasonably certain to occur and after Subway locations had begun to roll off Olo's platform, rather than prematurely disclosing and potentially sabotaging ongoing discussions with Subway. For active locations, the most plausible inference is that Defendants were simply unaware of the purported inconsistencies in Olo's active locations identified by CW1 and CW2. Plaintiff offers no reason why these inferences are implausible or wrong, or why Glass and Benevides *increased* their stockholdings during the Class Period if they knew their statements regarding Olo's growth potential were untrue. Plaintiff's supposed alternative inference of scienter, that Defendants "effectively held their breaths hoping to somehow fill those gaps, all while selling their shares and making acquisitions" is unsupported by the AC's actual allegations.[2]

**_Motive and Opportunity._** The AC's allegations as to Defendants' motive and opportunity are insufficient to support a strong inference of scienter.[3] Ignoring that the Individual Defendants actually *increased* their ownership of Olo stock during the Class Period,[4] Plaintiff instead argues

---

[2] The suggestion that "if Defendants truly believed that active locations and the Subway relationship were immaterial, there is no reasonable non-culpable explanation for their refusal to tell the market the truth" gets it backwards. Opp. at 22. The securities laws do not require disclosure of all information regardless of materiality. *See In re AstraZeneca plc Sec. Litig.*, 2022 WL 4133258, at *7 (S.D.N.Y. Sept. 12, 2022).

[3] None of these arguments even applies to the Subway Transition. Glass and Benevides last sold shares *in November 2021*, and Olo's acquisition of Wisely was announced *in October 2021*, all months before the first supposedly misleading statement related to the Subway Transition was made. Br. at 8-9 & n.3; *id.* 11 n.6. Likewise, the AC's far-fetched theory that Defendants inflated Olo's stock price to finance the all-cash acquisition of Omnivore cannot possibly be a motive for Defendants to have concealed the Subway Transition. *See* Br. at 10-11.

[4] *Freudenberg v. E*Trade Fin. Corp.* is inapposite because there was no argument there that the defendants' holdings increased. *See* 712 F. Supp. 2d 171, 200 (S.D.N.Y. 2010).

incorrectly (Opp. at 19-20) that Defendants cannot rely on Rule 10b5-1 trading plans to rebut an inference of scienter on a motion to dismiss. *See* Br. at 8 (citing cases). The sole case cited by Plaintiff does not support its argument. *See E\*Trade*, 712 F. Supp. 2d at 200 (10b5-1 plans may be relevant to analysis of scienter).[5] Plaintiff's other arguments concerning Defendants' stock sales also fail. *See* Opp. at 20-21. The AC does not adequately allege that any of the sales were timed to take advantage of alleged misstatements, and there is no inference of scienter to be drawn from the Individual Defendants' trading patterns given that prior to the Class Period, they were subject to a post-IPO lock up, and their last sales occurred eight months *before* the end of the Class Period. *See* Br. at 8-9.[6] Plaintiff relies on out-of-circuit cases to argue that the small size and percentage of the Individual Defendants' sales nonetheless support an inference of scienter (Opp. at 20), but even these cases are inapposite absent allegations that the sales were suspiciously timed.[7]

The Wisely and Omnivore transactions also do not provide a basis to infer scienter. Plaintiff concedes failure to allege any personal benefit to Defendants from either transaction (Opp. at 21-22), which is fatal to Plaintiff's argument (*see* Br. at 10). Reliance on cherry-picked language from a single RICO case, *In re Platinum-Beechwood Litig.*, 2019 WL 2569653, at \*6 (S.D.N.Y. June 21, 2019) (Rakoff, J.), cannot compensate for this failing. *See* Opp. at 22. Moreover, that

---

[5] This argument also fails because the AC does not "sufficiently allege[] that the purpose of the plan was to take advantage of an inflated stock price." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 n.4 (2d Cir. 2022).

[6] Plaintiff's suggestion that certain trades were suspicious because they were made *before* alleged false statements makes zero sense. Opp. at 20. To be suspicious (*i.e.*, to capitalize on the allegedly inflated stock price), the trades would need to have occurred *after* the alleged misstatements. *See Johnson v. Siemens AG*, 2011 WL 1304267, at \*14 (E.D.N.Y. Mar. 31, 2011).

[7] *See Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) (\$900 million in sales suspicious where defendant had not sold any stock for five years prior to sales); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 644-45 (E.D. Va. 2000) (five corporate insiders sold \$92 million in stock in eight-day period following alleged false statement); *see also Hutchins v. NBTY, Inc.*, 2012 WL 1078823, at \*6 (E.D.N.Y. Mar. 30, 2012) (trading patterns suspicious when compared to prior twelve months).

Defendants allegedly made a series of material misstatements and omissions over the course of a year-long Class Period—beginning months before the Wisely transaction and continuing for months after the Omnivore transaction—does not establish the "unique connection" necessary to plead a strong inference of scienter. *See Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 243 (S.D.N.Y. 2012) ("[T]his requirement demands more than alleging simply that the Company acquired companies during the class period with the use of stock.").[8]

*__Subway Transition__.* Absent motive or opportunity, Plaintiff is left to argue that Defendants' failure to disclose the Subway Transition was knowing or extremely reckless—*i.e.*, that they possessed "a state of mind approximating actual intent." *In re Plug Power Inc., Sec. Litig.*, 2022 WL 4631892, at *16 (S.D.N.Y. Sept. 29, 2022). Plaintiff's arguments on this front, however, are little more than a repackaging of its falsity arguments (*see* Opp. at 14-15) and do not give rise to the requisite strong inference of scienter. Plaintiff can point to no allegation that the Individual Defendants attended or otherwise were aware of the sales meeting with Subway in "January/early February 2022,"[9] much less that they knew what was said during the meeting. *See* Br. at 13.[10] And that leaves only the allegation that Glass announced at a Company town hall

---

[8] The cases Plaintiff cites in support of this argument do not help its cause. *See Fresno Cnty. Employees Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 554 (S.D.N.Y. 2017) (misstatements began *after* merger negotiations commenced and escalated as negotiations progressed); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 320, 328 (S.D.N.Y. 2001) (defendants funded "aggressive acquisition strategy" with inflated stock due to cash flow issues).

[9] The Court should decline to credit the sales meeting allegation because the AC does not attribute that allegation to any CW or any other source who might have had knowledge of such a meeting or what specifically was said during that meeting. *See* AC ¶ 50; *see Pehlivanian v. China Gerui Advanced Materials Grp.*, 2016 WL 2859622, at *6 (S.D.N.Y. May 16, 2016) (declining to credit allegations from "one or more non-class-member investors" where court could not determine whether investors "would be privy to the information alleged").

[10] Alternatively, Plaintiff asserts that "the scienter of Juan George" can be attributed to Olo. *See* Opp. 14 n.11. But the AC only alleges that George attended the sales meeting and had knowledge of Subway's decision to leave Olo's platform, not that he acted with scienter in connection with any of the alleged false or misleading statements. This fails because "it is not enough to separately

sometime in late Q1 or Q2 2022 that Subway would stop using Rails "by the end of the year or the beginning of 2023." *See* Opp. at 14.[11] Not only is this timing not specific enough for the Court to infer that Defendants acted with scienter when making any of the alleged misleading statements, *see In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011), but it is also insufficient to establish when the Subway Transition was certain to occur such that Defendants might have become subject to "a clear duty to disclose" at any earlier quarter end, *see infra* at 7-8; Br. at 12; *see also Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213 (2d Cir. 2020) (in omission cases "recklessness standard requires that Plaintiff[] allege a clear duty to disclose").[12] Nor were Defendants subject to an ongoing "duty to monitor" the status of the Subway relationship before speaking about the Company's growth prospects, as Plaintiff now claims. *See* Opp. at 15-16. The risk of losing a customer is commonplace, and the securities laws do not require corporate officers to monitor and disclose each twist and turn in their company's customer relationships. *See AstraZeneca*, 2022 WL 4133258, at *7. Indeed, Plaintiff does not cite any case to suggest that such

---

allege misstatements by some individuals and knowledge belonging to some others where there is no strong inference that, in fact, there was a connection between the two." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440 (S.D.N.Y. 2017). Rather, such allegations only support an inference of scienter if the "corporate statement [is] so important and dramatic that it would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false." *Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 775-76 (S.D.N.Y. 2019). The alleged misstatements related to the Subway Transition fall far short of that standard. *See, e.g.*, *Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 339 (S.D.N.Y. 2019); *Gagnon* 368 F. Supp. 3d at 772, 776.

[11] Plaintiff's assertion of a "factual dispute" is incorrect. *See* Opp. at 8 n.5. Although Plaintiff attempts to obfuscate the timing of the town hall by variously asserting that it occurred in "early 2022" and shortly after the "January/early February 2022" sales meeting with Subway, a close reading of CW6's and CW7's allegations confirms that the meeting is alleged to have occurred *at the earliest* sometime in March, April, or May of 2022. *See* Br. at 13 n.9. Further, the AC nowhere alleges that Subway ever provided Olo an actual notice of termination.

[12] *Omega* is case-in-point. Unlike here, the court found numerous, specific statements about one of Omega's "top" clients throughout the class period, including in its SEC filings, gave rise to a duty to disclose adverse material facts about the same client. *See Omega*, 968 F.3d at 212-14.

a duty to monitor would exist in the circumstances alleged, or that it would be sufficient to infer scienter.[13]

***Active Locations.*** Plaintiff concedes that the AC lacks any allegation that Defendants *knew* Olo's publicly reported active locations data were allegedly incorrect and instead offers up a variety of arguments that Defendants either must have or should have known of the overstatement because active locations was a "Key Metric." Opp. at 16-17. But these arguments are just the "core operations" doctrine by another name and are insufficient. *See* Br. at 15-16.[14] Plaintiff also belabors the allegation that Benevides had *access to* Looker data concerning Olo's active locations. Opp. at 16-17. Standing alone, however, access is insufficient to infer scienter because there is no allegation that Benevides actually knew or would have been able to tell from the Looker data that Olo's publicly reported active locations were overstated (*i.e.*, there is no allegation he had access to *contrary* facts). *See* Br. at 14-15 (citing cases where access insufficient). Likewise, the allegations that Glass was "intimately involved with Olo's day-to-day operations" and sometimes participated in business negotiations (AC ¶ 124[15]) do not permit an inference that he knew Olo's

_____

[13] *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000), and *Nathel v. Siegal*, 592 F. Supp. 2d 452, 464 (S.D.N.Y. 2008), are inapposite. Although both cases acknowledge that scienter *can* be based on a "duty to monitor," neither case supports the conclusion that Defendants were required to "check" on Subway before speaking about Olo's potential growth. *See Novak*, 216 F.3d at 312 ("Complaint alleges . . . defendants engaged in conscious misstatements with the intent to deceive"); *Nathel*, 592 F. Supp. 2d at 465 (assurance of tax benefits and profits when defendant "did not investigate the tax deductions . . . and knew virtually nothing of the investment").

[14] Plaintiff has not cited any case that supports the notion that Defendants were subject to a "duty to monitor" the accuracy of Olo's active locations count. *See infra* at 5-6. And Plaintiff's other cases are also inapplicable here. *See, e.g.*, *Speakes v. Taro Pharm. Indus., Ltd.*, 2018 WL 4572987, at *8-9 (S.D.N.Y. Sept. 24, 2018) (defendants participated in meetings where specific issue discussed); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *16 (D.N.J. Aug. 28, 2017) (defendants alleged to possess undisclosed adverse information regarding clinical trial results); *City of Livonia Employees' Ret. Sys. v. Wyeth*, 2010 WL 3910265, at *6-7 (S.D.N.Y. Sept. 29, 2010) (same); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 591 (S.D.N.Y. 2010) (defendants took inconsistent position that information was fully disclosed and unknown to them).

[15] Bizarrely, Plaintiff still refuses to identify the source of the transcripts it relies on for excerpted

active locations were misstated. *See Karimi v. Deutsche Bank Aktiengesellschaft*, 2022 WL 2114628, at \*12 (S.D.N.Y. June 13, 2022) (Rakoff, J.) (no scienter where "Complaint does not specifically allege any connections between [Defendants] and the . . . deficiencies at issue").[16]

## II.    THE AC DOES NOT PLEAD ANY ACTIONABLE MISSTATEMENTS.

**_Subway Transition._** The Opposition still does not identify (and the AC does not allege) a single statement concerning Subway during the Class Period after Olo allegedly knew about the Subway Transition that created a duty to disclose. *See Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (duty arises only "once a company speaks on an issue or topic"). Nor did Defendants have a "duty to update" general statements concerning Olo's growth prospects because of the Subway Transition. *See Ill. State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260, 263 & n.2 (2d Cir. 2010) (duty to update attaches to "factual representation[s]" that would "remain[] alive in the minds of investors as a continuing representation").[17] Plaintiff cites no authority for its proposition that Olo's announcement of Subway as a customer in February 2020— the sole identified statement specifically concerning Subway—created a duty to disclose every subsequent development. Nor could it: the securities laws concern *material* information, and courts have never used "publicly announced customer" as a proxy for "material." Subway—even if a "mega-sandwich chain"—was just one of over 600 customers, utilizing a single, lower-revenue module, and Olo announced new customers each quarter. Br. at 6.[18] Plaintiff's argument that Olo's

---

statements, such that neither Defendants nor the Court can assess the statements in context.

[16] *See also New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 13-14 (2d Cir. 2011) (CWs alleged defendants participated in monthly meetings where specific issues discussed); *In re Check Point Software Techs. Ltd. Sec. Litig.*, 2006 WL 1116699, at \*3 (S.D.N.Y. Apr. 26, 2006) ("Defendants had access to specific information . . . that sales were declining due to increased competition and that problems with . . . [its] most important product[] were well understood.").

[17] *See also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[T]he attributed public statements lack the sort of definite positive projections that might require later correction.").

[18] *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at \*14 (S.D.N.Y. Dec. 2, 2013), is not analogous because the customer was disclosed in the SEC filings, accounted for 18.2% of the

stock dropped due to the Subway Transition is insufficient to allege materiality given the Company's other announcements on the same day. AC ¶ 103; *see also Celestica*, 455 F. App'x at 16 ("precipitous decrease in share price" one of several factors supporting materiality).[19]

**_Active Locations._** Rather than addressing how or why the *de minimis* issues alleged with respect to a handful of restaurant brands could give rise to material misstatements of fact (Br. at 21 n.18), Plaintiff instead touts the fact that the AC includes allegations from seven different CWs. *See* Opp. at 10.[20] But this misses the point too. Only CW1 and CW2 have anything to say about whether Olo's active locations were misstated,[21] and neither is alleged to have any knowledge— direct or indirect—of how Olo tracked its publicly reported active locations. *See* Br. at 19-20; *see also Saraf v. Ebix, Inc.*, 2022 WL 4622676, at *5 n.5 (S.D.N.Y. Sept. 30, 2022) (no allegation CWs "had access to information that could have demonstrated the falsity of the . . . statements"). Further, because CW1 left before the start of the Class Period, there is no plausible basis to conclude that the alleged overstatements continued throughout the Class Period. *See* Opp. at 10.[22]

---

defendant's projected revenues, and delivered a formal termination letter. A more apt comparison is *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *13 (S.D.N.Y. Aug. 1, 2017), where there was no duty to disclose the potential loss of a customer while discussions were ongoing. Plaintiff's other cases regarding materiality are inapposite because those decisions were based on qualitative factors not present here. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718-20 (2d Cir. 2011) (omissions material where they related to "flagship segment," masked a likely change in earnings, and increased management's compensation); *SEC v. Rio Tinto plc*, 2019 WL 1244933, at *12 (S.D.N.Y. Mar. 18, 2019) (write-down of assets material where it prompted CEO to resign and undermined representations of "prudent capital management"); *Struogo v. Barclays PLC*, 105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015) (misstatements material because they "call[ed] into question the integrity of the company as a whole").

[19] Likewise, Plaintiff's new argument that Subway was material because it represented an upselling opportunity is not supported by the allegations in the AC. *See* Opp. at 7-8. There is no allegation that Defendants ever represented that it was expected to be a driver of Olo's revenue growth.

[20] *See Gross v. AT&T Inc.*, 2021 WL 9803956, at *6-8 (S.D.N.Y. Sept. 27, 2021), (CWs' anecdotal allegations insufficient to allege material misstatement), *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022).

[21] The other five CWs do not support Plaintiff's claims. *See* Br. at 13 n.9, 14-15 & n.10, 19 n.16.

[22] *See also Ebix*, 2022 WL 4622676, at *5 n.5 (reliance on CW who left prior to class period

Likewise, far from "ignor[ing] CW2's detailed information that numerous locations decided not to use Olo's technology" (*id.*), the Opening Brief points out that CW2's "detailed information" is flatly contradicted by the very disclosures that CW2 alleges to have been misstated (*see* Br. at 20-21). Plaintiff has no answer to this point.[23]

**_Alleged Misstatements._** Plaintiff also disputes that the AC's alleged misstatements are inactionable (1) forward-looking statements, (2) puffery, and/or (3) statements of opinion, but ignores the significant risk factors accompanying the alleged misstatements. Opp. at 11-13; Br. at 5-6. These arguments fail. *First*, for the few forward-looking statements related to Olo's allegedly misstated active locations (*see* AC ¶¶ 64, 68), the AC fails to plausibly allege that Defendants misrepresented any present facts that would take those statements outside the statutory safe harbor (*see supra* at 8-9; Br. 19-21).[24] Similarly, the safe harbor applies to the allegedly misleading forward-looking statements related to the Subway Transition (*see* AC ¶¶ 93-101) because the AC does not allege Defendants had actual knowledge that any of the statements were misleading (they were not) (*see supra* at 4-5; Br. 17-18), nor does it allege that the Subway Transition was definite at the time of the pertinent risk factor disclosures (*see* Br. 12-14).[25] *Second*, Plaintiff's claim that

---

"misplaced"); *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *7 n.2 (N.D.N.Y. Mar. 27, 2020) (statements of CW who left at beginning of class period "cannot be used to support an allegation that . . . scheme occurred during the purported class period").

[23] Plaintiff's argument that Defendants are impermissibly pushing a "counter-narrative" by suggesting that their statements be read in context (*see* Opp. at 9 n.8) also should be rejected. *See In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 437 (S.D.N.Y. 2006) ("[A] court must consider . . . the context in which the statement was made.").

[24] *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 135 (S.D.N.Y. 2020), is inapposite because the forward-looking statements there concerned the status of specific contract negotiations, not vague statements about the Company's prospects and strategies for future growth. Moreover, regardless of whether "Defendants' statements about the Company's growth prospects tied its growth potential to Olo's active locations" (Opp. at 11), the AC's (baseless) allegations that Olo's publicly reported active locations were *historically* overstated do not render false Defendants' statements about the Company's *future* growth.

[25] Plaintiff overstates the applicability of *Wilson v. LSB Indus., Inc.*, 2017 WL 7052046, at *3

"puffery" is not an appropriate basis for dismissal is contradicted by voluminous authority from this Circuit. *See* Br. at 22-23 (citing contrary cases).[26] *Third*, the AC fails to allege either that Defendants did not believe their statements of opinion or that they omitted material facts related to those opinions. *See supra* at 4-8; Br. at 23. Plaintiff does not explain why the loss of one customer out of 600 (that accounted for a small amount of revenue, *see* Br. at 6, 17-18), or allegedly inaccurate active locations, render Defendants' opinions "patently misleading." *See* Opp. at 13.

## III.    THE AC FAILS TO PLEAD LOSS CAUSATION.

The AC fails to satisfy the requirements for pleading loss causation. *See* Br. at 23-25. Plaintiff still posits no plausible connection between the unspecified, undisclosed risks associated with Defendants' alleged overstatements of Olo's publicly reported active locations and the Company's downward revision of its FY 2022 revenue guidance.[27] Further, it does not follow from Plaintiff's (baseless) claim that the guidance reduction could not have been due to "macroeconomic challenges" (Opp. at 23 & n.23), that the reduction must then have been due to the materialization of some other risk related to Olo's active locations.

## CONCLUSION

The AC should be dismissed with prejudice. *See* Br. at 25.

_____

(S.D.N.Y. Mar. 2, 2017). Plaintiff must still plead that Defendants had actual knowledge of the supposedly omitted material fact to avoid the safe harbor, which the AC fails to do.

[26] The at-issue statements in Plaintiff's cases bear no resemblance to the puffing statements here. *See In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 231 (S.D.N.Y. 2019) (express denial of lawsuit allegations regarding toxic workplace not puffery); *see also Novak*, 216 F.3d at 315 (statements conveying information about then-existing inventory levels not puffery); *Cheng v. Can. Goose Holdings Inc.*, 2021 WL 3077469, at *7 (S.D.N.Y. July 19, 2021) (similar).

[27] Plaintiff's cases highlight how the AC's "materialization of risk" theory does not add up. *See Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 179-80 (2d Cir. 2020) (risk of improper enrollment procedures for clinical trial materialized when trial failed); *World Wrestling Ent.*, 477 F. Supp. 3d at 138 (risk of contract termination materialized when company announced lower-than-expected income projections); *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *4, *17 (S.D.N.Y. Sept. 10, 2012) (risk of inaccurate financial statements materialized when investment fund published report detailing inaccuracies).

Dated:  March 3, 2023

Respectfully submitted,

OLO INC., NOAH GLASS, and PETER BENEVIDES

By their attorneys,

*/s/ Deborah S. Birnbach*

Deborah S. Birnbach
Jennifer B. Luz
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com

-11-

-12-

**CERTIFICATE OF SERVICE**

I, Deborah S. Birnbach, hereby certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint for Violations of Federal Securities Laws, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 3, 2023.

Dated: March 3, 2023                                    */s/ Deborah S. Birnbach*