**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLO INC., NOAH GLASS, and PETER BENEVIDES, <br><br> Defendants. | Case No. 1:22-cv-08228-JSR <br><br> CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   THE COMMON FACTS UNDERLYING THIS MOTION ................................. 3

    A.    Defendants' Exchange Act Violations .................................................... 3

    B.    The Proposed Class Representative and Proposed Class Counsel ........................ 4

III.  ARGUMENT ..................................................................................................... 5

    A.    The Standard for Class Certification Under Rule 23 ............................. 5

    B.    The Action Satisfies the Elements of Rule 23(a) .................................. 6

        1.    The Class Is Numerous .............................................................. 6

        2.    The Action Involves Common Questions ................................... 7

        3.    STA-ILA Is Typical .................................................................. 7

        4.    STA-ILA Is a More than Adequate Representative .................... 8

    C.    The Action Satisfies Rule 23(b)(3) ...................................................... 10

        1.    Common Legal and Factual Questions Predominate ................ 10

            a.    Common Questions of Reliance Predominate Because the Class Can Invoke the Fraud-on-the-Market Presumption ........... 11

                i.    Olo's NYSE Listing Is Strong Evidence of Market Efficiency ......................................................... 12

                ii.   The *Cammer* and *Krogman* Factors Support a Finding of Market Efficiency ............................. 13

            b.    Reliance Is Presumed Under *Affiliated Ute* ................................. 20

            c.    Damages Will Be Calculated Using a Common Methodology that Is Consistent with the Class-Wide Theory of Liability ................................................................ 20

        2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Claims Here ......................... 22

    D.    The Court Should Appoint Scott+Scott as Class Counsel Under Rule 23(g) ....... 23

IV.   CONCLUSION ................................................................................................. 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acticon AG v. China Ne. Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012).................................................................................21

*Affiliated Ute Citizens of Utah v. U.S.*,
  406 U.S. 128 (1972)...........................................................................................20

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...........................................................................7, 10, 12, 20

*Basic v. Levinson*,
  485 U.S. 224 (1988)...........................................................................................11

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) ...............................................................5, 14, 15

*Cammer v. Bloom*,
  711 F. Supp. 1264, 1286-87 (D.N.J. 1989)................................................. *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ...............................................................12, 15, 17

*Cashondra Floyd, Derivatively on Behalf of Nominal Defendant Olo, Inc. v. Noah*
  *Glass et al.*,
  No. 1:23-cv-03770 (S.D.N.Y.)............................................................................22

*Cheney v. Cyberguard Corp.*,
  211 F.R.D 484 (S.D. Fla. 2003)......................................................................15, 18

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017).......................................................8

*Consolidated Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)...................................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...................................................................................7, 10, 11

*Fogarazzo v. Lehman Bros., Inc.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) ...................................................................6, 7, 20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................................10, 11

*In re Am. Realty Cap. Props., Inc. Litig.*,
2017 WL 3835881 (S.D.N.Y. Aug. 31, 2017) ........................................................18

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) ...................................................................6, 7, 8

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) ..............................................................................17, 20

*In re BofI Holding, Inc. Sec. Litig.*,
2021 WL 3742924 (S.D. Cal. Aug. 24, 2021) .........................................................6

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ...........................................................................6, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) .....................................................................................8

*In re JPMorgan Chase & Co. Sec. Litig.*,
2015 WL 10433433 (S.D.N.Y. Sept. 29. 2015) ...................................................12, 14

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ...........................................................................11, 22

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) .............................................................................9, 10, 12, 14

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) ...........................................................................17

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) .............................................................................7

*In re PolyMedica Corp. Sec. Litig.*,
432 F.3d 1 (1st Cir. 2005) ....................................................................................13, 19

*In re SCOR Holding (Switz.) AG Litig.*,
537 F. Supp. 2d 556 (S.D.N.Y. 2008) ..................................................................22

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019) .......................................................11

*In re Smith Barney Transfer Agent Litig.*,
290 F.R.D. 42 (S.D.N.Y. 2013) .............................................................................5

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   2017 WL 2062985 (S.D.N.Y. May 15, 2017) ...................................................5, 17

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................5, 8

*In re Williams Sec. Litig. - WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) ...........................................................................21

*In re Winstar Commc'ns Sec. Litig.*,
   290 F.R.D. 437 (S.D.N.Y. 2013) ................................................13, 14, 15, 19

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ...........................................................13, 17, 18

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ..........................................................................22

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)..................................................................................21

*Mazzei v. Money Store*,
   829 F.3d 260 (2d Cir. 2016)..................................................................................10

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014)................................................................7, 15

*Pennsylvania Ave. Funds v. Inyx Inc.*,
   2011 WL 2732544 (S.D.N.Y. July 5, 2011) ...........................................................7

*Pirnik v. Fiat Chrysler Autos., N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018) ..............................................................12, 13, 14

*Public Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ..............................................................................8

*Strougo v. Barclays PLC*,
   312 F.R.D. 307 (S.D.N.Y. 2016) ..........................................................................18

*Teamsters Loc. 443 Freight Div. Pension Fund v. Bombardier Inc.*,
   2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006)..........................................................13

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017)......................................................................12, 13, 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................................7

iv

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ..........................................................................15

**Statutes & Other Authorities**

17 C.F.R.
   §239.13..............................................................................................................................15

FED. R. CIV. P.
   23(a)(1) ...............................................................................................................................6
   23(g)(1)(A)(i)-(iv).............................................................................................................23

Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("Lead Plaintiff" or "STA-ILA") - respectfully submits this memorandum of law in support of its motion for class certification pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  As described below, Lead Plaintiff seeks certification of the following Class (the "Class"):

> all persons and entities that purchased or otherwise acquired shares of Olo's Class A common stock between August 10, 2021 and August 11, 2022, inclusive.[1]

Lead Plaintiff STA-ILA also respectfully requests its appointment as Class Representative and respectfully requests that the Court appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.

## I.    INTRODUCTION

Lead Plaintiff STA-ILA, a large institutional investor, alleges that between August 10, 2021 and August 11, 2022, inclusive (the "Class Period"), Defendants reported materially false numbers of individual restaurant locations that used Olo's restaurant software (the number of "active locations") and, beginning February 23, 2022, materially misled the public by failing to disclose that Subway (one of its largest customers) would be ending its relationship with Olo.  On the last day of the Class Period, Defendants disclosed Subway's departure and lowered their full year ("FY") 2022 revenue and active locations guidance.  As a result, Olo's stock price plummeted, damaging STA-ILA and the other Class Members who relied on Defendants' numerous misrepresentations.

---

[1]    Excluded from the Class are Defendants Olo Inc. ("Olo"), Noah H. Glass ("Glass"), and Peter J. Benevides ("Benevides" and combined with Olo and Glass, "Defendants"), Olo's officers and directors, members of their immediate families, legal representatives, heirs, successors or assigns, and any entity in which they have or had a controlling interest.

The securities fraud claims at issue here present ideal candidates for certification under Fed. R. Civ. P. 23 ("Rule 23") and each of that rule's requirements are met.

To begin with, millions of shares of Olo's Class A common stock ("Olo common stock") traded on the New York Stock Exchange ("NYSE") during the Class Period and there are likely thousands of Class Members, thus making the Class so numerous that joinder is impracticable. There are also multiple common questions of law and fact, including whether Defendants' statements were false or misleading and whether they were material. STA-ILA's claims are typical of all other Class Members' claims because they all allege that the same actionable statements from Defendants caused the same injuries, and they all seek redress under the Securities Exchange Act of 1934 (the "Exchange Act"). STA-ILA will also fairly and adequately represent the Class because it has no conflicts with the Class and has selected experienced counsel that, along with STA-ILA, has diligently prosecuted the Class' claims and has the resources to continue doing so. As such, this Action satisfies the requirements of Rule 23(a).

Moreover, in securities fraud actions, plaintiffs generally satisfy the predominance requirement where, as here, they can invoke the fraud-on-the-market presumption for class-wide reliance. As set forth in the accompanying report of STA-ILA's expert, Dr. Micah Officer ("Officer"), Olo common stock traded in an efficient market during the Class Period. Given that the actionable statements were also well-publicized and that STA-ILA purchased Olo common stock after those statements were made but before the undisclosed risks were revealed, Class-wide reliance is established, along with predominance. In addition, courts widely recognize that securities fraud damages are readily capable of class-wide measurement under the "out-of-pocket" methodology, which STA-ILA's expert has concluded is the appropriate methodology here. Likewise, courts frequently hold that the superior method of adjudicating securities fraud claims

is on a class-wide basis, as many class members would not otherwise have access to a recovery, and proceeding as a class action is readily manageable. Therefore, this Action satisfies the requirements of Rule 23(b)(3) as well.

## II.    THE COMMON FACTS UNDERLYING THIS MOTION

### A.    Defendants' Exchange Act Violations

Lead Plaintiff alleges that, during the Class Period, Defendants made certain misrepresentations and omitted critical information from the investing public. The misrepresentations and omissions fall generally into two categories: those related to Olo's count of "active locations" and those related to the loss of Subway as an Olo customer in early 2022. All occurred between August 10, 2021 and August 11, 2022. ¶¶41-102.[2]

First, as to "active locations," Olo, a software company that connects restaurants to consumers through mobile and online ordering (¶2), used the number of active locations as a "key metric" throughout the Class Period. ¶¶41-42. On every Class Period earnings/analyst call, at every industry/investor conference, and in every press release and Form 10-Q/10-K, Defendants boasted about an ever-growing number of active locations. ¶¶61-64, 69, 71-72, 74-75, 80, 82. Furthermore, Defendants claimed that Olo sold to the entire location base of each brand client it contracted with (¶76) and that all locations within each brand client went live at the same time. ¶77. However, the AC sets forth in great detail that the active locations numbers and representations were false and misleading because Olo inaccurately included restaurant locations

---

[2]    Unless otherwise noted, all "¶__" cites are to the Amended Class Action Complaint for Violations of Federal Securities Laws (ECF No. 38) ("AC"). As discussed herein, these categories overlap in so far as Lead Plaintiff alleges Defendants continued to count the Subway restaurants as active locations even though they knew those locations would be departing – or had already departed – from Olo's platforms.

that: (1) had not yet used any Olo products; (2) had turned off Olo products; and (3) had elected not to use any Olo products at all.  ¶¶77-91.

Second, as to Subway, Olo's most important client (¶¶46-48), Defendants issued FY 2022 guidance on a February 23, 2022 earnings call stating that Olo planned to add 15,00 new locations. ¶¶17, 19.  Defendants continued to issue rosy projections throughout the Class Period touting Olo's growth opportunities.  ¶¶93-100.  However, Defendants failed to disclose that, as of early 2022, Subway had informed Olo that it had elected to terminate their relationship.  ¶50.  Without Subway's restaurant locations, it was virtually impossible for Olo to meet its stated goals.  ¶¶15, 102; *see also* ¶¶50-53.  All the while, Glass and Benevides sold their own Olo shares, generating $10.3 million for themselves.  ¶¶111-15.  Defendants also used Olo's elevated share price as currency to acquire two separate companies during the Class Period.  ¶120.

After the market closed on August 11, 2022, Defendants ultimately disclosed that: (1) Subway had opted to end its contract with Olo; (2) thousands of Subway locations had already deactivated their Olo products and would continue to do so; and (3) as a result, Olo would have virtually ***no*** active locations growth in 2022.  ¶¶103-04.  Defendants also reduced FY 2022 revenue guidance.  ¶103.  The next trading day, on August 12, 2022, Olo's share price fell from its August 11, 2022 closing price of $12.99 to a close of $8.26, a one-day drop of approximately 36% and a loss of $480 million in market capitalization.  ¶110.

## B.    The Proposed Class Representative and Proposed Class Counsel

STA-ILA is a multiemployer defined benefit pension plan, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001 et seq., and a qualified pension plan pursuant to section 401 of the Internal Revenue Code, 26 U.S.C. §401. STA-ILA provides pension benefits to over 3,200 vested and/or retired longshoremen and beneficiaries in Baltimore, Maryland.  As set forth in its Certification previously filed in this

Action (ECF No. 16-3) and in the Declaration of Richard P. Krueger, III in Support of Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund's Motion for Class Certification ("Krueger Declaration"), attached as Ex. C to the Declaration of Amanda F. Lawrence in Support of Lead Plaintiff STA-ILA's Motion for Class Certification ("Lawrence Declaration"), STA-ILA purchased Olo Class A common stock during the Class Period, and suffered damages as a result.

Proposed Class Counsel, Scott+Scott, has a national reputation for excellence through many years of litigating complex actions, particularly securities class actions. *See* Scott+Scott Firm Resume, attached as Ex. B to the Lawrence Declaration. As set forth in its Firm Resume, Scott+Scott's experience, resources, and high-quality attorneys have allowed it to obtain significant recoveries throughout the country on behalf of its clients. *Id.* Further, as noted herein, Scott+Scott was selected by this Court to serve as Lead Counsel and has diligently prosecuted the Action to date and will continue to do so.

## III.    ARGUMENT

### A.    The Standard for Class Certification Under Rule 23

"Generally, claims alleging violations of Section[] 10(b) . . . of the Exchange Act are especially amenable to class certification[.]" *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (alterations added and in original); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45 (S.D.N.Y. 2013); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 91 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). To be certified, a putative class must satisfy Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements and also meet the requirements of at least one of Rule 23(b)'s subsections. FED. R. CIV. P. 23; *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 155 (S.D.N.Y. 2012). Courts interpret Rule 23's requirements liberally, with doubts resolved in favor

of granting certification.  *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015).

### B.    The Action Satisfies the Elements of Rule 23(a)

#### 1.    The Class Is Numerous

A class must be "so numerous that joinder of all members is impracticable[.]"  FED. R. CIV. P. 23(a)(1).  "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims."  *Fogarazzo v. Lehman Bros., Inc*., 263 F.R.D. 90, 96 (S.D.N.Y. 2009).  "Numerosity may be presumed when a class consists of forty or more [members]."  *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  As courts have long recognized, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."  *Id*.; *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *2 (S.D. Cal. Aug. 24, 2021).

Here, the proposed Class easily satisfies the numerosity requirement.  During the Class Period, Olo had between 27.6 and 102 million shares of Class A common stock outstanding.[3] Officer Report, ¶15.  Further, Olo trades on the NYSE and during the Class Period its common stock had an average weekly trading volume of 7.1 million shares.  *Id.*, ¶¶14, 62.  Accordingly,

---

[3]    As noted in the Expert Report of Micah S. Officer ("Officer Report"), attached as Ex. A to the Lawrence Declaration, Olo has two classes of common stock: Class A, which trade on the NYSE and are at issue here, and Class B, which are not listed on any stock exchange.  *Id.*, ¶14. As is common with non-publicly-traded classes of shares after recent initial public offerings, the Class B shares were largely held by insiders and large institutional investors and were gradually sold to the market after the expiration of Olo's lock-up period on September 7, 2021.

there are likely thousands of members of the proposed Class.  *See Pennsylvania Ave. Funds v. Inyx Inc.*, 2011 WL 2732544, at *3 (S.D.N.Y. July 5, 2011) (numerosity satisfied where there were approximately 27 million outstanding shares of common stock).

### 2.    The Action Involves Common Questions

Rule 23(a)(2) asks whether "there are questions of law or fact common to the class[.]"  The Rule does not require that all issues be identical for each class member, but merely that their claims have "some unifying thread."  *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).  For purposes of Rule 23(a)(2), "[e]ven a single [common] question will" do.  *See e.g. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011) (alterations in original and added).  "The commonality requirement has been applied permissively in securities fraud litigation . . . where putative class members have been injured by similar material misrepresentations and omissions[.]"  *Bank of Am.*, 281 F.R.D. at 139 (quoting *Fogarazzo*, 232 F.R.D. at 180); *McIntire v. China MediaExpress Holdings, Inc*., 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014) (commonality is a "low hurdle").

This Action presents numerous common questions of law and fact, including whether the alleged misrepresentations were materially false and misleading, whether they were made with scienter, and whether and how Class Members were damaged as a result.  *See, e.g.*, *Pfizer*, 282 F.R.D. at 44 (issues involving the "existence and concealment of material information," as well as "the impact of Defendants' alleged misrepresentations and omissions on the [stock] price," were common); *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 813 (2011) ("*Halliburton I*") (materiality and loss causation present common questions); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013) ("the question of materiality is common to the class").

### 3.    STA-ILA Is Typical

Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the claims of the prospective class.  In assessing this factor, a court is to assess whether "each class

member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Courts in this Circuit have held that the typicality requirement is not demanding." *Public Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 107 (S.D.N.Y. 2011). "In a securities class action, when plaintiffs will necessarily seek to develop facts relating to . . . the dissemination of allegedly false or misleading statements underlying their claims, the claims and nature of evidence are generally considered sufficient to satisfy the typicality requirement." *Bank of Am.*, 281 F.R.D. at 139 (quoting *Vivendi*, 242 F.R.D. at 85) (ellipsis in original).

Typicality is easily established here because the claims of both STA-ILA and the proposed Class arise from the same course of Defendants' misconduct and assert the same legal theories. Specifically, STA-ILA and all Class Members were injured by purchasing Olo stock in reliance on the same public misrepresentations and omissions issued by Defendants, and both STA-ILA and the Class seek recovery under the Exchange Act.

### 4. STA-ILA Is a More than Adequate Representative

Under Rule 23(a)(4), a plaintiff must show that it "will fairly and adequately protect the interests of the class." This is satisfied where: (i) the proposed class representative's interests are not antagonistic to the interests of other class members; and (ii) the proposed class counsel is qualified to conduct the litigation. *See, e.g.*, *Flag Telecom*, 574 F.3d at 35; *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 2017 WL 3608298, at *7 (S.D.N.Y. Aug. 22, 2017).

Here, far from any conflicts, STA-ILA's interests are directly aligned with the interests of absent Class Members. As discussed above, like the other Class Members, STA-ILA purchased Olo common stock during the Class Period and suffered damages as a result of the conduct alleged in the AC, which means that it is incentivized to maximize any recovery on behalf of the Class.

*See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (alteration in original).

STA-ILA has also protected the interests of the Class by retaining experienced counsel, Scott+Scott, to represent the Class. Scott+Scott has substantial experience in securities matters and class actions and has recovered billions of dollars for injured investors. *See* Scott+Scott Firm Resume. Further, Scott+Scott has diligently advanced the Class's claims to date, having devoted substantial time and resources to the litigation, and will continue to do so. *See also infra* at §III.D (showing that Rule 23(g) is satisfied).

Furthermore, STA-ILA's actions since the Court appointed it as Lead Plaintiff (ECF No. 30) more than demonstrate its adequacy. For example, STA-ILA has protected the interests of absent Class Members by, through its counsel, conducting an extensive investigation of Defendants' misconduct, filing the AC (ECF No. 38), successfully opposing Defendants' motion to dismiss (ECF No. 50), issuing Requests for Production of Documents ("RFPs") and Interrogatories on Defendants and responding to the RFPs and Interrogatories Defendants issued on it, and producing over 100 documents in response. Further, STA-ILA has closely monitored the Action, regularly communicated with counsel, and is committed to continuing to discharge its duties owed to the Class. *See* Krueger Declaration, ¶¶4-6. Accordingly, STA-ILA will fairly and more than adequately represent the Class as Class Representative.[4]

---

[4]    Additionally, to the extent the Court looks to an "ascertainability" requirement in determining class certification, Lead Plaintiff respectfully submits that the proposed Class is also ascertainable. While the Second Circuit has held that "a freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23" and that establishing ascertainability "requires only that a class be defined using objective criteria that establish a membership with definite boundaries," *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017), here, the Class definition clearly delineates the Class' boundaries and ascertaining members of the

C.      **The Action Satisfies Rule 23(b)(3)**

The proposed Class satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute.

1.      **Common Legal and Factual Questions Predominate**

The predominance requirement is satisfied if: "(1) resolution of any material legal or factual questions . . . can be achieved through generalized proof, and (2) these [common] issues are more substantial than the issues subject only to individualized proof." *Petrobras*, 862 F.3d at 270 (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016)). "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("*Halliburton II*"). Further, common issues predominate when liability can be determined on a class-wide basis, even when there are some "individualized" damage issues. *Id.*

Determining whether common questions predominate over individual questions "begins, of course, with the elements of the underlying cause of action." *Halliburton I*, 563 U.S. at 809. In *Amgen*, the Supreme Court affirmed that two core elements of Exchange Act claims – materiality and falsity – present common questions of law and fact. 568 U.S. at 470. Moreover, the Supreme Court has affirmed that "loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified." *Id.* at 475. Courts therefore regularly hold that common questions predominate in

---

Class will be easily administrable by reference to investor records. *See, e.g.*, *id.* at 269-70; *Facebook*, 312 F.R.D. at 353 (availability of "investor records" made class ascertainable).

securities fraud actions, and, therefore, the claims here are well-suited for class treatment because the core factual and legal questions are common to all Class Members and will rise or fall on common proof.  *See, e.g.*, *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 238 (S.D.N.Y. 2015).

### a.    Common Questions of Reliance Predominate Because the Class Can Invoke the Fraud-on-the-Market Presumption

Given the many common questions in a securities fraud claim, whether they predominate often turns on the element of reliance.  *See Halliburton I*, 563 U.S. at 810.  The Supreme Court has held that at class certification, a class may readily "satisfy the reliance element of the Rule 10b-5 cause of action by invoking a presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at market price may be considered to have done so in reliance on the misrepresentation." *Halliburton II*, 573 U.S. at 283-84; *see also Basic v. Levinson*, 485 U.S. 224, 241-47 (1988).  To invoke this "*Basic*" presumption of class-wide reliance, a class of investors in publicly-traded stock must establish that: (i) the alleged misrepresentations were public, (ii) the stock traded in an efficient market, and (iii) the relevant transactions took place between the time the misrepresentations were made and the time the truth was revealed.  *Halliburton I*, 563 U.S. at 811.  Once the *Basic* presumption of reliance is successfully invoked (as it is here), the burden shifts to Defendants to rebut that presumption by a preponderance of the evidence.  *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *11 (S.D.N.Y. July 10, 2019), *withdrawn sub nom. Pub. Emps. Ret. Sys. of Miss. v. Signet Jewelers Ltd.*, 2020 WL 773018 (2d Cir. Jan. 16, 2020).

STA-ILA has successfully invoked the *Basic* presumption here.  First, Defendants made the allegedly false and misleading statements in publicly-filed SEC documents on Forms 10-K and 10-Q and in press releases attached to Forms 8-K and on earnings calls and at investor and industry

conferences, which analysts, news reporters, and members of the public were entitled and able to listen in and/or attend. *See* ¶¶58-82, 92-101. In addition, STA-ILA also purchased Olo common stock after Defendants made those misrepresentations, which began on August 10, 2021, but before Defendants revealed the truth on August 11, 2022. ¶26; ECF No. 16-3. Thus, STA-ILA purchased Olo common stock when its price was distorted on account of Defendants' material misstatements and omissions. *Amgen*, 568 U.S. at 490, 493 n.8. Finally, as detailed below and in the Officer Report, the market for Olo common stock was efficient at all relevant times.

Indeed, the market efficiency requirement is a flexible inquiry, as the Second Circuit has "repeatedly – and recently – declined to adopt a particular test for market efficiency." *Waggoner v. Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017) (citing *Petrobras*, 862 F.3d at 276)). The Second Circuit specifically refused "to view direct and indirect evidence [of market efficiency] as distinct requirements, opting instead for a holistic analysis based on the totality of the evidence presented[.]" *Id.* at 97. As detailed below and in the Officer Report, Lead Plaintiff has established that the market for Olo stock was efficient, thus triggering the presumption of reliance.

### i.    Olo's NYSE Listing Is Strong Evidence of Market Efficiency

That Olo traded on the NYSE itself militates in favor of a finding of market efficiency. As the Second Circuit in *Waggoner* held, this evidence alone is sufficient to establish the *Basic* presumption. 875 F.3d at 97. *See also In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *7 (S.D.N.Y. Sept. 29. 2015) ("Most courts to consider the issue have concluded that a stock's listing on the New York Stock Exchange is a strong indication that the market for the stock is efficient."); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 81 (S.D.N.Y. 2015) (noting that some courts presume securities traded on national markets to be efficient); *Pirnik v. Fiat Chrysler Autos., N.V.,* 327 F.R.D. 38, 44 (S.D.N.Y. 2018) (NYSE is a

"paradigmatic efficient market"); *Teamsters Loc. 443 Freight Div. Pension Fund v. Bombardier Inc.,* 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006), *aff'd*, 546 F.3d 196 (2d Cir. 2008) ("If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient.").

> **ii.**    **The *Cammer* and *Krogman* Factors Support a Finding of Market Efficiency**

Courts in this District and elsewhere frequently find that a publicly-traded stock trades in an efficient market by applying the "*Cammer* factors." *Waggoner*, 875 F.3d at 94. These factors are: (i) a large average weekly trading volume; (ii) the existence of a significant number of analyst reports; (iii) the existence of market makers or arbitrageurs in the security; (iv) the eligibility of the company to file a Form S-3 ("S-3") registration statement; and (v) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases. *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989), *appeal dismissed*, 993 F.2d 875 (3d Cir. 1993). In addition to the *Cammer* factors, courts in this Circuit often also consider the three factors articulated in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001), when evaluating market efficiency. *Waggoner*, 875 F.3d at 94-95. The *Krogman* factors are: (1) the company's market capitalization; (2) the stock's bid–ask spread; and (3) the percentage of stock not held by insiders. *Id.* at 95; *Krogman*, 202 F.R.D. 478. Further, courts in this Circuit sometimes also consider the additional factors – the presence of serial correlation (or "autocorrelation"); constraints on short-selling; and violations of put-call parity – articulated in *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 18 n.21 (1st Cir. 2005) and a further factor noted in *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 449 n.16 (S.D.N.Y. 2013), namely the percentage of shares held by institutional investors. Courts are, however, clear that these factors should be used as "an analytical tool rather than as a checklist." *Billhofer,* 281 F.R.D. at 160. They should also be

analyzed holistically "based on the totality of the evidence presented." *Petrobras,* 862 F.3d at 275, 277.

Here, based on the totality of both direct and indirect evidence, and based on the Officer Report, STA-ILA establishes that Olo common stock satisfied each *Cammer* and *Krogman* factor as well as the additional factors, and therefore traded in an efficient market during the Class Period. As a result, the *Basic* presumption of reliance applies.

**Cammer Factor One:  Olo Common Stock's High Weekly Trading Volume.**  "Average weekly trading volume of 2% or more of outstanding securities justifies a strong presumption of an efficient market for that security."  *Winstar*, 290 F.R.D. at 447.  During the Class Period, the average weekly trading volume of Olo common stock was 7.1 million shares, or 11.12% of shares outstanding, which far surpasses that threshold.  Officer Report, ¶62.  *See JPMorgan,* 2015 WL 10433433, at *5 (average weekly trading volume of 6.5% of shares outstanding weighed in favor of market efficiency); *Pirnik,* 327 F.R.D. at 44 (average weekly volume of 2% justified a "strong presumption of efficiency").  Therefore, this factor strongly supports that the market for Olo common stock was efficient during the Class Period.

**Cammer Factor Two: Numerous Analysts Reported on Olo.**  "The existence of a number of analysts who report on a security supports a finding of market efficiency because it permits an inference that financial statements relating to a security are closely watched by investment professionals, who in turn inject their views on the company and the security into the market."  *Winstar*, 290 F.R.D. at 446.  In Olo's case, at least six separate analysts covered the Company and published reports during the Class Period.  Officer Report, ¶66.  Prominent investment firms – J.P. Morgan, Piper Sandler, RBC Capital Markets, Truist Securities, and William Blair – issued approximately 90 reports about Olo throughout the Class Period.  *Id.*  This

extensive coverage also supports the conclusion that the market for Olo common stock was efficient. *Id.* (coverage by three analysts supported finding of market efficiency); *Wilson v. LSB Indus., Inc.,* 2018 WL 3913115, at *11 (S.D.N.Y. Aug. 13, 2018) (45 reports by analysts supported finding of market efficiency).[5]

*Cammer* **Factor Three: NYSE Assigned Olo a Market Maker.** The third *Cammer* factor concerns the existence of "market makers and arbitrageurs" who can react quickly to news and facilitate trading. *Cammer*, 711 F. Supp. at 1286-87. Olo common stock traded on the NYSE, one of the largest and most liquid securities exchanges in the world and was assigned the NYSE's standard single Designated Market Maker ("DMM"), thus satisfying this factor.[6] *Id.*

*Cammer* **Factor Four: Olo Was Eligible to File Form S-3s.** Eligibility to file an S-3 registration statement with the SEC is "an important factor weighing in favor of a finding that a market is efficient." *McIntire*, 38 F. Supp. 3d at 431. A company is eligible to file an S-3 if it has timely filed required SEC reports for 12 calendar months and has a "float" of at least $75 million. *See* 17 C.F.R. §239.13. "The ability to file this form indicates that the company is easily able to issue new securities." *Winstar*, 290 F.R.D. at 447. Olo satisfied the conditions for S-3 registration eligibility for its common stock during the Class Period. Officer Report, ¶¶73-77.

---

[5]    Further supporting a finding of market efficiency is the fact that over the course of the Class Period, over 1,300 news articles about Olo appeared in leading financial and trade publications, including Bloomberg News, Business Wire, Reuters News, and Investor's Business Daily. Officer Report, ¶69. *See Carpenters,* 310 F.R.D. at 92 ("regular press coverage throughout the Class Period" supported market efficiency); *Cheney v. Cyberguard Corp.*, 211 F.R.D 484, 499-501 (S.D. Fla. 2003) (524 news articles issued over the approximately 21-month Class Period supported market efficiency); *Billhofer,* 281 F.R.D. at 153-54 (publication of over two dozen press releases and articles supported finding of market efficiency).

[6]    Unlike the Nasdaq exchanges which may have multiple market makers for Nasdaq-listed shares, the NYSE assigns a single DMM to each NYSE-listed common stock. Officer Report, ¶71.

*Cammer* **Factor Five: Cause-and-Effect Relationship Existed Between Company-Specific News and Olo's Stock Price.**  The final *Cammer* factor asks whether STA-ILA can make a *prima facie* showing that during the Class Period, there was a cause-and-effect relationship between new Company disclosures and movements in Olo's stock price.  *Cammer*, 711 F. Supp. at 1287.  This direct evidence of price impact – usually shown through an event study – "is not always necessary to establish market efficiency and invoke the *Basic* presumption[.]"  *Waggoner*, 875 F.3d at 96-97.  Nevertheless, as detailed in his report, STA-ILA's expert conducted detailed statistical analyses that establishes such direct evidence of price impact and market efficiency.

In particular, STA-ILA's expert performed an event study, which is a statistical technique that measures the effect of new information – such as press releases, earnings reports, or SEC filings – on the market price of publicly-traded securities.  Officer Report, ¶¶39-52.  The study determines how much of a stock price's movement can be attributed to the release of company-specific information and how much is attributable to general market movement.  *Id.*, ¶20.  A common method of running an event study is through a regression analysis, which STA-ILA's expert used to compare, over trading days in the relevant analysis period, the price movement of Olo common stock to the price movement of both the S&P 500 Total Return Index and the S&P 500 Information Technology Sector Total Return Index.  *Id.*, ¶41.  This model indicates a "normal" correlation between Olo common stock and both relevant indices, meaning that the movements of those indices help explain the price movements of Olo common stock.  *Id.*, ¶¶39-45, 79.

To analyze whether specific new information regarding Olo had a causal effect on the Company's common stock price, STA-ILA's expert then examined how the price of that stock reacted on days when Olo issued new earnings announcements during the Class Period.  *Id.*, ¶¶78-91.  In total, STA-ILA's expert analyzed four different earnings announcements, of which there

were statistically significant price movements in response to **each** announcement, which the expert determined by applying three different market model regressions, of which at least one regression showed a statistically significant movement for each earnings announcement. *Id.*, ¶¶82-86.

Therefore, STA-ILA's expert concluded that this demonstrates a clear, cause-and-effect relationship between new material news regarding Olo and changes in its common stock price. *Id.*, ¶91. *See Carpenters*, 310 F.R.D. at 92  (expert's event study and analysis showing statistically significant movement on selected event days provided "evidence of market efficiency"); *Virtus*, 2017 WL 2062985, at *4-6 (relying in part on expert's event study, finding Virtus' common stock traded on an efficient market); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 104 n.78 (S.D.N.Y. 2016) (finding market efficiency where expert produced "an event study of share price reactions to Barrick-related news").[7]  Therefore, as confirmed by the Officer Report, Olo shares meet all *Cammer* factors.

**Krogman Factor One: Olo Had a Substantial Market Capitalization.**   The first *Krogman* factor looks at a company's market capitalization because it may indicate how well-known and closely followed a company is.  *Krogman*, 202 F.R.D. at 478.  Olo common stock had a substantial market capitalization during the Class Period, averaging $1.17 billion, and was larger than at least 50% of other publicly-traded companies over that time in well-developed markets,

---

[7]      *See also In re Petrobras Sec. Litig.,* 312 F.R.D. 354, 370 (S.D.N.Y. 2016), *aff'd in part & vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ("evidence of directionality or the degree of fit between expected and observed moves in a market need not be substantial to allow a finding of market efficiency.  Such evidence goes to the accuracy of the price of a security, and the Supreme Court has explained that it is not the accuracy of a price as a reflection of underlying value but instead the sensitivity of the price to false statements that underlies the *Basic* presumption . . . Whether the market, upon receiving new information, moved in the precise way analysts or experts would expect it to move is not the key to unlocking *Basic*'s presumption of reliance.  What is essential is evidence that, when the market received new information, it generally affect[ed] the price.").

like the NYSE and Nasdaq. Officer Report, ¶¶94-95. As such this *Krogman* factor supports a finding of market efficiency because its market capitalization incentivized shareholders to collect and analyze information about the firm. *Id.*, ¶96. *See Krogman,* 202 F.R.D. at 478 (market capitalization was at the 60th percentile of a sample group of NYSE, Nasdaq, and Amex stocks).

**   *Krogman* Factor Two: Olo Stock Had a Narrow Bid-Ask Spread.** The second *Krogman* factor considers the bid-ask spread of a company's stock transactions. *Krogman*, 202 F.R.D. at 478. "[A] small bid-ask spread indicate[s] that trading in the stock [is] inexpensive, suggesting efficiency." *Strougo v. Barclays PLC,* 312 F.R.D. 307, 316 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017). Here, the average bid-ask spread for Olo common stock during the Class Period was 0.11%, a narrower spread than at least 50% of other publicly-traded companies on the NYSE and Nasdaq. Officer Report, ¶¶100-101. It is also well within what courts have found indicative of market efficiency. *See, e.g. In re Am. Realty Cap. Props., Inc. Litig.,* 2017 WL 3835881, at *1 (S.D.N.Y. Aug. 31, 2017) (bid ask spread averaging 0.18% supported efficiency); *Cyberguard,* 211 F.R.D. at 501 (bid-ask spread of 2.44% weighed in favor of market efficiency.). Therefore, this *Krogman* factor further supports a finding of market efficiency. Officer Report, ¶102.

**   *Krogman* Factor Three: Olo's Significant Public Float.** The third *Krogman* factor considers a company's publicly-traded stock (*i.e.*, those shares not held by insiders), also known as its "public float." *Krogman*, 202 F.R.D. at 478. STA-ILA's expert found that during the Class Period, 96.8% of Olo common stock were held by non-insiders, a considerable number that strongly supports a finding of public participation and therefore market efficiency. Officer Report, ¶¶104-105.

**Additional Factors Support a Finding of Market Efficiency.**  Further factors that courts often find indicative of market efficiency also exist here.  For example, STA-ILA's expert performed a test for autocorrelation (the first *Polymedica* Factor) and concluded that Olo common stock does not exhibit any consistent patterns of autocorrelation over the Class Period.  *Id.*, ¶¶114-115.  This result is consistent with the notion that Olo common stock rapidly reacted to and incorporated new Company-specific information, as is expected in an efficient market.  *Id.*, ¶115; *PolyMedica*, 432 F.3d 18 n.21. The second *Polymedica* Factor (the presence of short sellers and whether any constraints exist) also militates in favor of finding market efficiency in this case. Here, the average short interest in Olo common stock during the Class Period exceeded 75% of stocks traded on the NYSE and Nasdaq and the level of short interest for Olo common stock averaged 6.5 million shares, which is 8.47% of the Company's common shares outstanding, weighing in favor of a finding of market efficiency.  Officer Report, ¶¶116-118; *PolyMedica*, 432 F.3d 18 n.21.  Finally, Officer examined the third *Polymedica* factor (the "put-call parity relation") for Olo common stock during the Class Period using put and call options from a robust database for exchange traded put and call options.  Officer Report, ¶122.  The results showed solely 0.01% of Olo's option pairs violated put-call parity, thus indicating a strong adherence to the put-call parity condition and hence market efficiency.  *Id.*, ¶126.

Courts may also consider the number of institutional investors, which have substantial resources to analyze information disseminated regarding the securities they purchase, who held shares of the company.  *Winstar*, 290 F.R.D. at 449 n.16 ("[A] substantial number of institutional investors is consistent with market efficiency.") (internal quotation and citation omitted).  Here, institutional investors owned an average of approximately 57.6% of Olo's shares outstanding shares during the Class Period, further supporting market efficiency.  Officer Report, ¶¶108-109.

Therefore, all of the *Cammer* and *Krogman* factors, as well as additional analyses, demonstrate that the market for Olo common stock was efficient during the Class Period and Lead Plaintiff is entitled to rely on the fraud-on-the-market presumption of reliance.

### b.    Reliance Is Presumed Under *Affiliated Ute*

The United States Supreme Court has held that where claims "involved primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens of Utah v. U.S.,* 406 U.S. 128, 153 (1972).  Instead, "all that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [their] decision." *Id.* at 153-54.  And a plaintiff need not prove materiality in order to invoke this presumption at the class certification state, but simply allege it. *Amgen,* 568 U.S. at 466.  Here, Plaintiff has alleged numerous material omissions by Defendants.  ¶¶92-102.  As such, a showing of reliance on the omissions is unnecessary, even if Lead Plaintiff also alleges that Olo disseminated affirmative misstatements.  *See Fogarazzao,* 232 F.R.D. at 186 ("[T]he theory behind the *Affiliated Ute* presumption . . . is not undermined simply because a defendant makes misstatements at the same time it omits material information.").

### c.    Damages Will Be Calculated Using a Common Methodology that Is Consistent with the Class-Wide Theory of Liability

Courts routinely find that damages questions in securities fraud cases are common to all class members because they can be calculated on a class-wide basis using an event study that measures the impact of company-specific information alleged to reveal the true state of affairs on a company's market price.  *See, e.g.*, *Barrick Gold*, 314 F.R.D. at 106 (§10(b) damages are "measurable on a class-wide basis" and "do[] not create individualized damages issues that defeat predominance").

As stated in the Officer Report, this is referred to as the "out-of-pocket" methodology and commonly used in securities fraud cases. Officer Report, ¶¶2.b, 128. Under that methodology, damages are quantified by determining the price difference from the artificial inflation in each share of the company's stock caused by defendants' material misrepresentations and omissions on both the date of purchase and the date of sale. *Id.*; *see also Acticon AG v. China Ne. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) (out-of-pocket damages in securities fraud cases are the "difference between the price paid [for the stock] and the value of the stock when bought").

The Officer Report explains how, by applying the "out-of-pocket" methodology and using standard tools of valuation and attribution analysis (such as an event study and an inflation ribbon), the amount of artificial inflation from Defendants' false and misleading statements can be measured simultaneously for all Class Members. Officer Report, ¶171. Moreover, once the amount of artificial inflation on each day of the Class Period is determined, this artificial inflation can be applied to each Class Member's trades to compute their individual damages. *Id*. This methodology is also entirely consistent with the Class's theory of liability, that Class Members relied on the misrepresentations when they purchased Olo common stock at artificially inflated prices and were damaged when the actual state of affairs was revealed, causing the artificial inflation to dissipate from the stock price. *Id.*, ¶¶166-167.[8]

---

[8]    Officer thoroughly explains his use of the corrective disclosures in his report. Officer Report, ¶¶138-161. *See also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n. 4 (2d Cir. 2005); *In re Williams Sec. Litig. - WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009) ("To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company").

> **2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Claims Here**

Securities class actions, like the instant Action, "easily satisfy" the superiority requirement "because the alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Rule 23(b)(3) identifies four factors to determine whether a class action is superior to other methods of adjudication, all of which strongly weigh in favor of class treatment here. *First*, STA-ILA seeks to represent a Class consisting of a large number of geographically dispersed purchasers of Olo common stock whose individual damages are likely small enough to render individual litigation prohibitively expensive, minimizing any interest in individual actions. *See, e.g.*, *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 187 (S.D.N.Y. 2008). *Second*, STA-ILA is not aware of any other securities action – under either the Exchange Act or the Securities Act of 1933 – bringing the same claims at issue here.[9] *Third*, concentrating this litigation in a single forum eliminates the risk of inconsistent adjudications and promotes the fair and efficient use of the judicial system. *See id.*  *Finally*, managing this case as a class action presents no unusual difficulties that would preclude certification. Indeed, litigating each claim separately would be wasteful and effectively preclude numerous investors from obtaining redress. *See In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008).

---

[9]    STA-ILA is aware of a single shareholder derivative action, which is pending in the Southern District of New York, in which Plaintiff Cashondra Floyd purports to sue Olo's Board of Directors on behalf of the Company for conduct STA-ILA and Scott+Scott alleged in the AC. *Cashondra Floyd, Derivatively on Behalf of Nominal Defendant Olo, Inc. v. Noah Glass et al.*, No. 1:23-cv-03770 (S.D.N.Y.), filed May 4, 2023.

### D.      The Court Should Appoint Scott+Scott as Class Counsel Under Rule 23(g)

Pursuant to Rule 23(g), in appointing lead counsel, courts take into account: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).  These considerations all strongly militate in favor of appointing Scott+Scott as Class Counsel.

Scott+Scott has devoted extensive time and resources in prosecuting the claims at issue here.  To date, Scott+Scott has: (i) conducted an extensive investigation of Defendants' misconduct, (ii) developed multiple viable theories of securities fraud under the Exchange Act, (iii) drafted the AC, (iv) successfully opposed Defendants' motion to dismiss, (v) vigorously pursued discovery by issuing RFPs and interrogatories to Defendants and subpoenas to third-parties, (vi) begun preparing STA-ILA and two of its representatives for their forthcoming depositions, (vii) worked with STA-ILA to identify and produce over 100 documents in response to Defendants' RFPs, (viii) retained and worked closely with an expert, on STA-ILA's behalf, to assess market efficiency and damages for the purpose of class certification, and (ix) begun preparing for offensive depositions of Defendants, former employees of Defendants, and representatives of multiple third-parties.  In other words, Scott+Scott has done the work necessary to prepare this Action for summary judgment and trial on a demanding schedule.  In doing so, Scott+Scott assembled a team of attorneys that is not only intimately familiar with the Action and dedicated to continuing to represent the Class, but also has extensive experience litigating other complex securities fraud actions to a successful conclusion, as well as the resources necessary to do so.  *See* Scott+Scott Firm Resume (Ex. B to Lawrence Decl.).  In short, Scott+Scott will fairly

and adequately represent the Class, and pursuant to STA-ILA's request, should be appointed Class

Counsel.

## IV.    CONCLUSION

For the foregoing reasons, STA-ILA respectfully requests that the Court: (i) certify this

Action as a class action under Rules 23(a) and 23(b)(3); (ii) appoint STA-ILA as Class

Representative; and (iii) appoint Scott+Scott as Class Counsel.

DATED:  June 5, 2023                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                         */s/ Amanda F. Lawrence*
                                        Amanda F. Lawrence
                                        Donald A. Broggi
                                        Jeffrey P. Jacobson
                                        Mandeep S. Minhas
                                        The Helmsley Building
                                        230 Park Avenue, 17th Floor
                                        New York, NY 10169
                                        Telephone: 212-223-6444
                                        Facsimile:  212-223-6334
                                        alawrence@scott-scott.com
                                        dbroggi@scott-scott.com
                                        jjacobson@scott-scott.com
                                        mminhas@scott-scott.com

                                        *Counsel for Lead Plaintiff Steamship Trade*
                                        *Association of Baltimore – International*
                                        *Longshoremen's Association Pension Fund*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on June 5, 2023, on all counsel or parties of record.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Amanda F. Lawrence*
Amanda F. Lawrence
