**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-08228-JSR  CLASS ACTION |
| Plaintiff, | |
| v. | |
| OLO INC., NOAH GLASS, and PETER BENEVIDES, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF**
**STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL**
**LONGSHOREMEN'S ASSOCIATION PENSION FUND'S**
**MOTION FOR CLASS CERTIFICATION AND APPOINTMENT**
**OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ...................................................................................................................... 1

I.      STA-ILA IS BOTH ADEQUATE AND TYPICAL ........................................................ 1

II.     THE ACTION SATISFIES RULE 23(B)(3)'S PREDOMINANCE
        REQUIREMENT ............................................................................................................. 4

        A.      Defendants Have Not Rebutted the Fraud on the Market Presumption or
                Shown by a Preponderance of the Evidence an Absence of Price Impact ............. 5

        B.      The Traditional Out-of-Pocket Methodology at Issue Has Been
                Universally Accepted as a Measure of Securities Fraud Damages ........................ 6

III.    THE CLASS PERIOD CORRECTLY BEGINS ON AUGUST 10, 2021 ........................ 9

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)................................................................................................9

*Aranaz v. Catalyst Pharm. Partners Inc.*,
  302 F.R.D. 657 (S.D. Fla. 2014)............................................................................4

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) ..........................................................................7, 8

*Basic v. Levinson*,
  485 U.S. 224 (1988)................................................................................................2

*Berwecky v. Bear, Stearns & Co.*,
  197 F.R.D. 65 (S.D.N.Y. 2000) .............................................................................4

*Black v. Finantra Cap., Inc.*,
  418 F.3d 203 (2d Cir. 2005)...................................................................................3

*In re BP p.l.c. Sec. Litig*,
  2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)..........................................................7

*In re BP p.l.c. Sec. Litig.*,
  2014 WL 2112823, (S.D. Tex. May 20, 2014)........................................................8

*City of Miami Gen. Emps. & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
  2018 WL 4931543 (N.D. Cal. Oct. 11, 2018).........................................................6

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)...........................................................................................6

*DeMarco v. Lehman Bros.*,
  222 F.R.D. 243 (S.D.N.Y. 2004) ...........................................................................5

*DeMarco v. Robertson Stephens, Inc.*,
  228 F.R.D. 468 (S.D.N.Y. 2005) ...........................................................................3

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) .......................3

*George v. China Auto Sys., Inc.*,
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...........................................................4

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   2015 WL 5613150 (S.D.N.Y. Sept. 24, 2015)..........................................................................9

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021)....................................................................................................5

*Grae v. Corrs. Corp. of Am.*,
   2019 WL 1399600 (M.D. Tenn. Mar. 26, 2019) .......................................................................8

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016).................................................................6, 8, 9

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 7406418 (N.D. Cal. Dec. 22, 2016)..........................................................................8

*Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.*,
   2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) ........................................................................8

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)..........................................................................5

*Junge v. Geron Corp.*,
   2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) ...........................................................................8

*Kolin v. Am. Plan Corp.*,
   1986 WL 36311 (E.D.N.Y. Apr. 8, 1986) ...............................................................................3

*Luna v. Marvell Tech. Grp. Ltd.*,
   2017 WL 4865559 (N.D. Cal. Oct. 27, 2017)..........................................................................9

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014)......................................................................................9

*In re MF Glob. Holding Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ...........................................................................................1

*Monroe Cnty. Emps.' Ret. Sys. v. The S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019)............................................................................................8

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ...........................................................................................4

*In re Moody's Corp. Sec. Litig.*,
   274 F.R.D. 480 (S.D.N.Y. 2011) ...........................................................................................4

*Mulderrig v. Anyris, Inc.*,
   340 F.R.D. 575 (N.D. Cal. 2021)...........................................................................................8

*In re NII Holdings, Inc. Sec. Litig.*,
    311 F.R.D. 401 (E.D. Va. 2015) ...........................................................................6

*In re Oxford Health Plans Inc.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................3

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016) ........................................................................3

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) ..........................................................................3

*Rocco v. Nam Tai Elecs., Inc.*,
    245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................4

*Rougier v. Applied Optoelectonics, Inc.*,
    2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ...................................................8

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 WL 3001084 (S.D.N.Y. July 10, 2019) ................................................5, 9

*In re Silver Wheaton Corp. Sec. Litig.*,
    2017 WL 2039171 (C.D. Cal. May 11, 2017) ....................................................7

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)..................................................................................5

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................3

*In re Vivendi Universal, S.A. Sec. Litig.*,
    183 F. Supp. 3d 458 (S.D.N.Y. 2016)..............................................................3, 4

*Wallace v. Intralinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) ........................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) .....................................................................2, 3

Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("Lead Plaintiff" or "STA-ILA") respectfully submits this memorandum of law in further support of its motion for class certification and in response to Defendants' opposition thereto ("Opp."). Defendants concede that the Class of Olo Inc. ("Olo") investors from August 10, 2021 to August 11, 2022 (the "Class Period") satisfies the numerosity and commonality requirements of Rule 23(a), but make the oft rejected argument that STA-ILA, due to its investment manager, is atypical and inadequate. They further concede that the action satisfies Rule 23(b)(3)'s superiority requirement, and that no individualized questions of law or fact exist here. They do not dispute Lead Plaintiff's expert's ("Dr. Officer") findings that Olo common stock traded in an efficient market. Their only arguments as to predominance are that no price impact has been demonstrated and that Lead Plaintiff's damages model is too "generic." As discussed below, Defendants' arguments have been universally rejected.

## ARGUMENT

### I.     STA-ILA IS BOTH ADEQUATE AND TYPICAL

Rule 23's typicality requirement is "not demanding." *In re MF Glob. Holding Ltd. Inv. Litig.,* 310 F.R.D. 230, 236 (S.D.N.Y. 2015). While Defendants assert that purported "unique defenses" exist here (Opp. at 8-13), they offer no evidence of unique defenses that would significantly distract from the core issues of Defendants' liability, which is required.

First, Defendants claim that STA-ILA's investment manager's investment strategy and access to information renders STA-ILA atypical and thus inadequate. This is both factually and legally incorrect. Brown Capital Management, LLC ("Brown") is the long-time investment manager for Lead Plaintiff. Throughout its deposition, Brown's representative talked about its sources of information for Olo, which included investment conferences, Bloomberg, Olo's financials, Olo's historical revenue, industry market research, reports from brokerage firms, and

SEC filings.  Def.s' Ex. H at 50-51, 68:15-21, 82:7-11; Pltf.'s Ex. E at 64:16-18, 78:1-5, 177:1-3.

Despite this, Defendants latch onto the fact that Brown spoke to individuals at Olo (one to two

times during the Class Period) (*id.* at 70:15-19), had a conversation with one customer (Denny's),

and used Tegus – a subscription website that gives access to transcripts of interviews or calls with

experts or customers.  *Id.* at 99:12-20.[1]  None of these sources (most of which are common to large

investors) would have revealed the fraud or the extent of the fraud in this case.

Legally, under *Basic v. Levinson,* all investors are presumed to base their investment

decisions on all publicly available information.  485 U.S. 224, 246-47 (1988) ("[I]t is hard to

imagine that there ever is a buyer or seller who does not rely on market integrity.  Who would

knowingly roll the dice in a crooked crap game?").  Nothing Brown did or had access to defeats

this presumption and Brown was never made aware of the fraud alleged.  Defendants routinely

make this same argument and routinely fail.  The *In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267,

281 (S.D.N.Y. 2003) court, in granting class certification, "swiftly rejected" the argument that

institutions should not be in included in the class because they did not base their investment

decisions on the integrity of the market, holding:

> each of these methods of making investment decisions [is] representative of
> methods used by many other investors.  Each of the methods reflects an evaluation
> of the publicly available information about WorldCom, whether by the named
> plaintiff, the advisor, or a computer model . . . None of the different strategies that
> these institutional plaintiffs, each of whom is a fiduciary, used . . . suggests that
> these plaintiffs will be vulnerable at trial to a unique defense that will defeat the
> presumption that they relied on the public statements about WorldCom at issue
> here, or that will threaten to become the focus of the litigation.

---

[1]    Defendants also obsess over the fact that the representative testified that he personally
never felt misled by Olo.  This is of no bearing.  The deponent never read the complaint in this
action, only recently became aware of the lawsuit, and has never discussed it with STA-ILA.
Def.s' Ex. H at 201:4-22, 202:14-17.  Furthermore, he explicitly stated that he could not speak to
whether Brown had any opinions on whether it had been misled by Olo.  *Id.* at 203:8-12.

*Id.* at 281-82.  Indeed, courts regularly hold that a plaintiff's investment methodology or strategy has absolutely no bearing on class certification.  *See, e.g. DeMarco v. Robertson Stephens, Inc.,* 228 F.R.D. 468, 471 (S.D.N.Y. 2005); *In re Oxford Health Plans Inc.,* 191 F.R.D. 369, 376 (S.D.N.Y. 2000) ("proprietary investment methodology" did not defeat typicality as "[n]o purchaser of securities regardless of trading methodology or strategy would knowingly trade where material information has been misstated or withheld by an issuer."); *Kolin v. Am. Plan Corp.,* 1986 WL 36311, at *9 (E.D.N.Y. Apr. 8, 1986) ("[even investors] who choose stock by means of a ouija board or by throwing darts at the list, all believe . . . that the market is an honest market . . .").[2] Similarly, Defendants' suggestion that Brown's conversations with Olo or use of a subscription transcript service renders STA-ILA atypical has been flatly rejected.  *See, e.g. In re Petrobras Sec. Litg.,* 312 F.R.D. 354, 360-61 (S.D.N.Y. 2016) (Rakoff, J.)  ("communications with the company's investment relations team and operating personnel and a brief meeting with the [defendant] CEO" are "typical of the relationships between large institutional investors and companies . . ."); *In re DVI Inc. Sec. Litig.,* 249 F.R.D. 196, 203 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ("[I]t is commonly recognized that institutional investors, especially those with large holdings, communicate directly with corporate officials" ); *WorldCom,* 219 F.R.D. at 282 (institutional investors are likely to . . . on occasion even to communicate directly with the company in which they are investing to verify or better evaluate its public disclosures.  Making careful investment decisions does not disqualify an investor from representing a class of defrauded investors . . .).

Defendants' cases are all distinguishable.  *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.,* 183 F. Supp. 3d 458, 466 (S.D.N.Y. 2016) (had regular meetings and telephone

---

[2]    *See also In re Pfizer Inc. Sec. Litig.,* 282 F.R.D. 38 (S.D.N.Y. 2012); *Black v. Finantra Cap., Inc.,* 418 F.3d 203, 210 (2d Cir. 2005); *In re Veeco Instruments, Inc. Sec. Litig.,* 235 F.R.D. 220, 238-39 (S.D.N.Y. 2006).

conversations with Vivendi's senior management and thought the subject of the fraud was "overblown");[3] *George v. China Auto Sys., Inc.,* 2013 WL 3357170 (S.D.N.Y. July 3, 2013) (atypical based on being in-and-out traders); *Rocco v. Nam Tai Elecs., Inc.,* 245 F.R.D. 131 (S.D.N.Y. 2007) (plaintiff purchased with knowledge of a second fraud that had yet to be publicly corrected).

  <u>Second</u>, Defendants aptly note that Lead Plaintiff's post-Class Period purchases are insufficient to defeat class certification. Opp. at 13. That is the correct statement of the law. For the purposes of class certification, "that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosures of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market during the class period . . ." *In re Monster Worldwide, Inc. Sec. Litig.,* 251 F.R.D. 132, 134-35 (S.D.N.Y. 2008) (Rakoff, J.). *See also In re Moody's Corp. Sec. Litig.,* 274 F.R.D. 480, 487-88 (S.D.N.Y. 2011).[4]

## II. THE ACTION SATISFIES RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT

  "[O]nce a plaintiff shows entitlement to a presumption of reliance, the defendant is burdened with the daunting task of proving that the publicly known statement has ***no*** price impact." *Aranaz v. Catalyst Pharm. Partners Inc.,* 302 F.R.D. 657, 673 (S.D. Fla. 2014) (emphasis added). A price impact challenge "will not ordinarily present a serious obstacle to class certification" and "the vast majority of courts have found that defendants have failed to meet their burden of proving

---

[3] Note that even in *Vivendi,* the court was quick to caution that the circumstances were incredibly unique and "sharply limited to its unusual facts, and should not be taken to suggest that sophisticated institutional investors or value-based investors are not entitled to the fraud on the market presumption in general." *Id.* at 464.

[4] Defendants' cases again are not helpful. In *Berwecky v. Bear, Stearns & Co.,* 197 F.R.D. 65 (S.D.N.Y. 2000), plaintiff purchased stock after the issuer ***disbanded***, while in *China Auto,* 2013 WL 3357170, the court was less concerned with the post-disclosure purchases than with the fact that plaintiffs were in-and-out traders.

lack of price impact." *Strougo v. Barclays PLC,* 312 F.R.D. 307, 324 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017).  Defendants' price impact argument here boils down to the following: that there are two distinct claims ("Active Locations" and "Subway") and that class certification on both should be denied because: (1) there was no price impact from the Active Locations claims on August 11, 2022; and (2) Lead Plaintiff has not presented a viable classwide damages theory for either set of claims.  Again, both fail.

### A.    Defendants Have Not Rebutted the Fraud on the Market Presumption or Shown by a Preponderance of the Evidence an Absence of Price Impact

Defendants' main argument is that nothing in the August 11, 2022 disclosures revealed any truth about Active Locations.  Opp. at 15-17.  This is overly restrictive and wrong.  On that date, Defendants disclosed not only that Subway had ended its contract, but that Olo would have virtually ***no*** active locations growth in 2022 and a reduced FY2022 revenue guidance.  ¶¶103-104.  Therefore, Lead Plaintiff alleges that the undisclosed risk of Defendants' Active Locations misstatements materialized on August 11, 2022.  In fact, the analyst reports Defendants cite to only prove this point.  Opp. at 16-17.  The analysts extensively covered the "downside surprise" of Olo's flat active locations reporting.  Def.s' Ex. T (Piper Sandler) at 1; *see also* Def.s' Ex. U (Stifel) at 1; Def.s' Exs. V-Z (similar).[5]

That the disclosures might not be a "mirror image" of the misstatements is of no avail, as Defendants' own case states.  *See In re Signet Jewelers Ltd. Sec. Litig.,* 2019 WL 3001084, at *14

---

[5]    In any event, as this Court has held, "there is a qualitative difference between a statement of fact emanating from an issuer and a statement of opinion emanating from a research analyst." *DeMarco v. Lehman Bros.*, 222 F.R.D. 243, 246 (S.D.N.Y. 2004) (Rakoff, J.).  Defendants' cited cases do not help their "materialization of the risk" argument.  *See, e.g. Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021) (price maintenance case with generic misrepresentation and specific corrective disclosure); *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) (class was certified).

(S.D.N.Y. July 10, 2019) ("'[t]here is no requirement that the corrective disclosure take a particular form or be of a particular quality,' such that it be a 'mirror image tantamount to a confession of fraud.'").  Furthermore, Defendants' issues with the "fit" between the disclosure and the Active Locations statements "is nothing more than an attack on loss causation, on Plaintiffs' ability to 'show that a misrepresentation that affected the integrity of the market price ***also*** caused a subsequent economic loss . . .'" and is "properly addressed by a fact-finder on the merits; Plaintiffs need not show loss causation as a condition of class certification."  *Hatamian v. Advanced Micro Devices, Inc.,* 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016) (emphasis in original).

### B.    The Traditional Out-of-Pocket Methodology at Issue Has Been Universally Accepted as a Measure of Securities Fraud Damages

Defendants argue that the out-of-pocket damages model and event study here should have provided additional details.  This ignores that, under *Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013), securities fraud classes "provide adequate detail regarding a method for calculating classwide damages and measuring the artificial inflation" when they put forward the out-of-pocket theory and event study, because this damages theory "closely hew[s] to Lead Plaintiff's theory of liability."  *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 414 (E.D. Va. 2015).  *See also City of Miami Gen. Emps. & Sanitation Emps.' Ret. Tr. v. RH, Inc.,* 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (out of pocket methodology so well suited for class treatments "that ***securities fraud cases fit Rule 23 'like a glove.'***") (emphasis in original).

The Officer Report explains how, by applying the out-of-pocket methodology and using standard tools of valuation (event study and inflation ribbon), the amount of artificial inflation from Defendants' false and misleading statements can be measured simultaneously for all Class Members.  This is all that *Comcast* requires, and demanding additional detail regarding the out-of-pocket methodology is impermissible at class certification, as Lead Plaintiff need not "proffer

expert damages analysis at this stage, given that plaintiffs are not required to establish loss causation." *In re Barrick Gold Sec. Litig.,* 314 F.R.D. 91, 105 (S.D.N.Y. 2016). Indeed, "[t]he Court need not 'decide the precise method for calculating damages at [class certification], 'but rather must find 'that calculation of damages will be sufficiently mechanical that whatever individualized inquires need occur do not defeat class certification.'" *E.g., In re Silver Wheaton Corp. Sec. Litig.,* 2017 WL 2039171, at *14 (C.D. Cal. May 11, 2017). Defendants therefore resort to (without an expert) effectively nit picking at Dr. Officer.

To begin with, Defendants take inconsequential shots at Dr. Officer's Report, complaining repeatedly that certain statements in his report also appear in the report of a co-worker of his. Opp. at 19-21. However, to come to this conclusion, they completely overlook all of Section VII (paragraphs 128-173) of the Officer Report that sets forth precisely how he would compute damages expressly ***in this case***. Indeed, Def.s' Ex. K does not refer to the vast majority of these 45 paragraphs. It is only the "generic background information"[6] that they complain about that his consulting firm extrapolated from prior reports. Those paragraphs are related to analyses in securities cases or the reporting of numerical results, in general. Everything related to this case in particular was new and unique from Dr. Officer.

Next, Defendants suggest that because this case references materialization of the risk for the Active Locations claims, Dr. Officer's damages analysis does not contain enough detail. Opp. at 21-23. However, they principally rely on *In re BP p.l.c. Sec. Litig,* 2013 WL 6388408, at *11 (S.D. Tex. Dec. 6, 2013), where one class that ***expressly eschewed the out-of-pocket damages***

---

[6]     Defendants twist the testimony of Dr. Officer to claim that he admitted he only gave general background as to what the damages methodology would be. Opp. at 6. This is simply a mistruth. Dr. Officer never testified that his report contained ***only*** generic background information. He did testify that his report does contain ***some*** generic background (*i.e.*, non-case specific information) for context, as most reports do.

***method proposed here*** was not certified and where defendants argued that the event study methodology (the precise methodology proposed here) was "the proper type of damages to be recovered by the investors in securities fraud cases." *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at \*10 (S.D. Tex. May 20, 2014), *aff'd sub nom. Ludlow v. B.P., P.L.C.*, 800 F.3d 674 (5th Cir. 2015) (*BP II*).[7] Furthermore, Defendants' suggestion that Dr. Officer need take investors' varying risk tolerances into account is mistaken and numerous cases have been certified where the standard out-of-pocket methodology was used with materialization of the risk allegations. *See, e.g. Barrick Gold.,* 314 F.R.D. 91; *Grae v. Corrs. Corp. of Am.,* 2019 WL 1399600, at \*2 (M.D. Tenn. Mar. 26, 2019); *Rougier,* 2019 WL 6111303, at \*16.[8] Dr. Officer was patently clear that he could do such an analysis, but that he had not been asked to do it yet. *See* Def.s' Ex. J at 60:21-61:6, 49:16-19, 52:4-10. As a matter of economics, the same basic damages methodology would be used whether the inflation in the stock price was caused by omissions, misleading statements, or materialization of the risk, and there is no difference among damaged investors depending on their risk tolerance. And, the argument that a methodology need adequately isolate the impact of the materialization of known risks "is simply a loss causation argument in disguise, because it tests the causal relationship between the alleged misstatements and the price decline. Such an argument

---

[7]   *BP* has repeatedly been criticized. *See, e.g. Hatamian,* 2016 WL 10452502 at \*9; *Rougier v. Applied Optoelectronics, Inc.,* 2019 WL 6111303, at \*16 (S.D. Tex. Nov. 13, 2019) (finding fault with defendants' argument that the proposed damages model was flawed because it allowed for recovery of materialization of the risk which allegedly would require individual proof of risk tolerance.); *Monroe Cnty. Emps.' Ret. Sys. v. The S. Co.,* 332 F.R.D. 370, 401 (N.D. Ga. 2019); *Hayes v. MagnaChip Semiconductor Corp.,* 2016 WL 7406418, at \*9 (N.D. Cal. Dec. 22, 2016).

[8]   Defendants quickly cite two cases to suggest that an out-of-pocket damages methodology need expressly address risk materialization. Opp. at 22. However, they ignore that both *Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.,* 2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) and *Mulderrig v. Anyris, Inc.,* 340 F.R.D. 575 (N.D. Cal. 2021) are in the stark minority. Indeed, in criticizing *Mulderrig,* the same court, in *Junge v. Geron Corp.,* 2022 WL 1002446, at \*8 (N.D. Cal. Apr. 2, 2022), specifically said it joined the "[m]any other district court decisions" that properly cast materialization of the risk as a loss causation issue.

'goes beyond the Rule 23 inquiry.'"  *Signet*, 2019 WL 3001084, at *20.  *See also Luna v. Marvell Tech. Grp. Ltd.,* 2017 WL 4865559, at *9 (N.D. Cal. Oct. 27, 2017).

Finally, Defendants demand that Dr. Officer adjust his calculations if the effects of some of the alleged misstatements have to be removed entirely because they are later found inactionable. Opp. at 23-24.  These questions are inappropriate at class certification, precisely because they involve proving the detailed amount of damages, are susceptible to common classwide resolution, and are regularly and readily addressed at subsequent merits stages.  *See, e.g. Hatamian,* 2016 WL 1042502, at *9 ("disaggregate[ing]" is not required for damages methodology at class certification because it involves "inquiries into loss causation"): *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 436 (S.D.N.Y. 2014) ("apportion[ing] . . . responsibility for damages" according to misstatements for which a defendant may ultimately be found liable is not required for damages methodology at class certification.); *Signet*, 2019 WL 3001084, at *20 ("the Court rejects the suggestion that an event study is incapable of disaggregating the effects of confounding information.  Were it otherwise, nearly every securities fraud class action would fail."); *In re Goldman Sachs Grp., Inc. Sec. Litig.,* 2015 WL 5613150, at *4, 8 (S.D.N.Y. Sept. 24, 2015) ("any failure of the methodology to 'disaggregate the losses' . . . would not defeat the class's predominance because it would affect all class members in the same manner.")

## III.    THE CLASS PERIOD CORRECTLY BEGINS ON AUGUST 10, 2021

In conjunction with their price impact argument surrounding Active Locations, Defendants argue that the Class Period should begin in February 2022 – the first public statements after they claim Defendants became aware of Subway's departure as an Olo client.  However, as stated above, this is a thinly veiled loss causation argument regarding the Active Locations allegations and is improper for class certification.  *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455, 474 (2013); *Wallace v. Intralinks,* 302 F.R.D. 310, 318 (S.D.N.Y. 2014) ("Defendants'

arguments concerning the proper class period belong more properly to the discussion of damages, not class certification"). Even if Lead Plaintiff were to accept that the case concerned only Subway (it does not), Defendants are still asking for a shortened Class Period without any evidence supporting it. They have not put forth evidence that Defendants only became aware of Subway's departure in January 2022, and discovery may reveal the threat of Subway developing its own in-house platform loomed long before that date.

## CONCLUSION

For the foregoing reasons, STA-ILA respectfully requests that the Court: (i) certify this Action as a class action under Rules 23(a) and 23(b)(3), (ii) appoint STA-ILA as Class Representative; and (iii) appoint Scott+Scott Attorneys at Law LLP as Class Counsel.

DATED: July 17, 2023                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                        _/s/ Amanda F. Lawrence_
                                        Amanda F. Lawrence
                                        Donald A. Broggi
                                        Jeffrey P. Jacobson
                                        Mandeep S. Minhas
                                        The Helmsley Building
                                        230 Park Avenue, 17th Floor
                                        New York, NY 10169
                                        Telephone: 212-223-6444
                                        Facsimile: 212-223-6334
                                        alawrence@scott-scott.com
                                        dbroggi@scott-scott.com
                                        jjacobson@scott-scott.com
                                        mminhas@scott-scott.com

                                        *Counsel for Lead Plaintiff Steamship Trade
                                        Association of Baltimore – International
                                        Longshoremen's Association Pension Fund*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

July 17, 2023, on all counsel or parties of record.  Notice of this filing will be sent to all counsel

of record by operation of the Court's electronic filing system.

                                     */s/ Amanda F. Lawrence*
                                       Amanda F. Lawrence