UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEAMSHIP TRADE ASSOCIATION OF BALTIMORE-INTERNATIONAL LONGSHOREMAN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

-v-

OLO INC., NOAH GLASS, and PETER J. BENEVIDES,

    Defendants.

22-cv-8228 (JSR)

OPINION

---

JED S. RAKOFF, U.S.D.J.:

This is a putative class action filed by plaintiff the Steamship Trade Association of Baltimore-International Longshoreman's Association Pension Fund ("Plaintiff") against defendants Olo Inc. ("Olo"), a provider of software to restaurants, and two of Olo's officers, Noah H. Glass and Peter J. Benevides (the "Individual Defendants"). The Complaint alleges that defendants made false and/or misleading statements about the number of restaurants that actively used Olo's services and about Olo's partnership with Subway restaurants.

On February 3, 2023, defendants moved to dismiss the First Amended Complaint ("FAC"). After full consideration of the parties' written submissions and oral arguments, the Court denied defendants' motion by "bottom-line order" dated April 10, 2023.

1

This Opinion reconfirms that order and explains the reasoning behind its rulings.

I. Plaintiff's Allegations

Olo provides software to restaurants to assist with online ordering and food delivery. FAC, ¶¶ 2, 27, 34-36. The FAC alleges that Olo misled investors in two ways. First, the FAC alleges that Olo failed to timely disclose that one of its partners, Subway restaurants, intended to terminate its partnership with Olo (hereafter referred to as the "Subway Transition"). FAC, ¶¶ 15-16, 19, 55, 83-91. Second, the FAC alleges that Olo mispresented the number of its "active locations" -- that is, the number of unique restaurant locations using at least one of Olo's product modules. FAC, ¶¶ 11-14, 20, 41-42, 56, 92-106.

In March 2021, Olo went public. FAC, ¶¶ 3, 33. At Olo's initial public offering ("IPO"), shares of Olo were offered for sale at a price of $25 per share. FAC, ¶ 33. Plaintiff purchased such shares. FAC, ¶ 26.

On August 11, 2022, Olo disclosed both the Subway Transition and that its FY 2022 revenue would be lower than expected. FAC, ¶¶ 103-104. On this news, Olo's share price dropped by approximately 36%, from $12.99 at the close of August 11, 2022, to $8.26 at the close of August 12, 2022. FAC, ¶ 110.

The FAC asserts two claims:

(1)  That Olo, as well as the Individual Defendants, made false or misleading statements of material fact, in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; and

(2)  That the Individual Defendants violated Section 20(a) of the Securities and Exchange Act of 1934 by making materially false and misleading statements on behalf of Olo.

II.  Discussion

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1] A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). If the plaintiffs have "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

Additionally, Section 10(b) claims are subject to the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Accordingly, to state a claim for violation of Section 10(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In particular, the Second Circuit has interpreted Rule 9(b) to require that a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (citation and internal quotation marks omitted). In addition, under the PSLRA, the plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

A. Actionable Omissions

Plaintiff claims that defendants are liable because Olo failed to disclose the Subway Transition in a timely fashion. Section 10(b) does not impose a per se duty to disclose information. Instead, "for an omission to be considered actionable under § 10(b), the defendant must be subject to an underlying duty to disclose." Levitt v. J.P. Morgan Sec., Inc., 710 F.3d 454, 465 (2d Cir. 2013). Such a duty may arise when "a corporate statement

4

. . . would otherwise be inaccurate, incomplete, or misleading." Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 101 (2d Cir. 2015). In other words, although "Rule 10b-5 imposes no duty to disclose all material, nonpublic information, once a party chooses to speak, it has a duty to be both accurate and complete." Plumbers' Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co., 753 F. Supp. 2d 166, 180 (S.D.N.Y. 2010).

Plaintiff contends that Olo had a duty to disclose the Subway Transition, because its failure to do so rendered many of its rosy projections misleading. For example, on February 23, 2022, defendant Benevides said:

> Throughout 2022, we believe the main drivers of revenue growth will be ARPU expansion as well as increasing the number of active locations on the platform. FAC, ¶ 94.

And he also said:

> And for 2022, again, we're targeting a similar number of net adds as we achieved in 2021. FAC, ¶ 96.

Similarly, on May 23, 2022, Benevides said:

> [W]hen we look at all those different avenues, more locations, more transactions per location and more revenue per transaction, there's just a lot of levers that we can pull in order to maintain [a 30%] growth rate. FAC, ¶ 98.

Plaintiff claims that these growth projections were unrealistic without Olo maintaining its relationship with Subway and, therefore, were misleading.

But Section 10(b) does not impose liability for "forward-looking statements" that are "identified [as such] and accompanied by meaningful cautionary language." Slayton v. Am. Exp. Co., 604 F.3d 758, 766 (2d Cir. 2010); 15 U.S.C. § 78u-5(c). A forward-looking statement is one that contains "a projection of revenues, income . . ., [or] earnings" or "a statement of future economic performance." 15 U.S.C. § 78u-5(i)(1)(A), (C). Such a statement is accompanied by meaningful cautionary language when it "convey[s] substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements." Slayton, 604 F.3d at 771.

This safe harbor applies to the statements that Plaintiff alleges were misleading. Olo's statements suggesting that it would continue to add users or revenue qualify as "statement[s] of future economic performance" or as "projection[s] of revenue." 15 U.S.C. § 78u-5(i)(1)(A), (C). And Olo accompanied these statements with meaningful cautionary language. Olo warned, "[T]here can be no assurance that we will be able to retain these customers or acquire new customers, deploy additional modules to these customers, or continue to increase the volume of transactions on our platform." Ex. N at 16, ECF No. 41. By noting that caveat, Olo informed

6

investors of specific reasons why its number of active locations would not continue to grow at its impressive historical rate.

Olo's projections of its future growth were, therefore, protected by the safe harbor for forward-looking statements. And plaintiff does not identify any other statement made by Olo that was allegedly misleading without disclosure of the Subway Transition. Thus, the FAC fails to allege that Olo's non-disclosure of the Subway Transition was an actionable omission.

B. <u>Actionable Misstatements</u>

Plaintiff also asserts that Olo made several material misstatements concerning its number of active locations. These statements included:

- On January 10, 2022, defendant Glass stated at the ICR Conference: "[t]oday we are a proud partner to over 500 restaurant brands representing 76,000 individual restaurant locations to enable consumers to order ahead, pay ahead and get their food faster for takeout, delivery and more." FAC, ¶ 69.
- On February 23, 2022, a press release stated that Olo's "active locations increased 23% year-over-year to approximately 79,000" locations. FAC, ¶ 71.
- On May 10, 2022, in a press release and SEC Form 10-Q (signed by Glass and Benevides), it was stated that Olo's

"active locations increased 19% year-over-year to approximately 82,000" locations." FAC, ¶¶ 73-74.

- That same day, on a conference call, Glass stated "[o]ur ending active location counts increased 19% year-to-year to approximately 82,000, and we surpassed more than 600 restaurant brands utilizing our platform." FAC, ¶ 75.

- On May 23, 2022, at the JPMorgan Global Technology, Media & Communications Conference, Glass stated, "So we sell into one brand decision maker and then we['] re adopted by all of the restaurant locations within that brand, the corporate-owned locations, the franchise locations, the mix of the 2, however, they're set up in their organizational structure. And then brands are always going live really all at the same time to create that consistent experience everywhere. So yes, we are deployed in all locations." FAC. ¶ 77.

- On June 6, 2022, at the William Blair Growth Stock Conference, Glass stated "[a]s of March 21, we are a proud partner to over 600 restaurant brands representing approximately 82,000 individual restaurant locations." FAC, ¶ 80.

Defendants argue that these alleged misstatements are non-actionable on four grounds. First, they argue that the alleged

8

misstatements are not false or misleading.[2] Second, they argue the alleged misstatements are not material. Third, defendants argue that the FAC fails to allege that the alleged misstatements caused a loss to Plaintiff. Finally, defendants argue that the FAC fails to plead scienter with respect to the alleged misstatements.

1. False or Misleading

Defendants seemingly dispute whether the statements regarding the active locations were inaccurate. Since whether a statement is false or misleading is a question of fact, it is inappropriate to resolve such disputes on a motion to dismiss "unless the Court, drawing all reasonable inferences in favor of plaintiff, determines that reasonable minds could not differ on the question of whether the statements alleged in the complaint were misleading in light of the circumstances under which they were made." In re Inv. Tech. Grp., Inc. Sec. Litig., 251 F. Supp. 3d 596, 609 (S.D.N.Y. 2017). See also In re ICN/Viratek Sec. Litig., No. 87 CIV. 4296, 1996 WL 164732, at *12 (S.D.N.Y. Apr. 9, 1996).

---

[2] Defendants also argue that some, but not all, of the alleged misstatements related to the active locations are non-actionable as forward-looking statements, puffery, or opinion. Ex. B at 3-6. In particular, defendants allege that many of the statements about how Olo is adopted at all locations, such as the one alleged in paragraph 77, are puffery. But defendants do not argue that the statements alleged in paragraphs 69, 71, 75, and 80, which give the actual number of active locations, are non-actionable as forward-looking statements, puffery, or opinion. Id. As explained below, the Court finds that there are misstatements about the number of active locations that are adequately alleged to be false or misleading that defendants did not assert were non-actionable as forward-looking statements, puffery, or opinion. Therefore, the Court need not address at this stage whether individual statements may or may not be puffery, forward-looking statements, or opinion for the Section 10(b) claim to proceed based on misstatements about the active locations.

Plaintiff has adequately alleged the statements about the number of active locations were false or misleading. Plaintiff alleges, with corroboration from confidential witnesses,[3] that: (1) "Olo prematurely included individual restaurant locations in its active locations count before those locations had actually begun utilizing any of Olo's products"; (2) "Olo failed to remove inactive locations from the active locations count"; and (3) "not all brand locations within a single chain joined Olo's platform." FAC, ¶¶ 84-89. Thus, the Court finds the FAC adequately alleges that the statements about the active locations are false or misleading.

2. Materiality

Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact." 17 C.F.R. § 240.10b-5. A fact is material if there is a "substantial likelihood that the disclosure of . . . omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). "At the pleading stage, a plaintiff satisfies the materiality requirement of Rule 10b-5 by alleging a statement or omission that

---

[3] At the motion to dismiss stage, the Court "take[s] as true the statements" of the confidential witnesses, as plaintiff has "described" the confidential witnesses "in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp., 450 F. Supp. 3d 379, 405-06 (S.D.N.Y. 2020).

a reasonable investor would have considered significant in making investment decisions." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000).

Defendants argue that Olo's alleged misstatements were not material because the number of active locations was only allegedly inflated by a little over 2%. Defs. Mem. of Law in Supp. of Mot. to Dismiss at 21 n.18, ECF No. 40. Be that as it may, materiality "is rarely a basis for dismissal on the pleadings." In re Petrobras Sec. Litig., 116 F. Supp. 3d 368, 378 (S.D.N.Y. 2015). And a reasonable investor plausibly would have considered a difference of (at the least) several thousand locations actively using Olo's products to be significant when deciding whether to purchase or sell shares of Olo's stock. Thus, the Court finds that the FAC plausibly alleges materiality.

3. Loss Causation

Next, defendants argue that the FAC fails to allege that Olo's alleged misstatements caused a loss to Plaintiff. The FAC alleges that Olo's share price fell by approximately 36% on August 12, 2022, after Olo disclosed several facts to the public. FAC, ¶ 110. After markets closed on August 11, 2022, Olo reported its Q2 2022 results, showing that its number of active locations were unchanged from the prior quarter (remaining level at 82,000 such locations). FAC, ¶ 103. Olo also revealed that Subway would terminate its relationship with Olo, and it revised its revenue guidance for FY

11

2022 downwards by between $12 million to $13 million. FAC, ¶¶ 103-106.

Defendants argue that the FAC fails to support Plaintiff's assertion that this loss was specifically attributable to Olo's alleged misstatements. On August 11, 2022, Olo made several revelations to investors and subsequently the share price dropped 36%. FAC, ¶¶ 103-110. Some of them -- such as news of the Subway Transition -- were disappointing but not actionable (as discussed above). But Plaintiff has adequately alleged the announcement of lowered FY 2022 revenue was due to the "misreporting of Olo's active locations count," FAC, ¶¶ 103, 108-09, and as the Court explained above, the alleged misstatements about the active locations were adequately alleged to be false or misleading.

Of course, apportioning the reduction in the market value of Olo's stock to each particular revelations made on August 11, 2022 may prove to be a difficult and fact-intensive enterprise. On this motion to dismiss, however, the precise issue before the Court is whether the FAC plausibly alleges that _any_ of the loss that followed those revelations is attributable to Olo's misstatements. The FAC alleges that Olo had to reduce its revenue guidance for FY 2022 because it could not project that it would add as many active locations as it previously expected -- and Olo's number of active locations, in turn, had to be revised because Olo had inflated them earlier. FAC, ¶¶ 37, 108. If these allegations are taken as

true, a plausible inference from them is that at least some of the decline in Olo's share price on August 12, 2022 is attributable to Olo's alleged misstatements. Thus, the Court finds that the FAC sufficiently alleges loss causation.

4. Scienter

Finally, defendants argue that the FAC does not plead sufficient facts as to "give rise to a strong inference of scienter." Defs. Mem. of Law in Supp. of Mot. to Dismiss at 7-17. The PSLRA requires a plaintiff who alleges a violation of Section 10(b) of the Exchange Act and 10b-5 promulgated thereunder to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind is "scienter," that is an intent "to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 313 (2007). For the inference of scienter to be "strong," the inference must be such that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324. A plaintiff may satisfy this burden by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

13

a) Motive and Opportunity to Commit Fraud.

In order to allege motive, a plaintiff must allege a "concrete and personal benefit" from the misrepresentations or omissions. Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001). While this element is not satisfied merely by an allegation of a "motive possessed by virtually all corporate insiders," it is satisfied by an allegation that the defendants "benefited in some concrete and personal way from the purported fraud." Novak v. Kasaks, 216 F.3d 300, 307 (2d Cir. 2000). Thus, for example, the mere "desire to maintain a high stock price in order to increase executive compensation" is not a sufficient motive, but the allegation that corporate insiders misled the public "in order to keep the stock price artificially high while they sold their own shares at a profit" is. Id. at 307-08.

Plaintiff's alleged two motives for fraud are weak. First, Plaintiff has not adequately alleged the stock sales by Glass and Benevides were a motive for fraud. As defendants rightly point out, the sales were made pursuant to Rule 10b5-1 trading plans, FAC, ¶ 112, which is not suspicious. See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343, 355-56 (2d Cir. 2022); In re Gildan Activewear, Inc. Sec. Litig., 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009).

Second, Plaintiff has not sufficiently alleged that the defendants engaged in fraud to inflate Olo's share price in order

to facilitate the acquisition of two other companies, Wisely and Omnivore. Plaintiff did not allege that the Individual Defendants would personally benefit from the Wisely transaction. And given that Plaintiff pled that Omnivore was acquired for $50 million in cash, see FAC, ¶ 119, Plaintiff did not adequately allege the Omnivore transaction was related to Olo's stock.

b) Recklessness

However, Plaintiff has adequately pled recklessness as to the Individual Defendants. Recklessness means conduct that is, "at the least . . . highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Chill v. Gen. Elec. Co., 101 F.3d 263, 269 (2d Cir. 1996). Recklessness occurs when defendants "knew facts or had access to information suggesting that their public statements were not accurate." Emps. Ret. Sys. of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 306 (2d Cir. 2015). Such a showing supports "the inference that the 'defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation.'" Wang v. Cloopen Grp. Holding Ltd., No. 21-cv-10610 (JGK), 2023 WL 2534599, at *14 (S.D.N.Y. Mar. 16, 2023) (quoting Kalnit, 264 F.3d at 142).

Plaintiff alleges, based on information from confidential witnesses, that Benevides had access to a particular software that "track[ed] . . . Olo's key metrics, including the active locations count" and "would have obtained his active locations data from it." FAC, ¶ 123. That Benevides had access to and used a specific software to obtain data about Olo's active locations gives rise to the strong inference that Benevides knew or should have known about the inflation and inaccurate reporting of the active locations count based on that data.

In addition, Plaintiff alleges that Glass was "intimately involved with Olo's day-to-day operations," was "involved with key business partnerships" and negotiations related to those partnerships, had "regular interactions with Olo's clients," attended "Olo's annual customer conference," and addressed "client concerns," for example, if issues arose in the early stages of onboarding. FAC, ¶¶ 124-25. These allegations support a strong inference that Glass's frequent interactions and involvement with clients, including onboarding and negotiations, would make him privy to facts that would have indicated an inflation of the active locations count. See, e.g., Karimi v. Deutsche Bank Atkiengesellschaft, 607 F. Supp. 3d 381, 398 (S.D.N.Y. 2022) (considering as evidence of scienter certain top executives' personal involvement "in on-boarding and retention decisions" with a particular subset of clients).

16

Plaintiff has also adequately pled corporate scienter. To adequately plead scienter of a corporate entity, "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." Teamsters Loc. 445 Freight Div. Pension Fund. v. Dynex Cap. Inc., 531 F.3d 190, 195 (2d Cir. 2008). The scienter of Benevides and Glass can be imputed to the corporation because they are management-level employees that made the alleged misstatements. See In re Marsh & Mclennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006); Jackson v. Abernathy, 960 F.3d 94, 98 (2d Cir. 2020) ("[T]he most straightforward way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement.")

5. Conclusion

For the foregoing reasons, the Court finds that the FAC plausibly pleads that Olo misstated its number of active locations, in violation of Section 10(b). Thus, defendants' motion to dismiss Count I of the FAC must be denied.

C. Control Person Violation

Plaintiff also claims that the Individual Defendants are liable under Section 20(a) of the Exchange Act because Olo is liable under Section 10(b) and the Individual Defendants controlled Olo. "To establish a prima facie case of control person

liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." ATSI Commc'ns, Inc., 493 F.3d at 108. As discussed above, the Court finds that the FAC sufficiently pleads that Olo violated Section 10(b). Additionally, the FAC alleges that the Individual Defendants controlled Olo and themselves made some of Olo's allegedly fraudulent misstatements. It therefore sufficiently alleges a control person violation under Section 20(a). Thus, the Court denies defendants' motion to dismiss Count II of the Complaint.

III. Conclusion

For the reasons explained above, the Court hereby reconfirms the rulings made in its April 10 order denying defendants' motion to dismiss.

New York, NY  
July 25, 2023

_____  
JED S. RAKOFF, U.S.D.J.