**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br>Defendants. | Case No. 1:22-cv-08228-JSR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION**
<u>COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS</u>

Deborah S. Birnbach
Jennifer B. Luz
Katherine G. McKenney (*pro hac vice*)
Justin D. Ward
Brendan Blake (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com
KMcKenney@goodwinlaw.com
JWard@goodwinlaw.com
BBlake@goodwinlaw.com

*Counsel for Defendants Olo Inc., Noah Glass, and Peter Benevides*

## TABLE OF CONTENTS

**Page**

PROCEDURAL HISTORY ........................................................................................................ 3

BACKGROUND ..................................................................................................................... 4

    A.    Olo's Software Modules Generate Revenue In Different Ways. ............................... 4

    B.    Olo Clearly And Consistently Described Its Key Metrics To The Public. ................. 6

    C.    The Fundamentals Of Olo's Business Remain Strong. ............................................... 6

ARGUMENT ........................................................................................................................... 8

I.    The SAC Fails To Allege Any False Or Misleading Statements Or Omissions. .......... 8

    A.    Alleged Misstatements Concerning Olo's Future Growth Are Protected By The PSLRA Safe Harbor And Should Be Dismissed Again. ............................................... 8

    B.    The SAC Fails To Cure The Pleading Deficiencies With The Subway Claim, And Fails To Allege Any Other Material Misstatement or Omission. ............................ 11

    C.    Many Alleged Statements Are Non-Actionable Puffery And/Or Opinions. ............ 16

    D.    The SAC Fails To Allege Any Active Location Related False Statements. .............. 17

        1.    The SAC Does Not Plausibly Allege False Active Location Counts. ............ 17

        2.    The SAC Also Fails To Allege The Falsity Of Other Statements Concerning Active Locations. ....................................................................... 21

II.    The SAC Fails To Plead A Strong Inference Of Scienter. ........................................... 22

III.    The SAC Does Not Adequately Allege Loss Causation. ............................................... 24

IV.    Plaintiff's Section 20(a) Claim Must Be Dismissed. ................................................... 25

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adient PLC Sec. Litig.*,
   2020 WL 1644018, at *22 (S.D.N.Y. Apr. 2, 2020)...................................................................16

*In re Amaranth Nat. Gas Commodities Litig.*,
   612 F. Supp. 2d 376, 388 (S.D.N.Y. 2009)..............................................................................12

*In re AOL Time Warner, Inc. Sec. Litig.*,
   503 F. Supp. 2d 666, 678–79 (S.D.N.Y. 2007).........................................................................25

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343, 353 (2d Cir. 2022) ............................................................................................17

*Asay v. Pinduoduo Inc.*,
   2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020) .............................................................13

*In re AT&T/DirecTV Now Sec. Litig.*,
   2020 WL 4909718, at *10 (S.D.N.Y. Aug. 18, 2020) ..............................................................19

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
   506 F. App'x 32, 38 (2d Cir. 2012) .........................................................................................15

*In re China N. E. Petroleum Holdings Ltd. Sec. Litig.*,
   2014 WL 7236914, at *3 (S.D.N.Y. Dec. 11, 2014) ...............................................................23

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
   587 F. Supp. 3d 56, 89 (S.D.N.Y. 2022)..................................................................................16

*City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*,
   2019 WL 452051, at *7 (S.D.N.Y. Feb. 5, 2019)....................................................................13

*In re Duane Reade Inc. Sec. Litig.*,
   2003 WL 22801416, at *4, *6 (S.D.N.Y. Nov. 25, 2003).......................................................10

*In re Dynagas LNG Partners LP Sec. Litig.*,
   504 F. Supp. 3d 289, 314–20 (S.D.N.Y. 2020)........................................................................14

*In re E-House Sec. Litig.*,
   2021 WL 4461777, at *11 (S.D.N.Y. Sept. 29, 2021).........................................................13, 16

*In re Eaton Corp. Sec. Litig.*,
   318 F. Supp. 3d 659, 667–70 (S.D.N.Y. 2018)........................................................................11

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187, 196–97 (2d Cir. 2009)....................................................................................8

*In re Express Scripts Holding Co. Sec. Litig.*,
    2017 WL 3278930, at *12–13 (S.D.N.Y. Aug. 1, 2017).................................................12, 23

*In re Francesca's Holdings Corp. Sec. Litig.*,
    2015 WL 1600464, at *21, *22 (S.D.N.Y. Mar. 31, 2015) ............................................24, 25

*Francisco v. Abengoa, S.A.*,
    481 F. Supp. 3d 179, 197 (S.D.N.Y. 2020)..........................................................................1

*Fries v. N. Oil & Gas, Inc.*,
    285 F. Supp. 3d 706, 720 (S.D.N.Y. 2018)........................................................................22

*In re Garrett Motion Inc. Sec. Litig.*,
    2023 WL 2744029, at *15 (S.D.N.Y. Mar. 31, 2023) .........................................................23

*Gissin v. Endres*,
    739 F. Supp. 2d 488, 506 (S.D.N.Y. 2010).........................................................................21

*Greco v. Qudian Inc.*,
    2022 WL 4226022, at *13 (S.D.N.Y. Sept. 13, 2022)..........................................................17

*Harris v. Amtrust Fin. Servs. Inc.*,
    135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015)..........................................................................15

*Hensley v. IEC Elecs. Corp.*,
    2014 WL 4473373, at *6–7 (S.D.N.Y. Sept. 11, 2014).........................................................25

*In re Hudson Techs., Inc. Sec. Litig.*,
    1999 WL 767418, at *12 (S.D.N.Y. Sept. 28, 1999)............................................................22

*Johnson v. Holder*,
    564 F.3d 95, 99 (2d Cir. 2009)............................................................................................22

*Kalnit v. Eichler*,
    264 F.3d 131, 144 (2d Cir. 2001)........................................................................................23

*Kocourek v. Shrader*,
    391 F. Supp. 3d 308, 327–28 (S.D.N.Y. 2019).....................................................................17

*Lachman v. Revlon, Inc.*,
    487 F. Supp. 3d 111, 133 (E.D.N.Y. 2020) .........................................................................22

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161, 173 (2d Cir. 2005)........................................................................................25

*Lipow v. Net1 UEPS Techs., Inc.*,
   131 F. Supp. 3d 144, 173 (S.D.N.Y. 2015)........................................................................25

*In re Lone Pine Res., Inc.*,
   2014 WL 1259653, at *4 (S.D.N.Y. Mar. 27, 2014) ...........................................................21

*In re Nielsen Holdings PLC Sec. Litig.*,
   510 F. Supp. 3d 217, 231 (S.D.N.Y. 2021)........................................................................14

*In re Plug Power, Inc. Sec. Litig.*,
   2022 WL 4631892, at *11, *16 (S.D.N.Y. Sept. 29, 2022)...................................................22

*In re Refco Sec. Litig.*,
   2012 WL 607612, at *3 (S.D.N.Y. Feb. 17, 2012).................................................................6

*Rice as Tr. of Richard E. & Melinda Rice Revocable Fam. Tr. 5/9/90 v. Intercept
   Pharms., Inc.*,
   2022 WL 837114, at *16 (S.D.N.Y. Mar. 21, 2022) ...........................................................19

*In re Riskified Ltd. Sec. Litig.*,
   2023 WL 3791653, at *7–8 (S.D.N.Y. June 2, 2023)...........................................................13

*Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton
   Interactive, Inc.*,
   2023 WL 2711342, at *3–4, *6, *12–13 (S.D.N.Y. Mar. 30, 2023) ...............................10, 15

*Rombach v. Chang*,
   355 F.3d 164, 174 (2d Cir. 2004).....................................................................................20

*Setzer v. Omega Healthcare Invs., Inc.*,
   968 F.3d 204, 213 (2d Cir. 2020).....................................................................................23

*Shemian v. Rsch. In Motion Ltd.*,
   2013 WL 1285779, at *23 (S.D.N.Y. Mar. 29, 2013) .........................................................16

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
   412 F. Supp. 3d 353, 367 (S.D.N.Y. 2019)........................................................................14

*In re Synchrony Fin. Sec. Litig.*,
   988 F.3d 157, 173 (2d Cir. 2021).....................................................................................15

*Tavenner v. IBM*,
   2022 WL 4449215, at *1 (S.D.N.Y. Sept. 23, 2022).............................................................2

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
   531 F.3d 190, 196 (2d Cir. 2008).....................................................................................24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308, 314 (2007)..................................................................................................8, 22

*Villare v. Abiomed, Inc.*,
  2021 WL 4311749, at *13–14 (S.D.N.Y. Sept. 21, 2021)......................................................16

*Washington v. Gonyea*,
  538 F. App'x 23, 26 n.3 (2d Cir. 2013) ..................................................................................6

*In re World Wrestling Ent., Inc. Sec. Litig.*,
  180 F. Supp. 3d 157, 176–77 (D. Conn. 2016).......................................................................22

For Plaintiff, the third time is not a charm. Despite nearly 70,000 documents and seven depositions, Plaintiff failed to resurrect the allegations previously dismissed by this Court and failed to muster a shred of evidence supporting its active locations theory. The Second Amended Complaint ("SAC") ignores the Court's dismissal order, repleading Plaintiff's meritless attack on Olo's forward-looking statements despite the Court's prior ruling that Olo's cautionary language was sufficient. What is worse, the SAC attempts to mislead the Court: the SAC continues to allege its active locations theory using the same confidential witnesses the Court relied upon to sustain the claim previously, but fails to disclose that Plaintiff "*do[es] not intend to rely on*" those witnesses. At the same time, the SAC quotes deposition testimony unambiguously showing that the active location counts were accurate. The SAC should be dismissed.

*First*, this Court correctly dismissed Plaintiff's original allegations related to the potential loss of a single customer, Subway (the "Subway Transition"), as a meritless challenge to various forward-looking statements. Disregarding the Court's holding, the SAC repleads the Subway Transition as one part of a bigger but even less plausible theory attacking the viability of Olo's entire business model. Plaintiff's attempt to repackage its Subway allegations in new wrapping fails. While the SAC purports to identify additional misstatements over a longer period, it once again simply challenges protected forward-looking statements that Plaintiff claims were too "rosy." SAC ¶¶ 149–164. These "new" claims fail for the same reason the old ones did: Olo warned investors of *exactly* the risks that Plaintiff complains later materialized, and so, as this Court has already held: "*Olo's projections of its future growth were, therefore, protected by the safe harbor for forward-looking statements*." MTD Op. at 7.[1] That holding is fatal to the SAC's claim

---

[1] "MTD Opinion" or "MTD Op." means ECF No. 71. The Court may consider the allegations in the SAC and the exhibits attached to the accompanying Declaration of Jennifer B. Luz ("Ex."). *See Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 197 (S.D.N.Y. 2020) (court may take judicial

attacking Olo's forward-looking statements.

***Second***, the SAC boldly reasserts the active locations claim based on the same confidential witnesses upon which the Court previously relied, without telling the Court what Plaintiff told Defendants months ago: they "***do not intend to rely on confidential witnesses going forward***." Fact discovery on active locations is complete, and the only new allegations in the SAC fatally undermine this theory. The SAC quotes at length from Olo Financial Planning & Analysis ("FP&A") Manager Dauen (Patty) Jeon's deposition, the employee responsible for preparing Olo's publicly disclosed active location counts. SAC ¶ 67. This incorporated testimony describes how Ms. Jeon did not prematurely add or fail to remove locations that were inactive, or assume all locations went live at once; ███████████████████████████████████████ ███████████████████████ *Id.* And while Plaintiff now pivots to a meritless and nonsensical theory quibbling with ***how*** Ms. Jeon should have calculated the number for a subset of Olo's product modules, even the SAC agrees that ████████████████████████████ ████████████████████████████████████████ *Id.*; *see also id.* ¶ 48 (quoting Olo's definition of "active location" as "a unique restaurant location that is ***utilizing*** one or more modules in a given quarterly period"). In light of these new allegations showing that the active location counts were derived from actual customer usage, the remaining allegations about deployments (*see, e.g.*, *id.* ¶ 190) and sales processes (*see, e.g.*, *id.* ¶ 49) are irrelevant. The SAC no longer identifies any materially false statement about active locations.

***Finally***, even if any of the alleged misstatements were actionable under Section 10(b),

---

notice of SEC filings); *Tavenner v. IBM*, 2022 WL 4449215, at *1 (S.D.N.Y. Sept. 23, 2022) ("[C]onsideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."), *aff'd*, 2023 WL 4984758 (2d Cir. Aug. 4, 2023). All (i) internal alterations, citations, and quotation marks are omitted unless noted; and (ii) emphasis is added.

which they are not, the Court should dismiss the SAC for the independently sufficient reason that the SAC fails to allege scienter with the particularity required by the PSLRA. The SAC also fails to plead loss causation based upon a downward adjustment to Olo's forward-looking earnings projections. The SAC should be dismissed in its entirety.

## PROCEDURAL HISTORY

The First Amended Complaint ("FAC"), filed on January 13, 2023, alleged securities fraud based upon two theories: (i) that Olo's forward-looking statements regarding future growth were materially misleading due to the Company's failure to disclose the "pending departure" of a single one of Olo's over 600 customers, Subway (the "Subway Claim"); and (ii) that Olo's disclosed active locations totals ("Active Location Counts") were materially inaccurate due to Olo's alleged inclusion of various categories of inactive locations (the "Active Locations Claim"). FAC ¶¶ 11–16, 19–20, 55–56, 83–106. Defendants moved to dismiss the FAC. Following argument, the Court issued a "bottom-line order" on April 10, 2023, denying Defendants' motion. ECF No. 50.

The parties promptly commenced discovery. Plaintiff's initial disclosures did not identify any of the confidential witnesses discussed in the FAC, and Plaintiff subsequently confirmed that "we do not intend to rely on any Confidential Witnesses going forward." Ex. CC at 2. Defendants completed document discovery, producing nearly 70,000 documents, and produced seven witnesses for deposition, including CEO Noah Glass, CFO Peter Benevides, and Ms. Jeon.[2]

On July 25, 2023, the Court issued its full opinion on the motion to dismiss the FAC. The

---

[2] Fact discovery related to the Active Locations Claim is complete. When the Court issued the MTD Opinion, there were a few fact depositions left, but the only remaining witness relevant to the Active Locations Claim was Ms. Jeon. Despite the PSLRA discovery stay, Defendants agreed to allow Ms. Jeon's deposition to go forward and to hold open the deposition only to the extent Ms. Jeon had knowledge relevant to new allegations in the SAC. Because Plaintiff did exactly what the PSLRA seeks to prevent—take discovery for the sake of crafting a complaint—there is no new theory asserted in the SAC that would necessitate reopening Ms. Jeon's deposition.

3

Court granted Defendants' motion to dismiss the Subway Claim, holding that "Olo's projections of its future growth were . . . protected by the safe harbor" and "the FAC fails to allege that Olo's non-disclosure of the Subway Transition was an actionable omission" because the alleged misstatements were forward-looking and accompanied by "meaningful cautionary language." MTD Op. at 6-7. The Court declined to dismiss the Active Locations Claim, holding the FAC sufficiently alleged, "*with corroboration from confidential witnesses*" (whom Plaintiff has since confirmed it does not intend to use), that Olo disclosed false Active Location Counts. *Id.* at 7.

The SAC (ECF No. 72) realleges the Active Locations Claim (again relying on the allegations of CW1 and CW2), attempts to reframe the dismissed Subway Claim, and raises new allegations concerning forward-looking statements for an expanded proposed class period of March 17, 2021 through August 11, 2022 (the "Class Period").

## BACKGROUND

### A.    Olo's Software Modules Generate Revenue In Different Ways.

Olo, which went public through an IPO on March 17, 2021, is a SaaS (software as a service) platform servicing "brands across a spectrum of restaurant types" with a suite of products. SAC ¶ 45. Olo products (or "modules") meet various customer needs and generate revenue in two different ways. For example, Olo's Ordering module is the "centerpiece of [its] business model" and allows for "restaurant-branded mobile applications and websites," "the storage and hosting of restaurant menus, creation and management of promotional offers and loyalty/reward programs, . . . the synchronization of menu item availability, the modification of ingredients, and per-location pricing." *Id.* ¶ 41. Restaurants that use Ordering (and certain other modules) pay a monthly subscription fee. *Id.* ¶ 44. Other Olo modules like Rails, Dispatch, and Network allow restaurants to connect to consumers through third-party delivery services or marketplaces (such as DoorDash). *Id.* ¶¶ 42-43. These modules generate transaction fee revenue from individual orders. *Id.* ¶ 44.

4

Olo seeks to increase both the number of modules that customers adopt and the number of locations using Olo modules. Like other SaaS companies, Olo describes its growth potential based on the total addressable market ("TAM"): the overall revenue opportunity if Olo could achieve 100% market share. To calculate TAM, Olo considers industry data on the number of enterprise restaurant locations and the number of orders that could generate revenue, and then factors in Olo's average transaction fees per order and annual subscription fee per location. *Id.* ¶¶ 8, 23–24; Ex. D at 12. According to the industry data Olo relied upon, there are 300,000 enterprise restaurant locations in the United States.[3] SAC ¶ 162; Ex. D at 12. By the end of Q2 2022, Olo had 82,000 active locations, many of which were enterprise restaurant brands. SAC ¶ 9.

Olo has experienced tremendous growth and market penetration, but repeatedly disclosed the risks inherent in its business model, including that it might fail to retain existing customers or attract new customers—risks that were heightened for large brands:

- "[T]here can be no assurance that we will be able to retain these customers or acquire new customers, deploy additional modules to these customers, or continue to increase the volume of transactions on our platform." Ex. T at 16.

- "We . . . generate significant revenue from our largest . . . customers, and the loss or decline in revenue from any of these customers could harm our business, results of operations, and financial condition." *Id.* at 21; *see also* Ex. D at 39.

- "Our ability to grow and generate incremental revenue depends, in part, on our ability to maintain and grow our relationships with existing customers, to have them increase their deployment and use of our platform and modules, and to increase or maintain transaction volume on our platform." Ex. T at 20; *see also* Ex. D at 30.

- "Additionally, we anticipate that our revenue growth rate will decline over time to the extent that the number of customers using our platform increases and we achieve higher market penetration rates." Ex. T at 17; *see also* Ex. D at 25.

Olo's business model was built on the conviction that "SaaS wins over homegrown software." SAC ¶ 163. But Olo warned that the success of this model was not a forgone conclusion

---

[3] "Enterprise" means a restaurant brand with 50 or more locations. Ex. H at 23.

and disclosed the risk that customers could "decide to build their own solution internally." Ex. D at 30; *see also* SAC ¶¶ 165–168. ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

SAC ¶¶ 94–97. Subway, which only used Rails, accounted for only ██████████ of Olo's approximately $149 million in 2021 revenue. *Id.* ¶¶ 85, 88; Ex. T at 56. Although Subway did not terminate its relationship with Olo during the Class Period, the first Subway locations—approximately 2,500 total—ceased being active locations as of the end of Q2 2022, which is when Olo publicly disclosed the Subway Transition. SAC ¶ 171.

**B.      Olo Clearly And Consistently Described Its Key Metrics To The Public.**

Olo discloses active locations as one of several performance metrics. Ex. D at 3. Olo consistently defined an active location as "a unique restaurant location that is utilizing one or more modules in a given quarterly period." SAC ¶ 48. Ms. Jeon is the person at Olo responsible for calculating Olo's Active Location Counts. In her deposition quoted in the SAC,[4] ████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████   *Id.* ¶ 67. ████████████████████████

████████████████████████████████████████████████████████   *Id.*

**C.      The Fundamentals Of Olo's Business Remain Strong.**

Olo experienced tremendous success during the pandemic, which forced innovations in online ordering in the restaurant industry. *Id.* ¶¶ 7, 52. Olo has been transparent about the potential impact of COVID on its business—both good and bad. For example, Olo disclosed that COVID-19

---

[4] Because Plaintiff has incorporated Ms. Jeon's testimony by reference into the SAC, the Court can and should "evaluate the snippets used by plaintiff[] in the context of the rest of the deposition" on a motion to dismiss. *In re Refco Sec. Litig.*, 2012 WL 607612, at *3 (S.D.N.Y. Feb. 17, 2012) (Rakoff, J.); *see also Washington v. Gonyea*, 538 F. App'x 23, 26 n.3 (2d Cir. 2013) (stating that "incorporation of the transcript is proper because the complaint relies heavily on the [] transcript").

brought "an increase in transaction volumes as consumers turned to online ordering as compared to in-person dining," and "an increase in [Olo's] penetration of [its] Rails and Dispatch modules," which "resulted in an increase in transaction revenue." Ex. D at 25. Olo cautioned that "[t]he circumstances that have accelerated the growth of our business stemming from the effects of the COVID-19 may not continue." Ex. T at 15. Olo further disclosed:

> . . . our business and financial results could be materially adversely affected in the future if these trends do not continue. For example, as the effects of shelter-in-place orders abate with the roll-out of vaccines in the United States and consumers potentially return to pre-COVID digital ordering preferences and habits, the trends we experienced in 2020 on multi-module adoption and transaction volume may not continue and our revenue may fluctuate near term.

Ex. D at 26. Olo continued, "[t]he degree to which COVID-19 will affect our business and results of operations will depend on future developments that are highly uncertain and cannot be currently predicted," including "the duration, extent, and severity of the COVID-19 pandemic" and "the extent of the impact of these and other factors on our . . . partners, vendors, and customers." *Id.* It also created "heightened uncertainty in the global economy," and "to the extent there is a sustained general economic downturn and our solutions are perceived by customers and potential customers as costly, or too difficult to deploy or migrate to, our revenue may be disproportionately affected by delays or reductions in on-demand commerce spending." *Id.*

Olo continued to grow during the Class Period. For example, quarterly revenue increased by nearly $10 million between Q1 2021 and Q2 2022. *Compare* Ex. F, *with* Ex. Z. But, in Q2 2022, it became clear that Olo would be affected by some of the economic issues it had warned of, and that the Company would not be able to maintain the same exponential rate of growth it had during the height of the pandemic. As a result, on August 11, 2022, Olo announced that macroeconomic factors such as rising inflation and a recessionary environment "resulted in elongated deployment in sales cycles" that in turn impacted Olo's forward-looking revenue

expectations. SAC ¶¶ 175, 179. While Olo's Q2 2022 revenue met the Company's guidance for that quarter (*compare* Ex. Z, *with* Ex. U), Olo revised its 2022 full year revenue guidance downward, projecting $183 million to $184 million. Ex. Z. Olo also disclosed that Subway had begun transitioning off the Rails platform, resulting in 2,500 fewer Subway active locations. SAC ¶¶ 25, 171. Additionally, Olo disclosed that because of the Subway Transition, Active Location Counts had remained the same from Q1 to Q2 2022, at 82,000, despite some gains. *Id.* ¶ 170. Olo did not then (or ever) disclose any restatements or inaccuracies in any of its reported financial metrics, including reported revenue, or its previously reported Active Location Counts.

**ARGUMENT**

To state a claim under Section 10(b) and Rule 10b-5, Plaintiff must plead (1) a material misrepresentation or omission; (2) a strong inference of scienter; and (3) loss causation. *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009). The SAC must also meet the heightened pleading requirements of the PSLRA by "stating with particularity the circumstances constituting fraud," including "facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at 196. Plaintiff's allegations must give rise to a "strong inference" of scienter that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).

**I.     The SAC Fails To Allege Any False Or Misleading Statements Or Omissions.**

**A.     Alleged Misstatements Concerning Olo's Future Growth Are Protected By The PSLRA Safe Harbor And Should Be Dismissed Again.**

The SAC realleges the same forward-looking statements that the Court already dismissed, plus new, practically identical forward-looking statements. *See* Ex. C. Plaintiff, however, fails to address the risk disclosures that place Olo's forward-looking statements squarely within the

8

PSLRA safe harbor. As the Court previously held:

> This safe harbor applies to statements that Plaintiff alleges were misleading. Olo's statements suggesting that it would continue to add users or revenue qualify as "statement[s] of future economic performance" or as "projection[s] of revenue." 15 U.S.C. § 78u-5(c). And Olo accompanied these statements with meaningful cautionary language. Olo warned, "[T]here can be no assurance that we will be able to retain these customers or acquire new customers, deploy additional modules to these customers, or continue to increase the volume of transactions on our platform." ***By noting that caveat, Olo informed investors of specific reasons why its number of active locations would not continue to grow at its impressive historical rate. Olo's projections of its future growth were, therefore, protected by the safe harbor for forward looking statements.***

MTD Op. at 6–7. While the SAC frames the alleged misstatements as being about Olo's "financial position" and the "enterprise segment of the market," they are the same type of generic forward-looking statements regarding Olo's future growth that the Court previously found non-actionable.[5] Make no mistake: the allegations about Olo's "financial position" do not concern any financial metric such as revenue or profits. Rather, the SAC alleges it was misleading for Defendants to state in November 2021 that "we're extremely proud of our financial performance this quarter . . . and we're even more excited about our position, the market opportunity ahead of us and the impact we can have" (SAC ¶ 152), or in February 2022 that "we've never been more confident in our position and more excited about our opportunity ahead. We believe that we have a 100x growth opportunity in U.S. enterprise restaurants, representing a TAM of more than $15 billion within the U.S. enterprise segment" (*id.* ¶ 154). *See also* Ex. B. The same is true of the alleged misstatements regarding Olo's TAM and ability to sell to the "enterprise segment of the market." *See, e.g.*, SAC ¶ 159 (TAM opportunity for Olo was $7 billion "based on our current product offerings and focus on enterprise restaurants primarily in the United States"); *id.* ¶ 162 ("[T]hrough focusing on the enterprise restaurant segment, we have a 4x opportunity to capture all 300,000 enterprise restaurant locations."); s*ee also* Ex. B. As before, the alleged misstatements concern "future economic

---

[5] *See* SAC ¶¶ 150, 152, 154–156, 159–162.

performance." MTD Op. at 6.

Just as in the FAC, these statements about Olo's potential growth were accompanied by the same cautionary language that "informed investors of specific reasons" why Olo may not "be able to retain these customers or acquire new customers, deploy additional modules to these customers, or continue to increase the volume of transactions on our platform." *Id.* at 6-7; *see also* Ex. A. This cautionary language applies with equal force to its new theories. Olo warned investors of the specific risks about which Plaintiff complains: possible post-COVID growth slowdown and risks with enterprise restaurants. SAC ¶¶ 149–157; *id.* ¶¶ 158–164; *see also* Ex. A. Among other things, Olo warned:

- "Our rapid growth may not be sustainable and depends on our ability to attract new customers, retain revenue from existing customers, and increase sales to both new and existing customers." Ex. T at 16.

- "The circumstances that have accelerated the growth of our business stemming from the effects of the COVID-19 may not continue and our revenue may fluctuate in the near term." *Id.*

- "Customers may not renew their contracts with us or reduce their use of our platform for any number of reasons, including if they are not satisfied with our platform or modules, the value proposition of our platform or our ability to meet their needs and expectations, security or platform reliability issues, or if they decide to build their own solution internally or if they decide to temporarily or permanently close their restaurants in a location then affected by the COVID-19 pandemic." *Id.* at 20; *see also supra* p. 5; Ex. A.

Defendants' statements fall squarely within the PSLRA safe harbor and cannot form the basis for a claim of securities fraud. *See, e.g.*, MTD Op. at 6-7; *Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 2023 WL 2711342 at *3–4, *6, *12–13 (S.D.N.Y. Mar. 30, 2023) (statements that defendants were "not seeing a softening of demand," that they saw "continued momentum in foreseeable future," and that they "forecast[ed] growth," all fell within the safe harbor); *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416 at *4, *6 (S.D.N.Y. Nov. 25, 2003) (dismissing claims based on optimistic statements about future

10

sales based on accurate reports of prior successes, even though sales were trending downward), *aff'd sub nom. Nadoff v. Duane Reade, Inc.*, 107 F. App'x 250 (2d Cir. 2004).[6]

### B. The SAC Fails To Cure The Pleading Deficiencies With The Subway Claim, And Fails To Allege Any Other Material Misstatement or Omission.

Like the FAC, the SAC does not identify any actionable statements rendered misleading because Olo did not disclose the possible Subway Transition earlier. The SAC identifies only a single risk factor disclosure from Olo's 2021 Form 10-K as allegedly false and misleading due to the omission of the Subway Transition. *See* SAC ¶¶ 165–169. Specifically, Plaintiff contends that it was false and misleading for Defendants to warn investors that "if our customers . . . reduce the number of locations using our platform, then our revenue may decline and our results of operations may be harmed" and that its "[c]ustomers may not renew their contracts with us or reduce their use of our platform for any number of reasons, including . . . if they decide to build their own solution internally." *Id.* ¶ 165. The SAC alleges that this statement was materially misleading because the risk that Subway might directly integrate with DoorDash and UberEats "had already come to pass." *Id.* But Plaintiff previously argued exactly this in its opposition to the first motion to dismiss (*see* ECF No. 44 at 11–12), and cannot revive its Subway theory by simply adding new alleged false statements in the SAC that merely reiterate similar statements the Court has already considered. *See In re Eaton Corp. Sec. Litig.*, 318 F. Supp. 3d 659, 667–70 (S.D.N.Y. 2018). The Court not only rejected Plaintiff's argument, it held substantively identical language was "meaningful cautionary language" sufficient to invoke the safe harbor. *See* MTD Op. at 6–7.

Nothing in the SAC warrants revisiting the Court's prior dismissal of the Subway Claim.[7]

---

[6] Olo's predictions of active location growth are protected by the safe harbor for the same reasons. *See* SAC ¶ 131 ("the big takeaway here is a lot of upside"); *id.* ¶ 134 ("we see a lot of opportunity for growth"). As the Court previously held, Olo disclosed "specific reasons why its number of active locations would not continue to grow at its impressive historical rate." MTD Op. at 6–7.

[7] ███████████████████████████████████████████████████

There are still no allegations to suggest that Subway was a material customer whose potential transition was required to be disclosed once certain to occur.[8] The SAC does not allege that Subway terminated its contract with Olo or ceased to be an Olo customer during the Class Period. And the fact remains that Defendants disclosed the Subway Transition at the end of Q2 2022: the quarter during which it both became reasonably certain Subway would directly integrate and when some Subway locations first ceased being counted as active locations. *See* SAC ¶¶ 171–173. The factual allegations in the SAC are insufficient to rehabilitate the Subway Claim. *See In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 388 (S.D.N.Y. 2009) (re-dismissing fraud claim where "Amended Complaint allege[d] nothing new that would change the Court's prior decision"), *aff'd*, 730 F.3d 170 (2d Cir. 2013).

Nor is Plaintiff's Subway Claim saved by the assertion that the Subway Transition was indicative of "a trend amongst large restaurant brands" developing their own software solutions in lieu of using Olo products. SAC ¶ 169. The SAC's support for this supposed "trend" consists of just two restaurant brands: Subway and ██████████. *Id.* ¶¶ 80–81, 166.[9] Plaintiff's related allegations concerning ████████████████████████████████████████████████

████████████████████████████████████████████████

████████. *Id.* ¶¶ 22, 79–80, 166. These speculative allegations, related to just three of Olo's 600-plus customers, do not amount to a trend and do not suggest that any of Olo's risk factors were

---

████████████████████████████████████████ *See* SAC ¶ 92.
[8] Nor could Plaintiff so allege, as Subway was a single customer out of 600, only generated ██ ██████████████ of Olo's approximately $149 million revenue in 2021 (Ex. T at 56), and Olo never disclosed Subway as a material customer. *See In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *12–13 (S.D.N.Y. Aug. 1, 2017).
[9] ████████████████████████████████████████████████ SAC ¶ 80; *see* Ex. DD at -715.

false or misleading (much less that Defendants had actual knowledge of a known trend, as required for an Item 303 disclosure duty). *See In re Riskified Ltd. Sec. Litig.,* 2023 WL 3791653, at \*7–8 (S.D.N.Y. June 2, 2023) (allegations concerning a single customer, paired with general allegations about the industry, did not constitute a trend). If anything, the SAC allegations are entirely consistent with Olo's disclosures that individual restaurant brands might "decide to build their own solution internally." *See* Ex. A at 23; *see also Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at \*10 (S.D.N.Y. Mar. 30, 2020) (where "'repeated warnings' about a specific business vulnerability, there is 'no basis' to conclude that the company failed to fulfill its affirmative disclosure obligations under Item 303"), *aff'd*, 2021 WL 3871269 (2d Cir Aug. 31, 2021).[10]

Plaintiff's new, non-Subway theories likewise do not allege any false or materially misleading statements.[11] The SAC uses sound bites, cherry picking from internal Olo documents to suggest that Olo's business model is doomed, yet fails to allege specific facts impugning the accuracy or completeness of any specific statement. Take, for example, allegations about Olo's TAM. SAC ¶¶ 150, 152, 154, 159, 161, 162. Plaintiff miscomprehends the concept of TAM. ***Total*** addressable market is just that—***total*** market potential should a company capture the ***entirety*** of the available market and beat all its competitors—not a guarantee that Olo would achieve its TAM. *See In re E-House Sec. Litig.*, 2021 WL 4461777, at \*11 (S.D.N.Y. Sept. 29, 2021) ("[S]tatements about a 'company's projections [are treated as] opinions rather than guarantees"). ████

████████████████████████

---

[10] Plaintiff does not expressly plead this as a violation of Item 303 of Regulation S-K for failure to disclose "known trends . . . or uncertainties," but, even if it did, that too would be an insufficient basis for a Section 10(b) claim. *See City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*, 2019 WL 452051, at \*7 (S.D.N.Y. Feb. 5, 2019) (Item 303 violation only a basis for Section 10(b) claim where omission is material and "all of the other requirements to sustain an action under Section 10(b) are fulfilled").

[11] *See* SAC ¶¶ 150, 152, 154–156, 159–163.

13

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████ [12] SAC ¶¶ 79, 82–83, 86; *see also Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 367 (S.D.N.Y. 2019) (growth statements not misleading given "thinnest causal connection" between allegations and statements), *aff'd*, 826 F. App'x 111 (2d Cir. 2020).[13]

So, too, with alleged misstatements about Olo's projections. Despite production of thousands of financial spreadsheets and projections and a deposition of CFO Mr. Benevides, the SAC does not allege any facts to show Olo's FY 2022 revenue guidance of $194 to $196 million was unachievable when issued in February 2022 or raised by $1 million in May 2022. SAC ¶¶ 154, 155, 156; *see also In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 314–20 (S.D.N.Y. 2020) (dismissing claims where "Plaintiffs have not established that the purported representations were unachievable when made").[14] ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ *See* SAC ¶¶ 101, 102, 104–107, 113; *see also In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 231 (S.D.N.Y. 2021) (dismissing claims where Plaintiff's "d[id] not point to particular facts or data suggesting that Defendants did not believe that they would see []growth in revenue"). Further, ███████████████████████████████

---

[12] The SAC does not allege that Olo's disclosed TAM incorrectly quantified the total market opportunity, or by how much.

[13] Similarly inactionable is the statement from the IPO Prospectus that enterprise brands are "highly loyal" and that "[o]ver the last five years, on average nearly 99% of our enterprise brand customers . . . have continued using our Ordering module each year." SAC ¶ 159. The SAC does not allege the historical facts were false, and boasting about "loyal" customers is obvious puffery.

[14] The SAC is wrong that Olo "raise[d]," "increased," or "updated" its FY 2022 revenue guidance in February 2022 . SAC ¶¶ 17, 108, 155. As documents incorporated into the SAC show, that was the first time Olo gave FY 2022 guidance. *See* Ex. I (no FY 2022 guidance); Ex. N (same).

████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████ SAC ¶ 112.[15] ██████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 114.[16]

Plaintiff's hodgepodge of allegedly misleading statements amounts to little more than a claim that Defendants should have provided investors with a more negative view of Olo's business model and growth prospects throughout the Class Period. As the Second Circuit has repeatedly recognized, however, "a generally optimistic view of the state of business partnerships and the synergies of [defendant's] business model cannot support claims of securities fraud. 'People in charge of an enterprise are not required to take a gloomy, fearful, or defeatist view . . . ; they can be expected to be confident about their stewardship and the prospects of the business that they manage.'" *In re Synchrony Fin. Sec. Litig.,* 988 F.3d 157, 173 (2d Cir. 2021); *see also Boca Raton Firefighters & Police Pension Fund v. Bahash,* 506 F. App'x 32, 38 (2d Cir. 2012) (argument that company "did not acknowledge the long-term unsustainability of its business model" was "easily rejected" by the court as non-actionable). "As long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." *Peloton,* 2023 WL 2711342 at *13.

---

[15] ████████████████████████████████████████████████
████████████████████████████████████████ *See Harris v. Amtrust Fin. Servs. Inc.,* 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015) (plaintiffs did not allege any facts that supported its "conclusory allegation that [defendants] violated GAAP"), *aff'd,* 649 F. App'x 7 (2d Cir. 2016).

[16] ██████████████████████████████████████████████
██████████████████ SAC ¶¶ 17, 110. ████████████████
████████████████████████████████████████ *Id.* ¶ 170.
██████████████████████████ *Id.* ¶ 108.

15

### C.    Many Alleged Statements Are Non-Actionable Puffery And/Or Opinions.

Many of the alleged misstatements also are classic examples of "puffery" that are "too general for a reasonable investor to have relied on them." *In re Adient PLC Sec. Litig.*, 2020 WL 1644018, at \*22 (S.D.N.Y. Apr. 2, 2020).[17] No reasonable investor would rely on the generic optimistic statements that Plaintiff identifies, such as: "I think from a high level, the underlying fundamentals of the business remain really strong." (SAC¶ 154); and "[I]t has been our long held conviction at Olo that SaaS is a better alternative to homegrown solutions." (*Id.* ¶ 163). *See also* Ex. B. Courts routinely find that such generic statements are non-actionable puffery. *See City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 89 (S.D.N.Y. 2022) (statements about company's "very, very, very solid platform" and that "touted 'growth opportunities' and 'a sustainable business' that 'can find its true potential'" were puffery); *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at \*13–14 (S.D.N.Y. Sept. 21, 2021) ("sustainable growth" was puffery); *Shemian v. Rsch. In Motion Ltd.*, 2013 WL 1285779, at \*23 (S.D.N.Y. Mar. 29, 2013) ("really exciting growth" was puffery). Similarly, alleged misstatements touting Olo's approach to contracting at the brand level instead of restaurant-by-restaurant (SAC ¶¶ 122–124, 136, 142–143); additions of new customers (SAC ¶¶ 129, 133); and "upside" and potential future growth (SAC ¶¶ 131, 134, 145) are also puffery.

Many of the same challenged statements are also statements of opinion that cannot support a claim for securities fraud, such as statements about Olo's 2022 revenue guidance, statements reflecting Defendants' confidence in Olo's business model, and Defendants' assessment of Olo's growth opportunity. *See E-House*, 2021 WL 4461777, at \*11; *see also* Ex. B.[18] The SAC fails to allege either that Defendants did not believe these statements to be true (*see supra* pp. 13–15), or

---

[17] *See* SAC ¶¶ 122–124, 129, 131, 134–136, 142, 143, 145, 150, 152, 154–156, 159–163.

[18] *See* SAC ¶¶ 131, 134, 145, 150, 152, 154–156, 160–163.

that they omitted material facts. *See Greco v. Qudian Inc.*, 2022 WL 4226022, at *13 (S.D.N.Y. Sept. 13, 2022) (dismissing claims where allegations did not establish that defendants lacked a basis to believe in their guidance statements); *Kocourek v. Shrader*, 391 F. Supp. 3d 308, 327–28 (S.D.N.Y. 2019) (dismissing claims based on statements of belief of revenue growth).

**D.      The SAC Fails To Allege Any Active Location Related False Statements.**

**1.      The SAC Does Not Plausibly Allege False Active Location Counts.**

Although the Court previously denied Defendants' motion to dismiss the Active Locations Claim, it should reach a different conclusion now. The new allegations in Paragraph 67 of the SAC fatally undermine Plaintiff's claim, such that Plaintiff can no longer plausibly allege that Olo's Active Location Counts were false. *See* MTD Op. at 9; *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 353 (2d Cir. 2022) (affirming dismissal where complaint and documents incorporated therein contradicted plaintiffs' theory of falsity). The crux of this claim—then and now—is that Olo intentionally inflated the Active Location Counts by (i) prematurely including inactive locations, (ii) failing to remove locations that became inactive, and (iii) improperly assuming that all locations in a brand became active at once. SAC ¶¶ 12–15. But new allegations in the SAC—including the testimony quoted and incorporated therein—remove any possible confusion: ██████████████████████

████████████████████████████████████████

*See* SAC ¶¶ 48, 67. ████████████████████████

████████████████████████████████ *Id.* ¶ 67. ████████

█████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



*Id.* ¶ 67.

*Id.*[19]

But Plaintiff's proposed approach is nonsensical and inconsistent with Olo's public disclosure.

*Id.* ¶¶ 41, 185.

*See id.* ¶ 67 n.12.

Rather, Olo's SEC filings defined an active location as "*a unique restaurant location that is utilizing one or more modules in a given quarterly period*." *Id.* ¶ 48. Plaintiff's only support for its own, narrow definition of "active" is a statement by Mr. Benevides that "we count a location active in the quarter if they've had an order in the quarter." *Id.* ¶ 67. This statement necessarily cannot support Plaintiff's fraud claim because it was part of the alleged *corrective disclosure* during the Q2 2022 earnings call.

---

[19]

SAC ¶ 67.

*See id.* ¶¶ 48, 170. Plaintiff also takes this statement entirely out of context. Mr. Benevides was addressing how Olo counts active locations *for Subway*. *See* Ex. AA at 18. As the SAC itself alleges, Subway used only the Rails module (SAC ¶ 19), and ███████████████████████ ████████████████████████████████████████████ ██████ (*id.* ¶ 67). *See also Rice as Tr. of Richard E. & Melinda Rice Revocable Fam. Tr. 5/9/90 v. Intercept Pharms., Inc.*, 2022 WL 837114, at *16 (S.D.N.Y. Mar. 21, 2022) ("statements to investors are not read by isolating the part that is most supportive of the plaintiff's claim and divorcing it from the remainder that would put it in context").

The new allegations in the SAC also undermine the two confidential witnesses who were the basis for the Court's denial of the previous motion to dismiss. MTD Op. at 9. Conspicuously, the SAC does not allege that CW1 and CW2 played any role in preparing the publicly disclosed Active Location Counts, nor does it explain how they knew what particular restaurant locations were being included in the published counts. *See* SAC ¶¶ 60–62, 66, 70–72. That is because they had no such involvement or knowledge. ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ Ex. EE at 116:10–117:3, 120:4–8. Thus, the SAC does not satisfy the PSLRA's requirement that confidential witness allegations be pleaded with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." MTD Op. at 10 n.3.[20] The Court should be particularly skeptical

---

[20] *See also In re AT&T/DirecTV Now Sec. Litig.*, 2020 WL 4909718, at *10 (S.D.N.Y. Aug. 18, 2020) (rejecting CW allegations where the complaint did "not allege that CW-12 had access to nationwide cost and profit data, let alone that he ever reviewed such data for DTVN's entire

of CW1's and CW2's statements because Plaintiff has disclaimed any intent to call them at trial, yet continues to use statements attributed to them in order to get past the pleading stage. *See* Ex. CC at 2.[21] The SAC does not explain how and why the Active Location Counts were false. Plaintiff cannot satisfy its pleading burden. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[P]laintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so.").

The new allegations in Paragraph 67 also fatally undermine any claim of materiality. In denying Defendants' prior motion to dismiss, the Court found that the FAC adequately alleged "a difference of (at the least) several thousand locations actively using Olo's products," which could constitute a material misstatement. MTD Op. at 11. ████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████    *See* SAC ¶ 67; Ex. EE at 124–25.[22] Even with the benefit of months of discovery (including Defendants' production of nearly 70,000 documents, Ms. Jeon's deposition, and completion of fact discovery on active locations), the SAC fails to identify even one location that was improperly counted as active—much less explains how the Active Location Counts were off by "thousands." The absence of any alleged facts suggesting that the calculations were incorrect—much less wrong by any material amount—warrants dismissal.

---

subscriber base"), *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022).

[21] Plaintiff's continued reliance on "witnesses" it has disclaimed raises substantial questions about whether its factual contentions have evidentiary support and are made in good faith.

[22] ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████    *See* Ex. EE at 119:9–120:3.

*See In re Lone Pine Res., Inc.*, 2014 WL 1259653, at *4 (S.D.N.Y. Mar. 27, 2014) (dismissing where the complaint pleaded "no facts establishing that the omission of the existence of the pipeline disruption had any quantitative impact . . . , let alone one of 5% or more").[23]

> **2.    The SAC Also Fails To Allege The Falsity Of Other Statements Concerning Active Locations.**

The SAC—like the FAC—also challenges statements about active locations other than the disclosed counts.[24] The Court declined to address these statements given its holding that the FAC stated a claim related to "the number of active locations." MTD Op. at 9 n.2. The Court should now dismiss these statements as well. The SAC does not adequately allege how any of these other alleged misstatements were material if the Active Location Counts themselves were accurate. Take, for example, statements to the effect that Olo contracted at the brand-level (*e,g.*, SAC ¶¶ 122, 123 (March 2021 Prospectus); *id.* ¶ 142 (Q1 2022 earnings call)), which Plaintiff interprets (wrongly) as statements that all brand locations became "active" at the same time. This interpretation is inconsistent with Olo's disclosures, which regularly warned investors that it took time to deploy its products across a brand after contracting. *E.g.*, Ex. D at 29 ("[E]ven after our customers contract to use our platform, they may require extensive integration or deployment resources from us before they become active customers, which have at times extended to multiple quarterly periods following the execution of the agreement."); Ex. H at 45 (same); *see also Gissin v. Endres*, 739 F. Supp. 2d 488, 506 (S.D.N.Y. 2010) (explaining that earnings calls had to be reviewed in the context of related SEC filings, because "the SEC filings for the period were the foundation of the discussion"). But even if Plaintiff were interpreting these statements correctly,

---

[23] ████████████████████████████████████ SAC ¶ 63. But the SAC does not connect any of these numbers to the disclosed Active Location Counts, ██████████████████████ . *Id.* ¶¶ 19, 67.

[24] *See* SAC ¶¶ 122–124, 129, 131, 133–136, 142, 143, 145.

the SAC provides no reason why they would be material if investors were receiving accurate disclosure of the number of active locations each quarter. *See In re Hudson Techs., Inc. Sec. Litig.*, 1999 WL 767418, at *12 (S.D.N.Y. Sept. 28, 1999) (alleged incorrect "classification of certain expenses" immaterial given absence of any alleged effect on revenue or earnings).[25]

## II.    The SAC Fails To Plead A Strong Inference Of Scienter.

To plead scienter, the SAC must allege that Defendants acted with "a state of mind demonstrating an intent to deceive, manipulate or defraud." *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 720 (S.D.N.Y. 2018). Plaintiff can do this by alleging facts that show either (1) that the Defendants had the "motive and opportunity" to commit the alleged fraud, or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *11 (S.D.N.Y. Sept. 29, 2022). Further, the allegations must give rise to a "strong inference" of scienter that is at least as compelling as any competing, nonfraudulent inference. *Tellabs*, 551 U.S. at 314. The SAC repeats—without any further elaboration—the same inadequate allegations from the FAC regarding Defendants' supposed motive and opportunity to commit fraud. *See* SAC ¶¶ 182–88. The Court found these allegations regarding Mr. Glass's and Mr. Benevides's stock sales and the Wisely and Omnivore acquisitions to be insufficient. MTD Op. at 14–15. Plaintiff has not provided a "cogent and compelling" reason why the Court should reach a different conclusion now. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009).

That leaves recklessness, which is "a state of mind approximating actual intent." *Plug Power*, 2022 WL 4631892, at *16. In an omission case such as this one, the "recklessness standard

---

[25] *See also Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 133 (E.D.N.Y. 2020) (alleged misstatement was not material in light of surrounding disclosure); *In re World Wrestling Ent., Inc. Sec. Litig.*, 180 F. Supp. 3d 157, 176–77 (D. Conn. 2016) (allegation that company inflated number of social-media followers by "counting the same fan multiple times," immaterial in context of "other statements that the plaintiffs have not alleged are materially false or misleading").

22

requires that Plaintiff[] allege a clear duty to disclose." *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213 (2d Cir. 2020); *see also Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001) (no scienter absent "clear duty to disclose"). The SAC fails to allege, and cannot allege, that Defendants were required to disparage Olo's business model or growth prospects where there is no allegation that the Company disclosed inaccurate factual information—such as revenue—and had ample risk disclosures directly on point to every single one of the supposed concerns raised in the SAC. *See In re Garrett Motion Inc. Sec. Litig.*, 2023 WL 2744029, at *15 (S.D.N.Y. Mar. 31, 2023) ("Any inference of recklessness based on Defendants' optimistic statements is negated by the disclosures themselves. . . . "). Nor was there a duty for Defendants to disclose the Subway Transition at any point prior to August 2022, when the Subway Transition was not yet certain to occur. *See, e.g.*, *Express Scripts*, 2017 WL 3278930, at *13 (no duty to disclose potential loss while discussions were ongoing and loss uncertain). Nothing in the SAC makes an inference of fraud at least as compelling as the non-fraudulent inference to be drawn from Olo's risk disclosures. Plaintiff's theory is that Defendants recklessly defrauded investors into believing Olo could accomplish the feat of capturing the entirety of the market and never lose any customers, while simultaneously warning about a number of challenges to retaining existing business and continuing to grow at the same rate as during the pandemic. This makes no sense.

The SAC has likewise not alleged recklessness as to the Active Locations Claim. Paragraph 67 gives rise to a nonfraudulent inference that Defendants believed the Active Location Counts were being calculated correctly by Olo's finance team. *See, e.g.*, *In re China N. E. Petroleum Holdings Ltd. Sec. Litig.*, 2014 WL 7236914, at *3 (S.D.N.Y. Dec. 11, 2014) (dismissing where "the most logical inference . . . is that [the defendant] was acting in good faith"), *aff'd sub nom. Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 615 F. App'x 44 (2d Cir. 2015). ▮

23

██████████████████████████████████████████████

██████████████████████ SAC ¶ 190. █████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████ *See id.* ¶ 67. Similarly, the SAC gets nowhere by continuing to allege that Mr. Glass was "intimately involved with Olo's day-to-day operations" and "has regular interactions with Olo's clients." *Id.* ¶¶ 191–192. There is no allegation that Mr. Glass ever learned anything that contradicted how Ms. Jeon was preparing the Active Location Counts. *Id.*[26] Absent any allegations of Mr. Glass's or Mr. Benevides's knowledge of inaccuracies in Active Location Counts, any inference of fraud is less compelling than the non-fraudulent inference that they relied upon the FP&A team to do the calculations accurately, and had no reason to doubt their work.

### III.   The SAC Does Not Adequately Allege Loss Causation.

The SAC should be dismissed for failure to adequately allege loss causation. The Court sustained the allegations of loss causation in the FAC on the basis that the FAC had plausibly alleged that the "announcement of lowered FY 2022 revenue [guidance] was due to the 'misreporting of Olo's active locations count.'" MTD Op. at 12. The SAC warrants a different conclusion because it has done no more "than simply point to missed earnings forecasts or other 'bad news' to plead loss causation." *In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL

---

[26] Plaintiff abandoned the database-access allegation on which the Court previously relied in finding that Plaintiff had alleged a strong inference of scienter: that Mr. "Benevides had access to Looker and would have obtained his active locations data from it." FAC ¶ 123; MTD Op. at 16. Plaintiff now knows this to be false. *See supra* p. 20 n.22. In any event, mere access to underlying data would be insufficient to establish that Mr. Benevides acted recklessly. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (a "broad reference to raw data" did not "raise[] an inference of scienter").

1600464, at \*21 (S.D.N.Y. Mar. 31, 2015).

**First**, Plaintiff has failed to allege that Defendants "concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005). The SAC no longer plausibly alleges a corrective disclosure, *i.e.*, that lowered revenue guidance was due to the "misreporting of Olo's active locations count" in light of Paragraph 67, ███████████████████████████████ ████████████████████████████████████████████. *See* SAC ¶ 67. The "dots" the Court must connect between the Active Locations Claim and the alleged corrective disclosure—the lowering of guidance—on August 11, 2022, "are too numerous and attenuated" to plead loss causation. *Francesca's*, 2015 WL 1600464, at \*22.

**Second**, there is no plausible allegation of loss causation related to Plaintiff's new and sweeping attack on Olo's business model. On August 11, 2022, Olo merely lowered its 2022 revenue guidance and announced the loss of one customer (while also announcing quarterly and year-over-year growth in total revenue, platform revenue and gross profit and that it had met its revenue guidance for the quarter). *Compare* Ex. Z, *with* Ex. U. Lowering guidance, without more, cannot plead loss causation as a matter of law. *See, e.g.*, *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 678–79 (S.D.N.Y. 2007) ("[T]he mere failure to meet earnings forecasts is insufficient to establish loss causation.").

## IV.    Plaintiff's Section 20(a) Claim Must Be Dismissed.

Because the SAC fails to plead a primary securities violation, the Section 20(a) claim must be dismissed. *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 173 (S.D.N.Y. 2015).

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice. *See Hensley v. IEC Elecs. Corp.*, 2014 WL 4473373, at \*6-7 (S.D.N.Y. Sept. 11, 2014).

25

Dated:  August 24, 2023

Respectfully submitted,

OLO INC., NOAH GLASS, and PETER
BENEVIDES

By their attorneys,

*/s/ Jennifer B. Luz*

Deborah S. Birnbach
Jennifer B. Luz
Katherine G. McKenney (*pro hac vice*)
Justin D. Ward
Brendan Blake (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com
KMcKenney@goodwinlaw.com
JWard@goodwinlaw.com
BBlake@goodwinlaw.com

26

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer B. Luz, hereby certify that a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint for Violations of Federal Securities Laws, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 24, 2023.

Dated: August 24, 2023

*/s/ Jennifer B. Luz*
Jennifer B. Luz

27