**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br>Defendants. | Case No. 1:22-cv-08228-JSR<br><br>CLASS ACTION<br><br>JURY TRIAL DEMAND |

**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR <u>VIOLATIONS OF FEDERAL SECURITIES LAWS</u>**

**TABLE OF CONTENTS**

I.  PROCEDURAL HISTORY...................................................................................... 2

II.  STATEMENT OF FACTS ................................................................................... 3

    A.  Covid-Era Demand for Online Ordering Propelled Olo to a $520 Million IPO..... 3

    B.  Olo's Inaccurately and Misleadingly Reported "Active Locations," a Key Metric for the Company ................................................................................... 3

    C.  The "Build vs. Buy" Threat and Trend................................................................ 6

    D.  Olo Lost Subway, Its Most Important Brand Client, in January 2022 ................... 6

    E.  Olo's Slowdown and Hail Mary: "Olo Pay".......................................................... 7

    F.  The Truth Begins to Emerge.................................................................................. 8

III.  ARGUMENT........................................................................................................ 8

    A.  Legal Standard ..................................................................................................... 8

    B.  Defendants Made Material Misstatements............................................................. 9

        1.  The Statements Are Not Protected by the PSRLA Safe Harbor ................. 9

        2.  The SAC Alleges an Actionable Misstatement Regarding Subway .......... 12

        3.  The Alleged Misstatements Were Not Puffery or Opinions ...................... 16

        4.  Defendants Misstated the Number and Definition of Active Locations .... 18

    C.  The SAC Alleges Overwhelming Evidence of Scienter ....................................... 20

    D.  The AC Adequately Alleges Loss Causation........................................................ 23

IV.  CONCLUSION................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*,
   18 F. Supp. 3d 482 (S.D.N.Y. 2014) (Rakoff, J.) ...................................................................16

*Bristol Cnty. Ret. Sys. v. Adient PLC*,
   2022 WL 2824260 (S.D.N.Y. July 20, 2022) ........................................................................17

*Cheng v. Canada Goose Holdings Inc.*,
   2021 WL 3077469 (S.D.N.Y. July 19, 2021) .........................................................................17

*City of Livonia Emps.'Ret. Sys. v. Wyeth*,
   2010 WL 3910265 (S.D.N.Y. Sept. 29, 2010) .......................................................................23

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012) ..............................................................................21, 22

*City of Providence v. Aeropostale, Inc.*,
   2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .......................................................................10

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
   587 F. Supp. 3d 56 (S.D.N.Y. 2022) ....................................................................................17

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
   477 F. Supp. 3d 123 (S.D.N.Y. 2020) (Rakoff, J.) ...........................................................20, 23

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
   2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ......................................................................21

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..............................................................................10, 14

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) .................................................................................9, 11

*Galeston v. OneMain Holdings, Inc.*,
   348 F. Supp. 3d 282 (S.D.N.Y. 2018) ...................................................................................12

*Greco v. Qudian Inc.*,
   2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ......................................................................18

*In re Adient plc Sec. Litig.*,
   2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ..........................................................................17

*In re Alstom SA*,
 454 F. Supp. 2d 187 (S.D.N.Y. 2006)..................................................................9

*In re AppHarvest Sec. Litig.*,
 2023 WL 4866233 (S.D.N.Y. July 31, 2023) .........................................................10

*In re CitiGroup Inc. Bond Litig.*,
 723 F. Supp. 2d 568 (S.D.N.Y. 2010)............................................................14, 19

*In re Delcath Sys., Inc. Sec. Litig.*,
 36 F. Supp. 3d 320 (S.D.N.Y. 2014)..................................................................25

*In re Duane Reade Inc. Sec. Litig.*,
 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) ......................................................12

*In re Electrobras Sec. Litig.*,
 245 F. Supp. 3d 450 (S.D.N.Y. 2017)..................................................................8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
 986 F. Supp. 2d 487 (S.D.N.Y. 2013)..................................................................13

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) ..........................................................23

*In re Garrett Motion Inc. Sec. Litig.*,
 2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023) ........................................................22

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
 236 F. Supp. 3d 824 (S.D.N.Y. 2017)..................................................................21

*In re Moody's Corp. Sec. Litig.*,
 599 F. Supp. 2d 493 (S.D.N.Y. 2009)..................................................................23

*In re Nielsen Holdings Sec. Litig.*,
 510 F. Supp. 3d 217 (S.D.N.Y. 2021)..................................................................16

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 187 F.R.D. 133 (S.D.N.Y. 1999) ........................................................................10

*In re Pareteum Sec. Litig.*,
 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)........................................................18

*In re Petrobras Sec. Litig.*,
 116 F. Supp. 3d 368 (S.D.N.Y. 2015)............................................................14, 19

*In re Riskified Ltd. Sec. Litig.*,
 2023 WL 3791653 (S.D.N.Y. June 2, 2023) ..........................................................15

*In re Romeo Power Inc. Sec. Litig.*,
  2022 WL 3701095 (S.D.N.Y. Aug. 25, 2022) ..................................................................10

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ...................................................................................14

*In re Signet Jewelers Ltd. Sec. Litig.*,
  389 F. Supp. 3d 221 (S.D.N.Y. 2019).............................................................................17

*In re Van der Moolen Holding N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005).............................................................................13

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)..........................................................................................12

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003).............................................................................16

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016)............................................................................................17

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..........................................................................................23

*Karimi v. Deutsche Bank Aktiengesellschaft*,
  607 F. Supp. 3d 381 (S.D.N.Y. 2020) (Rakoff, J.) ..................................................................19

*Kocourek v. Shrader*,
  391 F. Supp. 3d 308 (S.D.N.Y. 2019).............................................................................18

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011).....................................................................................14, 15

*Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)..........................................................................................23

*Matrixx Initiaives, Inc v. Siracusano*,
  563 U.S. 27 (2011).......................................................................................................21

*Moshell v. Sasol Ltd.*,
  481 F. Supp. 3d 280 (S.D.N.Y. 2020).............................................................................11

*N.J. Carpenters Health Fund v. The Royal Bank of Scot., PLC*,
  709 F.3d 109 (2d Cir. 2013)..........................................................................................20

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
  455 F. App'x 10 (2d Cir. 2011) .....................................................................................14

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)........................................................................................17, 21, 22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund.*,
575 U.S. 175 (2015).................................................................................................................18

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020)...........................................................................11

*Robeco Cap. Growth Funds SICAV-Robeco Glob. Consumer Trends v. Peloton
Interactive, Inc.*,
2023 WL 2711342 (S.D.N.Y. Mar. 30, 2023) ..........................................................................12

*Rudani v. Ideanomics, Inc.*,
2020 WL 5770356 (S.D.N.Y. Sept. 25, 2020)...........................................................................10

*SEC v. Rio Tinto*
2019 WL 1244933 (S.D.N.Y. March 18, 2019) .......................................................................14

*Set Cap. LLC v. Credit Suisse Grp. AG*,
996 F.3d 64 (2d Cir. 2021)........................................................................................................13

*Setzer v. Omega Healthcare Invs., Inc.*,
968 F.3d 204 (2d Cir. 2020)......................................................................................................23

*Steamfitters Loc. 449 Pension Plan v. Skechers, U.S.A., Inc.*,
412 F. Supp. 3d 353 (S.D.N.Y. 2019).......................................................................................16

*Struogo v. Barclays PLC*,
105 F. Supp. 3d 330 (S.D.N.Y. 2015).......................................................................................14

*Teamsters Loc. 445 Freight Div. Pen. Fund v. Dynex Cap. Inc.*,
531 F.3d 190 (2d Cir. 2008)......................................................................................................23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)...............................................................................................................9, 21

*Wilson v. Merrill Lynch & Co., Inc.*,
671 F.3d 120 (2d Cir. 2011)......................................................................................................13

Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Plaintiff") – respectfully submits this opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint ("SAC") (ECF No. 74) and the accompanying Memorandum of Law (ECF No. 75 ("Mot.")).[1]

Plaintiff has now filed a detailed complaint containing an abundance of citations to witnesses and documents that outline, elaborate on, and crystallize Defendants' fraud in this case. It makes clear that the Company faced a spiraling situation during the Class Period with customers leaving, revenue at risk, and its products reaching the point of diminishing returns. Rather than disclose any of this to the market, Defendants continued to make positive and misleading statements and misreport the true number of active locations. Meanwhile, behind the scenes, Defendants were scrambling to find any way to salvage the share price. Only once they could no longer hide the crumbling situation from investors did Defendants disclose a small part of the problems. The stock price plummeted and has never recovered.

This Court has already sustained a large part of the allegations and, for those sustained allegations, the complaint only adds to their strength. Those that the Court dismissed have now been buttressed by, first of all, citation to an applicable misstatement but also to actual evidence that runs contrary to this misstatement and, crucially, clearly and unmistakably establishes that Defendants had actual knowledge of the falsity of their statements. While a securities complaint is not required to contain evidence, this one does in spades, and that evidence supports every aspect of the securities fraud alleged.

In the face of such damning allegations, Defendants here resort to mischaracterizing the case as an "omissions case," twisting the words in certain select complaint paragraphs, and

---

[1]     Unless otherwise noted, all "¶_" cites are to the SAC and emphasis is added.

1

recasting prior arguments this Court has already rejected.  None of these arguments are persuasive nor do they change the fact that the complaint here sets forth a classic and cogent case of securities fraud with details far beyond what is expected or required, and should thus be sustained in its entirety.[2]

## I.    PROCEDURAL HISTORY

On January 13, 2023, Plaintiff filed the First Amended Complaint ("FAC") alleging Defendants materially misstated Olo's active locations count and omitted mention of Subway's January 2022 decision to terminate its partnership with Olo.  ECF No. 38.  In its July 25, 2023 Order, this Court sustained the FAC's active locations allegations and dismissed the omissions-based Subway allegations as protected by the PSLRA's safe harbor for forward-looking statements.  ECF No. 71 ("MTD Order").

Through discovery, Plaintiff uncovered evidence corroborating its original active locations and Subway theories, in addition to revealing the existence of an undisclosed slowdown at Olo, as well as Defendants' feverish efforts to forestall public knowledge of it.[3]  Now, the SAC bolsters the FAC's active locations allegations,[4] reorients the Subway theory as a misstatement-based

---

[2]    While Defendants portray this as Plaintiff's "third bite at the apple" (Mot. at 1), this is actually Plaintiff's second complaint that merely confirms and expands upon the allegations previously brought.  Additionally, it is worth noting that discovery in this case has not concluded and Plaintiff awaits a number of documents as well as depositions once the temporary stay has been lifted.

[3]    Defendants are simply incorrect that "[f]act discovery related to its Active Locations Claim is complete."  Mot. at 3, n. 2.  Plaintiff has at least three remaining depositions to take, including of the former President of Olo, and can ask questions related to active locations at those depositions.  Furthermore, Plaintiff has outstanding third-party subpoenas, including to Olo's auditor, that may further shed light on the inaccuracy of Defendants' active locations statements.

[4]    The FAC relied on several CWs, two of whom provided insight into Plaintiff's active locations allegations.  FAC, ¶¶84-91.  Defendants protest the SAC's citation to CWs 1 and 2, citing a letter Plaintiff's Counsel wrote in May 2023 stating Plaintiff's intent to not rely on CWs beyond

claim, and explains how Defendants' numerous misstatements fit within the context of Olo's undisclosed slowdown. And, crucially, through voluminous citations to internal documents, it demonstrates Defendants' knowledge of the magnitude of issues that had already occurred, thus defeating many of Defendants' arguments.

## II.    STATEMENT OF FACTS

### A.    Covid-Era Demand for Online Ordering Propelled Olo to a $520 Million IPO

Olo is a software company that connects individual restaurants to consumers directly through mobile and online ordering and/or indirectly through third-party applications. ¶¶6, 41-43. Most of Olo's restaurant clientele are quick service restaurants ("QSRs"), *i.e.*, fast-food, including Subway, Jack in the Box, and Carl's Jr. ¶¶45-46. Covid's rise at the start of 2020 dramatically increased demand for Olo's software, leading to a doubling of Olo's revenue and profit that year. ¶52. Olo seized on this, going public on March 17, 2021, issuing $520 million-worth of Olo's Class A common stock. ¶¶7, 53, 58. Olo's IPO Registration Statement and Prospectus ("Offering Documents") and Roadshow materials made several misstatements concerning active locations and enterprise brands. Throughout the Class Period, Defendants repeated these statements.

### B.    Olo's Inaccurately and Misleadingly Reported "Active Locations," a Key Metric for the Company

Starting with the Offering Documents and continuing through the Class Period, Olo repeatedly declared the importance of "active locations," a "key metric[]" Defendants defined as "a unique restaurant location *live* on the platform with at least one product module," stating that to be "live," a restaurant had to be "***utilizing***" an Olo's module. ¶48. In the Offering Documents and then at every earnings call and conference, and in every press release and Form 10-Q/10-K,

---

the pleadings. Def.s' Ex. CC at 2. That remains Plaintiff's intent, as the CW allegations are entirely corroborated by Defendants' documents and deposition testimony.

Defendants touted an ever-growing number of active locations.  *See* ¶¶121, 124 (64,000); ¶125 (69,000); ¶¶127-28, 130-31 (74,000); ¶¶133, 135 (76,000); ¶¶137-38 (79,000); ¶¶140-41, 144, 146 (82,000).  Active locations growth was the Company's single most important objective, because, as Defendant Benevides explained on Olo's first earnings call, "Our ability to grow revenue is a function of adding *more* restaurant locations to the platform."  ¶51.  The metric conveys past and current performance *and* future performance by reflecting "our ability to attract, engage, and monetize our customers and thereby drive revenue, as well as provide[] a base to expand usage of our modules," especially upselling. *Id.*

Unfortunately, during the Class Period, the active locations count was inflated for at least three reasons.

*First*, Olo prematurely included in its active locations count locations not yet onboarded. ¶60.  While Olo claimed it achieved "*100% franchisee participation*" and that brand locations go live "*all at the same time*," ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████[5] ████████████████████████████

████████████████████████████████████████████████████████

██████████████  This evidence fully corroborates the statements of CW1, a former Delivery Solutions Manager within Olo's Dispatch segment.  According to CW1, despite Olo's August 10, 2021 earnings announcement that Olo had onboarded Jack in the Box in 2Q 2021, at the end of the quarter, Jack in the Box had *at most* 200 live locations and on the date of the announcement,

---

[5]    Defendants repeatedly attempt to explain away the discrepancies in the number of active Subway locations.  But they cannot avoid the reality that in February 2020 Olo claimed to have contracted with Subway's "more than 20,000 U.S. restaurants" and yet at the time of the IPO over one year later had in truth contracted with only 16,000 Subway locations and was deployed in just 14,000 Subway locations. ¶¶18, 171 n.17.

about 30% of Jack in the Box locations were still ***not*** yet utilizing Olo products.  ¶61.

*Second*, Olo included inactive locations in its active locations count.  As CW1 explained, Olo has the ability to track whether a client has its Olo module turned on and the quantity of orders it received.  ¶66.  CW1 reported attending meetings where discrepancies between the number of reported active locations and the restaurant locations actually using Olo's modules were apparent.  *Id.*  CW1 listed Berg Hospitality Group as an example.  *Id.* ██████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████  This latter classification directly contradicts Defendants' numerous statements defining the term "active location" and seriously inflated the number of reported active locations.  *Id.*

*Third*, numerous locations elected to forgo using Olo's technology entirely, but were still included in Olo's active locations count, further belying Defendants' claims of "100% franchisee participation" and deployment in "all locations."  ¶49.  CW2, a former Olo Deployment Manager, listed CKE – parent company to Carl's Jr. and Hardee's – and its 4,000 locations as an example.  ¶71.  Despite only half of CKE locations electing to install Olo modules in 3Q 2021, CW2 reported that Olo included all CKE locations in its public active locations count.  *Id.* █████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

### C.    The "Build vs. Buy" Threat and Trend

[REDACTED]

### D.    Olo Lost Subway, Its Most Important Brand Client, in January 2022

Subway was unquestionably Olo's most important client. [REDACTED]

[REDACTED]

6

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████    Then, in Olo's FY 2021

Form 10-K filed with the SEC on February 25, 2022, Defendants issued a misleading risk warning,

merely warning about a hypothetical risk that had *already* come to pass:

> In addition, *if* our customers . . . reduce the number of locations using our platform, then our revenue *may* decline and our results of operations *may* be harmed.  Customers *may* not renew their contracts with us or reduce their use of our platform for any number of reasons, including . . . ***if they decide to build their own solution internally*** . . .

*Id*.

**E.    Olo's Slowdown and Hail Mary: "Olo Pay"**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

### F.    The Truth Begins to Emerge

After the markets closed on August 11, 2022, Defendants announced Subway's decision to end its contract, along with the 2Q 2022 deactivation of Olo's module by 2,500 Subway locations.  ¶¶25, 171.  As a result, Olo would have virtually *no* active locations growth in 2022.  ¶25.  That day, Defendants also lowered Olo's FY 2022 revenue guidance, falsely blaming "macroeconomic challenges," when in truth, the lowered guidance was a materialization of the undisclosed risk of Defendants' repeated misreporting of Olo's active locations count (¶¶27, 175), as "Olo's ability to grow revenue is a function of adding *more* restaurant locations to the platform." ¶51.

On August 12, 2022, Olo's share price fell approximately 36% to $8.26 from the prior day's closing price of $12.99, representing a loss of $480 million in market capitalization.  ¶28.

## III.    ARGUMENT

### A.    Legal Standard

"To state a claim under Section 10(b) and Rule 10b-5, the plaintiffs must allege that the defendants . . . made a materially false statement or omitted a material fact, with scienter, and that the plaintiffs' reliance on the defendants' action caused injury to the plaintiffs."  *In re Electrobras*

---

[6]    Olo Pay is a module that allows restaurants to process digital payments.  Def.s' Ex. R at 2.

*Sec. Litig.,* 245 F. Supp. 3d 450, 462 (S.D.N.Y. 2017). At this stage, the court must "accept all factual allegations . . . as true" and draw all reasonable inferences in the plaintiffs' favor. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007). The complaint "need only allege 'enough factual matter (taken as true)' to suggest that a violation occurred." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 179 (S.D.N.Y. 2010)*.* The standard does not change from the FAC to the SAC. *See In re Alstom SA,* 454 F. Supp. 2d 187 (S.D.N.Y. 2006).

### B.    Defendants Made Material Misstatements

Try as they might, Defendants cannot turn this into an entirely omissions-based case. Instead, the SAC lists numerous misstatements from the IPO through June 2022 concerning, *inter alia*: both the number and definition of "active locations," the performance, prospects, and financials of the Company, and enterprise customers (such as Subway) and their challenges, including their departures from Olo.

### 1.    *The Statements Are Not Protected by the PSRLA Safe Harbor*

Defendants claim that certain statements are protected by the PSLRA safe harbor. Mot. at 8-11. They suggest (in a footnote) the following statements are forward-looking: ¶150 ("the big takeaway here is a lot of upside . . . we see a lot of opportunity ahead . . ."); ¶152 ("we're extremely proud of our financial performance this quarter . . . .and we're even more excited about our position . . ."); ¶156 ("we feel pretty confident in being able to deliver high growth we define as 30% year-on-year growth"); and ¶162 ("through focusing on the enterprise restaurant segment, we have a 4x opportunity to capture all 300,000 enterprise restaurant locations.").[7] These are not protected by the PSLRA safe harbor for four distinct reasons.

---

[7]    Defendants therefore do not contend that all misstatements in the SAC are protected under the PSLRA safe harbor, nor could they. Even some of those referenced in their footnote are, on their face, not forward-looking. *See, e.g.* ¶154 ("The fourth quarter was a great close to our first

*First,* they are not fully forward-looking.  Each of them provides present or backward-looking justifications for the rosy outlooks.  At most, these are "mixed" statements and the present or backward-looking aspects of such statements are not protected.  *City of Providence v. Aeropostale, Inc.,* 2013 WL 1197755, at \*13 (S.D.N.Y. Mar. 25, 2013).  Recent decisions make this abundantly clear.  *See, e.g.*, *In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at \*27-28 (S.D.N.Y. July 31, 2023) (forward-looking statements about future guidance that also contained present statements such as "we are pleased by our fast start to the year" were not protected);  *In re Romeo Power Inc. Sec. Litig.,* 2022 WL 3701095, at \*2 (S.D.N.Y. Aug. 25, 2022) ("It is misleading to disclose expectations of future revenue while concealing present reasons – as opposed to future risks – why that revenue may never be realized.").   And, statements misrepresenting the factual underpinnings of a company's financial guidance are actionable.  *Rudani v. Ideanomics, Inc.,* 2020 WL 5770356, at \*5-6 (S.D.N.Y. Sept. 25, 2020); *In re Oxford Health Plans, Inc. Sec. Litig.,* 187 F.R.D. 133, 141 (S.D.N.Y. 1999); *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.,* 268 F. Supp. 3d 526, 548 (S.D.N.Y. 2017) (safe harbor "inapplicable" to quantitative revenue projections allegedly "based on a false premise: nonexistent revenue").

*Second,* even if they were considered forward-looking, they were not accompanied by adequate risk disclosures.  Defendants point to three specific risk disclosures, which all highlight this inadequacy.  Those three are: (1) "Our rapid growth may not be sustainable an depends on our ability to attract new customers . . ."; (2) "The circumstances that have accelerated the growth of our business stemming from the effects of the COVID-19 may not continue and our revenue may

---

fiscal year as a public company . . . Olo continued to drive momentum and beat expectations in the fourth quarter . . .").  Indeed, entire categories of misstatements in the SAC (including those listing the then-current number of active locations, those defining active locations, those stating SaaS is better than home built systems) are, on their face, not protected.

fluctuate in the near term;" and (3) "Customers may not renew their contracts with us . . . for any number of reasons . . . of if they decide to build their own solution internally . . ." Mot. at 10. To begin with, the first is simply boilerplate – all companies face this risk at all times. *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 487, 515-516 (S.D.N.Y. 2013). But, more importantly, all were misleadingly presented as hypothetical. What is now patently clear in the SAC is that these risks had already come to pass. ████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Moshell v. Sasol Ltd.,* 481 F. Supp. 3d 280, 289 (S.D.N.Y. 2020) (cautionary language that project schedule "may be affected by delays or cost overruns" misleading where delays had "already transpired"); *Plumbers & Pipefitters Nat'l Pension Fund v. Davis,* 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020) (warning that company "may" experience excess inventory misleading where plaintiffs plausibly alleged defendants already knew about inventory build).

*Third,* assuming, arguendo, that Defendants did include meaningful cautionary language, the safe harbor does not apply because the statements were made by those with actual knowledge that the statements were false or misleading. *Freudenberg*, 712 F. Supp. 2d 193. In October 2021, Benevides declared "a lot of upside . . . we see a lot of opportunity ahead" while in November 2021, Glass said "we're extremely proud of our financial performance this quarter . . . and we're even more excited about our position . . ." ¶¶150, 152. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Similarly, in May 2022,

11

Benevides stated "we feel pretty confident in being able to deliver high growth we define as 30% year-on-year growth" (¶156), ███████████████████████████████████████████ ███████████████████████ ¶105. Finally, Glass stated in October 2021 that "through focusing on the enterprise restaurant segment, we have a 4x opportunity to capture all 300,000 enterprise restaurant locations" (¶162) when, at this point in time, ████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ This case is thus aligned with *In re Vivendi, S.A. Sec. Litig.,* 838 F.3d 223, 249 (2d Cir. 2016) where plaintiffs presented sufficient evidence to show that the company knew that statements about future cash flow conflicted with internal forecasts and thus were misleading.[8]

*Fourth*, every statement identified is misleading by omission because of Defendants' failure to state material facts regarding the inaccurate number of active locations, the downward spiral at the Company, and the loss of major customers. The safe harbor is inapplicable to material omissions. *Galeston v. OneMain Holdings, Inc.,* 348 F. Supp. 3d 282, 304 (S.D.N.Y. 2018).

2.     *The SAC Alleges an Actionable Misstatement Regarding Subway*

Defendants entirely misconstrue the SAC and claim there is no actional misstatement regarding Subway, continuing to treat this as an omissions-based theory. Mot. at 11. This is simply wrong. The SAC now alleges that, on February 25, 2022, Olo issued a ***misleading risk***

---

8    The fact that Defendants had actual knowledge that their allegedly forward-looking statements were false makes this case inapposite to *Robeco Cap. Growth Funds SICAV-Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 2023 WL 2711342 (S.D.N.Y. Mar. 30, 2023) and *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003), *aff'd sub nom. Nadoff v. Duane Reade, Inc.*, 107 F. App'x 250 (2d Cir. 2004). In both of those cases, the courts expressly stated that an exception to the PSLRA safe harbor exists when "the forward-looking statement was made with actual knowledge that it was false." In neither case was actual knowledge seriously alleged, though, unlike here.

*warning*, merely warning the market about a hypothetical risk that had *already* passed:

> In addition, *if* our customers . . . reduce the number of locations using our platform, then our revenue *may* decline and our results of operations *may* be harmed. Customers *may* not renew their contracts with us or reduce their use of our platform for any number of reasons, including . . . *if they decide to build their own solution internally*.

¶¶20, 21, 165. This was patently false and misleading because Subway had already informed Olo it was: ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

In their brief, Defendants do not address these points. Instead, they wrongly argue that the Court held that "substantively identical language was 'meaningful cautionary language' sufficient to invoke the safe harbor." Mot. at 11. Defendants are wrong. They are liable because they failed to disclose that the warned-of risks had *already* occurred. As discussed above, it is well-settled that "cautionary words about future risk cannot insulate from liability an issuer's failure to disclose that the risk has, in fact, materialized." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021); *Facebook*, 986 F. Supp. 2d at 515 ("Cautionary language may protect an issuer from liability; however, '[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired.'") (quoting *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 130 (2d Cir. 2011)). This is because "to warn that the untoward may occur when the event is contingent is prudent" but "to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400 (S.D.N.Y. 2005).

And, the SAC clearly establishes that Subway was a "material" customer despite Defendants' repeated arguments to the contrary. ████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Moreover, as this Court held in its MTD Order, materiality "is rarely a basis for dismissal on the pleadings."  MTD Order at 11; *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 378 (S.D.N.Y. 2015).  Indeed, misstatements are material at this stage "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 588 (S.D.N.Y. 2010).  On their second attempt, Defendants still come nowhere close to meeting this exacting standard, as far less quantitatively significant misstatements have been held to be material.  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 713, 718-19 (2d Cir. 2011) (decline in value of assets totaling "a mere" 0.4% and 3.6% of "[total] assets under management at the time of the IPO" were material).[9]

Furthermore, the market reaction following the disclosure that Subway had opted to end its contract with Olo demonstrates that the market viewed Subway's departure – and its impact on Olo's operations – as material.  ¶¶196-97; *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 16 (2d Cir. 2011) (citing "precipitous decrease" in share price that occurred after disclosure of truth as evidence of materiality).[10]  ████████████████████████████

---

[9]     *See also SEC v. Rio Tinto plc*, 2019 WL 1244933, at *12 (S.D.N.Y. March 18, 2019) (statement relating to transaction amounting to less than 5% of assets were material); *Struogo v. Barclays PLC*, 105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015) (misstatement of revenue opportunity accounting for less than 0.1% of Barclays' total revenue was material).

[10]     *See also comScore*, 268 F. Supp. 3d at 550 ("significant stock drop further supports an inference of materiality"); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 302 (S.D.N.Y. 2010) (when "a stock price decline[s] followed a corrective disclosure, a court can infer that the information contained in that disclosure was material").

████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████   This amounts to a known trend or

uncertainty that Defendants could reasonably have expected to have a material impact on revenue.

*See generally Litwin*, 634 F.3d at 716.

████████████████████████████████████████████████████████

███████████████████████████████████████████████   *See In re*

*Riskified Ltd. Sec. Litig.*, 2023 WL 3791653, at \*7-8 (S.D.N.Y. June 2, 2023) (dismissing trend

allegations where complaint only identified one client to allege "greater proportion of risky

clients"). ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

Finally, Defendants claim that several of the remaining statements – specifically those

related to TAM and to the financial guidance – were not false or misleading because the SAC

(incredulously) does not allege specific facts impugning their accuracy.  Mot. at 13-14.  This could

not be further from the truth.  For TAM, it was entirely misleading for Defendants to sell to the

15

market a $15 billion TAM figure with the U.S. enterprise group (¶154) when they ███

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ These statements were thus clearly false.[11]

### 3.     The Alleged Misstatements Were Not Puffery or Opinions

Defendants next argue that certain statements are inactionable because they involved puffery or statements of opinion.  Mot. at 22.  Defendants are wrong on all counts.

***Puffery***.   Defendants argue that certain challenged statements constitute "non-actionable 'puffery.'"  Mot. at 22.  Whether a statement is puffery "'depends on all relevant circumstances of the particular case,' and is generally not an appropriate basis [for] dismiss[al]." *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 182 (S.D.N.Y. 2003); *Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 485 (S.D.N.Y. 2014) (Rakoff, J.).  Importantly, statements like those at issue here, that are "'clearly designed to distinguish the company' to the investing public in some

---

[11]     Defendants' authority does not dictate a different conclusion.  Here, Defendants acknowledged a link between actual TAM and the need for enterprise customers, thus giving the "causal connection" lacking in *Steamfitters Loc. 449 Pension Plan v. Skechers, U.S.A., Inc.,* 412 F. Supp. 3d 353, 367 (S.D.N.Y. 2019).  And, unlike in *In re Nielsen Holdings Sec. Litig.,* 510 F. Supp. 3d 217, 231 (S.D.N.Y. 2021), the SAC clearly shows that the Company did not believe it would see the revenue growth.

16

meaningful way" are not puffery. *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 229 (S.D.N.Y. 2019) (quoting *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 98 (2d Cir. 2016)).

The two alleged "puffing" statements that Defendants quote in their brief illustrate why their arguments fail. The statements from Benevides and Glass that "I think from a high level, the underlying fundamentals of the business remain really strong" (¶154) and "[I]t has been our long held conviction at Olo that SaaS is a better alternative to homegrown solutions," (¶163) are simply not puffery. First of all, the second one is a statement of fact and does not involve any puffing. Furthermore, both clearly invited investors to believe that the Company was doing swimmingly –

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████    *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statements that inventory situation was "in good shape" or "under control" were not puffery because they were made when defendants knew the contrary was true); *Cheng v. Canada Goose Holdings Inc.*, 2021 WL 3077469, at *6 (S.D.N.Y. July 19, 2021); *see In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *22 (S.D.N.Y. Apr. 2, 2020), *aff'd sub nom. Bristol Cnty. Ret. Sys. v. Adient PLC*, 2022 WL 2824260 (S.D.N.Y. July 20, 2022) (statements like "big improvement" or "upwards trajectory" are broad statements of corporate optimism without "specific[s]" that are actually false or misleading); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 89-90 (S.D.N.Y. 2022) (statements like "very, very, very solid platform" are self-congratulatory remarks if the "[c]omplaint does not explain how such remarks would have misled a reasonable investor").

***Opinions***. Defendants next assert that statements about Olo's 2022 revenue guidance, Defendants' confidence in Olo's business model, and Defendants' assessment of Olo's growth

17

opportunity are statements of opinion. Mot. at 22. As explained above, these statements must be viewed in the context of Olo's inaccurate active locations count and Subway's pending departure — both of which Defendants had knowledge of. It is this robust evidence of Defendants' knowledge of these then-occurring issues that both distinguish the SAC from the FAC and rebuts almost all of Defendants' arguments and cases. *See, e.g.*, *Greco v. Qudian Inc.*, 2022 WL 4226022, at *13 (S.D.N.Y. Sept. 13, 2022) (finding statements of opinion after plaintiff failed to "allege facts that show that Defendants did not believe these opinions and expectations at the time they made the statements"); *Kocourek v. Shrader*, 391 F. Supp. 3d 308, 327–28 (S.D.N.Y. 2019) (same). None of these negative facts were disclosed to investors, even though the "omit[ted] information" made Defendants' purported "opinions" patently misleading to a reasonable investor, and thus actionable. *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *13 (S.D.N.Y. Aug. 11, 2021); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund.*, 575 U.S. 175, 188-89 (2015) (investors "expect[] not just that [the speaker] believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's possession at the time").

### 4. *Defendants Misstated the Number and Definition of Active Locations*

This Court's MTD Order (at 7–11) sustained the FAC's active locations allegations, rejecting Defendants' falsity and materiality assertions. The upheld-FAC provided examples of a handful of Olo's client brands (notably, CKE and Jack in the Box) and relied heavily on two CWs, but the SAC now provides several further examples ***from Defendants' own documents and deposition testimony***, which only corroborate the CW allegations. *See, e.g.*, ¶¶63-64, 72, 75. In the face of these copious examples, Defendants make a few anemic arguments. First, they improperly ask the Court to accept their own counter-narrative. For example, Defendants claim that the SAC relies on a "narrow" definition of an active location and places too great an emphasis

18

on Benevides' statement that "we count a location active in the quarter if they've had an order in the quarter." Mot. at 18. This is inaccurate. The SAC quotes the definition and explanation of what constitutes an "active location" from *every single SEC filing*, as well as each earnings call and press release throughout the entire Class Period. ¶¶121-46.

Defendants also again attempt to state that the blatant misrepresentations about active locations (and in particular about "100% franchise participation" and selling to "the entire location base") are somehow immaterial. Mot. at 21-22. However, "[m]ateriality 'is rarely a basis for dismissal on the pleadings,'" MTD Order at 11 (quoting *Petrobras*, 116 F. Supp. 3d at 378), and Defendants *repeated* misrepresentations evinces materiality. *Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381, 392 (S.D.N.Y. 2020) (Rakoff, J.). Again, to succeed on these grounds, the alleged misstatement must be "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *CitiGroup*, 723 F. Supp. 2d at 588. The Court rejected such an attempt before and should do so again.[12]

Defendants' contention that paragraph 67 somehow proves their defense and is grounds for this Court to reverse its prior opinion is completely unfounded. Mot. at 17-18, 20-21. Defendants' active locations fraud took several shapes, including the inclusion of *inactive* locations. ¶¶65-67.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ Nor does Plaintiff "concede[]" Defendants'

---

[12] Defendants make a half-hearted attempt to reiterate their prior argument that the active locations misstatements are quantitatively immaterial. Mot. at 21. The Court previously rejected this argument (MTD Order at 11) when the FAC had fewer examples of Defendants' active locations fraud than the SAC. ¶¶60-75.

calculation was "correct" for the other three modules, as the Mot. (at 17) contends. ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ ¶¶60-75.

At no point whatsoever does the SAC disclaim any allegation of fraud in Olo's active locations

count by virtue of Defendants' maintenance of two active locations classifications.

Defendants' final attack on the SAC's active locations allegations involves recycling their

arguments about CWs 1 and 2, claiming neither were pled with sufficient particularity. Mot. at

19. Again, this Court has already found that not to be the case. *Id.* at 10. It is black-letter law that

information obtained from CWs should be considered if the CWs "are described in the complaint

with sufficient particularity to support the probability that a person in the position occupied by the

source would possess the information alleged." *Novak,* 216 F.3d at 314; *N.J. Carpenters Health*

*Fund v. The Royal Bank of Scot., PLC,* 709 F.3d 109, 124 (2d Cir. 2013). Nor is there a prohibition

on courts crediting allegations based even on indirect knowledge. *City of Warren Police & Fire*

*Ret. Sys. v. World Wrestling Ent. Inc.,* 477 F. Supp. 3d 123, 132 (S.D.N.Y. 2020) (Rakoff, J.)

("[T]he heightened demands of the PSLRA will often require plaintiffs to rely on the testimony of

confidential sources, even where those sources offer indirect knowledge, that is, information and

belief that is hearsay but plausible."). Therefore, none of Defendants' attacks on the active

locations claims dictate a different outcome from that already reached by this Court.

### C. The SAC Alleges Overwhelming Evidence of Scienter

A plaintiff can plead scienter "either [] by alleging facts to show that defendants had both

motive and opportunity to commit fraud, or . . . that constitute strong circumstantial evidence of

20

conscious misbehavior or recklessness." *Novak*, 216 F.3d at 307.[13] "Recklessness may be shown by allegations that defendants 'knew facts or had access to information suggesting that their public statements were not accurate or failed to check information they had a duty to monitor.'" *In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 833 (S.D.N.Y. 2017). "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs,* 551 U.S. at 324. Instead, "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Id.* at 310, 322-23 (emphasis in original); *see also Matrixx Initiaives, Inc v. Siracusano*, 563 U.S. 27, 48 (2011) (courts must review scienter allegations "holistically"). Moreover, "at the motion to dismiss stage, a tie on scienter goes to the plaintiff." *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012).

The FAC sufficiently alleged Defendants' scienter. MTD Order at 15-17 (sustaining recklessness and corporate scienter allegations). The SAC only adds to that inference with allegations about Glass and Benevides' indisputable knowledge with respect to every issue in the Action:

- ***Active Locations.***

- ***Subway.***

---

[13]      Given the Court's substantiation of the FAC's conscious misbehavior/recklessness and corporate scienter allegations (MTD Order at 15-17), this scienter analysis focuses on those theories. However, Plaintiff maintains the FAC's motive and opportunity allegations – stock sales and corporate acquisitions – to avoid waiving those arguments at later stages. *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018).



- *Olo's Slowdown.*

- *The "Build vs. Buy" Threat & Trend.*

- *Olo Pay.*

*See also* ¶¶191-92 (demonstrating Glass' intimate involvement in Olo's day-to-day operations, key business partnerships and brand negotiations, attendance at Olo's annual customer conference, and regular client communications, including regarding onboarding issues). Such scienter allegations are sufficient. *Novak*, 216 F.3d at 311.[14] And, even if Glass and Benevides somehow were unaware of the above-stated issues – and were not reckless – scienter still attaches to Olo by

---

[14]    Therefore, Defendants' use of *In re Garrett Motion Inc. Sec. Litig.*, 2023 WL 2744029, at *15 (S.D.N.Y. Mar. 31, 2023), where plaintiffs relied on "optimistic statements" in asserting defendants' recklessness, is inapposite. The SAC relies on numerous Olo documents, deposition testimony, and multiple CWs. *Supra*, §II.B-E.

virtue of "corporate scienter," *Teamsters Loc. 445 Freight Div. Pen. Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008), where "the intent of an executive who acted with scienter can be imputed to the company." *Lockheed Martin*, 875 F. Supp. 2d at 369. Here, the scienter of numerous management-level employees – including the Subway meeting attendees (¶¶94-98), Olo's CCO (¶¶102, 104, 114), and the FP&A Manager (¶67) may be attributed to Olo. MTD Order at 17.

Defendants merely recycle their prior scienter arguments that the Court has already rejected. MTD Order at 15-17. Defendants again implausibly disclaim any knowledge of the alleged issues and inaccuracies. Mot. at 23-24. However, documents cited in the SAC dictate otherwise, and it is well settled that if an executive speaks about a topic of "critical importance," they cannot later pretend to have lacked any knowledge about it. *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 2010 WL 3910265, at \*6, \*18-19 (S.D.N.Y. Sept. 29, 2010). Such attempts should be rejected again.

Finally, Defendants also incorrectly characterize this Action as "an omission case" and thus assert that recklessness requires a duty to disclose. Mot. at 22-23. This is a primarily misstatement case. *Compare* SAC, §V.I. *with* FAC, §IV.D. And therefore, Plaintiff has more than met its burden to allege recklessness.[15] *World Wrestling Ent.*, 477 F. Supp. 3d at 135.

### D.    The AC Adequately Alleges Loss Causation

The burden of pleading loss causation "is not a heavy one." *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 187 (2d Cir. 2015). Pleading some indication of the loss will satisfy the applicable Rule 8 standard. *In re Fairway Grp. Holding Corp. Sec. Litig.,* 2015

---

[15]    On this basis, the Motion's citations (at 22-23) to *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213 (2d Cir. 2020) and *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001) – both largely omissions-based cases – are inapposite.

WL 249508, at *16 (S.D.N.Y. Jan. 20, 2015).  "All that is required at this stage is a showing by Plaintiff that Defendants' misstatements concealed something from the market, and that its disclosure negatively affected the value of the security."  *In re Moody's Corp. Sec. Litig.,* 599 F. Supp. 2d 493, 512 (S.D.N.Y. 2009).  Plaintiff amply meets that here.

This Court previously found that Plaintiff had alleged sufficient loss causation, listing the following allegations (MTD Order at 11-12):

- Olo's share price fell by 36% on August 12, 2022;

- Olo's reported number of active locations remained unchanged from prior quarter;

- Olo told the public Subway would terminate its relationship with Olo; and

- Olo revised its revenue guidance for FY 2022.

Each of those allegations remains in the SAC.  Furthermore, this Court held that "Plaintiff has adequately alleged the announcement of lowered FY 2022 revenue was due to the 'misreporting of Olo's active locations count.'"  *Id.* at 12.  These same allegations are still in the SAC.  *See,* ¶¶195-97.  Therefore, Plaintiff still alleges that the lowered revenue guidance was due, at least in part, to the misreporting of Olo's active locations count.  Nothing has changed. Defendants curiously point to paragraph 67 of the SAC to claim that some shift has occurred, but, as discussed above, all that paragraph does is point out that, for a number of the modules,

██████████████████████████████████████████████████████

████████████████████████████████  This adds to the loss causation allegations if anything.  Finally, they suggest that there are no loss causation allegations for the business performance allegations because "all" that was announced on August 11, 2022 was lowered guidance and the loss of one customer.  Mot. at 25.  However, the SAC sets forth the detailed reasons and consequences for the lowered guidance and the loss of Subway.  ¶¶170-81.  It shows

24

that Defendants concealed the negative financial performance and loss of customers from the market. *Id.* Nothing more is required.

## IV.    CONCLUSION

As the SAC adequately pleads §§10(b) and 20(a)[16] claims, Defendants' motion must be denied in its entirety.

Dated:  September 7, 2023                    Respectfully submitted,

                                             **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                             *s/ Amanda F. Lawrence*
                                             Amanda F. Lawrence
                                             Patrick J. Coughlin
                                             Donald A. Broggi
                                             Jeffrey P. Jacobson
                                             Mandeep S. Minhas
                                             The Helmsley Building
                                             230 Park Avenue, 17th Floor
                                             New York, NY 10169
                                             Telephone: (212) 223-6444
                                             Facsimile:  (212) 223-6334
                                             alawrence@scott-scott.com
                                             pcoughlin@scott-scott.com
                                             dbroggi@scott-scott.com
                                             jjacobson@scott-scott.com
                                             mminhas@scott-scott.com

                                             *Counsel for Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund*

---

[16]    Because the SAC adequately pleads a primary violation, and the Individual Defendants' culpability in the primary violation, it also sufficiently pleads a Section 20(a) claim. *See In re Delcath Sys., Inc. Sec. Litig.,* 36 F. Supp. 3d 320, 336 (S.D.N.Y. 2014).

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 *s/ Amanda F. Lawrence*
Amanda F. Lawrence

26