**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>       v.<br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br>                Defendants. | Case No. 1:22-cv-08228-JSR |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

Deborah S. Birnbach
Jennifer B. Luz
Katherine G. McKenney (*pro hac vice*)
Justin D. Ward
Brendan Blake (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com
KMcKenney@goodwinlaw.com
JWard@goodwinlaw.com
BBlake@goodwinlaw.com

*Counsel for Defendants Olo Inc., Noah Glass, and Peter Benevides*

**TABLE OF CONTENTS**

**Page**

**ARGUMENT** ........................................................................................................... **2**

**I.    The SAC Fails To Allege Any False Or Misleading Statements Or Omissions. .......... 2**

    **A.    Alleged Misstatements Concerning Olo's Future Growth Are Protected By The PSLRA Safe Harbor And Should Be Dismissed Again. ............................................... 2**

    **B.    The SAC Fails To Allege Any Other Material Misstatement or Omission. ............. 6**

    **C.    Many Alleged Statements Are Non-Actionable Puffery And/Or Opinions. ............. 7**

    **D.    The SAC Fails To Allege Any Active Location-Related False Statements. .............. 7**

**II.    The SAC Fails To Plead A Strong Inference Of Scienter. ............................................. 9**

**III.    The SAC Does Not Adequately Allege Loss Causation. ............................................... 10**

**CONCLUSION** ..................................................................................................... **10**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adient plc Sec. Litig.*,
2020 WL 1644018, at *19, *22 (S.D.N.Y. Apr. 2, 2020) ......................................................2, 7

*In re AppHarvest Sec. Litig.*,
2023 WL 4866233, at *33 & n.12 (S.D.N.Y. July 31, 2022) ................................................3, 7

*Cheng v. Can. Goose Holdings Inc.*,
2021 WL 3077469, at *7 (S.D.N.Y. July 19, 2021) .................................................................7

*City of Livonia Empls' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
711 F.3d 754, 759–61 (7th Cir. 2013) ......................................................................................8

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755, at *13 (S.D.N.Y. Mar. 25, 2013) ..............................................................2

*Colbert v. Rio Tinto PLC*,
824 F. App'x 5, 10 n.5 (2d Cir. 2020) ......................................................................................3

*In re Dynagas LNG Partners LP Sec. Litig.*,
504 F. Supp. 3d 289, 318 (S.D.N.Y. 2020).............................................................................4

*Elliott Assocs., L.P. v. Hayes*,
141 F. Supp. 2d 344, 352 (S.D.N.Y. 2000)..............................................................................8

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526, 548 (S.D.N.Y. 2017)..............................................................................3

*Galestan v. OneMain Holdings, Inc.*,
348 F. Supp. 3d 282, 304 (S.D.N.Y. 2018)..............................................................................6

*In re Garrett Motion Inc. Sec. Litig.*,
2023 WL 2744029, at *17–20 (S.D.N.Y. Mar. 31, 2023) .......................................................6

*Jackson v. Abernathy*,
960 F.3d 94, 99 (2d Cir. 2020).................................................................................................10

*Moshell v. Sasol Ltd.*,
481 F. Supp. 3d 280, 288–89 (S.D.N.Y. 2020)........................................................................4

*Nielsen Holdings PLC Sec. Litig.*,
510 F. Supp. 3d 217, 231 (S.D.N.Y. 2021)..............................................................................5

*Novak v. Kasaks*,
   216 F.3d 300, 315 (2d Cir. 2000)................................................................................7

*In re Oxford Health Plans*, *Inc.*,
   187 F.R.D. 133, 141 (S.D.N.Y. 1999) ........................................................................3

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
   2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020)................................................4

*Robeco Cap. Growth Funds SICAV - Robeco Glob. Consumer Trends v. Peloton*
   *Interactive, Inc.*,
   2023 WL 2711342, at *14 (S.D.N.Y. Mar. 30, 2023) ...............................................4

*Rudani v. Ideanomics, Inc.*,
   2020 WL 5770356, at *6 (S.D.N.Y. Sept. 25, 2020)..................................................3

*In re Signet Jewelers Ltd. Sec. Litig.*,
   389 F. Supp. 3d 221, 231 (S.D.N.Y. 2019)................................................................7

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223, 247–49 (2d Cir. 2016)........................................................................5

## Other Authorities

Fed. R. Civ. P. 11....................................................................................................................8

Olo's double-digit growth during the Class Period cannot be transformed into securities fraud by cherry picked, out-of-context soundbites.[1] If anything, Plaintiff's claims are now even more outlandish—essentially accusing Olo of deceiving investors about the viability of its entire business model, despite Olo's undisputed growth and pages of detailed risk disclosures. Plaintiff's attempt to rehabilitate dismissed claims concerning forward-looking statements and Subway fails.

The Opposition also blatantly admits that the basis for this Court's prior decision allowing the Active Locations Claim to proceed—namely, the allegations from two confidential witnesses ("CWs")—was nothing more than smoke and mirrors. Rather than explaining this to the Court, Plaintiff asks this Court to once again rely on these CWs to pass its pleading hurdle, while at the same time admitting that it will immediately abandon these CWs again after the pleading stage. And while Plaintiff alludes to purported facts "corroborating" the CW allegations, it alleges none in the SAC. This is because none exists: if it did, Plaintiff surely would have alleged it. Plaintiff has not cited any securities class action where a Plaintiff immediately abandoned its reliance on the CWs as soon as its case survived dismissal, only to brazenly reinsert those CW allegations into a later SAC without any intention of *actually calling* the CWs to testify. These actions are particularly egregious here, where Plaintiff knows through discovery that, due to their roles, the CWs have no information that would shed light on the allegedly misleading statements. Instead, the SAC relies on and incorporates the testimony of the Olo employee who actually possesses such knowledge—Ms. Jeon—but her testimony, when not distorted by Plaintiff, readily explains how

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Opening Brief" or "MTD") (ECF No. 75). Plaintiff's Opposition to Defendants' Motion is referred to as the "Opposition" or "Opp." (ECF No. 80). "Ex." refers to exhibits attached to the Declaration of Jennifer B. Luz (ECF No. 76) or the accompanying Reply Declaration of Jennifer B. Luz. All (i) internal alterations, citations, and quotation marks are omitted unless otherwise noted; and (ii) emphasis is added.

Olo's active locations counts are calculated consistently with its public disclosures. The incorporated testimony flatly contradicts the soon-to-be abandoned CWs, and the Active Locations Claim cannot survive this motion to dismiss.

This case has already consumed enough of the Court's and Defendants' time and resources, and this case is ripe for dismissal in its entirety and with prejudice.

## ARGUMENT

**I.      The SAC Fails To Allege Any False Or Misleading Statements Or Omissions.**

**A.      Alleged Misstatements Concerning Olo's Future Growth Are Protected By The PSLRA Safe Harbor And Should Be Dismissed Again.**

The Court has already ruled that Defendants' forward-looking statements regarding Olo's projections of future growth were non-actionable because they fall within the PSLRA safe harbor. After conducting full discovery on these dismissed claims, Plaintiff re-hashes many of the same, unsuccessful arguments it made in response to Defendants' initial motion to dismiss, but there is no reason for the Court to revisit its prior decision.

*First*, even if some of the forward-looking statements alleged are "mixed" statements including "present or backward-looking aspects" as Plaintiff argues (Opp. at 10), the forward-looking aspects of such "mixed statements" are still protected by the PSLRA safe harbor. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *13 (S.D.N.Y. Mar. 25, 2013). Likewise, embedded present tense statements—*e.g.*, "we're extremely proud of our financial performance this quarter" (SAC ¶ 152)—that "do[] not provide specific information about the current situation, but merely say[] that, whatever the present situation is, it makes the future projection attainable, . . . [are] too vague to be actionable apart from the future projection." *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *19 (S.D.N.Y. Apr. 2, 2020). And, to the extent any of the alleged forward-looking statements contain "severable" present or backward-looking

2

statements, such statements are not actionable for independent reasons. *See* MTD at 13–17; Ex. B; *see also In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *33 & n.12 (S.D.N.Y. July 31, 2022) (dismissing statements of historical fact).[2]

*Second*, the Court already held that Olo's disclosures related to the potential loss of customers were sufficiently detailed to constitute meaningful cautionary language under the safe harbor even after Subway first threatened to transition off of the platform. MTD Op. at 6. Plaintiff's argument that these same disclosures—and the extensive detailed and specific risk disclosures Olo made that covered the risks complained about in the SAC (*see* Ex. A[3])—simply ignores this Court's prior ruling. Opp. at 10–11. Nothing in the SAC plausibly suggests any warned-of risk had materialized at the time Defendants made any of the alleged forward-looking statements, as the Opposition argues. The SAC does not allege that a single Olo customer (including Subway) had left Olo's platform or successfully replaced Olo's products with an "in-house" software solution during the Class Period. The SAC identifies just three out of 600-plus customers who contemplated such a move. *See* MTD at 12–13. Even if dozens of customers reduced or stopped using Olo's products, Olo's risk factor disclosure that "*if our customers . . . reduce the number of locations using our platform, then our revenue may decline . . . [and c]ustomers may not renew their*

---

[2] Nor does Plaintiff supply any reason why the SAC's indisputably forward-looking statements related to Olo's FY 2022 revenue guidance are not protected by the safe harbor; the SAC fails to allege any facts that challenge the "factual underpinnings" of Olo's guidance statements. *See* MTD at 14–15. Plaintiff's reliance on *Rudani v. Ideanomics, Inc.*, 2020 WL 5770356, at *6 (S.D.N.Y. Sept. 25, 2020), and *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 548 (S.D.N.Y. 2017), is misplaced because in both cases—unlike here—plaintiff made specific allegations as to why defendants lacked a reasonable basis for their guidance statements at the time they were made. And in *In re Oxford Health Plans*, *Inc.*, 187 F.R.D. 133, 141 (S.D.N.Y. 1999), the plaintiff did not challenge the accuracy of the company's financial projections or estimates.

[3] Risks related to issues like TAM and in-house software development were disclosed, and analyst reports show that investors understood these risks. Ex. FF. The Court may take judicial notice "of the fact that there was such coverage and reports by investment analysts." *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 10 n.5 (2d Cir. 2020).

*contracts with us or reduce their use of our platform for any number of reasons, including . . . if they decide to build their own solution internally*" would still be an accurate statement with respect to remaining customers, as this is an inherent risk for every customer purchasing, rather than building, software. Ex. T at 20. Nor can this risk factor reasonably be read as a guarantee that customers would not reduce use or stop using the platform. *See In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 318 (S.D.N.Y. 2020) (no "reasonable investor would have been misled into thinking that . . . statements regarding cash flow . . . necessarily meant that the revenues from [specific products] . . . would remain constant").[4]

Moreover, Olo's actual and undisputed financial growth during the Class Period[5] belies Plaintiff's assertion that the risk factors related to the Covid-19 pandemic were inadequate because "the Covid wave was long over," and that as a result Olo had entered a "downward spiral." *See* MTD at 6–8. There can be no actionable forward-looking statements where "the entirety of the public disclosures . . . actually reveal that the challenged statements were entirely consistent with actual financial results." *See Robeco Cap. Growth Funds SICAV - Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 2023 WL 2711342, at *14 (S.D.N.Y. Mar. 30, 2023).[6]

*Third*, Plaintiff's argument that Defendants had "actual knowledge" that their forward-looking statements were false and misleading (Opp. at 11–12) is nothing more than an attempt to

---

[4] Plaintiff's attempt to recast its dismissed Subway Claim as a misleading disclosure of a materialized risk fails for the same reason. Even if Plaintiff alleged a material omission related to a possible Subway Transition, it still fails for the reasons set forth in the Opening Brief, including because the SAC fails to allege that Subway contributed material revenue. *See* MTD at 11–13.

[5] *See*, *e.g.*, Ex. N (36% year-over-year revenue growth in Q3 2021); Ex. R (31% year-over-year revenue growth in Q4 2021); Ex. U (18% year-over-year revenue growth in Q1 2022); Ex. Z (27% year-over-year revenue growth in Q2 2022).

[6] This stands in stark contrast to *Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 288–89 (S.D.N.Y. 2020) and *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020), where plaintiffs pleaded facts that the risk already came to pass.

plead fraud by soundbite. *See* MTD at 13–14. But these soundbites divorced of context and strung together to present a misleadingly negative view of Olo's business fall far short of establishing that Defendants had actual knowledge that any specific forward-looking statement was false or misleading ***at the time it was made***.[7] Plaintiff's examples illustrate the point. Mr. Benevides's generic statements in November 2021 about being "proud" of Olo's Q3 performance and "excited about our position" (SAC ¶ 152) were not knowingly false just because (1) ███████████

████████████████████████████████████████████ (*id.* ¶¶ 101–02); (2) ████████████████████████

████████████████████████████████████ (*id.* ¶ 104); or (3) ███████

████████████████████████████████████

████ (*id.* ¶ 107).[8] Likewise, Mr. Benevides's statement from May 2022 that "we feel pretty confident in being able to deliver high growth we define as 30% year-on-year growth" (*id.* ¶ 156), is not plausibly alleged to be knowingly false just because ████████████████████

████████████████████████████████ (*id.* ¶ 105).

And statements about Olo's total market ***opportunity*** of 300,000 enterprise restaurant locations (*id.* ¶ 162) are not knowingly false based on allegations that (1) Olo faced competition in the enterprise market or (2) Olo allegedly had only penetrated a small portion of that market to date.[9]

---

[7] *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 247–49 (2d Cir. 2016), is inapposite, because the court held there was ***contemporaneous evidence*** to support the jury's finding that defendants knew their forward-looking statements were false and misleading at the time they were made.

[8] ████████████████████████████████████ (SAC ¶ 107), ████████████
████████████████████████████. The Company ***beat*** its public revenue guidance in Q2, Q3, and Q4 2021 and Q1 2022. *See* Exs. F; I; N; R; U.

[9] Even if the SAC adequately alleged that Olo faced new challenges during the Class Period, it fails to allege why those challenges made any particular forward-looking statement false or misleading. *See Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 231 (S.D.N.Y. 2021) (revenue growth statements not actionable where plaintiffs "d[id] not point to particular facts or data suggesting that Defendants did not believe [their statements]" despite negative revenue trend).

*Fourth*, Plaintiff repeats the baseless argument that the PSLRA safe harbor is inapplicable to material omissions. Opp. at 12. As Plaintiff's cases make clear, however, Plaintiff must still plead that Defendants had actual knowledge of the supposedly omitted material facts to avoid the safe harbor. *See Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 304 (S.D.N.Y. 2018) (safe harbor inapplicable where plaintiff alleged that Defendants failed to disclose known issues with integrating recent acquisition). But, the SAC has failed to plead that Defendants knew *any* of their forward-looking statements were false and misleading when made.

**B.    The SAC Fails To Allege Any Other Material Misstatement or Omission.**

Plaintiff's arguments regarding the alleged false statements relating to Olo's FY 2022 revenue guidance and growth projections are equally unavailing. Opp. at 15–16. The Opposition fails to point to any allegation that shows that Olo's FY 2022 revenue guidance was unachievable at the time it was issued, citing only to allegations drawn from internal documents from months earlier discussing historical performance. *See* SAC ¶¶ 104, 106. Likewise, Plaintiff fails to identify any allegation in the SAC that shows that Olo's statements regarding its growth potential or the TAM for its products were false when made. Statements about TAM—or total addressable market opportunity *if* Olo could win 100% market share—are not misleading because internal documents discussed thoughts on the evolving achievability of 100% market domination. *See* SAC ¶ 86 (█

████████████████████████████████████████████████████

██████); ¶ 83 (██████████████████████████████████████████

██████████████████).[10] These allegations are plainly insufficient to plead a securities fraud claim. *See* MTD at 14–15; *see also In re Garrett Motion Inc. Sec. Litig.*, 2023 WL 2744029,

---

[10] Although Plaintiff argues that the SAC alleged a "known trend" related to large brand customers "developing in-house solutions," the SAC does not plead that Olo was required to disclose such a "trend" that—if it existed, which it did not—was immaterial. SAC ¶ 85; Opp. at 14 ("large brand" customers collectively accounted for only ██████ of Olo's annual $150M revenue).

at *17–20 (S.D.N.Y. Mar. 31, 2023) (complaint failed to allege with particularity how statements were false when made), *appeal filed*, No. 23-668 (2d Cir. Apr. 20, 2023).

### C.    Many Alleged Statements Are Non-Actionable Puffery And/Or Opinions.

Although Plaintiff claims that puffery is not an appropriate basis for dismissal, that argument is refuted by the myriad authority dismissing securities fraud claims based on puffing statements. *See* MTD at 16 (collecting cases). Likewise, Plaintiff's claim that Defendants' generic positive statements about Olo do not qualify as puffery because they are contradicted by allegations in the SAC misses the point; by definition, puffing statements are "too general for a reasonable investor to have relied on them." *Adient*, 2020 WL 1644018, at *22.[11] Plaintiff also fails to establish that Defendants did not believe their opinion statements to be true or omitted materials facts in connection with those statements. *See* MTD at 16–17. At most, the SAC has alleged "fact[s] cutting the other way, which . . . is not sufficient on its own to render a statement of opinion misleading." *AppHarvest*, 2023 WL 4866233, at *33. Many alleged misstatements should be dismissed as non-actionable puffery and/or opinion. Ex. B.

### D.    The SAC Fails To Allege Any Active Location-Related False Statements.

Plaintiff urges the Court to stand by its prior decision on active locations based upon (i) abandoned CW allegations used by Plaintiff only to stave off dismissal; and (ii) a selective and misleading quotation of a deposition transcript. *See* Opp. at 18–20. Neither argument has any merit. Rather, the SAC lays bare the insufficiency of Plaintiff's Active Locations Claim.

Allegations attributed to CW1 and CW2 cannot satisfy the heightened pleading standards of Rule 9(b) and the PSLRA. Plaintiff **admits** that it abandoned those witnesses in May, shortly

---

[11] Plaintiff's cases bear no resemblance. *See In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 231 (S.D.N.Y. 2019) (denial of allegations regarding toxic workplace not puffery); *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statements about existing inventory levels not puffery); *Cheng v. Can. Goose Holdings Inc.*, 2021 WL 3077469, at *7 (S.D.N.Y. July 19, 2021) (similar).

after the Court denied Defendants' motion to dismiss, and has no intention to call either CW to testify. Opp. at 2–3 & n.4. Plaintiff uses the CWs' statements not because they "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," (Fed. R. Civ. P. 11), but because the Court relied on the CWs when denying dismissal before and the CWs are Plaintiff's only hope to survive dismissal now. Not only did Plaintiff fail after discovery to allege *any* facts to "corroborate" the CW allegations, the new facts and testimony cited in the SAC flatly contradict the CWs. The PSLRA was enacted to curb exactly this type of abusive securities litigation. *See City of Livonia Empls' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 759–61 (7th Cir. 2013) (affirming grant of renewed motion to dismiss after plaintiffs abandoned CWs that were the basis for denying prior motion); *Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 352 (S.D.N.Y. 2000) ("to curtail the filing of meritless lawsuits, the PSLRA imposes stringent procedural requirements"), *aff'd*, 26 F. App'x 83 (2d Cir. 2002). ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ *See* Ex. EE at 116–17, 120–23; MTD at 19. The Opposition does not even try to explain how, in light of Ms. Jeon's incorporated testimony, either CW is still described in the SAC with "sufficient particularity to support the probability that a person in [their] position . . . would possess the information alleged." MTD Op. at 10 n.3. Plaintiff also asserts it no longer needs the CWs because the allegations are "corroborated by Defendants' documents and deposition testimony." Opp. at 2 n.4. If that were true, the SAC should have cited those sources—not "witnesses" who will never be called to testify—but such evidence does not exist.[12] To be sure,

---

[12] Plaintiff asserts discovery on active locations is not complete because of future discovery that purportedly "may" yield additional information. Opp. at 2 n.3. This assertion is not only false (Defendants' document production is complete, and additional depositions and third-party documents will shed no further light on this claim), but also inconsistent with Plaintiff's statements to the Court during the August 10, 2023 telephonic conference that minimal discovery remained.

the Opposition cites documents for the proposition that not all restaurant brand locations were active (Opp. at 4, 5, 19–20), but SAC never alleges that Olo *counted* such locations as active.

Moreover, Plaintiff's new allegations in Paragraph 67, as Defendants have argued,

███████████████████████████████████████████████████████

████████████. MTD at 17–18. █████████████████████████████

██████████████████████████████████████████ Opp. at 19. █████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████SAC ¶ 67; *see also* Ex. EE at 38–40, 117–24. Those criteria were consistent with Olo's disclosures that locations were "active" if modules were being "utiliz[ed]." SAC ¶ 48.[13]

## II.    The SAC Fails To Plead A Strong Inference Of Scienter.

The SAC has failed to allege, as it must, that the inferences of scienter with respect to active locations are "cogent and at least as compelling as [the] opposing inference" (MTD Op. at 13) that Olo and its executives honestly believed that Ms. Jeon was counting locations accurately and consistently with Olo's public disclosures. The Court previously held that the FAC adequately alleged scienter because of the alleged recklessness of Mr. Glass and Mr. Benevides that could be imputed to Olo (MTD Op. at 17), but that theory is no longer viable for two reasons. First, the Court's decision rested on the allegation that Mr. Benevides had access to and used the "Looker" software tool. MTD Op. at 16. The Opposition ignores the critical impact of Plaintiff's abandonment of this allegation in the SAC and does not identify any other factual allegation that

---

[13] Plaintiff does not explain how, if the disclosed counts were accurate, any other challenged active location statements are actionable. *See* MTD at 21–22. All Plaintiff says is that materiality is "rarely a basis for dismissal" and that the Court previously rejected this argument (Opp. at 19), which is false, because the Court declined to address the other statements. *See* MTD Op. at 9 n.2.

Mr. Glass or Mr. Benevides knew that the active location counts were inaccurate. *See* FAC ¶ 123; MTD at 24 n.26. Second, the SAC now identifies the specific Olo employee (Ms. Jeon), who calculated the quarterly reported active locations. *See* SAC ¶ 67. ***Even if*** those counts were wrong (and they were not, *see supra* Section I.D), that would not be enough: there must be facts supporting a strong inference that the active location counts were ***recklessly*** wrong and facts connecting the employee who acted with scienter to alleged misstatements. *See* MTD Op. at 15.[14]

Nor is scienter alleged as to the remaining claims, the gravamen of which is that Defendants knew the business was doomed to fail (given Olo's robust growth, Plaintiff does not allege the business has failed) and lied about its future prospects. Despite some cherry-picked quotations (Opp. at 21–22), there is nothing to support a strong inference that Defendants did not honestly believe Olo's projections. The only cogent and compelling inference is that Defendants believed in Olo's prospects despite the disclosed risks inherent in its business model. *See* MTD at 23–24.

## III.     The SAC Does Not Adequately Allege Loss Causation.

The SAC does not adequately allege loss causation. The SAC does not allege that Olo changed or "corrected" how it counted active locations in August 2022, so there is no basis to infer any connection between the alleged misrepresentations and the lowered guidance. With respect to the remaining claims, Plaintiff relies entirely on the lowered guidance (Opp. at 24–25), but failure to meet guidance is insufficient as a matter of law to establish loss causation. *See* MTD at 24–25.

### CONCLUSION

The SAC should be dismissed with prejudice.

---

[14] The Second Circuit requires "connective tissue" between the employees who allegedly knew of the inaccuracies and those who made the alleged misstatements. *See Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020). Here, there is no such "connective tissue": the Opposition does not argue that Ms. Jeon was reckless, or that Olo was reckless to rely on Ms. Jeon. The allegations concerning deployment challenges (*see* Opp. at 21), which Ms. Jeon's incorporated testimony makes clear are entirely separate from her calculations, do not supply the requisite connection.

Dated:  September 14, 2023

Respectfully submitted,

OLO INC., NOAH GLASS, and PETER BENEVIDES

By their attorneys,

*/s/ Jennifer B. Luz*

Deborah S. Birnbach
Jennifer B. Luz
Katherine G. McKenney (*pro hac vice*)
Justin D. Ward
Brendan Blake (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com
KMcKenney@goodwinlaw.com
JWard@goodwinlaw.com
BBlake@goodwinlaw.com

11

**<u>CERTIFICATE OF SERVICE</u>**

I, Jennifer B. Luz, hereby certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint for Violations of Federal Securities Laws, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 14, 2023.

Dated: September 14, 2023                                    */s/ Jennifer B. Luz*

12