**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br><br>v.<br><br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br><br>Defendants. | Case No. 1:22-cv-08228-JSR<br><br>CLASS ACTION |

**AMENDED MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD
PLAINTIFF STEAMSHIP TRADE ASSOCIATION OF BALTIMORE –
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND'S
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT
OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

I.      STA-ILA IS BOTH ADEQUATE AND TYPICAL ........................................................... 1

II.    THE ACTION SATISFIES RULE 23(B)(3)'S PREDOMINANCE
REQUIREMENT .............................................................................................................. 5

        A.      Defendants Have Not Rebutted the Fraud on the Market Presumption or
Shown by a Preponderance of the Evidence an Absence of Price Impact ............. 5

        B.      The Traditional Out-of-Pocket Methodology at Issue Has Been
Universally Accepted as a Measure of Securities Fraud Damages ........................ 7

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aranaz v. Catalyst Pharm. Partners Inc.*,
302 F.R.D. 657 (S.D. Fla. 2014)................................................................................................5

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) .......................................................................................................6

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samrukkazyna JSC*,
2022 WL 151302 (2d Cir. Jan. 18, 2022) ...............................................................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)........................................................................................................5

*Basic v. Levinson*,
485 U.S. 224 (1988)...................................................................................................................2

*Berwecky v. Bear, Stearns & Co.*,
197 F.R.D. 65 (S.D.N.Y. 2000) ................................................................................................5

*Black v. Finantra Cap., Inc.*,
418 F.3d 203 (2d Cir. 2005).......................................................................................................3

*City of Miami Gen. Emps. & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)...........................................................................7

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)...............................................................................................................7

*DeMarco v. Robertson Stephens, Inc.*,
228 F.R.D. 468 (S.D.N.Y. 2005) ..............................................................................................3

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
917 F.Supp. 2d 246 (S.D.N.Y. 2013)........................................................................................5

*George v. China Auto Sys., Inc.*,
2013 WL 3357170 (S.D.N.Y. July 3, 2013) .........................................................................4, 5

*Goldkrantz v. Griffin*,
1999 WL 191540 (S.D.N.Y. Apr. 6, 1999)................................................................................6

*Grae v. Corrs. Corp. of Am.*,
2019 WL 1399600 (M.D. Tenn. Mar. 26, 2019) .......................................................................9

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)................................................................6, 8, 10

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 7406418 (N.D. Cal. Dec. 22, 2016)........................................................................9

*In re Barrick Gold Sec. Litig.*,
   314 F.R.D. 91 (S.D.N.Y. 2016) ........................................................................................7, 9

*In re BP p.l.c. Sec. Litig*,
   2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)..........................................................................8

*In re BP p.l.c. Sec. Litig.*,
   2014 WL 2112823, (S.D. Tex. May 20, 2014) .......................................................................8

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008)............................................................................................3

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   2015 WL 5613150 (S.D.N.Y. Sept. 24, 2015).....................................................................10

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)........................................................................6

*In re MF Glob. Holding Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ..........................................................................................1

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ..........................................................................................4

*In re Moody's Corp. Sec. Litig.*,
   274 F.R.D. 480 (S.D.N.Y. 2011) ..........................................................................................5

*In re NII Holdings, Inc. Sec. Litig.*,
   311 F.R.D. 401 (E.D. Va. 2015) ...........................................................................................7

*In re Oxford Health Plans Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ..........................................................................................3

*In re Petrobras Sec. Litg.*,
   312 F.R.D. 354 (S.D.N.Y. 2016) (Rakoff, J.)........................................................................3

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................................3

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2019 WL 3001084 (S.D.N.Y. July 10, 2019)................................................................6, 9, 10

*In re Silver Wheaton Corp. Sec. Litig.*,
  2017 WL 2039171 (C.D. Cal. May 11, 2017) ................................................7

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ................................................3

*In re Vivendi Universal, S.A. Sec. Litig.*,
  183 F. Supp. 3d 458 (S.D.N.Y. 2016) ................................................3, 4

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ................................................2, 3

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*,
  2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) ................................................9

*Junge v. Geron Corp.*,
  2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) ................................................9

*Kolin v. Am. Plan Corp.*,
  1986 WL 36311 (E.D.N.Y. Apr. 8, 1986) ................................................3

*Luna v. Marvell Tech. Grp. Ltd.*,
  2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ................................................9

*Monroe Cnty. Emps.' Ret. Sys. v. The S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ................................................9

*Mulderrig v. Anyris, Inc.*,
  340 F.R.D. 575 (N.D. Cal. 2021) ................................................9

*Rocco v. Nam Tai Elecs., Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) ................................................4

*Rougier v. Applied Optoelectonics, Inc.*,
  2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ................................................8, 9

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016) ................................................5

Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("Lead Plaintiff" or "STA-ILA") respectfully submits this amended memorandum of law in further support of its motion for class certification and in response to Defendants' amended opposition thereto ("Opp."). Defendants concede that the Class of Olo Inc. ("Olo") investors from March 17, 2021 to August 11, 2022 (the "Class Period") satisfies the numerosity and commonality requirements of Rule 23(a), but make the oft rejected argument that STA-ILA, due to its investment manager, is atypical and inadequate. They do not dispute Lead Plaintiff's expert's ("Dr. Officer") findings that Olo common stock traded in an efficient market. Their only arguments as to predominance are that no price impact has been demonstrated and that Lead Plaintiff's damages model is too "generic." As discussed below, Defendants' arguments have been universally rejected.[1]

## ARGUMENT

### I.    STA-ILA IS BOTH ADEQUATE AND TYPICAL

Rule 23's typicality requirement is "not demanding." *In re MF Glob. Holding Ltd. Inv. Litig.,* 310 F.R.D. 230, 236 (S.D.N.Y. 2015). While Defendants assert that purported "unique defenses" exist here (Opp. at 8-13), they offer no evidence of any unique defense that would significantly distract from the core issues of Defendants' liability, which is what the law requires.

First, Defendants claim that STA-ILA's investment manager's investment strategy and access to information renders STA-ILA atypical and thus inadequate. Opp. at 9-13. This is both factually and legally incorrect. Brown Capital Management, LLC ("Brown") is the long-time

---

[1]    All capitalized terms used herein, to the extent not separately defined, shall have the same meanings as given to them in the Amended Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel (ECF No. 91).

investment manager for Lead Plaintiff.  Throughout its deposition, Brown's representative talked about its sources of information for Olo, which included investment conferences, Bloomberg, Olo's financials, Olo's historical revenue, industry and market research, reports from brokerage firms, and SEC filings.  Def.s' Ex. H at 50-51, 68:15-21, 82:7-11; Pltf.'s Ex. E at 64:16-18, 78:1-5, 177:1-3.  Despite this, Defendants latch on to the fact that Brown spoke to individuals at Olo (one to two times during the Class Period) (*id.* at 70:15-19), had a conversation with one customer (Denny's), and used Tegus – a subscription website that gives access to transcripts of interviews or calls with experts or customers.  *Id.* at 99:12-20.[2]  None of these sources (most of which are common to large investors) would have revealed the fraud or its extent in this case.

Legally, under *Basic v. Levinson,* all investors are presumed to base their investment decisions on all publicly available information.  485 U.S. 224, 246-47 (1988) ("[I]t is hard to imagine that there ever is a buyer or seller who does not rely on market integrity.  Who would knowingly roll the dice in a crooked crap game?").  Nothing Brown did or had access to defeats this presumption.  Defendants routinely make this same argument and routinely fail.  The *In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 281 (S.D.N.Y. 2003) court, in granting class certification, "swiftly rejected" the argument that institutions should not be in included in the class because they did not base their investment decisions on the integrity of the market, holding:

> each of these methods of making investment decisions [is] representative of methods used by many other investors.  Each of the methods reflects an evaluation of the publicly available information about WorldCom, whether by the named plaintiff, the advisor, or a computer model . . . None of the different strategies that these institutional plaintiffs, each of whom is a fiduciary, used . . . suggests that these plaintiffs will be vulnerable at trial to a unique defense that will defeat the

---

[2]    Defendants also obsess over the fact that the Brown representative testified that he personally never felt misled by Olo.  This is of no bearing.  The deponent never read the complaint in this action, had only recently became aware of the lawsuit, and has never discussed it with STA-ILA.  Def.s' Ex. H at 201:4-22, 202:14-17.  Furthermore, he explicitly stated that he could not speak to whether Brown had any opinions on whether it had been misled by Olo.  *Id.* at 203:8-12.

> presumption that they relied on the public statements about WorldCom at issue
> here, or that will threaten to become the focus of the litigation.

*Id.* at 281-82. Indeed, courts regularly hold that a plaintiff's investment methodology or strategy has absolutely no bearing on class certification.[3] Similarly, Defendants' specific suggestion that Brown's conversations with Olo or use of a subscription transcript service renders STA-ILA atypical has been flatly rejected. *See, e.g. In re Petrobras Sec. Litg.,* 312 F.R.D. 354, 360-61 (S.D.N.Y. 2016) (Rakoff, J.) ("communications with the company's investment relations team and operating personnel and a brief meeting with the [defendant] CEO" are "typical of the relationships between large institutional investors and companies . . ."); *In re DVI Inc. Sec. Litig.,* 249 F.R.D. 196, 203 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ("[I]t is commonly recognized that institutional investors, especially those with large holdings, communicate directly with corporate officials" ); *WorldCom,* 219 F.R.D. at 282 ("[I]nstitutional investors are likely to . . . on occasion even to communicate directly with the company in which they are investing to verify or better evaluate its public disclosures. Making careful investment decisions does not disqualify an investor from representing a class of defrauded investors . . ."). Defendants' cases are all distinguishable. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.,* 183 F. Supp. 3d 458, 466 (S.D.N.Y. 2016) (had regular meetings and telephone conversations with Vivendi's senior

---

[3]    *See, e.g. DeMarco v. Robertson Stephens, Inc.,* 228 F.R.D. 468, 471 (S.D.N.Y. 2005); *In re Oxford Health Plans Inc.,* 191 F.R.D. 369, 376 (S.D.N.Y. 2000) ("proprietary investment methodology" did not defeat typicality as "[n]o purchaser of securities regardless of trading methodology or strategy would knowingly trade where material information has been misstated or withheld by an issuer."); *Kolin v. Am. Plan Corp.,* 1986 WL 36311, at *9 (E.D.N.Y. Apr. 8, 1986) ("[even investors] who choose stock by means of a ouija board or by throwing darts at the list, all believe . . . that the market is an honest market . . ."); *In re Pfizer Inc. Sec. Litig.,* 282 F.R.D. 38 (S.D.N.Y. 2012); *Black v. Finantra Cap., Inc.,* 418 F.3d 203, 210 (2d Cir. 2005); *In re Veeco Instruments, Inc. Sec. Litig.,* 235 F.R.D. 220, 238-39 (S.D.N.Y. 2006).

management and thought the subject of the fraud was "overblown");[4] *George v. China Auto Sys., Inc.,* 2013 WL 3357170 (S.D.N.Y. July 3, 2013) (atypical based on being in-and-out traders); *Rocco v. Nam Tai Elecs., Inc.,* 245 F.R.D. 131 (S.D.N.Y. 2007) (plaintiff purchased with knowledge of a second fraud that had yet to be publicly corrected).

Defendants attempt to argue that Brown was somehow aware of the falsity of the active locations misrepresentations, citing two documents from Brown's production and one Tegus interview. Opp. at 10-11. However, none of these made Brown aware of the actual fraud alleged. Instead, they simply advise of potential delays in onboarding, that one brand's satellite locations would not all use Olo products, and that franchises had flexibility. Def.s' Exs. N, P. At no point was Brown (and certainly not Plaintiff) told that: (1) the reported active locations count was overesstated for at least three reasons (it included locations that had not yet onboarded, would never onboard, or that had turned Olo software off); (2) that Olo in fact did not sell to the entire brand, despite what Defendants said; (3) that the definition Olo gave for an active location was fictitious; or (4) that certain publicly-announced brands had not actually been fully onboarded.

Second, Defendants aptly note that Lead Plaintiff's post-Class Period purchases are insufficient to defeat class certification. Opp. at 13. That is the correct statement of the law. For the purposes of class certification, "that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosures of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market during the class period . . ." *In re Monster Worldwide, Inc. Sec. Litig.,* 251 F.R.D. 132, 134-35 (S.D.N.Y. 2008)

---

[4] Note that even in *Vivendi,* the court was quick to caution that the circumstances were incredibly unique and "sharply limited to its unusual facts, and should not be taken to suggest that sophisticated institutional investors or value-based investors are not entitled to the fraud on the market presumption in general." *Id.* at 464.

4

(Rakoff, J.).  *See also In re Moody's Corp. Sec. Litig.,* 274 F.R.D. 480, 487-88 (S.D.N.Y. 2011).[5]

Therefore, Lead Plaintiff is both adequate and typical.

## II.    THE ACTION SATISFIES RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT

"[O]nce a plaintiff shows entitlement to a presumption of reliance, the defendant is

burdened with the daunting task of proving that the publicly known statement has *no* price impact."

*Aranaz v. Catalyst Pharm. Partners Inc.,* 302 F.R.D. 657, 673 (S.D. Fla. 2014) (emphasis added).

A price impact challenge "will not ordinarily present a serious obstacle to class certification" and

"the vast majority of courts have found that defendants have failed to meet their burden of proving

lack of price impact."  *Strougo v. Barclays PLC,* 312 F.R.D. 307, 324 (S.D.N.Y. 2016), *aff'd sub*

*nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017).  Defendants' price impact argument

here boils down to the following: class certification should be denied because: (1) there was no

price impact on the alleged Active Locations misrepresentations claims on August 11, 2022; and

(2) Lead Plaintiff has not presented a viable classwide damages theory.  Opp. at 13-25.  Again,

both fail.

### A.    Defendants Have Not Rebutted the Fraud on the Market Presumption or Shown by a Preponderance of the Evidence an Absence of Price Impact

Defendants' main argument is to claim that nothing in the August 11, 2022 disclosures

revealed any truth about the alleged Active Locations misrepresentations.  Opp. at 14-20.  This is

overly restrictive and wrong.  On that date, Defendants disclosed, *inter alia*: (1) that Olo would

---

[5]    Defendants' cases again are not helpful.  The Court of Appeals in *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000) found fault with a plaintiff that was herself a sophisticated broker and speculative trader who purchased her shares after even the relevant company filed for bankruptcy.  In *Berwecky v. Bear, Stearns & Co.,* 197 F.R.D. 65 (S.D.N.Y. 2000), the plaintiff purchased stock after the issuer *disbanded,* while in *China Auto,* 2013 WL 3357170, the court was less concerned with the post-disclosure purchases than with the fact that plaintiffs were in-and-out traders.  *See also GAMCO Invs., Inc. v. Vivendi, S.A.,* 917 F.Supp. 2d 246, 257-58 (S.D.N.Y. 2013) (summary judgment and not class certification decision).

have virtually *no* active locations growth in 2022; (2) earnings results that fell short of expectations across multiple metrics, including revenue and cash flow; and (3) reduced FY 2022 revenue guidance. ¶¶170-81. Therefore, Lead Plaintiff alleges that the undisclosed risk of Defendants' Active Locations misstatements materialized on August 11, 2022, particularly given the impact of the Active Locations count on both revenues and the guidance. SAC ¶¶10, 26, 51. For example, the analyst reports Defendants cite to only prove this point. Opp. at 16-17. The analysts extensively covered the "downside surprise" of Olo's flat active locations reporting. Def.s' Ex. T (Piper Sandler) at 1; *see also* Def.s' Ex. U (Stifel) at 1; Def.s' Exs. V-Z (similar).[6]

That the disclosures might not be a "mirror image" of the misstatements is of no avail, as Defendants' own case states. *See In re Signet Jewelers Ltd. Sec. Litig.,* 2019 WL 3001084, at *14 (S.D.N.Y. July 10, 2019) ("'[t]here is no requirement that the corrective disclosure take a particular form or be of a particular quality,' such that it be a 'mirror image tantamount to a confession of fraud.'"). Furthermore, Defendants' issues with the "fit" between the disclosure and the Active Locations misstatements "is nothing more than an attack on loss causation, on Plaintiffs' ability to 'show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss . . .'" and is "properly addressed by a fact-finder on the merits; Plaintiffs need not show loss causation as a condition of class certification." *Hatamian v. Advanced Micro Devices, Inc.,* 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016) (emphasis in original).

---

[6]    Defendants' cited cases do not help their materialization of the risk argument. While they spend considerable time on *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.,* 77 F.4th 74, 81 (2d Cir. 2023), that case involved generic misstatements and a "mismatch" with very specific corrective disclosures. The misrepresentations alleged by Lead Plaintiff here are unambiguously specific (and Defendants do not even attempt to argue otherwise) and are therefore not subject to the searching price impact analysis contemplated in *Goldman.* And, in *In re Intuitive Surgical Sec. Litig.,* 2016 WL 7425926 (N.D. Cal. Dec. 22, 2016), the class was certified, while in *Goldkrantz v. Griffin,* 1999 WL 191540, at *5 (S.D.N.Y. Apr. 6, 1999), the plaintiff, unlike here, conceded there was a complete lack of reaction to the alleged disclosure.

6

**B.      The Traditional Out-of-Pocket Methodology at Issue Has Been Universally Accepted as a Measure of Securities Fraud Damages**

Defendants argue that the out-of-pocket damages model and event study here should have provided additional details.  Opp. at 20-24.  This ignores that, under *Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013), securities fraud classes "provide adequate detail regarding a method for calculating classwide damages and measuring the artificial inflation" when they put forward the out-of-pocket theory and event study, because this damages theory "closely hew[s] to Lead Plaintiff's theory of liability."  *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 414 (E.D. Va. 2015).  *See also City of Miami Gen. Emps. & Sanitation Emps.' Ret. Tr. v. RH, Inc.,* 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (out of pocket methodology so well suited for class treatments "that **securities fraud cases fit Rule 23 'like a glove.'**") (emphasis in original).

The Original Officer Report explains how, by applying the out-of-pocket methodology and using standard tools of valuation (event study and inflation ribbon), the amount of artificial inflation from Defendants' false and misleading statements can be measured simultaneously for all Class Members.  This is all that *Comcast* requires, and demanding additional detail regarding the out-of-pocket methodology is impermissible at class certification, as Lead Plaintiff need not "proffer expert damages analysis at this stage, given that plaintiffs are not required to establish loss causation."  *In re Barrick Gold Sec. Litig.,* 314 F.R.D. 91, 105 (S.D.N.Y. 2016).  Indeed, "[t]he Court need not 'decide the precise method for calculating damages at [class certification],' but rather must find 'that calculation of damages will be sufficiently mechanical that whatever individualized inquires need occur do not defeat class certification.'"  *E.g., In re Silver Wheaton Corp. Sec. Litig.,* 2017 WL 2039171, at *14 (C.D. Cal. May 11, 2017).  Defendants therefore resort to (without an expert) effectively nit picking at Dr. Officer.

7

To begin with, Defendants take inconsequential shots at Dr. Officer's Reports, complaining repeatedly that certain statements in his Original Report also appear in the report of a co-worker of his.  Opp. at 20-22.  However, to come to this conclusion, they completely overlook all of Section VII (¶¶128-173) of the Original Officer Report that sets forth precisely how he would compute damages expressly *in this case*.  Indeed, Def.s' Ex. K does not refer to the vast majority of these 45 paragraphs.  Defendants only complain about the "generic background information"[7] that his consulting firm extrapolated from prior reports.  Opp. at 20-21.  Those paragraphs are related to analyses in securities cases or the reporting of numerical results, in general.  Everything related to this case in particular was new and unique from Dr. Officer.

Next, Defendants suggest that because this case references materialization of the risk for the Active Locations claims, Dr. Officer's damages analysis does not contain enough detail.  Opp. at 22-24.  However, they principally rely on *In re BP p.l.c. Sec. Litig,* 2013 WL 6388408, at *11 (S.D. Tex. Dec. 6, 2013), where one class that *expressly eschewed the out-of-pocket damages method proposed here* was not certified and where defendants argued that the event study methodology (the precise methodology proposed here) was "the proper type of damages to be recovered by the investors in securities fraud cases." *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *10 (S.D. Tex. May 20, 2014), *aff'd sub nom. Ludlow v. B.P., P.L.C.*, 800 F.3d 674 (5th Cir. 2015) (*BP II*).[8]  Furthermore, Defendants' suggestion that Dr. Officer need take investors' varying

---

[7]    Defendants twist the testimony of Dr. Officer to claim that he admitted he only gave general background as to what the damages methodology would be.  Opp. at 6-7.  This is simply a mistruth. Dr. Officer never testified that his report contained *only* generic background information.  He did testify that his report does contain *some* generic background (*i.e.*, non-case specific information) for context, as most reports do.  See Def.s' Ex. J at 85:18-86:3.

[8]    *BP* has repeatedly been criticized.  *See, e.g. Hatamian,* 2016 WL 10452502 at *9; *Rougier v. Applied Optoelectronics, Inc.,* 2019 WL 6111303, at *16 (S.D. Tex. Nov. 13, 2019) (finding fault with defendants' argument that the proposed damages model was flawed because it allowed for

risk tolerances into account is mistaken, and numerous cases have been certified where the standard out-of-pocket methodology was used with materialization of the risk allegations. *See, e.g. Barrick Gold.,* 314 F.R.D. 91; *Grae v. Corrs. Corp. of Am.,* 2019 WL 1399600, at \*2 (M.D. Tenn. Mar. 26, 2019); *Rougier,* 2019 WL 6111303, at \*16.[9] Dr. Officer was patently clear that he could do such an analysis, but that he had not been asked to do it yet. *See* Def.s' Ex. J at 60:21-61:6, 49:16-19, 52:4-10. As a matter of economics, the same basic damages methodology would be used whether the inflation in the stock price was caused by omissions, misleading statements, or materialization of the risk, and there is no difference among damaged investors depending on their risk tolerance. And, the argument that a methodology need adequately isolate the impact of the materialization of known risks "is simply a loss causation argument in disguise, because it tests the causal relationship between the alleged misstatements and the price decline. Such an argument 'goes beyond the Rule 23 inquiry.'" *Signet*, 2019 WL 3001084, at \*20. *See also Luna v. Marvell Tech. Grp. Ltd.,* 2017 WL 4865559, at \*9 (N.D. Cal. Oct. 27, 2017). Indeed, this is precisely what Dr. Officer testified, despite Defendants' manipulations of his words. *See* Def.s' Ex. J at 51:7-19 (has not yet assessed the corrective disclosure in terms of loss causation); 56:2-10 (understood that Active Locations were corrected on August, 11th); 62:2-6 (was not asked to opine on undisclosed risk, although could).

---

recovery of materialization of the risk which allegedly would require individual proof of risk tolerance.); *Monroe Cnty. Emps.' Ret. Sys. v. The S. Co.,* 332 F.R.D. 370, 401 (N.D. Ga. 2019); *Hayes v. MagnaChip Semiconductor Corp.,* 2016 WL 7406418, at \*9 (N.D. Cal. Dec. 22, 2016).

[9]     Defendants cite two cases to suggest that an out-of-pocket damages methodology need expressly address risk materialization. Opp. at 24. However, they ignore that both *Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.,* 2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) and *Mulderrig v. Anyris, Inc.,* 340 F.R.D. 575 (N.D. Cal. 2021) are in the stark minority. Indeed, in criticizing *Mulderrig,* the same court, in *Junge v. Geron Corp.,* 2022 WL 1002446, at \*8 (N.D. Cal. Apr. 2, 2022), specifically said it joined the "[m]any other district court decisions" that properly cast materialization of the risk as a loss causation issue.

Finally, Defendants demand that Dr. Officer adjust his calculations to remove certain elements or to "disaggregate" for confounding news. Opp. at 24-25. This is inappropriate at class certification because it involves proving the detailed amount of damages, is susceptible to common classwide resolution, and is regularly and readily addressed at subsequent merits stages. *See, e.g. Hatamian,* 2016 WL 1042502, at *9 ("disaggregat[ing]" is not required for damages methodology at class certification because it involves "inquiries into loss causation"); *Signet*, 2019 WL 3001084, at *20 ("the Court rejects the suggestion that an event study is incapable of disaggregating the effects of confounding information. Were it otherwise, nearly every securities fraud class action would fail."); *In re Goldman Sachs Grp., Inc. Sec. Litig.,* 2015 WL 5613150, at *4, 8 (S.D.N.Y. Sept. 24, 2015) ("any failure of the methodology to 'disaggregate the losses' . . . would not defeat the class's predominance because it would affect all class members in the same manner.")[10] Therefore, Lead Plaintiff has demonsrated an efficient market and that damages are measurable on a class wide basis.

## CONCLUSION

For the foregoing reasons, STA-ILA respectfully requests that the Court: (i) certify this Action as a class action under Rules 23(a) and 23(b)(3); (ii) appoint STA-ILA as Class Representative; and (iii) appoint Scott+Scott Attorneys at Law LLP as Class Counsel.

DATED: October 20, 2023                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                           */s/ Amanda F. Lawrence*
                                           Amanda F. Lawrence
                                           Patrick J. Coughlin
                                           Donald A. Broggi
                                           Jeffrey P. Jacobson
                                           Mandeep S. Minhas

---

[10]    In this section, Defendants again rely upon an inapposite case as *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samrukkazyna JSC,* 2022 WL 151302, at *2 (2d Cir. Jan. 18, 2022) discussed disaggregation of losses **at the summary judgment stage.**

The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
alawrence@scott-scott.com
pcoughlin@scott-scott.com
dbroggi@scott-scott.com
jjacobson@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Steamship Trade
Association of Baltimore – International
Longshoremen's Association Pension Fund*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on October 20, 2023, on all counsel or parties of record. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Amanda F. Lawrence
Amanda F. Lawrence

12