**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLO INC., NOAH GLASS, and PETER BENEVIDES, <br><br> Defendants. | Case No. 1:22-cv-08228-JSR <br><br> CLASS ACTION |

**PLAINTIFF'S SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND'S AMENDED MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................................ 1

    A.  Dr. Officer Demonstrated How Damages Would be Calculated Without Subway ...... 2

    B.  Further Disaggregation Is Not Required ..................................................................... 4

    C.  Materialization of the Risk is Irrelevant to Dr. Officer's Disaggregation Analysis ..... 5

II.   CONCLUSION ............................................................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
2022 WL 151302 (S.D.N.Y. Jan. 18, 2022) ..................................................................................4

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)..............................................................................5

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)...............................................................................4

*In re BofI Holding, Inc. Sec. Litig.*,
2021 WL 3742924 (S.D. Cal. Aug. 24, 2021) .............................................................................4

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019) ..............................................................................4

*In re SLM Corp. Sec. Litig.*,
2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ................................................................................4

*In re Vale S.A. Sec. Litig.*,
2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ................................................................................6

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*,
2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) ..........................................................................5

*Junge v. Geron Corp.*,
2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) ...............................................................................5

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
328 F.R.D. 86 (S.D.N.Y. 2018) ...................................................................................................4

*Mulderrig v. Amyris, Inc.*,
340 F.R.D. 575..............................................................................................................................5

*Pirnik v. Fiat Chrysler Autos., N.V.*,
327 F.R.D. 38 (S.D.N.Y. 2018) ...................................................................................................4

*Rougier v. Applied Optoelectronics, Inc.*,
2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ............................................................................6

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) .......................................................................................................6

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)...........................................................................4

Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("Lead Plaintiff" or "STA-ILA") respectfully submits this supplemental reply memorandum of law in further support of its amended motion for class certification and in response to Defendants' supplemental opposition thereto ("Supp. Opp."). As discussed further below, Lead Plaintiff and its expert, Dr. Micah S. Officer ("Dr. Officer"), have done exactly what the Court requested and submitted a report outlining a damages methodology that accounts for the confounding news of the Subway Transition (on a classwide basis). Defendants use their opposition brief not to oppose or even to critique the mechanisms suggested and employed by Dr. Officer (and indeed do not submit a competing expert report), but to complain that he does not go beyond the Court's directive and take steps completely unrelated to the Subway Transition.[1] They then rehash arguments already made in their various and repeated oppositions to Plaintiff's motions for class certification. Once again, and as discussed below, Defendants' arguments have been universally rejected and their attempts to broaden the scope of the report dictated by this Court should not be countenanced.

## I.    ARGUMENT

On November 13, 2023, Lead Plaintiff submitted the Second Supplemental Expert Report of Micah S. Officer, Ph.D. ("Second Supp. Report") (ECF 102-1) pursuant to this Court's October 30, 2023 Order (ECF No. 98) ("Order") ordering Lead Plaintiff's expert to address "how damages would be calculated if the Subway Transition Claim is eliminated." Previously, on October 6, 2023, Dr. Officer submitted his Supplemental Expert Report ("Supp. Report") in support of

---

[1]    All capitalized terms used herein, to the extent not separately defined, shall have the same meaning as given to them in the Amended Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel (ECF No. 91).

certification of the class defined in Plaintiff's Second Amended Class Action Complaint for Violations of Federal Securities Laws ("SAC") (ECF No. 72).  Defendants made various attacks on Dr. Officer's Original (ECF No. 59-1) and Supplemental Expert Reports (although they chose not to submit an expert in response) in their two oppositions to class certification and again at oral argument.  They now rehash those arguments, even though Dr. Officer has done precisely what the Court ordered of him.  It is Defendants, therefore, that are taking the "third bite at the apple."

A.    **Dr. Officer Demonstrated How Damages Would be Calculated Without Subway**

Defendants blatantly disregard what this Court asked Dr. Officer to do because, in fact, ***he has done precisely what was asked of him.***  The Second Supp. Report is clear that its purpose and focus is to show that "[a] class-wide damages methodology that accounts for the confounding news of the Subway Transition is possible in this case."  Second Supp. Report, ¶7.  In that same opening paragraph, Dr. Officer explains that the methodology he would employ "would account for the fraction of the stock price decline on August 12, 2022 that is related to the loss of Subway as an Olo customer by examining Subway's expected contribution to Olo's expected future revenue" and that "[t]his methodology could be applied across the Class."  *Id.*  His Second Supp. Report then goes through the details of how his methodology accounting for the elimination of the Subway claims would proceed, including, *inter alia:*

- Discussing how the fraction of the stock price decline on August 12, 2022 related to the loss of Subway as an Olo customer can be determined based on Subway's expected contribution to Olo's future revenue.  *Id.*, ¶16.

- Pointing to the analysts' estimates of Olo's full year revenue following the corrective disclosures and that the loss of expected revenue from Subway would have been a component of that decline.  *Id.*, ¶18.

- Explaining that "the loss of expected revenue from Subway divided by the total decline in analysts' expected revenue following the August 11, 2022, disclosures would be a reasonable and appropriate ratio to use to parse out the fraction of the stock price decline

on August 12, 2022 that was directly related to the loss of Subway as an Olo customer." *Id.*

- Going through the various estimates of annual revenue from Subway and discussing his use of the more conservative estimate in his ratios and equations. *Id.*, ¶22.

- Concluding that "a fair and reasonable comparison of the impact of the loss of Subway on Olo's revenue would be to utilize the estimate of the loss of $6 million annual revenue from Subway and compare this to the decline in the consensus analyst revenue for 2023 following the August 12, 2022 corrective disclosure." *Id.*, ¶23.

- Ultimately employing those figures into an equation yielding a proposed result that could then be applied on a class wide basis. *Id.*, ¶¶24-25.

In the face of this detailed methodology, Defendants do not argue that it – or any of its various steps – is unreasonable, unsound, or inaccurate. Nor could they. Instead, they complain that Dr. Officer has not done more. To suggest he needed to do more, they dig through the transcript of the oral argument to suggest that Dr. Officer was ordered to account for any and all confounding news. Supp. Opp. at 3. But this is not what the Order states. It commands Dr. Officer to demonstrate how damages would be calculated if the Subway Transition Claim is eliminated, which is precisely what he did when he put forth a methodology (using the portion of the excess price decline attributable to the loss of Subway using 2023 analyst consensus revenue estimates and then applying it to the excess price change) and detailing it. Second Suppl. Report, ¶¶11-24. Defendants are deviating from the Court's directive to rehash inappropriate arguments best made at later stages of the case.[2]

---

[2]  Indeed, Defendants effectively concede this in their opposition. They state that Dr. Officer's methodology – even if acceptable at the class certification stage (which it clearly is) – would be subject to *Daubert* motions or loss causation challenges. Supp. Opp. at 3, n. 2. That is true, and both of those stages are the appropriate places to make the arguments Defendants attempt to make prematurely at this juncture.

## B.    Further Disaggregation Is Not Required

The vast majority of Defendants' opposition to Dr. Officer's targeted and responsive report concerns their complaint that he did not consider any other potential confounding factors besides the Subway Transition.  Supp. Opp. at 3-6.  However, again, the Court did not ask Dr. Officer to account for any other potential confounding factors (if they even exist) besides the Subway Transition, which he did.  And this is surely because ***that is not required at the class certification stage***.

Copious case law is abundantly clear that such disaggregation is inappropriate at the class certification stage.  For example, as stated clearly in *In re Signet Jewelers Ltd. Sec. Litig.,* 2019 WL 3001084, at *19 (S.D.N.Y. July 10, 2019):

> the Court rejects the suggestion that an event study is incapable of disaggregating the effects of confounding information.  Were it otherwise, nearly every securities fraud class action would fail . . . while Plaintiff ultimately will need to disaggregate confounding factors to prove economic loss, it need not do so at this juncture to establish that common issues relating to damages predominate.[3]

Indeed, the only case that Defendants here cite to argue that Dr. Officer needed to account for "other potential confounding factors" is a ***summary judgment*** opinion.  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC,* 2022 WL 151302, at *1 (S.D.N.Y. Jan. 18, 2022).

---

[3]    *See also In re SLM Corp. Sec. Litig.,* 2012 WL 209095, at *5 (S.D.N.Y. Jan. 24, 2012) ("evaluating potentially confounding information on the disclosure dates, and determining whether it was material, is tantamount to a loss causation analysis."); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC,* 328 F.R.D. 86, 99 (S.D.N.Y. 2018) (failure to rule out contributing factors does not defeat predominance at class certification stage); *Pirnik v. Fiat Chrysler Autos., N.V.,* 327 F.R.D. 38, 46 (S.D.N.Y. 2018) (rejecting disaggregation arguments because "plaintiffs are not required at this stage to demonstrate that any price impact was due to the prior misrepresentations alone"); *Wilson v. LSB Indus., Inc.,* 2018 WL 3913115, at *17 (S.D.N.Y. Aug. 13, 2018) (same); *In re BofI Holding, Inc. Sec. Litig.,* 2021 WL 3742924, at *9 (S.D. Cal. Aug. 24, 2021) (forcing plaintiff to eliminate effect of other variables on the share price at class certification stage would be requiring proof of loss causation); *In re Allergan PLC Sec. Litig.,* 2021 WL 4077942, at *15 (S.D.N.Y. Sept. 8, 2021) (need not disaggregate for purposes of class certification).

Summary judgment, *Daubert* motions, or even trial are the appropriate times to argue Dr. Officer

need parse out all confounding information.  At this juncture, as virtually all legal authority

dictates, disaggregation (save for the Subway Transition as required by this Court) is simply not

required.[4]

### C.    Materialization of the Risk is Irrelevant to Dr. Officer's Disaggregation Analysis

Finally, not surprisingly, Defendants again rehash their "materialization of the risk"

arguments even though they have nothing to do with the disaggregation of the Subway claim and

are likewise inappropriate at the class certification stage.  Supp. Opp. at 2.  For at least the fourth

time, they cling to two cases that are in stark minority.  *See, Ind. Pub. Ret. Sys. v. AAC Holdings,*

*Inc.,* 2023 WL 2592134, at \*23-25 (M.D. Tenn. Feb. 24, 2023); *Mulderrig v. Amyris, Inc.,* 340

F.R.D. 575, 590-91) (N.D. Cal. 2021).  But the majority of cases are patently clear that

materialization of the risk is a "loss causation theory" to be "prove[n] at the merits stage" and it

"does not contravene *Comcast* or defeat predominance."  *Junge v. Geron Corp.,* 2022 WL

1002446, at \*8 (N.D. Cal. Apr. 2, 2022).[5]  In *Junge,* which criticized *Mulderrig,* the defendants

---

[4]    The same applies to Defendants' arguments regarding news about Olo's growth rate.  Supp. Opp. at 5.  Defendants prematurely argue that allegations regarding growth rates (even though they tie directly to the misrepresentations about active locations in a damages analysis) are impermissibly included in Dr. Officer's damages.  *Id.*  This does not pertain to Subway and is entirely a merits argument.  In fact, the tie between active locations and the industry's perceptions of Olo's growth potential affect all Class members the same.

[5]    Woven throughout Defendants' brief is the suggestion that Dr. Officer's Supp. Report (employing an out-of-pocket damages methodology) does not satisfy *Comcast.*  However, the out-of-pocket damages model proposed by Dr. Officer is virtually always used in cases like this one. *See, e.g.  City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.,* 2018 WL 4931543, at \*3 (N.D. Cal. Oct. 11, 2018) ("Courts regularly reaffirm that out-of-pocket, or event study, method matches plaintiff's theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action.").  Defendants' suggestion that this methodology does not satisfy *Comcast* has been rejected in scores of securities class action decisions around the country.

also complained that the expert failed to account for the materialization of the risk theory in his damages report and thus class certification should be denied. The court there was crystal clear in writing: "***Not so. Materialization of the risk is not a theory of liability. It is a form of loss causation***." *See also Rougier v. Applied Optoelectronics, Inc.,* 2019 WL 6111303, at \*18 (S.D. Tex. Nov. 13, 2019) (noting that "several courts" have rejected materialization of risk arguments made by defendants opposing class certification); *In re Vale S.A. Sec. Litig.,* 2022 WL 122593, at \*18-19 (E.D.N.Y. Jan. 11, 2022); *Schleicher v. Wendt,* 618 F.3d 679, 683-84 (7th Cir. 2010) ("Although 'materialization of [the] risk' runs like a mantra through the parties' briefs, we do not think that it has any significance . . ."). So too here; that Dr. Officer made no mention of materialization of the risk in his Second Supp. Report that relates solely to the removal of the losses attributable to the Subway claims is of absolutely no import. This argument is a red herring and simply repeats arguments unrelated to the Second Supp. Report.

## II. CONCLUSION

For the foregoing reasons and those previously argued, STA-ILA respectfully requests that the Court: (i) certify this Action as a class action under Rules 23(a) and 23(b)(3); (ii) appoint STA-ILA as Class Representative; and (iii) appoint Scott+Scott Attorneys at Law LLP as Class Counsel.

DATED: November 27, 2023                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

  */s/ Amanda F. Lawrence*
Amanda F. Lawrence
Patrick J. Coughlin
Donald A. Broggi
Jeffrey P. Jacobson
Mandeep S. Minhas
Anna Hunanyan (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
alawrence@scott-scott.com

6

pcoughlin@scott-scott.com
dbroggi@scott-scott.com
jjacobson@scott-scott.com
mminhas@scott-scott.com
ahunanyan@scott-scott.com

*Counsel for Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on November 27, 2023, on all counsel or parties of record.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Amanda F. Lawrence*
Amanda F. Lawrence

8