UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE-INTERNATIONAL LONGSHOREMAN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>     -v-<br><br>OLO INC., NOAH GLASS, and PETER J. BENEVIDES,<br><br>          Defendants. | 22-cv-8228 (JSR)<br><br>OPINION |

JED S. RAKOFF, U.S.D.J.:

On August 24, 2023, defendants moved to dismiss the Second Amended Complaint ("SAC"). Defs. Notice of Mot. to Dismiss, ECF No. 74. After full consideration of the parties' written submissions and oral argument, the Court granted in part and denied in part defendants' motion by "bottom-line" order dated September 26, 2023. This Opinion reconfirms that order and explains the reasons for its rulings.

## I.   Plaintiff's Allegations

The factual allegations underlying this dispute are set forth in this Court's previous opinion denying defendants' motion to dismiss the First Amended Complaint ("FAC"). See 7/25/23 Op., ECF No. 71. The Court presumes familiarity with that prior opinion. As

relevant here, plaintiff alleges that Olo misled investors in four ways, three of which are new to the SAC. First, the SAC, like the FAC, alleges that Olo misrepresented the number of its "active locations" -- that is, the number of unique restaurant locations that were using at least one of Olo's product modules. SAC, ¶¶ 8-15, 48-51, 60-75, 118-47, ECF No. 72. Second, the SAC alleges that a risk factor disclosure by defendants was misleading because the disclosed risk had already materialized when Subway informed Olo it intended to terminate its partnership with Olo (hereafter referred to as the "Subway Transition"). Id. ¶¶ 165-69. Third, the SAC alleges that defendants misrepresented Olo's financial prospects by portraying an overly optimistic picture when the company was already facing severe financial difficulties. Id. ¶¶ 16-17, 101-15, 149-57. Fourth, the SAC alleges that defendants misrepresented Olo's prospects with enterprise restaurants, meaning restaurant "brands with over 50 locations." Id. ¶¶ 8, 158-64.

## II.  Relevant Procedural History

On April 10, 2023, the Court denied defendants' motion to dismiss the FAC. See 4/10/23 Order, ECF No. 50. The Court permitted plaintiff's Section 10(b) and Section 20(a) claims to proceed forward based on misstatements that defendants made about the number of active locations utilizing Olo's product modules.

7/25/23 Op., at 7-18. However, the Court found that plaintiff could not rely on defendants' failure to disclose the Subway Transition to show liability because all of the statement that plaintiffs alleged were false and/or misleading because of this omission were forward-looking and thus non-actionable. Id. at 4-7. Plaintiff then filed the SAC on August 9, 2023. The SAC still asserted the same two legal causes of action against defendants, to wit, a claim under Section 10(b) of the Securities Exchange Act of 1934 and a claim under Section 20(a) of the same Act, see SAC, ¶¶ 211-28; but the SAC added three new categories of alleged misstatements as summarized above. Defendants again moved to dismiss plaintiff's complaint. See Defs. Notice of Mot. to Dismiss. On September 26, 2023, this Court issued a "bottom-line" order granting in part and denying in part the motion to dismiss. See 9/26/23 Order, ECF No. 84.

## III. Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1] A complaint must offer more than "a formulaic recitation of the elements of a cause

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). If the plaintiffs have "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. The Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

Additionally, the Section 10(b) claims here asserted are subject to the heightened pleading standards of both Federal Civil Rule 9(b) and of the Private Securities Litigation Reform Act ("PSLRA"). Accordingly, to state a claim for a violation of Section 10(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In particular, the Second Circuit has interpreted Rule 9(b) to require that a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004). In addition, under the PSLRA, the plaintiff must, among other things, "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

## IV.  Discussion

The Court will address each of the four categories of statements that plaintiff alleges violated Section 10(b) and Section 20(a) of the Exchange Act. For the reasons explained below, the Court concludes that plaintiff's claims against Olo may proceed forward only on the basis of alleged misstatements about Olo's active locations. In addition, the Section 10(b) claim against defendant Benevides must be dismissed in its entirety for failure to adequately allege scienter.

### a. Subway Transition

Plaintiff has now reframed its theory about the failure to disclose the Subway Transition as one premised on a misleading risk factor disclosure. Specifically, plaintiff alleges that the following risk factor disclosure, issued on February 25, 2022, was misleading:

> if our customers . . . reduce the number of locations using our platform, then our revenue may decline and our results of operations may be harmed. Customers may not renew their contracts with us or reduce their use of our platform for any number of reasons, including . . . if they decide to build their own solution internally.

SAC, ¶ 165. According to plaintiff, this risk factor disclosure was misleading because the risk of customers opting for in-house solutions had already come to pass on January 13, 2022, when Subway announced its intention to depart Olo's platform "in favor of developing the same software in-house." Id. ¶¶ 20-21, 81-83, 94-

99, 166-69. Plaintiff further alleges that the Subway Transition was part of a broader trend among Olo's customers, such as TGI Friday's and Red Lobster. According to the SAC, in December 2021, TGI Friday's began transitioning to its "own in-house platform," and "[b]y February 2022, direct integrations to the marketplace were in full force at TGI Friday's," and Red Lobster was also threatening to opt for an in-house solution. Id. ¶¶ 22, 79-80, 166.

In general, risk factor disclosures are actionable if the disclosed risk has already come to pass. See Set Cap. LLC v. Credit Suisse Grp., 996 F.3d 64, 85 (2d Cir. 2021) ("cautionary words about future risk cannot insulate from liability an issuer's failure to disclose that the risk has, in fact, materialized in the past and is virtually certain to materialize again"); In re Van der Moolen Holdings N.V. Sec. Litig., 405 F. Supp. 2d 388, 400 (S.D.N.Y. 2005) ("to warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit"). However, plaintiff has failed to adequately plead that the risk factor disclosure was misleading because of an already materialized risk.

The first problem for plaintiff is that the Court's prior opinion essentially rejected plaintiff's argument. In its opposition to the motion to dismiss the FAC, plaintiff argued that

this exact risk factor disclosure (among others) was not meaningfully cautionary for purposes of invoking the statutory safe harbor for forward-looking statements under the PSLRA, because the risks were framed as hypothetical when the risks had already materialized. See Pl. Opp'n to Defs. Mot. to Dismiss, at 11-12, ECF No. 44; Defs. Mem. of Law in Supp. of Mot. to Dismiss, at 5, ECF No. 40; Luz Decl., Defs. Ex. N, at 20, ECF No. 41-14. But the Court rejected this argument when it found that Olo's disclosures contained "meaningful cautionary language." See 7/25/23 Op., at 6-7. Plaintiff now appears to be seeking the proverbial, but forbidden, second bite at the apple.

Even setting that aside, the second and insurmountable problem is that the SAC failed to adequately allege that the disclosed risk had already materialized when the disclosure was made. The SAC does not allege that Subway had actually begun transitioning its locations to an in-house platform or stopped being an Olo customer before the relevant disclosure was issued. The SAC only alleges that "[a]lmost immediately" after January 13, 2022, "Subway locations began to churn off of Olo's Rails platform," with no indication of whether this churning started before February 25, 2022 when this risk disclosure was made. SAC, ¶ 20 (emphasis added). Indeed, the SAC does not even allege that the Subway Transition was complete during the Class Period. All that the SAC alleges is that Olo was informed on January 13, 2022,

that Subway would transition off Olo's platform, and by August 11, 2022, when the Subway Transition was publicly disclosed, 2,500 Subway locations had already transitioned off Olo's platform to "third-party marketplaces" and "the remaining Subway locations [were to] be removed in 4Q 2022 and 1Q 2023." See SAC, ¶¶ 20, 25, 171.

Even if the SAC had hypothetically alleged that the Subway Transition had started by February 25, 2022 (which allegation is nowhere made in the SAC), the mere allegation that one customer began transitioning off the platform in favor of an in-house solution does not mean the disclosed risk of losing customers to internal solutions had meaningfully materialized by February 25, 2022, especially when the risk had not materialized for hundreds of Olo's other customers. See id. ¶ 141 (by May 2022, "more than 600 restaurant brands [were] utilizing [Olo's] platform"). In effect, plaintiff is rehashing a theory this Court already rejected: that the Subway Transition needed to be disclosed to the public before August 2022 and that the failure to do so is an actionable omission. See 7/25/23 Op., at 4-7.

Furthermore, plaintiff has failed to adequately allege the Subway Transition was part of a broader trend among Olo's customers. There are no allegations that Red Lobster decided to leave Olo's platform in favor of an in-house solution (only that it was contemplating doing so). See SAC, ¶¶ 22, 79, 166. The

document that plaintiff quotes from to substantiate that TGI Friday's was opting for an in-house solution specifies that TGI Friday's was not leaving Olo's platform entirely (but only the Rails module). See SAC, ¶ 80; Defs. Ex. DD, at -715, ECF No. 78-30.[2] Moreover, even assuming that TGI Friday's were fully transitioning to an in-house solution during the Class Period, at best plaintiff has alleged that two customer began fully transitioning to an in-house solution, one of which Olo disclosed to the market in August. Id. ¶ 171. That is not a trend, and it is certainly not enough to render this risk factor disclosure misleading at the time made. See Meyer v. Jinkosolar Holdings Co., Ltd., 761 F.3d 245, 251 (2d Cir. 2014).

### b. Financial Position & Enterprise Segment Prospects

Plaintiff also asserts that defendants issued a myriad of false and misleading statements relating to Olo's financial position and its prospects in the enterprise segment of the market. Defendants argue that this theory of liability must be dismissed. According to defendants, the SAC does not adequately allege any actionable misstatements, either because the misstatements are non-actionable as puffery, opinions, or forward-looking statements, or because

---

[2] Plaintiff has not objected to the Court taking notice of the documents that defendants filed with its motion to dismiss. Accordingly, the Court will consider those documents.

the misstatements are inadequately pled to be false or misleading. The Court agrees with defendants.

### i. Opinion

For an opinion to be actionable, one of the three Omnicare exceptions must apply. Galestan v. OneMain Holdings, Inc., 348 F. Supp. 3d 282, 297-98 (S.D.N.Y. 2018). Under Omnicare, Inc. v. Laborers District Council Construction Industry Pension Plan, 575 U.S. 175 (2015), a statement of opinion is actionable if: (1) the speaker does not honestly hold the stated opinion; (2) the opinion includes an "embedded statement[] of fact" that is false; or (3) the opinion omits facts that are necessary to make the opinion not misleading. Id. at 184-93. Defendants argue that defendants' opinion statements about revenue guidance, growth opportunities, and their confidence in Olo's business model are non-actionable. See SAC, ¶¶ 150, 152-56, 160-63. Plaintiff counters that it has adequately alleged that defendants knew about the improper inflation of Olo's active locations and the Subway Transition, which renders the opinions actionable under Omnicare because either defendants did not honestly believe their stated opinions or the opinions omitted facts necessary to make them not misleading. Pl. Opp'n to Defs. Mot. to Dismiss, at 17-18, ECF No. 79.

The first problem with plaintiff's argument is that, for the reasons explained below, plaintiff has inadequately alleged that co-defendant Benevides possessed scienter as it relates to the inflation of Olo's active locations. Accordingly, the statement from Benevides that "the big takeaway here is a lot of upside when you think about the 75,000-74,000 restaurant locations on the platform today" is not an actionable opinion, see SAC, ¶ 150, as it has been inadequately alleged that he had any reason to know the location counts were (allegedly) inaccurate. The same is true for the statement from Benevides that "I don't think we've ever been more excited about our sales and deployment pipelines really on 2 fronts in terms of new location adds as well as the various upsell opportunities that have continued to emerge." Id. ¶ 152. Further, it is not clear what facts plaintiff believes were omitted that render these statements misleading, as plaintiff's entire theory about the active locations fraud is that defendants made actionable misstatements (not omissions).

Next, even assuming arguendo that plaintiff did adequately allege that both defendants knew about the Subway Transition and that Glass knew about the inflation of active locations counts, that knowledge does not indicate defendants could not genuinely believe their statements that "we see a lot of opportunity ahead," id. ¶ 150, "[w]e're extremely proud of our financial performance this quarter," id. ¶ 152, "[a]s we enter 2022, we've never been

more confident in our position and more excited about the
opportunity ahead," id. ¶ 154, and "I think from a high level, the
underlying fundamentals of the business remain really strong," id.
¶ 154. Nor does the SAC allege that the Subway Transition or the
inflation of the active locations numbers "go[] to the basis for
the[se] . . . opinion[s]," and thus the failure to disclose those
facts has not been adequately alleged to be a basis for finding
these opinion statements are actionable. See SAC, ¶ 157; in re
Pareteum Sec. Litig., No. 19 Civ. 9767, 2021 WL 3540779, at *13
(S.D.N.Y. Aug. 11, 2021) (quoting Tongue v. Sanofi, 816 F.3d 199,
210 (2d Cir. 2016)).

Even worse for plaintiff, the opinion statements about Olo's
platform winning out over in-house options, to which the Subway
Transition is potentially relevant, were made before Subway
informed Olo of its intention to transition off the platform. See
SAC, ¶ 160 (statement made on May 11, 2021); id. ¶ 163 (statement
made on January 10, 2022). And the number of active locations is
simply irrelevant to whether Olo's platform is preferable to in-
house solutions nor does the SAC allege that the omission of
information about the active locations made these statements
misleading. See id. ¶ 164. The same logic holds for the statement
that the company was focusing on:

> serving the enterprise restaurants in the U.S. and Canada
> markets because we think there's just a great opportunity for
> us there and it is the fastest path for us to become a $1

> billion revenue company in the fastest and most efficient
> path for us to do so. So I believe that we're developing the
> relationship with those large, multinational restaurant
> brands, most of which are domiciled here in the U.S. And we're
> proving out how vital Olo is to their success as a mission-
> critical platform.

Id. ¶ 161. This statement was made on May 11, 2021 (before the
Subway Transition). Id. ¶¶ 160-61. Further, the SAC does not allege
that an omission related to the number of active locations made
this statement misleading, nor would the number of active locations
have any bearing on how an investor would interpret and understand
this statement in its context. See id. ¶ 164; Tongue, 816 F.3d at
209-10.

Accordingly, these statements are not adequately pled and
cannot support the imposition of liability on defendants.

### ii. Forward-Looking Statements

The Court will next address whether any of the alleged
misstatements related to Olo's financial prospects and prospects
in the enterprise market are non-actionable, forward-looking
statements. Defendants argue that all the alleged misstatements
about Olo's financials and enterprise market, except those alleged
in paragraph 163 of the SAC, are non-actionable, forward-looking
statements about future economic performance.

A forward-looking statement is one that contains "a
projection of revenues, income . . ., [or] earnings," "a statement
of the plans and objectives of management for future operations,"

or "a statement of future economic performance." 15 U.S.C. § 78u-5(i)(1)(A)-(C). "Under the PSLRA, a person shall not be liable with respect to any forward-looking statement, but only to the extent that they can show that: (1) the statements were accompanied by meaningful cautionary language; (2) the statements were immaterial; or (3) the plaintiff failed to prove the statements were made with actual knowledge that they were false or misleading." Galestan, 348 F. Supp. 3d at 297. See also Slayton v. Am. Exp. Co., 604 F.3d 758, 766 (2d Cir. 2010); 15 U.S.C. § 78u-5(c). "Because the statute is written in the disjunctive, statements are protected by the safe harbor if they satisfy any one of these three categories." In re Adient plc Sec. Litig., No. 18-CV-9116, 2020 WL 1644018, at *18 (S.D.N.Y. Apr. 20, 2020).

Plaintiff argues that none of the misstatements can be protected as forward-looking because they are "mixed" statements that include both present and backward-looking justifications. Pl. Opp'n, at 9-10. Although it is true that "mixed statements that have both a forward-looking aspect and a representation of present or historical fact are not protected with respect to the latter," City of Providence v. Aeropostale, Inc., No. 11 Civ. 7132, 2013 WL 1197755, at *13 (S.D.N.Y. Mar. 25, 2013), plaintiff's argument misses the mark.

First, some of the alleged misstatements are purely forward-looking, not mixed. The Court finds that the statements, "our

14

expectation for 2022 is to add a similar amount of net new locations to the platform," SAC, ¶ 154, and "[w]e feel pretty confident in being able to deliver high growth we define as 30% year-on-year growth," id. ¶ 156, are solely forward-looking financial projections that fall within the heartland of the statutory safe harbor. Similarly, "increas[ing] and updat[ing] guidance for the fiscal year of 2022 [to] revenue of between $194 and $196 million and discuss[ing] 30% revenue growth for the year," and the related statement "we anticipate a reacceleration of revenue growth as implied in our quarter and full year guidance," are pure forward-looking projections of revenue that plainly fall within the safe harbor. Id. ¶ 155. Finally, the statements that "the Wisely acquisition would expand the total addressable market by 'approximately $1 billion by applying Wisely's existing suite of products to the approximately 300,000 U.S. enterprise restaurant locations,'" "through focusing on the enterprise restaurant segment, we have a 4x opportunity to capture all 300,000 enterprise restaurant locations," and that the total addressable market opportunity is $7 billion "based on our current product offerings and focus on enterprise restaurants primarily in the United States," are protected statements about future economic performance, the objectives of management, and the assumptions relating to those objectives and performance. Id. ¶¶ 159, 162.

Second, even crediting plaintiff's contention that some of the alleged misstatements are "mixed" statements, the forward-looking aspects of those statements can still be severed from the present and backward-looking aspects of the statement and fall within the protection of the statutory safe harbor. See in re AppHarvest Sec. Litig., 21-cv-7985, 2023 WL 4866233, at *27-28 (S.D.N.Y. July 31, 2023); in re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 246 (2d Cir. 2016). Under this framework, the Court finds that the statement "and we're even more excited about our position, the market opportunity ahead of us and the impact we can have," is a forward-looking statement that is severable for the rest of the statement that the Court found was a non-actionable opinion. SAC, ¶ 152. For the same reason, the statement, "[w]e believe that we have a 100x growth opportunity in U.S. enterprise restaurants, representing a TAM of more than $15 billion within the U.S. enterprise segment," is a forward-looking financial projection, and severable from the preceding non-actionable statement of opinion. Id. ¶ 154.

Plaintiff also argues that even if some of the alleged misstatements are forward-looking, the statutory safe harbor is inapplicable because (1) the statements are misleading because of material omissions; (2) the forward-looking statements are not accompanied by meaningful cautionary language; and (3) the

statements were made with actual knowledge of their falsity. The Court finds that none of these arguments has merit.

Plaintiff first argues the safe harbor is inapplicable to these statements because material omissions "regarding the inaccurate number of active locations, the downward spiral at the Company, and the loss of major customers" rendered these statements misleading, Pl. Opp'n, at 12, and "material omissions are not protected by the PSLRA safe harbor," Rudani v. Ideanomics, Inc., 19 Civ. 6741, 2020 WL 5770356, at *6 (S.D.N.Y. Sept. 25, 2020). But this is irrelevant, because plaintiff, in its opposition brief, repeatedly reiterated that it was not pressing an omissions theory, but was arguing that defendants made affirmative misstatements.[3] Plaintiff's counsel again reiterated "this is [a] misstatements case" at oral argument. 9/20/23 Hr'g Tr. at 13:15-16, ECF No. 88.

Worse yet, plaintiff has not even attempted to show defendants were under a duty to disclose the downward spiral at the company, inaccurate number of active locations (as that theory of liability is based entirely on material misstatements), or the Subway Transition (as the Court already dismissed that as the basis for

---

[3] See, e.g., Pl. Opp'n, at 1 ("Defendants here resort to mischaracterizing the case as an omissions case."); id. at 3 (The SAC "explains how Defendant's numerous misstatements fit within the context of Olo's undisclosed slowdown."); id. at 9 (the main heading for the argument section is "Defendants Made Material Misstatements"); id. at 23 ("This is a primarily misstatement case.").

an actionable omission theory). Accordingly, the Court will not permit plaintiff to "recharacterize [its] false-statement claims as material-omission claims"; "[o]therwise, the PSLRA would have no force." See in re Turquoise Hill Resources Ltd. Sec. Litig., 625 F. Supp. 3d 164, 217 n.17 (S.D.N.Y. 2022).

Plaintiff next argues that the statutory safe harbor is inapplicable because the forward-looking statements were not accompanied by meaningful cautionary language and/or were made with actual knowledge of their falsity. However, the PSLRA safe harbor applies if a forward-looking statement is either "accompanied by meaningful cautionary language . . . or the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." Slayton, 604 F.3d at 766. See also in re Adient plc Sec. Litig., 2020 WL 1644018, at *18. The Court considers each of these alternatives in turn.

## 1. Actual Knowledge of Falsity

First, the PSLRA safe harbor is inapplicable if the SAC adequately alleges the "statements were made with actual knowledge of falsity." Freudenberg v. E*Trade Fin. Corp., 712 F. Supp. 2d 171, 193 (S.D.N.Y. 2010). To adequately plead that a forward-looking statement was made with actual knowledge of its falsity,

> the plaintiff[] must state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud. Under this heightened pleading

standard, a plaintiff must plead facts to support a *strong* inference of scienter, that is, the inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. Moreover, because the safe harbor specifies an actual knowledge standard for forward-looking statements, the scienter requirement for forward-looking statements is stricter than for statements of current fact. Whereas liability for the latter requires a showing of either knowing falsity or recklessness, liability for the former attaches only upon proof of knowing falsity.

Slayton, 604 F.3d at 773.

Plaintiff argues it has met this heightened pleading standard. Plaintiff first argues the statement alleged in paragraph 152 of the SAC, that Glass made in November 2021, is adequately alleged to be made with knowledge of its falsity because of concerns that were expressed about fourth quarter revenue, diminishing returns from two of Olo's modules, and "razor thin beats [and] razor thin deployment." SAC, ¶¶ 101-02, 104, 152. Next, plaintiff argues the statement alleged in paragraph 156 of the SAC, that Benevides made in May 2022, is adequately alleged to be made with knowledge of its falsity because in October 2021, Benevides expressed concerns about Olo's ability to "maintain its growth targets in 2022 (including the 30% growth rate for 2022)." Id. ¶¶ 105, 156. Finally, plaintiff argues it has adequately pled that the statement alleged in paragraph 162 of the SAC, that Glass made in October 2021, was made with knowledge of its falsity because defendants knew enterprise customers were already leaving

and only had 4.5% penetration with top 500 restaurants at the time of Olo's IPO. Id. ¶¶ 79, 85, 162.

Despite plaintiff's best efforts, the SAC does not adequately allege that defendants made any of these forward-looking statements with actual knowledge of falsity. At best, the allegations in the SAC show that defendants had concerns about Olo's revenue and future projections and were working toward a solution to meet their stated goals but ultimately failed. See SAC, ¶¶ 101-15. The allegations do not support an inference that defendants actually knew that the projections and economic plans that were disclosed to the public were false or unattainable. Accordingly, the statutory safe harbor is applicable because plaintiff has failed to adequate plead the statements were made with knowledge of falsity.

## 2. Meaningful Cautionary Language

Given that one of the disjunctive conditions for the statutory safe harbor is satisfied, the Court need not reach plaintiff's alternative argument that the safe harbor is inapplicable because the forward-looking statements were not accompanied by meaningful cautionary language. However, even if the Court needed to address this argument, it would fail.

A forward-looking statement is accompanied by meaningful cautionary language when it "convey[s] substantive information

about factors that realistically could cause results to differ
materially from those projected in the forward-looking
statements." Slayton, 604 F.3d at 771. Defendants argue that the
forward-looking statements were accompanied by meaningful
cautionary language that warned of the specific risks that
plaintiff contends made these statements misleading. Defendants
point to three prime examples in their brief. See Defs. Mem. of
Law in Supp. of Mot. to Dismiss, at 10, ECF No. 77. First,
defendants warned, "[o]ur rapid growth may not be sustainable and
depends on our ability to attract new customers, retain revenue
from existing customers, and increase sales to both new and
existing customers." Defs. Ex. T, at 16, ECF No. 78-20. Second,
defendants also warned that, "[t]he circumstances that have
accelerated the growth of our business stemming from the effects
of the COVID-19 may not continue and our revenue may fluctuate in
the near term." Id. Finally, defendants warned:

> Customers may not renew their contracts with us or reduce
> their use of our platform for any number of reasons, including
> if they are not satisfied with our platform or modules, the
> value proposition of our platform or our ability to meet their
> needs and expectations, security or platform reliability
> issues, or if they decide to build their own solution
> internally or if they decide to temporarily or permanently
> close their restaurants in a location then affected by the
> COVID-19 pandemic.

Id. at 20.

Plaintiff's first line of attack is to argue that the first
statement about why Olo's rapid growth may not continue is

boilerplate. The Court disagrees. This cautionary language, when read in the context of the other extensive disclosures that accompanied it, see Defs. Ex. T, at 16; Defs. Ex. A, at 17, ECF No. 78-1, "convey[ed] substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements." Lopez v. Ctpartners Exec. Search Inc., 173 F. Supp. 3d 12, 25 (S.D.N.Y. 2016). Accordingly, this cautionary language is not mere boilerplate.

Next, plaintiff argues defendants' cited examples are not meaningfully cautionary because the underlying, disclosed risks were not hypothetical but already realized. See in re Facebook, Inc. IPO Sec. & Derivative Litig., 986 F. Supp. 2d 487, 515 (S.D.N.Y. 2013); Moshell v. Sasol Ltd., 481 F. Supp. 3d 280, 288-89 (S.D.N.Y. 2020); Plumbers & Pipefitters Nat'l Pension Fund v. Davis, No. 1:16-cv-3591, 2020 WL 1877821, at *11 (S.D.N.Y. Apr. 14, 2020). Plaintiff argues this is so because the SAC plausibly alleges that "customers were already leaving Olo, that the Covid wave was long over, and that the 'build v. buy' threat, especially from large customers, had materialized." Pl. Opp'n, at 11.

The Court once again disagrees. As the Court already explained above, the SAC does not adequately allege that the risk of customers leaving the platform for in-house solutions had meaningfully materialized. Additionally, while the SAC does allege that Olo was experiencing growing pains, it does not adequately

allege that Olo was experiencing a growth slowdown because of the
COVID wave ending and even alleges that "macroeconomic challenges"
were not the cause of Olo's lowered FY 2022 guidance in August
2022. See SAC, ¶¶ 27, 175, 177 n.18. Finally, Olo undisputedly
continued to grow during the class period. See Robeco Cap. Growth
Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive,
Inc., No. 21-CV-9582, 2023 WL 2711342, at *14 (S.D.N.Y. Mar. 30,
2023) ("the entirety of the public disclosures . . . actually
reveal that the challenged statements were entirely consistent
with Peloton's actual financial results"); Defs. Ex. N, ECF No.
78-14 (reported in Q3 2021, revenue increased 36% year-over-year);
Defs. Ex. R, ECF No. 78-18 (reported in Q4 2021, revenue increased
31% year-over-year); Defs. Ex. U, ECF No. 78-21 (reported in Q1
2022, revenue increased 18% year-over-year); Defs. Ex. Z, ECF No.
78-26 (reported in Q2 2022, revenue increased 27% year-over-year).
Accordingly, defendants have shown the forward-looking statements
were accompanied by meaningful cautionary language.

In sum, defendants are entitled to invoke the statutory safe
harbor for forward-looking statements for certain alleged
misstatements and accordingly those misstatements will be
dismissed.

### iii.  **Puffery**

Defendants also argue that many of the alleged misstatements related to Olo's finances and the enterprise market are puffery because they are generic statements of optimism. For its part, plaintiff only contests that the statements "I think from a high level, the underlying fundamentals of the business remain really strong," and "It has been our long held conviction at Olo that SaaS is a better alternative to homegrown solutions," are not puffery because, the SAC alleges defendants were aware of contradictory facts. SAC, ¶¶ 154, 163. See Pl. Opp'n, at 17.

In general, puffery is non-actionable. In re Vivendi, 838 F.3d at 245; ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 206 (2d Cir. 2009). "Puffery is an optimistic statement that is so vague, broad, and non-specific that a reasonable investor would not rely on it, thereby rendering it immaterial as a matter of law." Galestan, 348 F. Supp. 3d at 297-98. See also in re Signet Jewelers Ltd. Sec. Litig., 389 F. Supp. 3d 221, 229 (S.D.N.Y. 2019) ("Archetypal examples of puffery include statements that are explicitly aspirational, general statements about reputation, integrity, and compliance with ethical norms, mere generalizations regarding a company's business practices, and generalized expressions of optimism."). However, if the statement "contradict[ed] facts that [we]re known to" defendants, the statements are not puffery. In re Vitrus Inv.

Partners, Inc. Sec. Litig., 195 F. Supp. 3d 528, 537 (S.D.N.Y. 2016).

The Court finds that the following two statements are puffery: (1) "The fourth quarter was a great close to our fiscal year as a public company . . . Olo continued to drive momentum and beat expectations in the fourth quarter, demonstrating the mission-critical nature of our solutions," SAC, ¶ 154; and (2) "Our enterprise brands, meaning those brands having 50 or more locations, are also highly loyal," id. ¶ 159. These are general statements of optimism; plaintiff does not argue that defendants knew contradictory facts to these statements in their opposition brief; and even if plaintiff had argued such, the SAC does not adequately allege defendants "knew the contrary was true" for the same reasons that plaintiff failed to adequately allege the forward-looking statements were made with knowledge of the falsity of the statements. Novak v. Kasaks, 216 F.3d 300, 315 (2d Cir. 2000). See also in re Turquoise Hill, 625 F. Supp. 3d at 222 ("[E]ven if Plaintiffs are correct that statements of puffery may be actionable if they contradict facts known to the defendant, Plaintiffs do not point to any facts known to [defendant] that clearly contradicted its statement.") Accordingly, these statements are dismissed as bases for liability.

### iv. **Not False or Misleading**

Finally, defendants argue that plaintiff has failed to allege sufficient facts showing that certain of the alleged misstatements are false or misleading. The Court agrees. None of the facts alleged in the SAC impugns the veracity of the statement, "Over the last five years, on average nearly 99% of our enterprise brand customers, which accounted for 91% of our active total locations as of December 31, 2020, have continued using our Ordering module each year." SAC, ¶ 159. So too with the statements, "Quarter-over-quarter, we continue to add new locations to our platforms as restaurant brands recognize our ability to partner and add value for them" and that Olo is "continuing to add more active locations to the platform." Id. ¶ 152. While the SAC does allege that the number of reported active locations was inflated, it does not allege that Olo was experiencing no growth in its number of active locations (until, of course, the Subway Transition, which did not begin until two months after this alleged misstatement was made in November 2021). See SAC, ¶¶ 13-15, 25, 59-75, 147, 152, 170-71. Additionally, the statement, "Our history of success first with [D]ispatch, subsequently with [R]ails in being able to sell effectively and efficiently into that captive audience, we see a lot of opportunity ahead," id. ¶ 150, is partially a statement of opinion (as explained above) and nothing in the SAC shows that the

factual assertion that preceded the opinion was false or misleading.

In sum, none of the statements about Olo's financial prospects or prospects in the enterprise segment of the market can be a basis for plaintiff's securities fraud claims. Those theories of liability are accordingly dismissed.

### c. Active Locations

In its prior opinion, the Court denied defendants' motion to dismiss the alleged misstatements about Olo's active locations. Seeking, like plaintiff, to take another bite at the apple (which by this time is becoming rather stale), defendants now try again. Defendants argue that the statements related to the number of Olo's active locations should be dismissed for three reasons: (1) the statements are not adequately alleged to be false or material; (2) scienter is not adequately alleged; and (3) loss causation is inadequately alleged. The Court addresses each argument in turn.

### i. Actionable Misstatements

This Court already rejected defendants' argument that the statements related to Olo's number of active locations are not false or material. 7/25/23 Op., at 7-11. As the Court already explained, the FAC adequately alleged, based on corroboration from confidential witnesses, that the statements about the number of active locations were false or misleading because the FAC alleged:

(1) "Olo prematurely included individual restaurant locations in its active locations count before those locations had actually begun utilizing any of Olo's products"; (2) "Olo failed to remove inactive locations from the active locations count"; and (3) "not all brand locations within a single chain joined Olo's platform." FAC, ¶¶ 84-89, ECF No. 38.

Now, defendants re-argue that the misstatements related to the number of active locations must be dismissed because the statements are not adequately alleged to be false or material, all based on one new paragraph in the SAC. That paragraph alleges that Olo had a dual classification system depending on the module being deployed and bases this allegation on the deposition testimony of defendants' employee, Ms. Jeon. SAC, ¶ 67. In particular, for "Rails, Dispatch, and Network modules, a location would only be considered active if a customer used that module to complete a single order within a given quarter," which "lines up with what Olo repeatedly told the market." Id. However, for Olo's other modules, "a location only needed to possess Olo's software to be considered active" even if no orders were placed. Id.

In actuality, this one new paragraph does not remotely undermine the Court's prior decision, for several reasons. First, defendants' argument that this new paragraph shows defendants' calculations of the number of active locations matches its public disclosures is little more than a thinly veiled attempt to have

the Court prematurely resolve a factual dispute. As the Court
explained in its previous opinion, whether a statement is false or
misleading is a question of fact. Therefore, it is inappropriate
to resolve such disputes over the veracity of a statement on a
motion to dismiss "unless the Court, drawing all reasonable
inferences in favor of the plaintiff, determines that reasonable
minds could not differ on the question of whether the statements
alleged in the complaint were misleading in light of the
circumstances under which they were made." In re Inv. Tech. Grp.,
Inc. Sec. Litig., 251 F. Supp. 3d 596, 609 (S.D.N.Y. 2017). See
also in re ICN/Viratek Sec. Litig., No. 87 CIV. 4296, 1996 WL
164732, at *12 (S.D.N.Y. Apr. 9, 1996). At most, defendants have
raised a factual dispute about whether Olo properly calculated the
number of active locations in line with its publicly disclosed
definitions of active locations and based on how the different
modules generate revenue. This is because the SAC adequately
alleges the information alleged in paragraph 67 directly
contradicts the statement that defendants made that "[w]e count a
location active in the quarter if they've had an order in the
quarter." SAC, ¶¶ 48, 67. Furthermore, the allegations in paragraph
67 have no bearing on the two other reasons plaintiffs allege the
statements related to Olo's active locations were false or
misleading: (1) Olo "failed to remove inactive locations from [its]

active locations count"; and (2) Olo falsely claimed to have "100%
franchise participation." SAC, ¶¶ 14-15.

Defendants then try a different tactic for undermining the
Court's prior holding that the statements related to the number of
active locations were adequately alleged to be false or misleading
-- attacking the allegations related to the confidential
witnesses. Defendants argue that the confidential witnesses are no
longer "described . . . with sufficient particularity to support
the probability that a person in the position occupied by the
source would possess the information alleged," City of Omaha Police
& Fire Ret. Sys. v. Evoqua Water Techs. Corp., 450 F. Supp. 3d
379, 405-06 (S.D.N.Y. 2020), because the SAC does not allege that
the confidential witnesses prepared the publicly disclosed active
location counts or had any basis to know which restaurants were
included in those counts. See Defs. Ex. EE, at 116:10-117:3, 120:4-
8, ECF No. 78-31.[4]

However, the Court has already explicitly found that the
confidential witnesses were "described . . . in the complaint with
sufficient particularity to support the probability that a person

---

[4] Defendants also implore the Court to be more skeptical toward
plaintiff's reliance on the confidential witnesses because
plaintiff disclaimed its intent to rely on the confidential
witnesses after the pleading stage. However, at oral argument,
plaintiff clarified that it was "not withdrawing the possibility
that [it] would call the confidential witnesses as part of [its]
case," 9/20/23 Hr'g Tr. at 11:13-17, so the defendants' concerns
are misplaced.

in the position occupied by the source would possess the information alleged." 7/25/23 Op., at 10 n.3. Defendants' argument does not undermine that finding because it is permissible for confidential witnesses to rely on indirect knowledge. See City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc., 477 F. Supp. 3d 123, 132 (S.D.N.Y. 2020). At most, defendants have raised a factual dispute about whether the confidential witnesses possessed information about the active locations counts, which would be inappropriate to resolve at this juncture.

Finally, defendants argue that paragraph 67 undermines the Court's prior conclusion that the misstatements were material because it "shows that the public disclosures accurately reflected customers using Olo's products; Olo followed a diligent process of counting active locations and the SAC lacks any explanation of how the FP&A process allegedly produced a wrong result." Defs. Mem. of Law in Supp. of Mot. to Dismiss, at 20. However, that argument merely reiterates defendants' falsity argument, which is unavailing, and in no way undermines the Court's prior conclusion that inaccuracies in the number of active locations are adequately alleged to be material.

In sum, the Court reconfirms its prior ruling that plaintiff has adequately alleged actionable misstatements about Olo's active locations.

ii. **Scienter**

In its prior opinion, the Court found that plaintiff had adequately alleged strong circumstantial evidence of conscious misbehavior or recklessness on the part of the "Individual Defendants" (Glass and Benevides) that could be imputed to the corporation. The Court reached this conclusion based on Benevides "hav[ing] access to a particular software that 'track[ed] . . . Olo's key metrics, including the active locations count'" that he "'would have obtained his active locations data from,'" and Glass's involvement and frequent interactions with clients, including onboarding and negotiations. 7/25/23 Op., at 16. Defendants now urge the Court to reach a different conclusion.

First, defendants argue scienter is not adequately alleged for Benevides because the SAC no longer includes the allegation that Benevides had access to Locker (the software that tracked Olo's active locations count), which was the basis for the Court's prior decision that the FAC adequately alleged Benevides possessed scienter. Now, the only allegation about Benevides's recklessness as it relates to Olo's active locations is that he was included on emails about deployment issues. See SAC, ¶ 190. That allegation standing alone is plainly insufficient under the pleading standards for alleging recklessness because that does not adequately allege that Benevides "knew facts or had access to information suggesting that [defendants'] public statements were

not accurate." <u>Emps. Ret. Sys. Of Gov't of the V.I. v. Blanford</u>, 794 F.3d 297, 306 (2d Cir. 2015). <u>See also</u> <u>Tellabs, Inc. v. Makor Issues & Rts., Ltd.</u>, 551 U.S. 308, 324 (2007) (For the inference of scienter to be "strong," the inference must be such that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."). Accordingly, because the key allegation that the Court relied upon in its prior decision is omitted and the remaining allegation does not adequately allege recklessness, the SAC does not adequately allege Benevides possessed scienter, so the Section 10(b) claim against him must be dismissed.

Next, defendants urge the Court to reach a different conclusion about Glass's scienter based on paragraph 67, arguing that it supports a non-fraudulent interference that Glass thought the active locations numbers were being accurately calculated and reported. That argument proves too much, as the addition of this one allegation does not negate or overwhelm the fraudulent inference based upon Glass's involvement and frequent interactions with clients. Accordingly, the Court finds scienter is still adequately alleged as to Glass.

### iii. Loss Causation

In its prior opinion, the Court found that plaintiff adequately pled loss causation. 7/25/23 Op., at 11-13. Defendants

now argue that the SAC fails to adequately allege loss causation because the allegations in paragraph 67 show that defendants did not miscalculate the number of active locations. Once again, that argument raises a solely factual dispute that would be inappropriate for the Court to resolve on a motion to dismiss. It in no way undermines the Court's prior conclusion that loss causation is adequately alleged. Accordingly, the Court reconfirms its prior finding that the complaint adequately alleges loss causation.

### d. Control Person Violation

Defendants' only basis for arguing that the Section 20(a) claim should be dismissed is defendants' contention that the Section 10(b) claim must be dismissed in its entirety, which would mean plaintiff failed to adequately allege a primary violation of the securities laws as is required for a Section 20(a) claim to proceed. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007). However, since the Court found that the SAC adequately alleges a primary violation of Section 10(b) and nothing changes the Court's prior reasoning permitting the Section 20(a) claim to proceed forward, the Court denies defendants' motion to dismiss the Section 20(a) claim against the Individual Defendants.

**V.**   **Conclusion**

For the reasons explained above, the Court hereby reconfirms the rulings made in its "bottom line" order of September 26, 2023 denying in part and granting in part defendants' motion to dismiss.

New York, NY
November **30** , 2023

JED S. RAKOFF, U.S.D.J.