**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE - INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-08228-JSR CLASS ACTION JURY TRIAL DEMAND |
| Plaintiff, | |
| v. | |
| OLO INC., NOAH GLASS, and PETER BENEVIDES, | |
| Defendants. | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

Defendants Olo Inc. ("Olo" or "the Company"), Noah Glass, and Peter Benevides (collectively, "Defendants") upon personal knowledge and/or information and belief, answer Lead Plaintiff's Second Amended Class Action Complaint for Violations of Federal Securities Laws (the "SAC") as follows:

<u>GENERAL DENIAL</u>

Except as otherwise expressly admitted in the paragraphs below, Defendants deny each and every allegation in the SAC, and deny any and all allegations of wrongdoing and/or liability to Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Plaintiff") or the class members Plaintiff represents. To the extent any allegation in the SAC is not specifically and expressly admitted, it is denied. To the extent the SAC asserts legal conclusions, no response is required, and this answer contains no response to such legal conclusions other than their general denial. The table of contents and headings in the SAC are not allegations and, therefore, do not require a response. To the extent any response is required to the table of contents or headings in the SAC, Defendants deny all allegations of wrongdoing and/or liability to Plaintiff or the class members Plaintiff represents. Defendants reserve the right to seek to amend or supplement this answer as may be necessary or appropriate.

<u>SPECIFIC RESPONSES TO THE</u>
<u>PARAGRAPHS IN THE AMENDED COMPLAINT</u>

## I.    INTRODUCTION

1.      Pursuant to this Court's July 26, 2023 Minute Entry granting Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Lead Plaintiff") leave to amend, Lead Plaintiff, by and through its attorneys, brings this Second Amended Class Action Complaint for Violations of Federal Securities Laws ("SAC") against Defendants Olo Inc. ("Olo" or the "Company"), Olo's Chief Executive Officer ("CEO") Noah H. Glass ("Glass"), and Olo's Chief Financial Officer ("CFO") Peter J. Benevides ("Benevides" and with Olo and Glass, "Defendants"). Plaintiff brings this action on behalf of itself

and all persons and entities that purchased shares of Olo's Class A common stock ("Olo's common stock") between March 17, 2021 and August 11, 2022, inclusive (the "Class Period").

**ANSWER:**    Defendants state that the allegations in Paragraph 1 consist of legal conclusions, to which no response is required. To the extent Paragraph 1 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 1 except admit that the Court's July 26, 2023 Minute Entry granted Plaintiff leave to amend, and that Plaintiff brings this action against Defendants on behalf of a class.

2.    On January 13, 2023, Lead Plaintiff filed its Amended Class Action Complaint for Violations of Federal Securities Laws ("FAC") (ECF No. 38), alleging that Defendants materially misled the market beginning on August 10, 2021 by misstating the number of its "active locations," one of Olo's "key metrics" that Defendants repeatedly claimed served as a "performance indicator" of past, present, and future growth, and beginning on February 23, 2022, omitted mention of Olo's loss at the start of the year of its most important brand client, Subway.

**ANSWER:**    Defendants deny the allegations in Paragraph 2, except admit that Plaintiff filed an Amended Class Action Complaint for Violations of Federal Securities Laws on January 13, 2023.

3.    On April 10, 2023, this Court issued a bottom-line Order (ECF No. 50), denying Defendants' Motion to Dismiss the FAC. In its July 25, 2023 full Order (ECF No. 71) on Defendants' Motion, this Court sustained the FAC's active locations allegations in full, but dismissed the FAC's omissions-based Subway allegations as protected by the PSLRA's safe harbor for forward-looking statements.

**ANSWER:**    Defendants deny the allegations in Paragraph 3, except admit that the Court issued a bottom-line Order on April 10, 2023 and a subsequent full order on Defendants' Motion to Dismiss the Amended Complaint on July 25, 2023.

4.    Since the filing of the FAC, the parties to this action have substantially engaged in discovery. While vigorously pursuing discovery, Plaintiff and Plaintiff's Counsel uncovered significant confirmatory evidence of the FAC's Subway and active locations allegations, evidence of additional actionable misstatements, including several embedded within Olo's IPO Offering Documents and Roadshow materials, as well as clear evidence of an unreported slowdown in Olo's business so severe that just weeks before Defendants issued materially false full year ("FY") 2022 public guidance, ███████████████████

2

**ANSWER:** Defendants deny the allegations in Paragraph 4, and respectfully refer the Court to Olo's filings with the U.S. Securities and Exchange Commission ("SEC") and investor materials referenced in Paragraph 4, which speak for themselves. Defendants specifically deny that Plaintiff's discovery has uncovered any confirmatory evidence of any of its active locations allegations, or evidence of additional actionable misstatements. Defendants further state that no response to the allegations regarding alleged Subway misstatements is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). The allegations in footnote 1 consist of Plaintiff's comment on internal formatting to the SAC, to which no response is required. To the extent footnote 1 contains factual allegations to which a response is required, Defendants deny the allegations in footnote 1.

5. Now, Plaintiff brings this Second Amended Complaint alleging fraud-based claims under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges the following based upon personal knowledge as to itself and its own acts, documents obtained from the Defendants and third-parties, and upon information and belief as to all other matters. Plaintiff's information and belief is based on the ongoing independent investigation of its undersigned counsel, which includes a review of: Defendants' press releases, conference call transcripts, filings with the SEC, and other public statements; news stories, analyst reports, and other public information concerning Olo and/or the industry within which it operates; and interviews with former Olo employees and/or others familiar with the Company, as well as the review of documents and deposition testimony obtained to date.

**ANSWER:** Defendants deny the allegations Paragraph 5, and state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the investigation conducted by Plaintiff's counsel.

## II. SUMMARY OF THE ACTION

---

[1] Unless otherwise noted, emphasis is added.

6.    Olo, short for "online ordering," is a New York software company that connects individual restaurant locations to consumers directly through mobile and online ordering and/or indirectly through third-party applications, including DoorDash, Grubhub, and Uber Eats.

**ANSWER:**    Defendants deny the allegations in Paragraph 6, except admit that Olo is a software as a service ("SaaS") platform for restaurants and that its principal executive offices are located in New York, New York, and respectfully refer the Court to Olo's SEC filings for a description of the Company's business.

7.    Founded in 2005 by Defendant Glass, Olo found itself in the right place at the right time when the Covid-19 pandemic hit. With in-person dining shut down, restaurants scrambled to find ways to enable customers to order online. Without adequate time to develop such systems in-house, restaurant groups turned to companies like Olo. As such, Olo's revenue in 2020 soared. Olo rode this wave created by the pandemic to go public and, on March 17, 2021, commenced an IPO, raising almost $520 million in gross proceeds.

**ANSWER:**    Defendants deny the allegations in Paragraph 7, except admit that Mr. Glass founded Olo in 2005 and that Olo commenced its initial public offering ("IPO") on March 17, 2021, and respectfully refer the Court to Olo's SEC filings for information regarding its IPO and revenue. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 7.

8.    In the Company's IPO registration statement and prospectus (collectively, the "Offering Documents"), pursuant to which Olo issued its shares to the public, Olo made a number of misstatements related to "active locations" (a metric that states the number of locations allegedly "utilizing" one of Olo's products in a given quarter), to enterprise brands (brands with over 50 locations) and to the total addressable market ("TAM"). These categories of misstatements contained in the Offering Documents (and more) only continued throughout the Class Period.

**ANSWER:**    Defendants deny the allegations in Paragraph 8 and respectfully refer the Court to the SEC filings referenced in Paragraph 8, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 8.

9.    To begin with, with each passing quarter, the number of active locations noted in Defendants' Securities and Exchange Commission ("SEC") filings and public statements grew. For example, in the Company's SEC Form 10-Q for 1Q 2021, issued on May 11, 2021, Defendants

4

stated that Olo retained "approximately 69,000 active locations." The following quarter, in another SEC Form 10-Q, issued on August 10, 2021, Defendants stated that Olo retained "approximately 74,000 active locations." This number grew to 82,000 by the end of the Class Period.

**ANSWER:** Defendants deny the allegations in Paragraph 9, except admit (1) Olo stated it had approximately 69,000 active locations as of March 31, 2021; (2) Olo stated it had approximately 74,000 active locations as of June 30, 2021; and (3) Olo stated it had approximately 82,000 active locations as of March 31, 2022. Defendants respectfully refer the Court to the SEC filings referenced in Paragraph 9, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 9.

10.     The number of active locations reported to the market was vital to the Company as it was a "***performance indicator***" of future growth. According to Defendants, the "active location count is an important metric that demonstrates the growth and scale of our overall business and reflects our ability to attract, engage, and monetize our customers and thereby drive revenue, as well as provides a base to expand usage of our modules." Indeed, Defendants went to great lengths to emphasize the connection between active locations growth and revenue/profitability growth, repeatedly emphasizing that "Our ability to grow revenue is a function of adding ***more*** restaurant locations to the platform."

**ANSWER:** Defendants deny the allegations in Paragraph 10, and respectfully refer the Court to the SEC filings, earnings call transcript, and press releases referenced in Paragraph 10, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings, earnings call transcript, and press releases referenced in Paragraph 10.

11.     Defendants also attempted to distinguish Olo from competitors by claiming that when Olo signed a new restaurant brand, "***all***" of that brand's locations – whether corporate-owned or franchised – were obligated to adopt Olo's technology and "***always*** go[] live really ***all at the same time*** to create that consistent experience everywhere." This was stated (in various forms) twice in the Offering Documents and then repeatedly throughout the Class Period.

**ANSWER:** Defendants deny the allegations in Paragraph 11, and respectfully refer the Court to the SEC filings and investor presentation transcript referenced in Paragraph 11, which

5

speak for themselves. Defendants specifically deny any characterization that is not consistent with

the content of the SEC filings and investor presentation transcript referenced in Paragraph 11.

12.    Unfortunately for investors, the numerous statements about active locations were untrue and obscured an aggressive campaign by Defendants to falsify Olo's active locations numbers. This campaign transpired in a number of ways.

**ANSWER:**    Defendants deny the allegations in Paragraph 12.

13.    *First*, despite defining "active locations" as "a unique restaurant location ***live*** on the platform with at least one product module," Olo prematurely included individual restaurant locations in its active locations count before those locations had actually begun utilizing ***any*** of Olo's products. As discussed below, Olo had a policy of including ***all*** individual restaurant locations in its active locations count after the new brand client signed with Olo, but before many of the individual brand locations were ever truly "active." Defendants did this in spades. The FAC identified Jack in the Box, which Defendants falsely claimed had been fully onboarded by June 30, 2021, as an example of this type of active locations fraud. Now, the SAC has identified numerous additional brands announced by Defendants to the market as fully onboarded that were not, including several major brands (Subway, Checkers, and Dairy Queen) included in Olo's IPO Offering Documents and Roadshow materials.

**ANSWER:**    Defendants deny the allegations in Paragraph 13, and respectfully refer the

Court to the SEC filings, earnings call transcript and press releases referenced in Paragraph 13,

which speak for themselves. Defendants specifically deny any characterization that is not

consistent with the content of the SEC filings, earnings call transcripts and press releases

referenced in Paragraph 13.

14.    *Second*, Olo failed to remove inactive locations from the Company's active locations count. On multiple occasions, individual locations turned ***off*** their Olo products and therefore were not truly "active," but were included in the count nonetheless. And, what's worse, despite repeatedly publicly claiming that the Company only counted "live" locations as "active" locations, for most modules, a location only needed to ***possess*** Olo's software to be considered "active," even if, throughout an entire quarter, not a single order was placed using Olo's software. In fact, of Olo's ten modules,[2] only Rails, Dispatch, and Network actually required ***any*** customer "activity" whatsoever in order to be classified as "active."[3]

---

[2]    Besides Olo's three "core" modules (Rails, Dispatch, Ordering), Olo's other modules during the Class Period were Network, Host, Guest Sentiment, Marketing Automation, Customer Data Platform ("CDP"), Sync, and Olo Pay.

[3]    Defendants were well aware of the lower active locations numbers than those reported. In a further attempt to increase the publicly reported numbers, in early May 2021, ██████████

**ANSWER:**    Defendants deny the allegations in Paragraph 14 and footnotes 2 and 3, except admit (1) Olo tracks certain information concerning the usage of its products by individual restaurant locations; (2) Olo's three core modules are Rails, Dispatch, and Ordering; and (3) Olo's other modules include Network, Guest Sentiment, Marketing Automation, Customer Data Platform, Sync, and Olo Pay.

15.    *Third*, not all brand locations ultimately joined Olo's platform, despite the repeated claims (in the IPO Offering Documents and elsewhere) that Olo had "100% franchisee participation" and that its products were adopted by all of the restaurant locations within a brand. In truth, numerous individual locations frequently opted not to use Olo's technology. Internal documents show ███████████████████████████████████████ and that ███████████████████████████████████████████████. As such, the Company had a policy of ███████████████████████████████████████████ Internally, Defendants Glass and Benevides characterized these problem brands as "███████████████" and ███████████████████████████████████████████████████████████████████

**ANSWER:**    Defendants deny the allegations in Paragraph 15 and respectfully refer the Court to the SEC filings referenced in Paragraph 15, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 15.

16.    It is clear that this campaign to misrepresent the nature and number of active locations was done to cover up what can only be described as a desperate situation at the Company. While Olo rode a wave of profitability and revenue due to the pandemic, by the summer of 2021, that wave was crashing and the slowdown in Olo's business was apparent to Olo executives, including Defendants Glass and Benevides. The following timeline adequately paints the downward spiral at the Company during the Class Period:

- By June 2021, ███████████████████████████

- In July 2021, ████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████████████ As a result, the number of active locations increased.

- By September 2021, █████████████████████████████
███████████████████████████████

- By October 2021, ███████████████████████████████
████████████████████

- In November 2021, ██████████████████████████████
████████████████████

- In December 2021, ██████████████████████████████
████████████████████

- In March 2022, █████████████████████████████████
████████

ANSWER:    Defendants state that no response to the allegations contained in Paragraph

16 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on

Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be

required, Defendants deny all allegations contained in Paragraph 16.

17.    Nonetheless, throughout the Class Period, Defendants projected lofty – and unattainable – revenue growth, going so far as to *raise* FY 2022 revenue guidance on February 23, 2022, despite simultaneously internally projecting a revenue shortfall. The guidance was unattainable and fictitious. Indeed, by the summer of 2022, as Benevides put it bluntly ████ ████

ANSWER:    Defendants state that no response to the allegations contained in Paragraph

17 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on

Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be

required, Defendants deny all allegations contained in Paragraph 17, and respectfully refer the

Court to the SEC filings referenced in Paragraph 17, which speak for themselves. Defendants

specifically deny any characterization that is not consistent with the content of the SEC filings

referenced in Paragraph 17.

18.     Adding to the troubles at the Company during the Class Period was the fragile relationship it had with Subway, its largest client both by revenue and active locations count, purportedly accounting for approximately 31% of the Company's active locations at the time of the IPO. To begin with, in February 2020, Olo announced that "Subway's network of more than 20,000 U.S. restaurants" had signed up for Olo's Rails module. Despite that claim, as well as Defendant Glass' claim that individual brand locations "*always* go[] live really *all at the same time*" and the IPO Offering Documents' claims about brand "*100% franchisee participation*," at the time of the IPO, Olo had only contracted with ███████████████████ ██████████████████ Subway locations.

**ANSWER:**     Defendants state that no response to the allegations contained in Paragraph 18 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 18, and respectfully refer the Court to the SEC filings, press release and investor presentation transcript referenced in Paragraph 18, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings, press release and investor presentation transcript referenced in Paragraph 18.

19.     Furthermore, Subway was always a shaky client and Defendants knew that ███████ ████████████████████████████ Subway only signed up for one Olo product (Rails) and had no interest in other products. █████████████████████ ███████████████████████████████████████████ ███████████████████████████████ Ultimately, that is what happened.

**ANSWER:**     Defendants admit that Subway only signed up for Olo's Rails module. Defendants otherwise state that no response to the allegations contained in Paragraph 19 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 19.

20.    On ████████████, Subway informed Olo that it was terminating its relationship with Olo in favor of developing the same software in-house. ████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 20 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 20.

21.    Instead of coming clean about Subway, Defendants opted to mislead. ████████████████████████████████████████████████████████████████████████ext, in Olo's FY 2021 Form 10-K, filed with the SEC on February 25, 2022, Defendants issued a misleading risk warning, merely warning about a hypothetical risk that had *already* come to pass:

> In addition, *if* our customers . . . reduce the number of locations using our platform, then our revenue *may* decline and our results of operations may be harmed. Customers *may* not renew their contracts with us or reduce their use of our platform for any number of reasons, including . . . *if they decide to build their own solution internally* . . .[4]

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 21 and footnote 4 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response

---

[4]    It is black letter law that "risk disclosures are [themselves] misleading where [a] company warns only that a risk may impact its business when that risk has already materialized." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) (emphasis added); see *also In re Bioscrip, Inc. Sec. Litig.*, 2015 WL 3540736, at *6 (S.D.N.Y. June 5, 2015) (risk warnings offer no protection "because . . . they described what had become a fait accompli"); *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *12 (S.D.N.Y. Mar. 25, 2013) (rejecting defendant's reliance on alleged cautionary language because plaintiff alleged "that the risk factors were not merely hypothetical (i.e., they 'could' happen), but were in fact happening— indeed, had already happened").

may be required, Defendants deny all allegations contained in Paragraph 21, and respectfully refer

the Court to the SEC filings referenced in Paragraph 21, which speak for themselves. Defendants

specifically deny any characterization that is not consistent with the content of the SEC filings

referenced in Paragraph 21. Defendants further state that the allegations in footnote 4 consist of

legal conclusions, to which no response is required.

22.     In fact, this risk had already come to pass with respect to other Olo brand clients as well. For example



As stated best by one Olo employee (upon learning of Subway's departure):

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph

22 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on

Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be

required, Defendants deny all allegations contained in Paragraph 22.

23.     The inability of Olo to attract and retain enterprise customers (and certainly "███" customers) would have been fatal to its market perception and stock price and so Defendants continued to mislead investors during the Class Period. In fact, against the backdrop of Olo's inaccurate active locations count, sharp – yet undisclosed – slowdown in new bookings, onboarding failures, the complete loss of Subway ███████████████ and the broader restaurant industry shift toward building software solutions in-house, Defendants raised the stakes even higher. On the Company's 4Q and FY 2021 earnings call on February 23, 2022, Defendants began touting "a 100x growth opportunity . . . representing a TAM of more than $15 billion," an unattainable goal more than twice what Defendants had touted in Olo's IPO Offering Documents and stated that in 2022 Olo would "target[] a similar number of net [active locations] adds as we achieved in 2021."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph

23 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on

Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 23, and respectfully refer the Court to the SEC filings and earnings call transcript referenced in Paragraph 23, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings and earnings call transcript referenced in Paragraph 23.

24.    This "TAM" was dependent entirely on massively growing the number of active locations and capturing the lion's share of enterprise customers. Both of these were known to be impossible within the Company. Indeed, ███████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 24 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 24.

25.    Thus, the guidance, the revenue growth projections, and the TAM were entirely illusory as the market would eventually learn. The truth began to be revealed after the markets closed on August 11, 2022. That day, Defendants disclosed that they had known about Subway's then-pending departure prior to the issuance of their FY 2022 guidance on February 23, 2022 and announced that 2,500 Subway locations, which heretofore had been utilizing Olo's Rails product, had integrated directly with third-party marketplaces and that the remaining Subway locations would be removed in 4Q 2022 and 1Q 2023. As a result, Defendants announced that the Company would experience *virtually no active locations growth in 2022*, correcting earlier misstatements about "targeting a similar number of net adds [15,000] as we achieved in 2021."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 25 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 25, and respectfully refer the

Court to the earnings call transcript referenced in Paragraph 25, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 25.

26.     More broadly, even though Defendants did not explicitly reveal the true extent of their inaccurate reporting of Olo's active locations count, as well the Company's failure to book new active locations and onboard existing contracted locations, the undisclosed risk of those inaccuracies materialized on the same day – August 11, 2022 – when Defendants were forced to significantly reduce FY 2022 revenue guidance.

**ANSWER:**    Defendants deny the allegations in Paragraph 26.

27.     Though Defendants attempted to blame "macroeconomic challenges," such excuses fall flat in the face of (1) Olo's claims just weeks before the end of 2Q 2022 that a recession would serve as a "tailwind" for Olo's business as consumers "trade down from the high-end restaurants to the lower-cost restaurants," i.e., fast-food restaurants, Olo's bread-and-butter brand clients and (2) the fact that Olo's chief competitor – Toast, Inc. ("Toast") – announced earnings the *same day* and, despite citing the "macroeconomic backdrop," *raised* its guidance.

**ANSWER:**    Defendants deny the allegations in Paragraph 27, except state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Toast, and respectfully refer the Court to the earnings call transcript and investor presentation transcript referenced in Paragraph 27, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript and investor presentation transcript referenced in Paragraph 27.

28.     In response to these revelations, Olo's common stock price plummeted 36% the following day, from a closing price of $12.99 per share on August 11, 2022, to a closing price of $8.26 per share on August 12, 2022, erasing more than $480 million in shareholder value. Olo's shares have never recovered, trading below $7.00 per share as of the date of the filing of this Complaint.

**ANSWER:**    Defendants deny the allegations in Paragraph 28, except admit that (1) Olo's Class A common stock closed at $12.99 per share on August 11, 2022; and (2) Olo's Class A common stock closed at $8.26 per share on August 12, 2022.

13

## III.    JURISDICTION AND VENUE

29.    The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

**ANSWER:**    The allegations in Paragraph 29 consist of legal conclusions, to which no response is required. To the extent Paragraph 29 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 29, except admit that Plaintiff brings this action against Defendants on behalf of a class pursuant to the statutory and regulatory provisions cited in Paragraph 29.

30.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

**ANSWER:**    The allegations in Paragraph 30 consist of legal conclusions, to which no response is required. To the extent Paragraph 30 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 30.

31.    Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and §27 of the Exchange Act (15 U.S.C. §78aa(a)). At all relevant times, Olo was headquartered and conducted business in this District at 285 Fulton Street One World Trade Center, 82nd Floor New York, NY 10007. In addition, many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. In addition, at all relevant times, Olo's common stock was offered, sold, and traded on the New York Stock Exchange (the "NYSE"), which is located in this District.

**ANSWER:**    The allegations in Paragraph 31 consist of legal conclusions, to which no response is required. To the extent Paragraph 31 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 31, except admit that Olo's principal executive offices are located in New York, New York and that Olo's Class A Common Stock has been listed on the NYSE since the Company's IPO on March 17, 2021.

32.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of a national securities exchange.

14

**ANSWER:** The allegations in Paragraph 32 consist of legal conclusions, to which no response is required. To the extent Paragraph 32 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 32.

## IV. PARTIES

### A. Plaintiff

33.     Lead Plaintiff STA-ILA, as set forth in its certification (ECF No. 16-3), purchased Olo's common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and misleading statements alleged herein.

**ANSWER:** Defendants deny the allegations in Paragraph 33, except state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's stock purchases.

### B. Defendants

34.     Defendant Olo is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York. Olo provides software to restaurants to assist with online ordering and food-delivery coordination. Olo's stock trades on the NYSE under the ticker "OLO." During the Class Period, Olo, through its officers and directors, published periodic filings with the SEC and made public statements that, as alleged herein, violated the securities laws and contained materially false and misleading statements.

**ANSWER:** The allegations in Paragraph 34 consist of legal conclusions, to which no response is required. To the extent Paragraph 34 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 34, except Defendants admit that (1) Olo is a Delaware corporation with principal executive offices located in New York, New York; (2) Olo is a SaaS platform for restaurants, and Defendants respectfully refer the Court to Olo's SEC filings for a description of the Company's business; (3) Olo's Class A Common Stock has been listed on the NYSE since the Company's IPO on March 17, 2021 and trades under the ticker "OLO"; and (4) Olo makes periodic filings with the SEC. Defendants respectfully refer the Court to the SEC filings, press releases, earnings call transcripts, and investor presentation transcripts

15

referenced in Paragraph 34, which speak for themselves. Defendants specifically deny any

characterization that is not consistent with the content of the SEC filings, press releases, earnings

call transcripts, and investor presentation transcripts referenced in Paragraph 34.

35.    Defendant Glass founded Olo in 2005 and was, at all relevant times, Olo's CEO and a member of Olo's Board of Directors. Throughout the Class Period, Glass signed all of the Company's SEC filings (including the IPO Offering Documents) and made statements in the Company's press releases, earnings conference calls, and at other public events, which, as alleged herein, violated the securities laws and contained materially false and misleading statements. At all relevant times, Glass made the false and misleading statements with scienter.

ANSWER:    The allegations in Paragraph 35 consist of legal conclusions, to which no

response is required. To the extent Paragraph 35 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 35, except admit that Mr. Glass founded

Olo in 2005 and serves as its Chief Executive Officer and as a member of its Board of Directors,

and respectfully refer the Court to the SEC filings, press releases, earnings call transcripts, and

investor presentation transcripts referenced in Paragraph 35, which speak for themselves.

Defendants specifically deny any characterization that is not consistent with the content of the SEC

filings, press releases, earnings call transcripts, and investor presentation transcripts referenced in

Paragraph 35.

36.    Defendant Benevides was, at all relevant times, Olo's CFO. Previously, Defendant Benevides held positions with Olo as Senior Vice President and Vice President of Finance. Throughout the Class Period, Benevides signed multiple of the Company's SEC filings (including the IPO Offering Documents) and made statements in the Company's press releases, earnings conference calls, and at other public events, which, as alleged herein, violated the securities laws and contained materially false and misleading statements. At all relevant times, Benevides made the false and misleading statements with scienter.

ANSWER:    Defendants state that no response to the allegations contained in Paragraph

77 required because the Court dismissed them in its September 26, 2023 bottom-line ruling on

Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be

16

required, the allegations in Paragraph 36 consist of legal conclusions, to which no response is required. To the extent Paragraph 36 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 36, except admit that Mr. Benevides serves as Olo's Chief Financial Officer and previously served as its Senior Vice President and Vice President of Finance, and respectfully refer the Court to the SEC filings, press releases, earnings call transcripts, and investor presentation transcripts referenced in Paragraph 36, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings, press releases, earnings call transcripts, and investor presentation transcripts referenced in Paragraph 36.

37.    Defendants Glass and Benevides are referred to herein together as the "Individual Defendants." Due to the Individual Defendants' positions at the Company, they possessed the power and authority to control the contents of Olo's filings with the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional and individual investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be materially false, misleading, and incomplete prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company and their access to material non-public information available to them but not to the public, the Individuals Defendants knew that the adverse facts specified herein had not been disclosed to, but were being concealed from, the public, and that the statements at issue were materially false, misleading, and incomplete when made.

**ANSWER:**    The allegations in Paragraph 37 consist of legal conclusions, to which no response is required. To the extent Paragraph 37 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 37.

38.    Olo, Glass, and Benevides are collectively referred to herein as "Defendants."

**ANSWER:**    The allegations in Paragraph 38 consist of a defined term, to which no response is required. To the extent Paragraph 38 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 38.

## V.    SUBSTANTIVE ALLEGATIONS

A.    **Overview of Olo and Its Business Model**

39.    Olo, short for "Online Ordering," was founded in 2005 by Defendant Glass with seed money from various investment firms (many of whose members went on to sit on the Olo Board of Directors).

**ANSWER:**    Defendants deny the allegations in Paragraph 39, except admit that Mr. Glass founded Olo in 2005, and respectfully refer the Court to Olo's SEC filings for a description of the Company's business.

40.    In March 17, 2021, Defendants commenced Olo's IPO, issuing 20,700,000 shares of Olo Class A common stock to the investing public at $25.00 per share, all pursuant to the Offering Documents, and raising gross proceeds of $517.5 million ($485.5 million net of underwriting discounts and commissions). By then, Olo's business encompassed two information" technology ("IT") solutions for generating online and mobile ordering: "Order Management" and "Delivery Enablement."[5]

**ANSWER:**    Defendants deny the allegations in Paragraph 40 and footnote 5, except admit that Olo commenced its IPO on March 17, 2021 and issued 20,700,000 shares of Olo Class A common stock to the investing public at $25.00 per share, and respectfully refer the Court to the certificate of incorporation and SEC filings referenced in Paragraph 40, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the certificate of incorporation and SEC filings referenced in Paragraph 40.

41.    Olo's "Order Management" IT solution connects restaurants directly to consumers through multiple modules. Most prominently is Olo's "Ordering" module (hereinafter "Ordering"), which allows consumers to interact directly with a restaurant location through a suite of digital commerce channels, including restaurant-branded mobile applications and websites, as well as telephonic orders. This module allows for the storage and hosting of restaurant menus, creation and management of promotional offers and loyalty/reward programs, as well as the synchronization of menu item availability, the modification of ingredients, and per-location pricing. Connected to each restaurant's point-of-sale system,[6] Ordering serves as the centerpiece of Olo's business model connecting restaurants directly to consumers.

---

[5]    "IT Solutions" are sets of services, software, and/or hardware that help businesses manage complex technical operations.

[6]    A "point-of-sale" system is typically a combination of hardware and software that allows businesses to accept payments from customers and keep track of sales.

**ANSWER:** Defendants deny the allegations in Paragraph 41 and footnote 6, except admit that (1) Olo's SaaS platform for restaurants includes multiple different "modules," including but not limited to the "Ordering," module; (2) Olo's Ordering module is a suite of fully-integrated, white label, on-demand digital commerce and channel management solutions, enabling guests to order directly from and pay restaurants via mobile, web, kiosk, voice, and other digital channels through Olo's other modules; and (3) Olo's Ordering module allows for the storage and hosting of restaurant menus, creation and management of promotional offers and loyalty/reward programs, as well as the synchronization of menu item availability, the modification of ingredients, and per-location pricing. Defendants respectfully refer the Court to Olo's SEC filings for a description of the Company's business.

42.     At all relevant times, Olo's other major IT solution was its "Delivery Enablement" solution, which connects restaurants indirectly to consumers through third-party applications. There are two significant modules within this solution: "Dispatch" module (hereinafter "Dispatch") and "Rails" module (hereinafter "Rails") (used by Subway and relevant to the claims alleged herein).

**ANSWER:** Defendants deny the allegations in Paragraph 42, except admit that Olo's SaaS platform for restaurants includes multiple different "modules," including but not limited to the "Dispatch" and "Rails" modules, and respectfully refer the Court to Olo's SEC filings for a description of the Company's business. To the extent the allegations in Paragraph 42 address claims about Subway, Defendants state that no response is required because the Court dismissed those claims in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105).

43.     Dispatch enables orders directly from a restaurant's digital ordering channel – such as a restaurant's website or application – but then delivers the order through a third-party delivery service provider ("DSP"). Rails enables the integration of a restaurant's menu and pricing into a third-party application or website for pick-up or delivery by that third-party. According to Defendants, during the Class Period, Olo's third-party Rails partners included "all major national

digital ordering aggregators," including Uber Eats, Caviar, DoorDash, Grubhub, Postmates, Seamless, and Uber Eats, each of which were also members of Olo's DSP network, as well as "regional and local aggregators that are meaningful to operators in specific geographies."

**ANSWER:** Defendants deny the allegations in Paragraph 43, except admit: (1) Olo's Dispatch module enables delivery directly from the restaurant's digital ordering channels through a network of third-party delivery service providers; and (2) Olo's Rails module facilitates the operational and systems integration of aggregators and other indirect channels, including the syndication of menu and price attributes. Defendants respectfully refer the Court to the earnings call transcript referenced in Paragraph 43, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 43. Defendants further respectfully refer the Court to Olo's SEC filings for a description of the Company's business.

44.     During the Class Period, almost of all of Olo's revenue was derived from what Olo calls "platform revenue," which includes both subscription and transaction-based revenue streams placed using all of the various models within both its Order Management and Delivery Enablement Solutions. Subscription revenue is earned from fixed monthly subscription fees from each restaurant location that subscribes to Olo's Ordering module. Additionally, some restaurant locations purchase an allotment of monthly orders for a fixed monthly fee and then pay an additional fee for each excess order utilizing the Company's Ordering module, which Olo also classifies as subscription revenue. Transaction revenue is earned from individual orders on a per order, per location basis from each restaurant location that subscribes to Olo's Dispatch and Rails modules. In other words, when a customer orders from an Olo-brand partner – either directly, when in excess of an agreed-upon monthly allotment, or indirectly through a third-party – Olo receives a cut. Therefore, as "transaction volume" (*i.e.*, the quantity of orders placed utilizing one of Olo's modules) increases, so too does Olo's revenue.[7]

**ANSWER:** Defendants deny the allegations in Paragraph 44 and footnote 7, except admit: (1) Olo's platform revenue includes both subscription and transaction-based revenue; (2) Olo charges its customers a fixed monthly subscription fee per restaurant location for access to

---

[7]     Olo has a second, far smaller source of revenue: "professional services and other," which primarily consists of fees for platform implementation services. During the Class Period, approximately 4% of Olo's revenue was "professional services and other" revenue, while the rest was "platform" revenue.

Olo's Ordering module, thus generating subscription revenue; and (3) customers who subscribe to Olo's Rails and Dispatch modules pay a fee on a per transaction basis, thus generating transaction revenue. Defendants respectfully refer the Court to the SEC filings referenced in Paragraph 44 and footnote 7, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 44 and footnote 7. Defendants further respectfully refer the Court to Olo's SEC filings for a description of the Company's business.

45.    During the Class Period, Olo's restaurant clients were comprised of brands across a spectrum of restaurant types, including: quick service restaurants ("QSRs") (another term for fast-food restaurants); fast casual restaurants; casual dining restaurants; family dining restaurants; and coffee and snack food restaurants. And, as noted below, the Company continually stressed its focus on and the importance of "enterprise brands" (those brands with over 50 locations).

**ANSWER:**    Defendants deny the allegations in Paragraph 45, except admit that Olo's customers include many leading brands across all service models of the restaurant industry, including quick service, fast casual, casual dining, family dining, convenience stores, grocery, and coffee and snack food, and respectfully refer the Court to Olo's SEC filings for a description of the Company's business. To the extent the allegations in Paragraph 45 address Olo's prospects in the enterprise market, Defendants state that no response is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105).

46.    However, the majority of Olo's restaurant clientele consisted of QSRs, including Subway, Dairy Queen, Krystal, Jimmy John's, Jack in the Box, Checkers, Del Taco, and Panda Express, a statistic Defendants did not expect would change. As Defendant Glass explained on the August 10, 2021 earnings call:

> As the largest component of the restaurant industry by both locations and transactions, QSR brands represent the greenfield industry

21

segment[8] that we love for its high average location count, industry
transaction share and cornerstone commitments to convenience.

**ANSWER:**    Defendants deny the allegations in Paragraph 46 and footnote 8, and

respectfully refer the Court to the earnings call transcript referenced in Paragraph 46, which speaks

for itself. Defendants specifically deny any characterization that is not consistent with the content

of the earnings call transcript referenced in Paragraph 46.

47.    The Company generally held three-year contracts with continuous one-year
automatic renewal periods, which it claimed provided "visibility into [the Company's] future
financial performance." *See* the IPO Offering Documents and all 10-K and 10-Qs filed during the
Class Period.

**ANSWER:**    Defendants deny the allegations in Paragraph 47, and respectfully refer the

Court to the SEC filings referenced in Paragraph 47, which speak for themselves. Defendants

specifically deny any characterization that is not consistent with the content of the SEC filings

referenced in Paragraph 47.

**B.    Active Locations, a Key Metric**

48.    Defendants steadfastly emphasized three "key metrics" for the Company: ***active
locations***, ARPU, and net revenue retention. Defendants long defined "active locations" as: "a
unique restaurant location live on the platform with at least one product module. So for example,
if an individual restaurant location subscribes to 3 modules, such as Ordering, Dispatch and Rails,
we would count that location once as a unique active location." Olo Inc., 1Q 2021 Earnings Call
(May 11, 2021). In Olo's 1Q 2021 Form 10-Q, Defendants clarified the precise meaning of "live"
when used in the context of "active locations": "We define active locations as a unique restaurant
location that is ***utilizing*** one or more modules in a given quarterly period." Defendants would go
on to repeat this exact definition in every quarterly and annual filing through the end of the Class
Period. Indeed, as Defendant Benevides stated plainly on the 2Q 2022 earnings call, "[W]e count
a location active in the quarter if they've had an order in the quarter."

**ANSWER:**    Defendants deny the allegations in Paragraph 48, except admit in Olo's 1Q

2021 Form 10-Q, Olo provided the following definition of active locations: "We define active

locations as a unique restaurant that is utilizing one or more modules in a given quarterly period,"

---

[8]    In this context, a "greenfield" investment refers to an investment opportunity in a market
that has never been commercially explored.

and Olo repeated that definition in every quarterly and annual filing through the end of the Class

Period. Defendants respectfully refer the Court to the SEC filings and earnings call transcripts

referenced in Paragraph 48, which speak for themselves. Defendants specifically deny any

characterization that is not consistent with the content of the SEC filings and earnings call

transcripts referenced in Paragraph 48.

49.     Importantly, Defendants repeatedly emphasized that when Olo signed a new brand customer, Olo products would be deployed in "*all*" of that brand's locations. For example, in the IPO Offering Documents, Defendants claimed that "In every one of our customer relationships, we are the exclusive provider of direct digital ordering services with *100% franchisee participation*." Later, at the January 10, 2022 ICR Conference, Defendant Benevides claimed "We also contract directly, or always contract directly, with brand headquarters to long-term exclusive contracts *and secure all locations within the brand* . . ." On the 1Q 2022 earnings call, held on May 10, 2022, Defendant Glass stated that "we always sell to the brand*, and then we're adopted across the entire location base*, whether those are corporate owned or franchise owned." When asked at the May 23, 2022 JPMorgan Global Technology, Media & Communications Conference "when Olo signs on a large enterprise, are all of the franchises also obligated to come onto the platform? And what does that process look like?" Defendant Glass responded:

> So we sell into one brand decision maker and *then we[']re adopted by all of the* restaurant locations within that brand, the corporate-owned locations, the franchise locations, the mix of the 2, however, they're set up in their organizational structure. And then brands are always going live really all at the same time to create that consistent experience everywhere. *So yes, we are deployed in all locations*.

And at the William Blair Growth Stock Conference held on June 6, 2022 Presentation, Defendant Glass claimed yet again that:

> Unlike other enterprise software businesses where the sales teams works to add a single location or division and expand to others, Olo enters into relationships at the brand's corporate level and secures exclusivity across all company owned and franchisee locations. And this enables us to deploy our modules across *all existing and new brand locations* without any additional sales and marketing costs and upsell new offerings to the brand itself rather than each individual location.

**ANSWER:**    Defendants deny the allegations in Paragraph 49, and respectfully refer the

Court to the SEC filings and investor presentation transcripts referenced in Paragraph 49, which

speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings and investor presentation transcripts referenced in Paragraph 49.

50.     Similarly, in his answer to the above stated question from the JPMorgan Conference, Defendant Glass claimed that "And then brands are always going live really ***all at the same time*** to create that consistent experience everywhere."

**ANSWER:**    Defendants deny the allegations in Paragraph 50, and respectfully refer the Court to the investor presentation transcript referenced in Paragraph 50, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 50.

51.     Defendants also went to great lengths to emphasize the direct connection between active locations and revenue. For example, in Olo's 4Q & FY 2021 press release issued on Form 8-K on February 23, 2022, Defendants explained that the "active location count is an important metric that demonstrates the growth and scale of our overall business and reflects our ability to attract, engage, and monetize our customers and thereby ***drive revenue***, as well as provides a base to expand usage of our modules." More plainly, Defendants repeatedly issued statements like the following by Defendant Benevides (from the 1Q 2021 earnings call held on May 11, 2021): "Our ability to grow revenue is a function of adding ***more*** restaurant locations to the platform."

**ANSWER:**    Defendants deny the allegations in Paragraph 51, and respectfully refer the Court to the SEC filings, press releases and earnings call transcript referenced in Paragraph 51, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings, press releases and earnings call transcript referenced in Paragraph 51.

**C.     Olo Rode a Wave of Covid-Era Popularity to Raise Over $500 Million in its IPO**

52.     With the onset of Covid-19 at the start of 2020, demand for restaurant software solutions skyrocketed as in-person dining came to a halt and the entire restaurant industry was forced to resort to other methods of sale – particularly mobile and online ordering – in order to survive. That year, Olo's revenue essentially doubled from the year prior, growing to $98.4 million from 2019's $50.7 million. Profit similarly followed, doubling from  $35.1 million in 2019 to $79.8 million in 2020.

24

**ANSWER:**    Defendants deny the allegations in Paragraph 52, except admit Olo reported annual revenue of $50.7 million in 2019 and $98.4 million in 2020, and gross profits of $35.1 million in 2019 and $79.8 million in 2020, and respectfully refer the Court to the SEC filings referenced in Paragraph 52 for Olo's reported annual revenue and gross profits in 2019 and 2020. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 52.

53.    Olo was in the right place at the right time. At the start of 2021, Olo seized on this apparent momentum to become a publicly-traded company.

**ANSWER:**    Defendants deny the allegations in Paragraph 53.

54.    On February 19, 2021, Defendants filed an initial registration statement on Form S-1 with the SEC and on March 15, 2021, Defendants filed an amended registration statement on Form S-1/A. The amended registration statement was declared effective on March 16, 2021 and incorporated by reference any future filings made with the SEC, including a prospectus, which the Company filed with the SEC on Form 424B4 on March 18, 2021.

**ANSWER:**    Defendants deny the allegations in Paragraph 54, except admit that Olo filed a Form S-1 registration statement with the SEC on February 19, 2021, form S-1/A amended registration statements on March 8, 2021 and March 15, 2021, and a form 424B4 prospectus on March 18, 2021. Defendants respectfully refer the Court to the SEC filings referenced in Paragraph 54, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 54.

55.    The IPO Offering Documents made a number of significant claims about the Company. First, the Offering Documents claimed Olo had "64,000 active locations" as of December 31, 2020, 91% of which came from "enterprise brands" (i.e., "those brands [with] 50 or more locations"). Indeed, the Offering Documents claimed that Olo's enterprise customers were so "highly loyal" that "[o]ver the last five years, on average nearly 99% of our enterprise brand customers . . . have continued using our Ordering module each year."

**ANSWER:**    Defendants deny the allegations in Paragraph 55, except admit Olo's offering documents stated that Olo had approximately 64,000 active locations as of December 31, 2020 and Olo's enterprise brand customers accounted for 91% of Olo's total active locations as of

25

December 31, 2020. Defendants respectfully refer the Court to the SEC filings referenced in Paragraph 55, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings and earnings call transcripts referenced in Paragraph 55. In addition, to the extent the allegations in Paragraph 55 address Olo's prospects in the enterprise market, Defendants state that no response is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105).

56.     Next, the Offering Documents claimed that "[i]n every one of our customer relationships, we are the exclusive provider of direct digital ordering services **with 100% franchisee participation**," adding that:

> Unlike other enterprise software businesses, where the sales team works to add a single location or division and expand to others, we enter into relationships at the brand's corporate level and secure exclusivity across **all** company-owned and franchise locations.

**ANSWER:**     Defendants deny the allegations in Paragraph 56, and respectfully refer the Court to the SEC filings referenced in Paragraph 56, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 56.

57.     Finally, Defendants boasted about Olo's $7 billion TAM "based on our current product offerings and focus on enterprise restaurants primarily in the United States."

**ANSWER:**     To the extent the allegations in Paragraph 57 address Olo's prospects in the enterprise market, Defendants state that no response is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny the allegations in Paragraph 57, and respectfully refer the Court to the SEC filings referenced in Paragraph 57, which

speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 57.

58.     On the strength of these statements, Olo's IPO Offering Documents sold the public 20,700,000 shares of Olo common stock at an offering price of $25.00 per share.[9] All told, Defendants raised almost $520 million in the IPO. In addition, as the Offering Documents provided, Defendant Glass received a bonus of up to $2,335,484 for consummating Olo's IPO.

**ANSWER:**    Defendants deny the allegations in Paragraph 58 and footnote 9, and respectfully refer the Court to the SEC filings referenced in Paragraph 58 and footnote 9, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 58 and footnote 9.

### D.     Olo Repeatedly Announced False Active Locations Numbers

59.     From the issuance of the IPO Offering Documents and Roadshow materials and throughout the Class Period, Defendants' active location counts, as well as the very definition of active locations, were materially false and misleading in three critical respects.

**ANSWER:**    Defendants deny the allegations in Paragraph 59.

#### 1.  *Defendants prematurely included locations not yet onboarded*

60.     *First*, despite repeatedly defining an "active location" as "a unique restaurant location live on the platform with at least one product module" and claiming brand locations "*always* go[] live really *all at the same time*," Olo prematurely included individual restaurant locations in its active locations count – and informed investors of those locations' onboarding – before those locations had actually begun using any of Olo's products. The FAC's CW1 corroborates this allegation, as do Defendants' own internal documents.

**ANSWER:**    Defendants deny the allegations in Paragraph 60 and deny that CW1 corroborates those allegations. Defendants respectfully refer the Court to the SEC filings, press releases, earnings call transcript and investor presentation transcript referenced in Paragraph 60, which speak for themselves. Defendants specifically deny any characterization that is not

---

[9]     Olo's IPO Offering Documents provided for 18,000,000 shares plus a "greenshoe" or overallotment of 2,700,000 shares, which the underwriters exercised.

consistent with the SEC filings, press releases, earnings call transcript and investor presentation transcript referenced in Paragraph 60.

61.    CW1 was a Delivery Solutions Manager within Olo's Dispatch module segment from December 2020 to August 2021 and reported to Olo's Vice President of Delivery. CW1's primary role was to help onboard new clients to Olo's Dispatch service. According to CW1, after signing a new customer, CW1 was instructed to prematurely report the ***total*** contracted number of individual locations as active locations, before all of those locations were ever truly "active." For example, Defendants announced on an August 10, 2021 earnings call that QSR brand Jack in the Box had joined Olo on or before June 30, 2021. Jack in the Box had over 2,200 locations at the time, all of which were included in Olo's active locations count in Olo's 2Q 2021 Form 10-Q, press release, and earnings call.[10] However, according to CW1, in truth, by the end of 2Q 2021, Jack in the Box really only ***had at most 200 live locations*** utilizing Olo's Dispatch platform. And while the initiation of Olo's module proceeded to ramp up, by the time CW1 left Olo, approximately 30% of Jack in the Box locations were still not utilizing Olo's module.

**ANSWER:**    Defendants deny the allegations in Paragraph 61 and footnote 10, except admit that CW1 was a Delivery Solutions Manager for Olo's Dispatch module. Defendants respectfully refer the Court to the SEC filings, earnings press release, and earnings call transcript referenced in Paragraph 61 and footnote 10, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the SEC filings, earnings press release, and earnings call transcript referenced in Paragraph 61 and footnote 10.

62.    CW1 also reported that upon joining Olo, CW1 took over the Dispatch accounts for two small regional chains of casual dining restaurants, Berg Hospitality Group, located in Texas, and Newport Restaurant Group, located in New England.[11] According to CW1, multiple Berg locations were counted as "active," despite the fact that those restaurant locations had yet to begin utilizing Olo's module. Moreover, by the time of CW1's departure in August 2021, CW1 stated that an accurate location count for Berg had still not been completed. With respect to Newport, CW1 stated that upon taking over that account, CW1 discovered that multiple locations were not

---

[10]    According to Jack in the Box's 2021 annual report filed on SEC Form 10-K, as of October 3, 2021, it had "2,218 Jack in the Box quick-service restaurants, primarily in the western and southern United States, including one in Guam."

[11]    According to archived versions of their websites, as of August 2021, Berg Hospitality Group had seven locations and as of July 2021, Newport Restaurant Group had 13 locations. *Reservations*, BERG HOSP. GRP., http://web.archive.org/web/20210803070350/https://www.berghospitality.com/ (last visited Jan. 11, 2023); *Our Restaurants*, NEWPORT REST. GRP., http://web.archive.org/web/20210725160848/https://www.newportrestaurantgroup.com/dining-options (last visited Jan. 11, 2023).

open for business, including several that were still under construction, and yet were marked as "active."

**ANSWER:**    Defendants deny the allegations in Paragraph 62 and footnote 11, and respectfully refer the Court to the websites referenced in footnote 11, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the websites referenced in footnote 11.

63.    Defendants' own documents reveal numerous other examples of the exact same type of active locations fraud, starting with the IPO Offering Documents and Roadshow materials, both of which claimed that as of the date of the IPO, Olo had *fully* onboarded customers including Subway, Checkers, and Dairy Queen. However, internal Olo ███████████████████████████████████████████████████████████████████████████████████

**ANSWER:**    Defendants deny the allegations in Paragraph 63, and respectfully refer the Court to the SEC filings and investor materials referenced in Paragraph 63, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings and investor materials referenced in Paragraph 63.

64.    ███████████████████████████████████████████████████████████████████████████████

**ANSWER:**    Defendants deny the allegations in Paragraph 64.

### 2. Defendants included inactive locations in Olo's active locations count

65.    Second, Olo included inactive locations in its active locations count, a fact corroborated by both CW1 and Defendants' own deposition testimony.

**ANSWER:**    Defendants deny the allegations in Paragraph 65.

66.    According to CW1, Olo had "various ways" of tracking whether a client had its Dispatch or Rails modules turned on and the quantity of orders coming through each. In fact, in monthly Delivery Enablement Solutions meetings – which included participants from both Rails

29

and Dispatch module teams – CW1 noticed discrepancies between the number of reported active locations and the restaurant locations actually using Olo's modules. As CW1 explained, these discrepancies were due, in part, to individual locations turning off their Olo modules, either because of Olo's module issues in keeping up with customer demand – which CW1 found to be the case with certain Berg Hospitality Group locations – or when restaurants shut down during the Covid-19 pandemic. In fact, when CW1 asked CW1's supervisor at one of the meetings whether they should correct the inaccurate active locations count, CW1 was instructed to continue reporting all locations as active because "they'll turn it [Olo's modules] on next week for all we know." Moreover, discovery has also revealed a June 14, 2021 note penned by CW1 in which CW1 flags for CW1's supervisor "Newport Restaurant Group as the brand turned Dispatch off entirely."

**ANSWER:** Defendants deny the allegations in Paragraph 66.

67.     More broadly, however, despite publicly defining an active location to require actual activity – i.e., be "*live*" or in Defendant Benevides' words "[W]e count a location active in the quarter if they've had an order in the quarter" –

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████

Q.    ████████████████████████████████
      ████████████████████

A.    ████████████████████████████████
      ██████████████████████████

Q.    ██████████████████████████████

A.    ██████████████████████████████

Q.    ████████████████████████████████████
      ██████████████████████████

A.    ████

                    *        *        *

Q.    █████████████████████████████████████

**A.**

**Q.**

**A.** [12]

**ANSWER:** Defendants deny the allegations in Paragraph 67 and footnote 12, except admit that Olo's method for determining whether to report as active a location using the Rails, Dispatch, and Network modules lines up with what Olo repeatedly informed the market, and respectfully refer the Court to Olo's SEC filings for a description of the Company's business and manner of calculating active locations. In addition, Defendants respectfully refer the Court to the earnings call transcript and deposition testimony referenced in Paragraph 67 and footnote 12, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript and deposition testimony referenced in Paragraph 67 and footnote 12.

### 3. All locations did not sign on to Olo's products

68.    *Third,* not all brand locations within a single chain joined Olo's platform, despite Defendants' repeated statements that Olo sells to and is deployed in "all locations" whether corporate-owned, franchised, or a mix of the two. CW2 and Defendants' own documents corroborate this allegation.

**ANSWER:** Defendants deny the allegations in Paragraph 68, and respectfully refer the Court to the investor presentation transcripts referenced in Paragraph 68, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcripts referenced in Paragraph 68.

69.    Olo rarely (if ever) signed up "all locations." On April 2, 2021, just two weeks after the IPO Offering Documents claimed that "In *every one* of our customer relationships, we are the exclusive provider of direct digital ordering services *with 100% franchisee participation*," Olo's ███████████████████████████████████████████ to Defendant Glass' Chief of

---

[12]    Later in the deposition, ████████████████████████

Staff that ████████████████████████████████████████████████████ In
fact, an █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

ANSWER:    Defendants deny the allegations in Paragraph 69, and respectfully refer the

Court to the SEC filings referenced in Paragraph 69, which speak for themselves. Defendants

specifically deny any characterization that is not consistent with the content of the SEC filings

referenced in Paragraph 69.

70.    Against this backdrop, CW2 was a Deployment Manager at Olo from March 2021 through February 2022 and reported to an Olo Director of Deployment. CW2's role involved onboarding new restaurant locations and project management to ensure each product the customer selected was implemented. CW2 served as a "point person" between the customer and Olo product specialists. CW2 worked across all Olo modules, from Ordering (within Olo's Order Management Solutions) to Dispatch and Rails (within Olo's Delivery Enablement Solutions).

ANSWER:    Defendants deny the allegations in Paragraph 70, except admit that CW2

was a Deployment Manager at Olo and reported to an Olo Director of Deployment.

71.    QSR chain CKE Restaurants fell under CW2's purview. On November 9, 2021, Olo announced CKE as a new brand client in both a press release announcing 3Q 2021 earnings, as well as on that day's earnings call. CKE, the parent company for Carl's Jr. Restaurants LLC, Hardee's Restaurants LLC, as well as multiple other fast-food chains, had approximately 4,000 individual locations at the time, over 90% of which were franchises.[13]  According to CW2, numerous of these franchises decided not to use Olo's technology. As a result, Olo was installed in only about 50% of overall CKE locations ████████████████████████████████ Yet Defendants included 100% of the CKE locations in the active locations count reported to the investing public..

ANSWER:    Defendants deny the allegations in Paragraph 71 and footnote 13.

Defendants further respectfully refer the Court to the earnings call transcript and earnings press

release referenced in Paragraph 71, which speak for themselves. Defendants specifically deny any

---

[13]    According to an archived version of CKE's website, as of November 2021, CKE had "over 3,800 franchised or company-operated restaurants in 44 states and 43 foreign countries and U.S. territories.    *Our    Brands*,    CKE    RESTS., http://web.archive.org/web/20211109222135/https://www.ckr.com/ (last visited Jan. 11, 2023). According to one source, over 90% of CKE locations are franchises. See *CKE Restaurants Franchise Overview*, FRANCHISING.COM, https://www.franchising.com/ckerestaurants/ (last visited Jan. 11, 2023) ("The Carl's Jr./Hardee's system is now 93 percent franchised.").

characterization that is not consistent with the content of the earnings call transcript and earnings press release referenced in Paragraph 71. In addition, Defendants respectfully refer the Court to the website and article referenced in footnote 13, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the website and article referenced in footnote 13.

72.



**ANSWER:**    Defendants deny the allegations in Paragraph 72 and footnote 14.

73.    Two weeks later,

**ANSWER:**    Defendants deny the allegations in Paragraph 73.

74.    Indeed, the documentary evidence to date is replete with examples of

**ANSWER:**    Defendants deny the allegations in Paragraph 74.

75.

_____

14

**ANSWER:**    Defendants deny the allegations in Paragraph 75.

**E.    The Ever-Present "Build vs. Buy" Trend and Threat**

76.    As stated herein, Olo was highly dependent upon "enterprise" restaurant brands both for the real benefits they brought (number of locations, amount of revenue) and the benefits to the perception of Olo in the market they added (that the market saw that Olo could get and retain large customers). Throughout their public statements from the IPO forward, Defendants repeatedly stressed the importance of enterprise brands to Olo. Indeed, the $7 billion TAM figure given by Defendants in the IPO Offering Documents is based almost entirely on potential enterprise clients.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 76 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 76, and respectfully refer the Court to the SEC filings referenced in Paragraph 76, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 76.

77.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 77 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 77.

78.    Building an in-house online ordering platform and hiring the necessary persons to create it and maintain it takes time. When the pandemic hit, very few restaurants had already developed their own comprehensive in-house online ordering systems. As restaurants had to adapt

quickly to the Covid-19 challenges or shut down, they by and large did not have the time to develop software internally. Therefore, vendors such as Olo were attractive and restaurants rushed into Olo in 2020. But Olo was a band aid for many of the enterprise customers that it did attract, and Defendants were well aware of that fact.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 78 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 78.

79.



**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 79 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 79.

80.



**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 80 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 80.

81.    And this was ultimately what Subway chose to do. In January 2022, it officially informed Olo of its plans to leave Olo's product in favor of an in-house platform. However, this was always a real possibility for Subway as a customer.[15] ████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 81 and footnote 15 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 81 and footnote 15.

82.    ████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 82 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 82.

---

15 ████████████████████████████████████████████

83.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 83 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 83.

84.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 84 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 84.

85.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 85 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 85.

86.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 86 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 86.

**F.    Subway's Importance as Olo's Largest Client Brand by Revenue and Location Count**

87.    On February 12, 2020, Olo issued a press release announcing a partnership with Subway to connect the mega-sandwich chain to third-party marketplaces via Olo's Rails module. According to the press release, "The partnership allows Subway's network of more than ***20,000*** U.S. restaurants to more seamlessly handle digital orders from third-party marketplaces."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 87 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 87, and respectfully refer the Court to the press release referenced in Paragraph 87, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the press release referenced in Paragraph 87.

88.    Immediately, Subway, by utilizing the Rails module to integrate with DoorDash and Uber Eats, became Olo's largest brand partner and a source of at least ▮▮▮▮▮▮ in annual recurring revenue.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 88 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 88.

89.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 89 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 89.

90.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 90 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 90.

91.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 91 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 91.

92. ████████████████████████████████████████████

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 92 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 92.

93. Every single Olo SEC Form 10-Q and 10-K filed to date states that "[Olo's] contracts typically have initial terms of *three years* or longer, with continuous one-year automatic renewal periods, *providing visibility into our future performance*." Therefore, at the start of 2022, the third year of Subway's contract with Olo, securing a renewal of the Company's largest brand client would have been a high priority for Defendants. This was far from occurring.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 93 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 93 and respectfully refer the

Court to the SEC filings referenced in Paragraph 93, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 93.

94. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 94 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 94.

95. At the ████████████████████, *Subway informed the Olo group that Subway had decided to terminate its relationship with Olo.*

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 95 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 95.

96. Leaving no room for ambiguity, Subway's representatives provided to Olo the ██████████████████ which stated that Subway ████████████ and that ██████████████████████

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 96 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

41

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 96.

97.     According to Juan George, Subway's representatives explained at the meeting that they were leaving Rails because Subway was ███████████████████████████ in reference to the ███████████ of Subway ██████████████

**ANSWER:**   Defendants state that no response to the allegations contained in Paragraph 97 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 97.

98.     Jon Graves, who had attended the Executive Business Review, later summarized the meeting in a chat message to Juan George:



**ANSWER:**   Defendants state that no response to the allegations contained in Paragraph 98 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 98.

99.     ████████████████████████████████████████████████

███████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 99 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 99.

100.    ███████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 100 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 100.

**G.    Olo Was Already Experiencing a Slowdown Soon After the IPO**

101.    ███████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 101 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 101.

102.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 102 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 102.

103.    As discussed herein, despite these serious concerns about the Company's revenue, performance, and future prospects, Defendants gave no hint of this to the market in the August 10, 2021 investor call.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 103 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 103 and respectfully refer the Court to the investor call transcript referenced in Paragraph 103, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor call transcript referenced in Paragraph 103.

104.

█████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 104 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 104.

105. ████████████████████████████████████████████████████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 105 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 105.

106. ████████████████████████████████████████████████████████████████ Again, as discussed herein, despite these serious concerns about the Company's revenue and future prospects, Defendants gave no hint of this to the market on the November 9, 2021 investor call.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 106 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 106.

107.



**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 107 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 107.

108.



Therefore, Defendants knew that, even without disclosing the January 2022 loss of Subway as a customer, they were in for questions and potentially negative responses from investors. Shockingly, on that call, Defendants increased the Company's FY 2022 guidance.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 108 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 108.

109.



**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 109 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on

Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 109.

110.    Once again, none of this was mentioned on the May 2022 investor call, Form 10-Q, or earnings press release. By ███████, as Defendant Benevides put it succinctly, ██████ ███████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 110 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 110.

**H.    Defendants Knew Their Core Products Were Saturated and Were Thus Shifting Course to a New Product.**

111.


**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 111 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 111.

112.

███████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 112 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 112.

113.    ███████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 113 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 113.

114.    ███████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 114 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 114.

115.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 115 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 115.

I.      **Defendants Made Numerous Material Misstatement and Omissions**

116.    Throughout the Class Period, in numerous SEC filings and public statements, Defendants issued a host of materially false and misleading statements about Olo's active locations, the nature of its relationship with Subway, its prospects with enterprise customers, and its financial state of affairs, including FY 2022 guidance.

**ANSWER:** Defendants state that no response to the allegations about misstatements about Subway, Olo's financial prospects, and Olo's prospects in the enterprise market contained in Paragraph 116 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required to Paragraph 116 and in response to the allegation of misstatements about active locations, Defendants deny all allegations contained in Paragraph 116 and respectfully refer the Court to the SEC filings, press releases, earnings call transcripts, and investor presentation transcripts referenced in Paragraph 116, which speak for themselves. Defendants specifically deny

any characterization that is not consistent with the content of the SEC filings, press releases,

earnings call transcripts, and investor presentation transcripts referenced in Paragraph 116.

117.    Defendants' actionably false or misleading Class Period statements are separately enumerated below and further set out in Exhibit 1 hereto.

**ANSWER:**    Defendants deny all allegations contained in Paragraph 117.

### 1. *Throughout the Class Period, Defendants Hyped Olo's Growing Number of Active Locations, Materially Misleading Investors*

118.    Starting with the IPO Offering Documents and continuing throughout the duration of the Class Period, on every earnings call, in every SEC Form 10-K and 10-Q, and in numerous press releases (including those attached to SEC Form 8-K), presentations, and investor conferences, Defendants emphasized and touted the Company's active locations count, painting a rosy picture of ever-upward active locations growth (in addition to reiterating the Company's definition of "active locations" in no fewer than twelve of the aforementioned SEC filings and public statements).

**ANSWER:**    Defendants deny all allegations contained in Paragraph 118 and respectfully

refer the Court to the SEC filings, press releases, earnings call transcripts, and investor presentation

transcripts referenced in Paragraph 118, which speak for themselves. Defendants specifically deny

any characterization that is not consistent with the content of the SEC filings, press releases,

earnings call transcripts, and investor presentation transcripts referenced in Paragraph 118.

119.    Indeed, Defendants pitched their active locations metric as more than a tracking tool of historical and present performance, but one that additionally "demonstrates the growth and scale of our overall business and reflects our ability to attract, engage, and monetize our customers and thereby drive revenue, as well as provides a base to expand usage of our modules."[16]

**ANSWER:**    Defendants deny all allegations contained in Paragraph 119 and footnote

16, and respectfully refer the Court to the SEC filings and press releases referenced in footnote 16,

---

[16]    See, e.g., Olo Inc., 4Q & FY 2021 Press Release, attached to SEC Form 8-K (Feb. 23, 2022) (characterizing "Active Locations" as one of three "Key Business Metrics"); Olo Inc., 1Q 2022 Press Release, attached to SEC Form 8-K (May 10, 2022) (characterizing "Active Locations" as one of three "Key Performance Indicators").

which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings and press releases referenced in footnote 16.

120.    The misstatements concerning active locations during the Class Period include:

**ANSWER:**    Defendants deny all allegations contained in Paragraph 120.

### a.    March 15 & 18, 2021 IPO Offering Documents

121.    According to the Offering Documents, "As of December 31, 2020, we had approximately 400 brand customers representing over 64,000 active locations using our platform." The Offering Documents provided examples of brand partners, including Subway and Checkers.

**ANSWER:**    Defendants deny the allegations in Paragraph 121, except admit that Olo's IPO offering documents stated it had had approximately 400 brand customers representing over 64,000 active locations using Olo's platform as of December 31, 2020. Defendants respectfully refer the Court to the SEC filings referenced in Paragraph 121, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 121.

122.    The Offering Documents went on to explain that

> Unlike other enterprise software businesses, where the sales team works to add a single location or division and expand to others, we enter into relationships at the brand's corporate level and secure exclusivity across all company-owned and franchise locations.

**ANSWER:**    Defendants deny the allegations in Paragraph 122, and respectfully refer the Court to the SEC filings referenced in Paragraph 122, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 122.

123.    Additionally, the Offering Documents claimed that "In every one of our customer relationships, we are the exclusive provider of direct digital ordering services *with 100% franchisee participation*."

51

**ANSWER:** Defendants deny the allegations in Paragraph 123 and respectfully refer the Court to the SEC filings referenced in Paragraph 123, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 123.

### b.  March 2021 IPO Roadshow Materials

124.    In advance of Olo's March 2021 IPO, Defendants issued a Roadshow video, repeating multiple of the claims issued in Olo's Offering Documents, including repeating the claim about Olo's 64,000 locations and exclusivity across "*all* company-owned locations." The Roadshow materials also cite to a number of Olo customers, including Dairy Queen.

**ANSWER:** Defendants deny the allegations in Paragraph 124, except admit Olo's March 2021 IPO offering documents stated that Olo had approximately 64,000 locations. Defendants respectfully refer the Court to the investor materials referenced in Paragraph 124, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the investor materials referenced in Paragraph 124.

### c.    May 11, 2021 Press Release, Earnings Call, Form 10-Q

125.    After the market closed on August 10, 2021, Defendants issued a press release and Form 10-Q disclosing its 2Q 2021 earnings, signed by Glass and Benevides. According to the press release, Olo's "[e]nding active locations increased 42% year-over-year to approximately 69,000" locations, a claim also stated in the Company's Form 10-Q and on the earnings call that day.

**ANSWER:** Defendants deny the allegations in Paragraph 125, and respectfully refer the Court to the SEC filing and press release referenced in Paragraph 125, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing and press release referenced in Paragraph 125.

126.    The press release provided that Olo "define[s] active locations as a unique restaurant location that is utilizing one or more modules in a given quarterly period." This definition was, in fact, included in all SEC filings during the Class Period, including the Form 10-Q filed the same day.

**ANSWER:**    Defendants deny the allegations in Paragraph 126, except admit Olo issued a press release stating that it defines active locations as a unique restaurant location that is utilizing one or more modules in a given quarterly period, and that definition was included in all SEC filings during the Class Period. Defendants respectfully refer the Court to the SEC filings and press release referenced in Paragraph 126, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings and press release referenced in Paragraph 126.

### d.    August 10, 2021 Press Release, Earnings Call, Form 10-Q

127.    After the market closed on August 10, 2021, Defendants issued a press release and Form 10-Q disclosing its 2Q 2021 earnings, signed by Glass and Benevides. According to the press release, Olo's "ending active locations increased 30% year-over-year to approximately 74,000" locations, a claim also stated in the Company's Form 10-Q.

**ANSWER:**    Defendants deny the allegations in Paragraph 127, except admit that Olo stated it had approximately 74,000 active locations as of June 30, 2021. Defendants respectfully refer the Court to the SEC filing and earnings press release referenced in Paragraph 127, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing and earnings press release referenced in Paragraph 127.

128.    On the earnings call that day, Defendant Benevides reiterated that "[i]n terms of key metrics, we ended the quarter with approximately 74,000 active locations on the platform, a 30% increase year-over-year and a 7% increase sequentially."

**ANSWER:**    Defendants deny the allegations in Paragraph 128, except admit that Olo stated it had approximately 74,000 active locations as of June 30, 2021. Defendants respectfully refer the Court to the earnings call transcript referenced in Paragraph 128, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 128.

129.    On the same earnings call, Defendant Glass touted the 2Q 2021 onboarding of Jack in the Box and compared it to Olo's success with its top brand client, Subway:

53

A great example of customers realizing Dispatch's value was the Q2 launch of Jack in the Box as a Dispatch-only deployment, which will enhance their existing digital ordering for takeout program. This deployment with Jack in the Box further demonstrates Olo's ability to land major enterprise brands with one product module to initiate the customer relationship. Just as Subway launched with Olo Rails, Jack in the Box is another major enterprise brand launching with Olo Dispatch and gaining familiarity with Olo's broader capabilities and overall platform security, stability and extensibility. Jack in the Box is also an exciting example of our success in the quick service restaurant, or QSR, category.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 129 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required to Paragraph 129, Defendants deny all allegations contained in Paragraph 129 and respectfully refer the Court to the earnings call transcript referenced in Paragraph 129, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 129.

### e.    October 21, 2021 Wisely Acquisition Press Release and Call

130.    After the market closed on October 21, 2021, Defendants issued a press release that again reiterated the 74,000 active restaurant locations.

**ANSWER:** Defendants deny the allegations in Paragraph 130, except admit that Olo stated it had approximately 74,000 active restaurant locations in an October 21, 2021 press release. Defendants respectfully refer the Court to the press release referenced in Paragraph 130, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the press release referenced in Paragraph 130.

131.    On the conference call with analysts later that day, Defendants repeated the misstatement and 74,000 number. Similarly, on the same call, Defendant Benevides stated: "I think the big takeaway here is a lot of upside when you think about the 75,000 – 74,000 restaurant locations on the platform today."

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 131 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required to Paragraph 131, Defendants deny the allegations in Paragraph 131, except admit Olo stated it had approximately 74,000 active locations as of June 30, 2021. Defendants respectfully refer the Court to the earnings call transcript referenced in Paragraph 131, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 131.

### f.     November 9, 2021 Press Release, Earnings Call, Form 10-Q

132.    After the market closed on November 9, 2021, Defendants issued a press release and SEC Form 10-Q disclosing its 3Q 2021 earnings, signed by Glass and Benevides. That same day, the Company also conducted an earnings call with analysts.

**ANSWER:** Defendants deny the allegations in Paragraph 132, and respectfully refer the Court to the SEC filing, earnings press release, and earnings call transcript referenced in Paragraph 132, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings, earnings press release, and earnings call transcript referenced in Paragraph 132.

133.    As with the prior quarter's earnings announcement, this press release also claimed that Olo had onboarded another major brand client, "CKE Restaurant Holdings, Inc., parent company to leading QSR brands Carl's Jr. and Hardee's," and stated that "[e]nding active locations increased 26% year-over-year to approximately 76,000."

**ANSWER:** Defendants deny the allegations in Paragraph 133, except admit that Olo stated it had approximately 76,000 active locations as of September 30, 2021. Defendants respectfully refer the Court to the press release referenced in Paragraph 133, which speaks for

itself. Defendants specifically deny any characterization that is not consistent with the content of

the press releases referenced in Paragraph 133.

134.    On the same call, in response to Stifel, Nicolaus & Company analyst Brad Reback's question – "As we look forward, what should we think of as the durable growth rate of the business? – Benevides stressed that "As we look ahead, we see a lot of opportunity for growth and a lot of different levers to pull to get there. *I think in the most simplest form, continuing to add more active locations to the platform*."

**ANSWER:**    Defendants deny the allegations in Paragraph 134, and respectfully refer the

Court to the earnings call transcript referenced in Paragraph 134, which speaks for itself.

Defendants specifically deny any characterization that is not consistent with the content of the

earnings call transcript referenced in Paragraph 134.

### g.    January 10, 2022 Presentation at ICR Conference

135.    After the market closed on January 10, 2022, Defendants presented at the ICR Conference. At that conference, Defendant Glass stated, "[t]oday we are a proud partner to over 500 restaurant brands representing 76,000 individual restaurant locations to enable consumers to order ahead, pay ahead and get their food faster for takeout, delivery and more."

**ANSWER:**    Defendants deny the allegations in Paragraph 135, except admit that Olo

stated it had 76,000 individual restaurant locations during a January 10, 2022 investor presentation.

Defendants respectfully refer the Court to the investor presentation transcript referenced in

Paragraph 135, which speaks for itself. Defendants specifically deny any characterization that is

not consistent with the content of the investor presentation transcript referenced in Paragraph 135.

136.    At the same conference, Defendant Benevides stated, "[w]e also contract directly, or always contract directly, with brand headquarters to long-term exclusive contracts **and secure all locations within the brand**, ensuring end consumer experience is consistent, regardless of which location within a brand the end consumer interacts with."

**ANSWER:**    Defendants deny the allegations in Paragraph 136, and respectfully refer the

Court to the investor presentation transcript referenced in Paragraph 136, which speaks for itself.

Defendants specifically deny any characterization that is not consistent with the content of the

investor presentation transcript referenced in Paragraph 136.

h.      **February 23 & 25, 2022 Press Release, Earnings Call, Form 10-K.**

137.    After the market closed on February 23, 2022, Defendants issued a press release for Olo's 4Q and FY 2021 earnings. That same day, the Company also conducted an earnings call with analysts. According to the press release, Olo's "[e]nding active locations increased 23% year-over-year to approximately 79,000" locations, which was also stated in the Company's SEC Form 10-K, filed on February 25, 2022 and signed by Glass and Benevides.

**ANSWER:**    Defendants deny the allegations in Paragraph 137, except admit that Olo stated it had approximately 79,000 active locations as of December 31, 2021. Defendants respectfully refer the Court to the SEC filings, earnings press release, and earnings call transcript referenced in Paragraph 137, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings, earnings press release, and earnings call transcript referenced in Paragraph 137.

138.    On the conference call with analysts, Defendants repeated the misstatement, with Defendant Glass stating that "[w]e ended the year with our platform connecting approximately 79,000 active restaurant locations . . ."

**ANSWER:**    Defendants deny the allegations in Paragraph 138, except admit that Olo stated it had approximately 79,000 active locations as of December 31, 2021. Defendants respectfully refer the Court to the earnings call transcript referenced in Paragraph 138, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 138.

i.      **May 10, 2022 Press Release, Earnings Call, Form 10-Q**

139.    After the market closed on May 10, 2022, Defendants issued a press release and SEC Form 10-Q disclosing its 1Q 2022 earnings, signed by Glass and Benevides. That same day, the Company also conducted an earnings call with analysts.

**ANSWER:**    Defendants deny the allegations in Paragraph 139, and respectfully refer the Court to the SEC filing, earnings press release, and earnings call transcript referenced in Paragraph 139, which speak for themselves. Defendants specifically deny any characterization that is not

57

consistent with the content of the SEC filing, earnings press release, and earnings call transcript referenced in Paragraph 139.

140. According to the press release, Olo's "[e]nding active locations increased 19% year-over-year to approximately 82,000" locations, which was also stated in the Company's SEC Form 10-Q.

**ANSWER:** Defendants deny the allegations in Paragraph 140, except admit that Olo stated it had approximately 82,000 active locations as of March 31, 2022. Defendants respectfully refer the Court to the SEC filing and earnings press release referenced in Paragraph 140, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing and earnings press release referenced in Paragraph 140.

141. On the conference call with analysts later that day, Defendants repeated the misstatement, with Defendant Glass stating "[o]ur ending active location counts increased 19% year-over-year to approximately 82,000, and we surpassed more than 600 restaurant brands utilizing our platform."

**ANSWER:** Defendants deny the allegations in Paragraph 141, except admit that Olo stated it had approximately 82,000 active locations as of March 31, 2022. Defendants respectfully refer the Court to the earnings call transcript referenced in Paragraph 141, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 141.

142. On the same call, Defendant Glass also reiterated that "we always sell to the brand, and then we're adopted across the entire location base, whether those are corporate owned or franchise owned."

**ANSWER:** Defendants deny the allegations in Paragraph 142, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 142, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 142.

**j.      May 23, 2022 Presentation at the JPMorgan Global Technology, Media & Communications Conference**

143.    After the market closed on May 23, 2022, Defendants presented at the JPMorgan Technology, Media & Communications Conference. When an analyst inquired "when Olo signs on a large enterprise, are all of the franchises also obligated to come on to the platform? And what does that process look like?" Defendant Glass responded:

> So we sell into one brand decision maker and th*en we['']re adopted by all of the restaurant locations within that brand*, the corporate-owned locations, the franchise locations, the mix of the 2, however, they're set up in their organizational structure. And then brands are always going live really all at the same time to create that consistent experience everywhere. ***So yes, we are deployed in all locations***.

**ANSWER:**    Defendants deny the allegations in Paragraph 143, and respectfully refer the Court to the investor presentation transcript referenced in Paragraph 143, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 143.

144.    Defendant Glass also reiterated the 82,000 active locations number.

**ANSWER:**    Defendants deny the allegations in Paragraph 144, except admit Olo stated it had approximately 82,000 active locations as of March 31, 2022. Defendants respectfully refer the Court to the investor presentation transcript referenced in Paragraph 144, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 144.

145.    Additionally, Defendant Glass stated that:

> I really believe that we've demonstrated that we can start a relationship with even the largest restaurant brands out there ***with a single module*** and maybe that's a convenient way for them to fortify their internal efforts, prove ourselves out and then expand into a larger deployment.

**ANSWER:**    Defendants deny the allegations in Paragraph 145, and respectfully refer the Court to the investor presentation transcript referenced in Paragraph 145, which speaks for itself.

Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 145.

> **h.    June 6, 2022 Presentation at the William Blair Growth Stock Conference**

146.    On June 6, 2022, Defendants presented at the William Blair Growth Stock Conference. At the conference, Glass stated that "[a]s of March 21, we are a proud partner to over 600 restaurant brands representing approximately 82,000 individual restaurant locations . . ."

**ANSWER:**    Defendants deny the allegations in Paragraph 146, except admit that Olo stated it had approximately 82,000 active locations as of March 31, 2022. Defendants respectfully refer the Court to the investor presentation transcript referenced in Paragraph 146, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 146.

147.    Unfortunately for investors, each of the above statements regarding active locations was false and misleading for three reasons. First, despite repeatedly defining "active locations" as "a unique restaurant location live on the platform with at least one product module" and claiming brand locations "*always* go[] live really *all at the same time*," Olo prematurely included individual restaurant locations in its active locations count (and informed investors of those locations' onboarding) before those locations had actually begun utilizing any of Olo's products. Second, despite Defendants' claims that an active location needed to be "*live*" – in Defendant Benevides' words "[W]e count a location active in the quarter if they've had an order in the quarter" – Defendants included *inactive* locations in the Company's active locations count, including privately maintaining two "active locations" classifications for its modules, one that required "activity" to be counted as "active" and one that did not. Third, despite Defendants' repeated statements that Olo sells to and is deployed in "*all locations*" whether corporate-owned, franchised, or a mix of the two, not all brand locations within a single chain joined Olo's platform.

**ANSWER:**    Defendants deny the allegations in Paragraph 147, and respectfully refer the Court to the SEC filings, earnings call transcripts, and investor presentation transcripts referenced in Paragraph 147, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings, earnings call transcripts, and investor presentation transcripts referenced in Paragraph 147.

148.    As a result, the definition of what counts as an active location, as well as the active locations numbers, issued by Defendants throughout the Class Period were materially false and misleading.

**ANSWER:**    Defendants deny the allegations in Paragraph 148.

### 2. Defendants Misrepresented the Company's Financial Position Throughout the Class Period

149.    Despite the mountain of internal documents showing that Defendants, as early as the summer of 2021, knew that Olo was in trouble and could not and would not continue its momentum, Defendants provided the market with rosy financial reports and outlooks.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 149 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 149.

150.    Indeed, on the October 21, 2021 Wisely acquisition call, Benevides boasted that:

> the big takeaway here is a lot of upside when you think about the 75,000-74,000 restaurant locations on the platform today. Our history of success first with dispatch, subsequently with rails in being able to sell effectively and efficiently into that captive audience, we see a lot of opportunity ahead . . . .

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 150 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 150.

151.    Benevides made this statement despite the fact that, at the same time, Olo was internally "desperately searching for new, unique locations to add to the platform" and Benevides was complaining about "razor thin" beats, revenue, and deployments.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 151 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on

Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 151.

152.    Within weeks of these internal statements, Defendant Glass told the market, on the November 9, 2021 3Q 2021 earnings call, that "Quarter-over-quarter, we continue to add new locations to our platform as restaurant brands recognize our ability to partner and add value for them." On that same call, Defendant Benevides summarized "*we're extremely proud of our financial performance this quarter . . . and we're even more excited about our position, the market opportunity ahead of us and the impact we can have . . .*" He further touted "continuing to add more active locations to the platform."  On that same call, Benevides stated that "*I don't think we've ever been more excited about our sales and deployment pipeline really on 2 fronts in terms of new location adds as well as the various upsell opportunities that have continued to emerge*."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 152 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 152, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 152, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 152.

153.    Again, these statements were made at a time when the Company was desperate for any new locations, when Benevides had serious concerns about a lack of momentum in revenue growth, and when Olo was on pace for the worst second half of the year performance in four years.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 153 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 153.

154.    In 2022, Defendants continued to make misstatements about the health of the Company. On the February 23, 2022 4Q & FY 2021 earnings call, Defendants made a host of misstatements including:

- "As we enter 2022, *we've never been more confident in our position and more excited about our opportunity ahead. We believe that we have a 100x growth opportunity in U.S. enterprise restaurants, representing a TAM of more than $15 billion within the U.S. enterprise segment*." (Glass);

- "*The fourth quarter was a great close to our first fiscal year as a public company . . . Olo continued to drive momentum and beat expectations in the fourth quarter*, demonstrating the mission-critical nature of our solutions . . ." (Benevides)

- "So our expectation for 2022 is to add a similar amount of net new locations to the platform . . ." (Benevides)

- "So I think from a high level, *the underlying fundamentals of the business remain really strong*." (Benevides)

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 154 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 154, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 154, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 154.

155.    On that call, Defendants also provided increased and updated guidance for the fiscal year of 2022 revenue of between $194 and $196 million and discussed 30% revenue growth for the year. They reiterated the same guidance on the May 10, 2022 1Q 2022 earnings call and, at the June 6, 2022 William Blair Conference, Defendant Glass showed the same guidance and stated "we anticipate a reacceleration of revenue growth as implied in our quarter and full year guidance."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 155 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 155, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 155, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 155.

156.    At the May 23, 2022 JPMorgan Global Technology Conference, Benevides told the market that "[w]e feel pretty confident in being able to deliver high growth we define as 30% year-on-year growth."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 156 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 156, and respectfully refer the Court to the investor presentation transcript referenced in Paragraph 156, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 156.

157.    These statements were false and misleading because:

1) Olo's business had already slowed down massively and it was scrambling to get any new locations at all and by July 2021, it was already at the point of "diminishing returns" with its core products;

2) Far from having strong quarters or years, internally they were acknowledged to be "rough" or "razor thin" with the worst six month performance in years;

3) Defendants were internally aware and discussed the fact that the Company already, by the end of 2021, had insufficient revenue growth to maintain its 2022 growth targets, especially the 30% figure;

4) By 2022, 1Q was so "woeful" that the deployment team was sitting idle at 20% behind pace and there was a massive revenue gap the Company was scrambling to fill;

64

5)  Defendants well knew that "all bets were off" after 1Q 2022 as far as revenue acceleration; and

6)  The $196 million guidance was thus completely illusory and fictitious.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 157 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 157.

### 3.  *Defendants Made Misrepresentations About the Enterprise Segment of the Market*

158.    Defendants made a number of material misstatements and omitted relevant information from the market concerning both the trend of large restaurant brands building their own in-house platforms and Olo's dim prospects with those larger enterprise brands.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 158 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 158.

159.    At the beginning of the Class Period, the Offering Documents stressed the importance of "enterprise brands" to the business. Indeed, in telling the market the total addressable market opportunity for Olo was $7 billion, the Offering Documents stated that this was "based on our current product offerings *and focus on enterprise restaurants primarily in the United States*." The Offering Documents also touted that "Our enterprise brands, meaning those brands having 50 or more locations, *are also highly loyal*. Over the last five years, on average nearly 99% of our enterprise brand customers, which accounted for 91% of our total active locations as of December 31, 2020, have continued using our Ordering module each year."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 159 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed

65

that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 159, and respectfully refer the Court to the SEC filings referenced in Paragraph 159, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filings referenced in Paragraph 159.

160.    This continued on the May 11, 2021 1Q 2021 earnings call. When asked directly about the pipeline for larger "replatforming opportunities," Defendant Glass proceeded to state:

> ***And we think that long-term Saas wins*** and that there's a great opportunity for brands that have built in-house to see, okay, there is some capital in the initial CapEx, but it's really the OpEx, that ongoing cost of doing this in-house that I could save money on and have better innovation, better benchmarking against other brands, a broader partner ecosystem by moving to a mature, enterprise-grade SaaS provider.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 160 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 160, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 160, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 160.

161.    On that same call, Defendant Glass told the market that the Company's focus lay in:

> serving the enterprise restaurants in the U.S. and Canada markets because we think there's just a great opportunity for us there and it is the fastest path for us to become a $1 billion revenue company in the fastest and most efficient path for us to do so. So I believe that we're developing the relationship with those large, multinational restaurant brands, most of which are domiciled here in the U.S. And

we're proving out how vital Olo is to their success as a mission-critical platform . . .

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 161 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 161, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 161, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 161.

162.    On October 21, 2021, during the Wisely acquisition call, Defendant Benevides explained that the Wisely acquisition would expand the total addressable market by "approximately $1 billion by applying Wisely's existing suite of products to the approximately 300,000 U.S. enterprise restaurant locations." Glass reiterated almost this exact statement on the February 23, 2022 4Q & FY 2021 Earnings Call when he said "through focusing on the enterprise restaurant segment, we have a 4x opportunity to capture all 300,000 enterprise restaurant locations." He repeated the exact statement word for word at the June 6, 2022 William Blair Conference.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 162 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 162, and respectfully refer the Court to the earnings call transcript and investor presentation transcript referenced in Paragraph 162, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript and investor presentation transcript referenced in Paragraph 162.

163.    Glass continued his stream of misstatements at the January 10, 2022 ICR Conference where he said:

> [I]t has been our long held conviction at Olo that *SaaS is a better alternative to homegrown solutions. We're excited to see the industry agrees with that premise*.
>
> We've proven through hundreds of instances that investing in an enterprise grade SaaS platform is a compelling alternative to all the expenses of building in-house. That means lower costs, faster time-to-market, tapping into platform best practices and leveraging a large partner and customer ecosystem. In short, SaaS wins over homegrown software.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 163 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 163, and respectfully refer the Court to the investor presentation transcript referenced in Paragraph 163, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 163.

164.    These statements were false and misleading for numerous reasons including:

1) ███████████████████████████████████████████████████████

2) Olo thus had no chance of capturing even a small portion of the 300,000 enterprise restaurant locations;

3) Enterprise customers were not loyal as numerous were switching from Olo to develop their own in-house ordering platforms;

4) SaaS (third-party systems offered by companies such as Olo) were definitively not "winning" over homegrown platforms as Olo employees long knew that "Big Dawgs always have an affinity to build their own . . ." given the cost and IT advantages of in-house platforms;

68

5) Even at the start of the Class Period, Defendants knew that "Build versus Buy" was the single largest threat to the Company; and

6) By the October 2021 and January 2022 calls, Defendants were well aware that major customers had churned in favor of building their own in-house systems and that these were merely the "canary in the coal mine" of the cascading trend.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 164 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 164.

### 4. *Defendants Materially Mislead the Market about Subway's Pending Departure*

165.    On February 25, 2022 – the date Olo released 4Q and FY 2021 earnings and an increased FY 2022 guidance – Defendants issued a misleading risk warning, merely warning about a hypothetical risk that had already come to pass:

> In addition, *if* our customers . . . reduce the number of locations using our platform, then our revenue *may* decline and our results of operations may be harmed. Customers *may* not renew their contracts with us or reduce their use of our platform for any number of reasons, including . . . *if* they decide to build their own solution internally.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 165 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 165, and respectfully refer the Court to the SEC filing referenced in Paragraph 165, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing referenced in Paragraph 165.

166.    Although the Form 10-K contained "risk factor" language that purported to "warn" investors of possible risks about customers that could materialize in the future, the Form 10-K failed to apprise investors of Subway's decision to leave Olo – a trend in fact established by other large brands leaving in favor of in-house development. Defendants, instead, misleadingly presented this "risk" as merely a future, contingent possibility, ████████████████████████ ████████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 166 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 166, and respectfully refer the Court to the SEC filing referenced in Paragraph 166, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing referenced in Paragraph 166.

167.    For example, the Form 10-K states that "customers *may* not renew their contracts with us or reduce their use of our platform for any number of reasons" when in fact this "risk" had already materialized *by* ████████████████████████ ████████████████████████████████████████████████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 167 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 167, and respectfully refer the Court to the SEC filing referenced in Paragraph 167, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing referenced in Paragraph 167.

168.    Similarly, the Form 10-K states that customers may not renew their contracts "if they decide to build their own solution internally," when in fact, Subway, like other large restaurant brands, ███████████████████████████████████████████████████████████

███████

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 168 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 168, and respectfully refer the Court to the SEC filing referenced in Paragraph 168, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing referenced in Paragraph 168.

169.    Indeed, the foregoing "risk warning" was not only inadequate, but was itself misleading for portraying a risk – and, in fact, a trend amongst large restaurant brands – that had *already* materialized.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 169 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 169.

### J.    On August 11, 2022, the Truth Emerges

170.    After the market closed on Monday, August 11, 2022, Olo reported its 2Q 2022 earnings results, falling short of expectations across multiple metrics, including revenue, cash flow, and active locations, which *experienced zero growth*, remaining unchanged from the prior quarter at 82,000 active locations. Moreover, Defendants lowered Olo's FY 2022 revenue guidance from a prior range of $195 million to $197 million to a new range of $183 million to $184 million.

**ANSWER:**    Defendants deny the allegations in Paragraph 170, and respectfully refer the Court to the press release and earnings call transcript referenced in Paragraph 170, which speak

71

for themselves. Defendants specifically deny any characterization that is not consistent with the content of the press release and earnings call transcript referenced in Paragraph 170.

### 1. Defendants Disclosed that They Had Known About Subway's Pending Departure Since Early 2022

171. In a stunning revelation on that day's earnings call, Defendants revealed that Subway, the Company's largest client by revenue and active locations count, had opted not to renew its contract with Olo, removing "roughly 2,500 locations in the second quarter [of 2022] . . . with the balance of their locations being removed from our total active location count in the fourth quarter of this year or the first quarter of 2023."[17] As a result, as Defendant Benevides conceded, the loss of all Subway locations "will likely impact our ending active location counts in the fourth quarter of this year or the first quarter of 2023" and the Company would likely add just "2,000 locations per quarter between now and the balance of the year," i.e., just 4,000 more locations in total.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 171 and footnote 17 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 171 and footnote 17, and respectfully refer the Court to the earnings call transcript and press release referenced in Paragraph 171 and footnote 17, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript and press release referenced in Paragraph 171 and footnote 17.

172. Equally as troubling, however, was the fact that Defendants had known about Subway's pending departure since at least the beginning of the year, as Defendant Benevides explained in response to an analyst's question about whether FY 2022 guidance, issued on

---

[17] On the same August 11, 2022 earnings call, Defendant Glass also stated that "In February of 2020, we announced a relationship with Subway in which approximately 15,000 locations would utilize the Rails module to integrate and manage third-party marketplace orders." This constituted a further corrective disclosure, as Olo's February 2020 press release had declared that the Subway "partnership allows Subway's network of more than 20,000 U.S. restaurants to more seamlessly handle digital orders from third-party marketplaces."

February 23, 2022, had included an expected drop in revenue from the loss of Subway as an Olo brand client:

> *So when we entered the year, there was indication that Subway may plan to directly integrate with marketplaces*. But at that point in time, the time line was unclear. So like all data points and assumptions that feed the model, we took that information, we factored in the possibility that Subway may integrate directly by doing 2 things: one, reducing their transaction volumes throughout the year and in turn, reducing a portion of their revenue contribution throughout the year. So as that has begun to happen, the guidance for both the third quarter and the full year are aligned.

**ANSWER:**   Defendants state that no response to the allegations contained in Paragraph 172 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 172, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 172, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 172.

173.    When pressed on the point by RBC Capital analyst Matthew Hedberg – "just to be clear, when you started the year, you assumed less Subway contributions, and it seems like that is playing out" – Benevides admitted that "what we had done *during the year* is really start to tail that off in the second quarter through the balance of the year, really as a hedge to some of the indications that we had heard as we entered the year."

**ANSWER:**   Defendants state that no response to the allegations contained in Paragraph 173 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 173, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 173, which speaks for itself.

Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 173.

174.    As stated herein, there can be zero question Defendants knew of Subway's departure as of the January 13, 2022 Subway meeting, but they likewise at least were aware of the very real possibility of Subway departing by mid-2021 given Subway's preference for "build versus buy" that was common in the enterprise restaurant marketplace.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 174 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 174.

### 2. *The Undisclosed Risk of Defendants' Inaccurate Active Locations Count Materializes*

175.    In explaining why they had lowered FY 2022 guidance, in light of the fact that they had supposedly incorporated the pending loss of Subway into the original FY 2022 guidance (issued on February 23, 2022), Defendants cited "macroeconomic challenges at the brand and operator level [which] have resulted in elongated deployment in sales cycles, impacting revenue in the back half of the year."

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 175 is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny all allegations contained in Paragraph 175.

176.    In truth, Defendants' downward projections represented a materialization of the undisclosed risk of their repeated misreporting of Olo's active locations count. Defendants' own words reveal this. During the Class Period, when discussing how "macroeconomic challenges" would impact the Company, Defendants not only shrugged off an economic downturn, *they welcomed it*. For example, on May 23, 2022, at the JPMorgan Conference, Defendant Glass stated that a recession would lead to increased volume for Olo at QSRs, Olo's bread-and-better brand clients:

[E]ven during a recession, if we had a recession, and we've seen this in 2008, '09, they [consumers] have to eat 3 times a day or more. They don't magically start cooking, consumers go to restaurants, they get food at restaurants, *and they trade down from the high-end restaurants to the lower-cost restaurants*.

*And that is something that has been a tailwind for our business in past recessions as it's been a benefit to our restaurant customers, picking up order volume.*[18]

**ANSWER:**    Defendants deny the allegations in Paragraph 176 and footnote 18, and respectfully refer the Court to the investor presentation transcript referenced in Paragraph 176, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the investor presentation transcript referenced in Paragraph 176.

177.    Additionally, on the same day that Olo lowered its guidance, one of Olo's chief competitors, Toast, released its 2Q 2022 earnings report as well.[19] While similarly acknowledging "the current macroeconomic backdrop," Toast raised FY 2022 revenue guidance by 5%. Toast, Inc., 2Q 2022 Earnings Call (Aug. 11, 2022).

**ANSWER:**    Defendants deny the allegations in Paragraph 177 and footnote 19, except state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Toast, and respectfully refer the Court to the SEC filing and earnings call transcript referenced in Paragraph 177 and footnote 19, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing and earnings call transcript referenced in Paragraph 177 and footnote 19.

---

[18]    In fact, just days before the August 2022 earnings announcement, Benevides ███████ ███████████████████████████████████████████████████

[19]    According to its corporate description, Toast "is a cloud-based all-in-one digital technology platform purpose-built for the entire restaurant community. Our platform provides a comprehensive suite of software as a service, or SaaS, products, financial technology solutions, including integrated payment processing, restaurant-grade hardware, and a broad ecosystem of third-party partners. We serve as the restaurant operating system, connecting front of house and back of house operations across dine-in, takeout, and delivery channels." Toast, Inc., 2Q 2022 SEC Form 10-Q (Aug. 12, 2022).

### 3. *Defendants Lowered the Company's FY 2022 Guidance*

178.    On the same day, Olo also provided revenue and operating income guidance for the third quarter of 2022 and lowered its guidance for the 2022 fiscal year. Specifically, Olo provided:

- Third quarter of 2022 revenue guidance of $46.5M – $47.0M (midpoint of $46.75M) (which  was below consensus estimates of $51.1M).

- Third quarter of 2022 operating income guidance of $1.8M – $2.2M (midpoint of $2.0M) (which was below consensus estimates of $2.3M).

- 2022 fiscal year revenue guidance of $183 – $184M (midpoint of $183.5M) (which was below consensus estimates of $195.6M and also below previous guidance of $195 - $197M (midpoint of $196M)).

- 2022 fiscal year operating income guidance of $7.6 – $8.4M (midpoint of$8.0M) (which was below consensus estimates of $8.3M and also below previous guidance of $7.6 – $9.2M (midpoint of $8.4M)).

**ANSWER:**    Defendants deny all allegations contained in Paragraph 178, and respectfully refer the Court to the press release referenced in Paragraph 178, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the press release referenced in Paragraph 178.

179.    During the conference call, Olo management attributed the lower guidance to elongated sales cycles and elongated deployment cycles. Specifically:

> In terms of sales cycles, there's really 2 underlying dynamics driving our year-to-date performance. So first, for deals that we've signed, many of the large deals happened really late into the second quarter, which means based on our standard deployment time line, revenue won't be recognized on those deals until sometime in 2023. And then for deals that did not close in the quarter, those conversations are ongoing and have been ongoing longer than our typical sales cycle. So those 2 are pushing into 2023.

> As for deployments, now we walked into the year with a sufficient pipeline of activity to deploy, but the time to deploy projects really across all modules have elongated for the primary reasons that we talked about on our prepared remarks, constraints at the brand and operator level. And just to go a level deeper there, we have several brands, which in total represent several thousands of locations that are partially deployed.

76

So they're at some stage of the deployment process. And it is our practice that we don't announce brand deployments until we've reached a critical mass, until we've nearly deployed the entire franchisee network. That's when we typically announce the deployment. We have a number of brands again that are in the deployment process and making progress, but the progress has been much slower than we anticipated and much slower than we've historically done, which is what's creating some of that impact in the back half of the year.

**ANSWER:** Defendants deny all allegations contained in Paragraph 179, and respectfully refer the Court to the earnings call transcript referenced in Paragraph 179, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the earnings call transcript referenced in Paragraph 179.

180. As one news outlet noted:

Shares of Olo Inc. slid more than 30% in premarket trading Friday after the online food-delivery platform cut its guidance for the year. The New York company reported second-quarter revenue that was in line with expectations but said it now expects full-year revenue of $183 million to $184 million, down from a May forecast of $195 million to $197 million. Analysts polled by FactSet, on average, were expecting the company to post full-year revenue of $195.6 million. Olo also said it now expects a full-year adjusted operating profit of $7.6 million to $8.4 million, compared with earlier guidance of $7.6 million to $9.2 million. Olo shares, which closed Thursday at $12.99, were recently down about 32% to $8.80 in premarket trading.[20]

**ANSWER:** Defendants deny all allegations contained in Paragraph 180, and respectfully refer the Court to the article referenced in Paragraph 180 and footnote 20, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the article referenced in Paragraph 180 and footnote 20.

181. As the market digested these astonishing revelations, the price of Olo Class A common stock plummeted approximately 36%, from a closing price of $12.99 per share on August 11, 2022, to a closing price of $8.26 per share on August 12, 2022, erasing more than $480 million

---

[20] See Olo Inc. Shares Tumble Premarket on Lowered Guidance >OLO, Dow Jones Institutional News, Aug. 12, 2022, 6:46 am.

of shareholder value. On September 26, 2022, the date the initial complaint in this action was filed, Olo shares closed at $7.72. Since then, Olo shares have fallen further, trading below $7.00 per share. Olo has also recently been forced to lay off a substantial number of employees.

**ANSWER:**    Defendants deny the allegations in Paragraph 181, except admit that (1) Olo's Class A common stock closed at $12.99 per share on August 11, 2022; (2) Olo's Class A common stock closed at $8.26 per share on August 12, 2022; and (3) Olo's Class A common stock closed at $7.72 per share on September 26, 2022.

## VI.    ADDITIONAL SCIENTER ALLEGATIONS

### A.    Glass and Benevides Profited from Their False and Misleading Statements

182.    While Defendants were issuing the false and misleading statements identified herein, Glass and Benevides sold their personally-held stock, generating $10.3 million in insider sales. That these insider sales were made pursuant to Rule 10b5-1 plans does nothing to rebut the inference of scienter drawn from the suspicious timing and amount of the insider sales. For example, on September 15, 2021, when Olo's stock was at or near its highest price during the entire Class Period as a result of Defendants' false and misleading statements, Glass sold nearly 96,000 shares for over $3 million. And then again, on October 2, 2021, Glass sold nearly another 96,000 shares for over $2.8 million, and then, on November 8, 2021 (the day before the earnings release and call where Defendants touted increasing active locations), Glass again sold nearly 96,000 shares for over $2.8 million.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 182 is required because the Court dismissed them in its July 25, 2023 Opinion (ECF No. 71). To the extent a response may be required,  Defendants deny the allegations in Paragraph 182, except admit that Mr. Glass and Mr. Benevides sold shares of Olo stock during the alleged class period pursuant to Rule 10b5-1 trading plans, and respectfully refer the Court to Olo's SEC filings that contain information concerning Mr. Glass's and Mr. Benevides's transactions involving Olo stock. Further, the allegations concerning Mr. Glass's and Mr. Benevides's Rule 10b5-1 plans consist of legal conclusions, to which no response is required.

183.    Benevides also profited handsomely from his stock sales, drawing nearly $1.5 million in sales over the Class Period.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 183 is required because the Court dismissed them in its July 25, 2023 Opinion (ECF No. 71). To the extent a response may be required, Defendants deny the allegations in Paragraph 183, except admit that Mr. Benevides sold shares of Olo stock during the alleged class period pursuant to a Rule 10b5-1 trading plan, and respectfully refer the Court to Olo's SEC filings that contain information concerning Mr. Benevides's transactions involving Olo stock.

**B.** **Defendants' Materially False and Misleading Statements Provided Olo an Opportunity to Acquire Wisely with An Inflated Stock Price**

184. By reason of Defendants' repeated material misstatements, Olo's common stock was artificially inflated throughout the Class Period and Defendants took full advantage in order to facilitate acquisitions that would have otherwise been more expensive, difficult, and/or impossible without an artificially inflated share price.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 184 is required because the Court dismissed them in its July 25, 2023 Opinion (ECF No. 71). Moreover, the allegations in Paragraph 184 consist of legal conclusions, to which no response is required. To the extent Paragraph 184 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 184.

185. On October 21, 2021, the Company filed an SEC Form 8-K to inform investors that it had entered into an agreement to acquire Wisely, a customer intelligence and engagement platform, paying Wisely securityholders approximately $187 million, comprised of $77 million in cash and $110 million in Class A Common Stock, based on a price per share of $29.85.

**ANSWER:** Defendants state that no response to the allegations contained in Paragraph 185 is required because the Court dismissed them in its July 25, 2023 Opinion (ECF No. 71). To the extent a response may be required, Defendants deny the allegations in Paragraph 185, except admit that Olo acquired Wisely in November 2021, and respectfully refer the Court to the SEC filing referenced in Paragraph 185, which speaks for itself. Defendants specifically deny any

79

characterization that is not consistent with the content of the SEC filing referenced in Paragraph 185.

186.    In acquiring Wisely, the Company benefited from its elevated share price because, had the market known the truth about the Company's misleading statements, Olo's common stock would have traded at a significantly lower value, which in turn would have adversely impacted the Company's ability to acquire Wisely on favorable terms – for example, by financing the agreement with almost 60% of the Company's stock – and would have made the acquisition more expensive, if not impossible.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 186 is required because the Court dismissed them in its July 25, 2023 Opinion (ECF No. 71). To the extent a response may be required, Defendants deny the allegations in Paragraph 186.

### C.    Defendants' Materially False and Misleading Statements Also Provided Olo an Opportunity to Acquire Omnivore

187.    On February 23, 2022, the Company announced on an earnings call that it had entered into an agreement to acquire Omnivore. Two days later, in the Form 10-K for FY 2022, Olo disclosed that it paid approximately $50 million in cash for Omnivore.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 187 is required because the Court dismissed them in its July 25, 2023 Opinion (ECF No. 71). To the extent a response may be required, Defendants deny the allegations in Paragraph 187, except admit that Olo acquired Omnivore in March 2022, and respectfully refer the Court to the SEC filing and earnings call transcript referenced in Paragraph 187, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the SEC filing and earnings call transcript referenced in Paragraph 187.

188.    Again, Defendants benefitted from the inflated share price by their material misstatements. Had the market known the truth prior to the Wisely acquisition, Olo shares would have traded at a lower price, and perhaps would have forced Olo to dip further into its cash reserves, leaving little, if anything, available for the Omnivore acquisition just four months later.

**ANSWER:**    Defendants state that no response to the allegations contained in Paragraph 188 is required because the Court dismissed them in its July 25, 2023 Opinion (ECF No. 71).

Moreover, the allegations in Paragraph 188 consist of legal conclusions, to which no response is required. To the extent Paragraph 188 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 188.

### D.    Glass and Benevides Knew About Each Aspect of the Fraud Alleged

189.    Throughout the Class Period, the Individual Defendants knew about each aspect of the fraud alleged. For example, Glass and Benevides were regularly apprised about onboarding issues with the specific brand clients going to the heart of Defendants' active locations fraud, █████████████████████████████████████████████████████████████████████

**ANSWER:**    To the extent the allegations in Paragraph 189 relate to Mr. Benevides, Defendants state that no response is required because the Court dismissed allegations concerning Mr. Benevides' purported knowledge or recklessness in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny the allegations in Paragraph 189.

190.    Internal documents show that Glass and Benevides were informed of every issue discussed herein, including: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**ANSWER:**    To the extent the allegations in Paragraph 190 relate to Mr. Benevides, Defendants state that no response is required because the Court dismissed allegations concerning Mr. Benevides' purported knowledge or recklessness in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent a response may be required, Defendants deny the allegations in Paragraph 190.

191.    Additionally, upon information and belief, Defendant Glass is intimately involved with Olo's day-to-day operations. For example, in a November 15, 2021 interview with a Public Company Research Organization ("PCRO"), a former Senior Customer Success Manager at Olo described Glass as "engage[d] with [his] followership." In another interview with the PCRO on March 16, 2021, a former Senior Director of Customer Success at Olo even described Glass as involved with key business partnerships, as he was leading Olo's "negotiations" between "the heads of DoorDash" and other companies.

**ANSWER:**    Defendants deny the allegations in Paragraph 191, except state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what certain former Olo employees purportedly stated in interviews with the unidentified "Public Company Research Organization" referenced in Paragraph 191, and respectfully refer the Court to the interview transcripts referenced in Paragraph 191, which speak for themselves. Defendants specifically deny any characterization that is not consistent with the content of the interview transcripts referenced in Paragraph 191.

192.    Further, upon information and belief, Defendant Glass also has regular interactions with Olo's clients. In addition to attending Olo's annual "customer conference," Glass also answers client concerns. For example, according to the transcript of an interview the Executive Chairman at Tender Greens, an Olo brand client, had with the PCRO on October 21, 2021, he [the executive] "could call Noah [Glass] and he would respond" in the "early bumpy onboarding days" and that "if some things aren't right, they [Olo] fix it."

**ANSWER:**    Defendants deny the allegations in Paragraph 192, except state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what the "Executive Chairman at Tender Greens" purportedly stated in interviews with the unidentified "Public Company Research Organization" referenced in Paragraph 192, and respectfully refer the Court to the interview transcript referenced in Paragraph 192, which speaks for itself. Defendants specifically deny any characterization that is not consistent with the content of the interview transcript referenced in Paragraph 192.

## VII.    LOSS CAUSATION

193.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic losses suffered by Plaintiff and members of the Class (defined herein). During the

Class Period, Plaintiff and Class Members purchased Olo's Class A common stock at artificially inflated prices caused by Defendants' misconduct, as alleged herein. The price of the Company's Class A common stock declined significantly when the substantial problems and risks concealed by Defendants were disclosed and Defendants' material misrepresentations and omissions were revealed to the market, causing investors' losses.

**ANSWER:** The allegations in Paragraph 193 consist of legal conclusions, to which no response is required. To the extent Paragraph 193 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 193, except state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's stock purchases or the stock purchases of the class members Plaintiff represents.

194. Before the end of the Class Period, on August 11, 2022, investors had been unaware of the following material facts about Olo that had been known to Defendants:

    (a)    throughout the Class Period, Defendants reported an inaccurate active locations count and definition;

    (b)    ██████████████████████████████████████ and

    (c)    ██████████████████████████████████████ ████████ and were aware – at the latest in January 2022 – that Subway would not be renewing its contract with Olo for this reason.

**ANSWER:** The allegations in Paragraph 194 consist of legal conclusions, to which no response is required. To the extent Paragraph 194 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 194.

195. Defendants' misrepresentations and omissions and fraudulent scheme, as alleged above, misrepresented and concealed the true adverse material facts from the market during the Class Period, leading investors to wrongly believe that Olo had exponentially increasing active locations and a positive guidance and financial prospects.

**ANSWER:** The allegations in Paragraph 195 consist of legal conclusions, to which no response is required. To the extent Paragraph 195 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 195.

196.    As alleged above, these material facts were revealed to investors – and/or the undisclosed risks materialized – for the first time on August 11, 2022 when Defendants told the market that Subway had ended its contract with Olo, that the number of active locations did not increase, and lowered Olo's FY 2022 guidance.

**ANSWER:**    The allegations in Paragraph 196 consist of legal conclusions, to which no response is required. To the extent Paragraph 196 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 196.

197.    The market reacted swiftly and negatively to these disclosures, which were made after trading hours on August 11, 2022. As a result of them, on the next trading day, August 12, 2022, the price of Olo's Class A common stock dropped 36%, from $12.99 per share to $8.26 per share, on a volume of 11,582,335 million shares. More than $480 million of shareholder value was erased, and the price of Olo's Class A common stock remains depressed, closing at just $7.72 as of the date of the initial complaint (ECF No. 1) in this action and below $7.00 on the date of the filing of this Second Amended Complaint.

**ANSWER:**    Defendants deny the allegations in Paragraph 197, except admit that (1) Olo's Class A common stock closed at $12.99 on August 11, 2022; (2) Olo's Class A common stock closed at $8.26 per share on August 12, 2022; (3) Olo's Class A common stock closed at $7.72 per share on September 26, 2022; and (4) Olo's Class A common stock closed at $6.93 per share on August 9, 2023.

## VIII.   CLASS ACTION ALLEGATIONS

198.    Plaintiff brings this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, the securities of Olo during the Class Period (March 17, 2021 to August 11, 2022, inclusive), seeking to pursue remedies under the Exchange Act (the "Class"). Excluded from the Class are Defendants; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which any of the Defendants have or had a controlling interest.

**ANSWER:**    The allegations in Paragraph 198 consist of legal conclusions, to which no response is required. To the extent Paragraph 198 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 198, except admit that Plaintiff brings

this action against Defendants on behalf of a class pursuant to the statutory provisions cited in

Paragraph 198.

199. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Olo's common stock was actively traded on the NYSE. While the exact number of Class Members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Throughout the Class Period, millions of Olo common stock were actively traded on the NYSE (an open and efficient market) under the symbol "OLO." Record owners and other members of the Class may be identified from records maintained by Olo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

**ANSWER:** The allegations in Paragraph 199 consist of legal conclusions, to which no response is required. To the extent Paragraph 199 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 199, except admit that Olo's Class A Common Stock has been listed on the NYSE since the Company's IPO on March 17, 2021 and trades under the ticker "OLO."

200. Plaintiff's claims are typical of the claims of Class Members, who were all similarly affected by Defendants' wrongful conduct in violation of federal securities laws, which is complained of herein. Further, Plaintiff will fairly and adequately protect the interests of Class Members and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

**ANSWER:** The allegations in Paragraph 200 consist of legal conclusions, to which no response is required. To the extent Paragraph 200 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 200.

201. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the federal securities laws by the acts and omissions as alleged herein;

(b) whether statements made by Defendants to the investing public and the Company's shareholders during the Class Period omitted or misrepresented material facts about the business, operations, and prospects of Olo;

85

(c)      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period omitted or misrepresented material facts about the business, operations, and prospects of Olo;

(d)      whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(e)      whether the market price of Olo Class A common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

(f)      to what extent Class Members have sustained damages and the proper measure of damages.

**ANSWER:** The allegations in Paragraph 201 consist of legal conclusions, to which no response is required. To the extent Paragraph 201 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 201.

202. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impossible for Class Members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER:** The allegations in Paragraph 202 consist of legal conclusions, to which no response is required. To the extent Paragraph 202 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 202.

## IX. APPLICABILITY OF THE FRAUD-ON-THE-MARKET AND *AFFILIATED UTE* PRESUMPTIONS OF RESILIENCE

203. The market for Olo common stock was open, well developed, and efficient at all relevant times. As a result of Defendants' materially false or misleading statements and material omissions, the Company's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's common stock, relying on the integrity of the market price of such securities and on publicly available market information relating to Olo. Plaintiff and Class Members have been damaged thereby.

**ANSWER:** The allegations in Paragraph 203 consist of legal conclusions, to which no response is required. To the extent Paragraph 203 contains factual allegations to which a response

86

is required, Defendants deny the allegations in Paragraph 203, except state that they lack

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

Plaintiff's stock purchases or the stock purchases of the class members Plaintiff represents.

204.    During the Class Period, the artificial inflation of the value of Olo common stock was caused by the material misrepresentations and omissions alleged in this Complaint, thereby causing the damages sustained by Plaintiff and other Class Members. As alleged herein, during the Class Period, Defendants made, or caused to be made, a series of materially false or misleading statements about the Company's business, prospects, and operations, causing the price of the Company's common stock to be artificially inflated at all relevant times. When the truth was disclosed, it drove down the value of the Company's common stock, causing Plaintiff and other Class Members that had purchased the securities at artificially inflated prices to be damaged as a result.

**ANSWER:**    The allegations in Paragraph 204 consist of legal conclusions, to which no

response is required. To the extent Paragraph 204 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 204.

205.    At all relevant times, the market for Olo common stock was efficient for the following reasons, among others:

(a)    Olo stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Olo filed periodic public reports with the SEC and/or the NYSE;

(c)    Olo regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Olo was followed by securities analysts employed by brokerage firms, who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms and were made publicly available.

**ANSWER:**    The allegations in Paragraph 205 consist of legal conclusions, to which no

response is required. To the extent Paragraph 205 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 205, except admit that (1) Olo's Class A

Common Stock has been listed on the NYSE since the Company's IPO on March 17, 2021; (2) Olo makes periodic filings with the SEC; and (3) Olo periodically issues press releases and communicates with investment analysts concerning its business.

206. Based on the foregoing, during the Class Period, the market for Olo common stock promptly digested information regarding the Company from all publicly available sources and reflected such information in the price of Olo stock. Under these circumstances, the market for Olo common stock was efficient during the Class Period and, therefore, investors' purchases of Olo common stock at artificially inflated market prices give rise to a Class-wide presumption of reliance under the fraud-on-the-market doctrine.

**ANSWER:** The allegations in Paragraph 206 consist of legal conclusions, to which no response is required. To the extent Paragraph 206 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 206.

207. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions, which concealed that:

(a) throughout the Class Period, Defendants reported an inaccurate active locations count;

(b) ███████████████████████████████████ ; and

(c) starting by the middle of January 2022 and continuing through the end of the Class Period, Defendants were aware Subway would not be renewing its contract with Olo.

**ANSWER:** The allegations in Paragraph 207 consist of legal conclusions, to which no response is required. To the extent Paragraph 207 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 207.

208. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects – information that Defendants were obligated to disclose during the Class Period but did not – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

88

**ANSWER:**   The allegations in Paragraph 208 consist of legal conclusions, to which no

response is required. To the extent Paragraph 208 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 208.

## X.   NO SAFE HARBOR

209.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the statements alleged to be false or misleading herein that relate to then-existing facts and conditions, nor does it apply to any material omissions alleged herein. To the extent that statements alleged to be false or misleading are characterized as forward-looking, the statutory safe harbor does not apply to such statements because they were not sufficiently identified as "forward-looking statements" when made, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements, and Defendants had actual knowledge that the forward-looking statements were materially false or misleading at the time each such statement was made.

**ANSWER:**   The allegations in Paragraph 209 consist of legal conclusions, to which no

response is required. To the extent Paragraph 209 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 209.

210.   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Olo who knew that the statement was false when made.

**ANSWER:**   The allegations in Paragraph 210 consist of legal conclusions, to which no

response is required. To the extent Paragraph 210 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 210.

## XI.   COUNTS

**<u>COUNT I</u>**
**Violation of §10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**(Against All Defendants)**

211.   Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein. This claim is asserted against all Defendants.

89

**ANSWER:** In response to Paragraph 211, Defendants incorporate their responses to each and every allegation contained in the unnumbered paragraph on page 1 of the SAC and Paragraphs 1 through 210, and footnotes 1 through 20 as if fully set forth herein. To the extent the allegations in Paragraph 211 relate to claims against Mr. Benevides, Defendants state that no response is required because the Court dismissed them in its September 26, 2023 bottom-line ruling on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 84) and reconfirmed that ruling in its December 1, 2023 Opinion. (ECF No. 105). To the extent Paragraph 211 contains factual allegations to which a further response is required, Defendants deny the allegations in Paragraph 211.

212. During the Class Period, Defendants: (i) knowingly, or with reckless disregard, deceived the investing public, including Plaintiff and Class members, as alleged herein; (ii) artificially inflated and/or maintained the market price of Olo common stock; and (iii) caused Plaintiff and Class members to purchase, or otherwise acquire, Olo common stock at artificially inflated prices.

**ANSWER:** The allegations in Paragraph 212 consist of legal conclusions, to which no response is required. To the extent Paragraph 212 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 212.

213. Each of the Defendants, in violation of §10(b) of the Exchange Act and Rule 10b-5(b), made false statements of material facts and omitted to state material facts necessary to make the statements made by Defendants not misleading, which operated as a fraud and deceit upon Plaintiff and the Class, in an effort to create or maintain an artificially inflated price of Olo common stock during the Class Period. Defendants' material misrepresentations and omissions are alleged in §IV.D., *supra*.

**ANSWER:** The allegations in Paragraph 213 consist of legal conclusions, to which no response is required. To the extent Paragraph 213 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 213.

214. As a result of their making and/or substantially participating in the creation of affirmative statements to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with applicable laws and regulations.

**ANSWER:** The allegations in Paragraph 214 consist of legal conclusions, to which no response is required. To the extent Paragraph 214 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 214.

215. As officers, directors, and controlling persons of a publicly held Company, whose common stock is registered with the SEC, pursuant to the Exchange Act, traded on the NYSE, and governed by the provisions of the federal securities laws, Glass and Benevides had a duty to promptly disseminate accurate and truthful information regarding the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially false or misleading, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information.

**ANSWER:** The allegations in Paragraph 215 consist of legal conclusions, to which no response is required. To the extent Paragraph 215 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 215.

216. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, made, or substantially participated in, the creation and/or dissemination of false or misleading statements of material fact, as set forth herein, or with reckless disregard failed to ascertain and disclose truthful facts, even though such facts were available to them.

**ANSWER:** The allegations in Paragraph 216 consist of legal conclusions, to which no response is required. To the extent Paragraph 216 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 216.

217. The facts alleged herein give rise to a strong inference that each of the Defendants acted with scienter. Each of the Defendants knew, or recklessly disregarded, that the Class Period statements set forth in §IV.D., *supra*, contained material misrepresentations and omissions for the reasons set forth herein.

**ANSWER:** The allegations in Paragraph 217 consist of legal conclusions, to which no response is required. To the extent Paragraph 217 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 217.

218. By virtue of Glass and Benevides' positions of management and control within Olo, they had access to undisclosed adverse information about the Company, its business, operations, operational trends, finances, and present and future business prospects. Glass and Benevides would

91

ascertain such information through the Company's internal corporate documents; conversations and connections with corporate officers and employees; attendance at conferences and management and Board of Directors meetings, including committees thereof; and reports and other information provided to them in connection with their roles and duties as Olo officers and directors.

**ANSWER:** The allegations in Paragraph 218 consist of legal conclusions, to which no response is required. To the extent Paragraph 218 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 218.

219. Glass and Benevides were aware of, or recklessly disregarded, that material misrepresentations and omissions were being made regarding the Company, and approved or ratified such statements in violation of the federal securities laws.

**ANSWER:** The allegations in Paragraph 219 consist of legal conclusions, to which no response is required. To the extent Paragraph 219 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 219.

220. As a result of Defendants' dissemination of the materially false or misleading information, and their failure to disclose material facts, as alleged herein, the market price of Olo common stock was artificially inflated, relying directly or indirectly on the false or misleading statements made by Defendants, at the times such statements were made, or relying upon the integrity of the markets in which Olo common stock traded; and in the absence of material adverse information that was known, or recklessly disregarded, by Defendants, but not disclosed to the public, Plaintiff and Class Members purchased or otherwise acquired Olo common stock at artificially inflated prices.

**ANSWER:** The allegations in Paragraph 220 consist of legal conclusions, to which no response is required. To the extent Paragraph 220 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 220.

221. Had Plaintiff and the other Class Members known the truth regarding the problems that Olo was experiencing, which was not disclosed by Defendants, Plaintiff and other Class Members would not have purchased, or otherwise acquired, Olo common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

**ANSWER:** The allegations in Paragraph 221 consist of legal conclusions, to which no response is required. To the extent Paragraph 221 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 221, except state that they lack

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

Plaintiff's stock purchases or the stock purchases of the class members Plaintiff represents.

222.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class Members suffered damages in connection with their respective purchases and sales of Olo common stock during the Class Period, when the artificial inflation in the price of such securities dissipated, as the truth regarding Defendants' conduct was revealed and/or the undisclosed risks materialized, causing the price of Olo common stock to decline, resulting in economic losses to Plaintiff and the Class.

**ANSWER:**    The allegations in Paragraph 222 consist of legal conclusions, to which no

response is required. To the extent Paragraph 222 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 222.

223.    By reason of the foregoing, Defendants violated §10(b) of the Exchange Act and Rule 10b-5(b), promulgated thereunder, and they are liable to Plaintiff and the Class for damages suffered in connection with their transactions in Olo common stock during the Class Period.

**ANSWER:**    The allegations in Paragraph 223 consist of legal conclusions, to which no

response is required. To the extent Paragraph 223 contains factual allegations to which a response

is required, Defendants deny the allegations in Paragraph 223.

<u>**COUNT II**</u>
**Violation of §20(a) of the Exchange Act**
**(Against Defendants Glass and Benevides)**

224.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein. This claim is asserted against Defendants Glass and Benevides.

**ANSWER:**    In response to Paragraph 224, Defendants incorporate their responses to

each and every allegation contained in the unnumbered paragraph on page 1 of the Amended

Complaint and Paragraphs 1 through 223, and footnotes 1 through 20 as if fully set forth herein.

To the extent Paragraph 224 contains factual allegations to which a further response is required,

Defendants deny the allegations in Paragraph 224.

225.    Olo is a primary violator of §10(b) and Rule 10b-5, promulgated thereunder.

**ANSWER:** The allegations in Paragraph 225 consist of legal conclusions, to which no response is required. To the extent Paragraph 225 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 225.

226. Glass and Benevides acted as controlling persons of Olo within the meaning of §20(a) of the Exchange Act. Glass and Benevides had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence, and during the Class Period, did exercise their power to control and influence, the conduct giving rise to the violations of the federal securities laws alleged herein. Glass and Benevides prepared, or were responsible for preparing, the Company's press releases and SEC filings, and made statements to the market in SEC filings, annual reports, press releases, news articles, and conference calls. Glass and Benevides controlled Olo and each of its employees.

**ANSWER:** The allegations in Paragraph 226 consist of legal conclusions, to which no response is required. To the extent Paragraph 226 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 226.

227. Glass and Benevides were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Glass and Benevides were provided with copies of the documents, as alleged herein, containing material misrepresentations and omissions prior to, or shortly after, their issuance and had the ability and/or opportunity to prevent the issuance of such documents or cause them to be corrected. Accordingly, Glass and Benevides are responsible for the accuracy of the Company's public reports and releases.

**ANSWER:** The allegations in Paragraph 227 consist of legal conclusions, to which no response is required. To the extent Paragraph 227 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 227.

228. By virtue of their positions as controlling persons of Olo, and by reason of the conduct described in this Count, Glass and Benevides are liable pursuant to §20(a) of the Exchange Act for controlling a primary violator of the federal securities laws. As a direct and proximate result of Glass and Benevides' wrongful conduct, Plaintiff and other Class Members suffered damages in connection with their purchases of the Company's securities during the Class Period.

**ANSWER:** The allegations in Paragraph 228 consist of legal conclusions, to which no response is required. To the extent Paragraph 228 contains factual allegations to which a response is required, Defendants deny the allegations in Paragraph 228.

94

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

A.   Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.   Awarding compensatory damages in favor of Plaintiff and all other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

C.   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel and expert fees; and

D.   Awarding such other and further relief as the Court may deem just and proper.

## RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny any wrongdoing and deny that Plaintiff or the class members Plaintiff represents are entitled to any relief from Defendants.

## AFFIRMATIVE DEFENSES

Defendants offer the following defenses in response to the allegations set forth in the SAC. Defendants reserve the right to amend this answer, to amend, modify and/or supplement its defenses, and to plead and assert additional defenses as they become known and appropriate during the course of the litigation, including without limitation any defenses that may arise as a result of any findings, conclusions, or other action taken. The statement of any defense does not assume the burden of proof on any issue as to which applicable law places the burden on Plaintiff. To the extent that any of the defenses asserted herein or to be asserted in the future is mutually exclusive with another defense asserted herein or to be asserted in the future, such defense is asserted in the alternative to the other.

95

## FIRST AFFIRMATIVE DEFENSE

Plaintiff is not entitled to the certification of any class because Plaintiff's claims are not suitable for a class action under Rule 23 of the Federal Rules of Civil Procedure or any other applicable law, and Plaintiff is not a suitable class representative.

## SECOND AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the SAC fails to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the SAC fails to meet the requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, 14 U.S.C. § 78u-5 ("PSLRA").

## FOURTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Plaintiff has failed to plead their claims against Defendants with particularity.

## FIFTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because it fails to allege any actionable misstatement, misrepresentation or omission by any Defendant.

## SIXTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because none of the alleged misrepresentations or omissions referenced in the SAC were, in fact, false or misleading in any way.

## SEVENTH AFFIRMATIVE DEFENSE

96

This action is barred, in whole or in part, because the statements alleged in the SAC, if any were in fact made, did not contain untrue material facts and all statements alleged to have been made (if any) had a reasonable basis in fact and/or were immaterial as a matter of law.

## EIGHTH AFFIRMATIVE DEFENSE

At all relevant times, Defendants acted without intent to defraud and without recklessness, and Defendants believed, at the time the statements alleged in the SAC were made, if any were in fact made, that those statements were correct and not misleadingly incomplete.

## NINTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the allegedly untrue statements of fact and omissions of fact referenced in the SAC were immaterial as a matter of law.

## TENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the statements alleged in the SAC, if any were in fact made, bespoke caution about the risks of investing in Olo, were corporate puffery, opinion or were forward-looking statements.

## ELEVENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the facts alleged to have been misrepresented or omitted were forward-looking and are rendered inactionable by the safe harbor provisions of the PSLRA.

## TWELFTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Plaintiff lacks standing to sue or to pursue any claims against Defendants.

## THIRTEENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the fraud on the market theory is not

97

applicable and/or is not a basis of liability with respect to one or more of the claims asserted in this action.

## FOURTEENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Defendants did not act with the requisite scienter. Defendants did not make any of the alleged misrepresentations or omissions in the SAC with the intent to deceive and/or for the purpose of inducing the purchase or sale of Olo stock by Plaintiff or the class members Plaintiff represents. Defendants are not liable for Plaintiff's claims because Defendants did not know, and could not have known with the exercise of reasonable care, the untruth of any alleged misrepresentations or the fact of any material omission.

## FIFTEENTH AFFIRMATIVE DEFENSE

The action is barred, in whole or in part, because the actual facts that Plaintiff alleges to have been misrepresented or omitted were in fact known to and entered the securities market through credible sources. Plaintiff is not entitled to any recovery because the substance of the allegedly material information that Plaintiff alleges to have been omitted or misrepresented was in fact disclosed in Olo's own public filings and announcements, in the documents and securities referenced in the SAC, in the public disclosures of other parties and non-parties, and from other sources that were otherwise publicly available and/or widely known to the market and to the investing community.

## SIXTEENTH AFFIRMATIVE DEFENSE

The action is barred, in whole or in part, because Plaintiff and the market were informed of the material information and risks associated with their investments in SEC filings and their amendments, press releases, proxy statements, advertisements, and other materials available to Plaintiff and/or the market.

98

## SEVENTEENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because at all relevant times Defendants had no duty to disclose the allegedly omitted information.

## EIGHTEENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Defendants were under no duty to revise, update, and/or correct any previously made statements that Plaintiff alleges were not subsequently revised, updated and/or corrected.

## NINETEENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the statements alleged in the SAC to be false or misleading, were not made for the purpose of inducing the purchase or sale of a security.

## TWENTIETH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Plaintiff has not suffered any legally cognizable injury or damage.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Defendants deny that they fraudulently, recklessly, negligently or otherwise engaged in any act of deceit, conspiracy, fraud, or any other action, alleged conduct, or alleged omission, which was a proximate cause of any injury to Plaintiff or the class members Plaintiff represents.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, due to the absence of loss causation. Specifically, Defendants were not the cause of any alleged injury or loss or damages suffered by Plaintiff or the class members Plaintiff represents. Any injury or loss or damages suffered by Plaintiff the class members Plaintiff represents is the proximate result, either in whole or in part, of actions or

omissions of persons or entities other than, or superseding and intervening events unconnected to, Defendants.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

This action is barred, in whole or in part, because of the absence of actual or justifiable reliance by Plaintiff or the class members Plaintiff represents on the statements, acts, or omissions alleged in the SAC to have been made. Plaintiff or the class members Plaintiff represents would have purchased Olo stock even with full knowledge of the facts that Plaintiff now alleges were misrepresented or omitted.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

This action is barred, in whole or in part, because any damages or injuries suffered by Plaintiff or the class members Plaintiff purport to represents are the proximate result, either in whole or in part, of actions or omissions of persons or entities other than Defendants.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

This action is barred, in whole or in part, by the doctrines of contributory negligence, comparative negligence, and/or assumption of risk. Plaintiff either knew or should have known about the matters alleged in the SAC, and their own negligence or other fault proximately contributed to the injuries allegedly suffered by Plaintiff.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

This action is barred, in whole or in part, by the applicable statutes of limitations and other applicable periods of repose.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

This action is barred, in whole or in part, by the doctrine of laches.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

100

This action is barred, in whole or in part, because Defendants justifiably relied on information provided to them by others.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Defendants are not liable for any portion of Plaintiff's loss or damage caused by factors other than the misrepresentations and omissions alleged in the SAC.

## THIRTIETH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Plaintiff and the class members Plaintiff represents failed to take reasonable action to mitigate any damages allegedly sustained as a result of the facts alleged in the SAC.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because the alleged damages are speculative and thus not recoverable.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Plaintiff and the class members Plaintiff represents are not entitled to the compensatory damages requested in the SAC.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Plaintiff and the class members Plaintiff represents are not entitled to recovery of attorneys' fees or any other costs and expenses requested in the SAC.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because, and to the extent that, any relief or recovery would unjustly enrich or constitute a windfall to Plaintiff and the class members Plaintiff

represents. Any damages that may be awarded in connection with the claims asserted in the SAC are offset and/or must be reduced by the amount of the tax benefits accruing to Plaintiff and the class members Plaintiff represents, by virtue of their deductions of capital loss, in order to prevent unjust enrichment of Plaintiff and the class members Plaintiff represents.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, by the doctrines of estoppel, unclean hands, fraud, *in pari delicto*, waiver, ratification, and/or other related equitable doctrines.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, due to Defendants' compliance with all statutes, regulations, or other laws in effect at the time of the conduct alleged in the SAC.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, to the extent it seeks to impose upon Defendants disclosure obligations that are inconsistent with, or in excess of, those imposed pursuant to the federal securities laws, including the Exchange Act and the rules and regulations promulgated thereunder by the SEC.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because Plaintiff cannot establish the primary liability necessary to assert a control person liability claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Mr. Glass and Mr. Benevides are not control persons and not subject to control person liability, as Mr. Glass and Mr. Benevides and their subordinates acted in good faith and did not directly or indirectly induce any act alleged to constitute a violation of Section 10(b) of the Exchange Act.

## THIRTY-NINETH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, by SEC Rule 10b5-l.

## FORTIETH AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, by virtue of statutory defenses, including, but not limited to, 15 U.S.C. § 78t(a), or the governing local laws of this jurisdiction.

## FORTY-FIRST AFFIRMATIVE DEFENSE

This action is barred, in whole or in part, because other parties not named in the SAC may be indispensable parties to this Action.

WHEREFORE, Defendants respectfully request that a final judgment be entered in their favor dismissing the SAC with prejudice; awarding Defendants the reasonable costs of this action, including reasonable attorneys' fees; and granting Defendants such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Defendants demand a trial by jury of all issues so triable.


Dated:  December 13, 2023                    Respectfully submitted,


OLO INC., NOAH GLASS, and PETER BENEVIDES


By their attorneys,

*/s/ Jennifer B. Luz*

Deborah S. Birnbach
Jennifer B. Luz
Katherine McKenney (admitted *pro hac vice*)
Justin D. Ward
Brendan Blake (admitted *pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000

103

Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com
JWard@goodwinlaw.com
KMckenney@goodwinlaw.com
BBlake@goodwinlaw.com

Richard M. Strassberg
Meghan K. Spillane
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8800
Fax: 212.355.3333
RStrassberg@goodwinlaw.com
MSpillane@goodwinlaw.com

## CERTIFICATE OF SERVICE

I, Jennifer B. Luz, hereby certify that a copy of the foregoing answer to Plaintiff's Amended Class Action Complaint for Violations of Federal Securities Laws, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 13, 2023.

Dated: December 13, 2023                                         */s/ Jennifer B. Luz*