**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br>               Defendants. | Case No. 1:22-cv-08228-JSR<br><br>CLASS ACTION |

**CLASS REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  SUMMARY OF THE ACTION ............................................................................3

III.  SUMMARY OF THE SETTLEMENT ..................................................................7

IV.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ....................8

    A.  The Standards for Preliminary Approval of a Proposed Settlement........................8

    B.  The Settlement Satisfies Each of the Rule 23(e)(2) Factors .................................10

        1.  Class Representative and Class Counsel Have Adequately
           Represented the Class .................................................................................10

        2.  The Proposed Settlement Was Negotiated at Arm's Length .......................11

        3.  The Proposed Settlement Is Adequate in Light of the Costs, Risks,
           and Delay of Trial and Appeal...................................................................12

        4.  The Proposed Method for Distributing Relief Is Effective..........................14

        5.  Class Counsel's Maximum Potential Requested Attorneys' Fees and
           Expenses Are Reasonable and in Line with Similar Recent Cases .............15

        6.  The Parties Have No Side Agreements Aside from a Standard
           Confidential Addendum Regarding Exclusions............................................16

        7.  Class Members Are Treated Equitably .......................................................17

    C.  The Settlement Also Satisfies the *Grinnell* Factors.............................................17

        1.  The Complexity, Expense, and Likely Duration of the Litigation, the
           Risks of Establishing Liability, and the Risks of Establishing
           Damages All Support Preliminary Approval................................................17

        2.  The Reaction of the Class to the Settlement ...............................................18

        3.  The Stage of the Proceedings Supports Preliminary Approval ...................18

        4.  Defendants' Ability to Withstand a greater Judgment Supports
           Preliminary Approval, or at the Least, Does Not Undermine It .................19

        5.  The Reasonableness of the Proposed Settlement in Light of the Best
           Possible Recovery and the Attendant Risks of Litigation Support
           Preliminary Approval..................................................................................20

V.  THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND
    THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED..........21

VI.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...........................................24

VII.  CONCLUSION.........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.*
   *Pierson*, 607 Fed. App'x 73 (2d Cir. 2015) ...........................................................21

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
   Case No. 1:20-cv-02031 (S.D.N.Y. June 30, 2021) ............................................28

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)...................................................................................26

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..........................................................................16, 19

*Fogarazzo v. Lehman Bros., Inc.*,
   2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .......................................................21

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...............................................18, 21

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
   271 Fed. App'x. 41 (2d Cir. 2008)......................................................................28

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................19

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)...............26

*In re Alloy, Inc. Sec. Litig.*,
   2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .......................................................18

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................................18, 27

*In re Facebook, Inc. IPO Sec & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)..................................................................28

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................................21

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................24, 27

*In re GSE Bonds Antitrust Litig.*,
    2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .......................................................16

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................23, 24, 25, 26

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)...................................................27

*In re IPO Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) .........................................................................15

*In re Prudential Sec., Inc.*,
    1995 WL 798907 (S.D.N.Y. Nov. 20, 1995).......................................................26

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .........................................................................15

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................22

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012).....................................................25

*Karimi v. Deutsche Bank Aktiengesellschaft*,
    Case No. 1:22-cv-02854 (S.D.N.Y. Oct. 20, 2022) ............................................15

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
    2016 WL 6542707 (D. Conn. Nov. 3, 2016) .......................................................26

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010).............................................................................29

*Micholle v. Ophthotech Corp.*,
    2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022) .....................................................21

*Mikhlin v. Oasmia Pharm. AB*,
    2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ........................................................21

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..................................................................................27

*Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
    Case No. 1:19-cv-03354 (S.D.N.Y. July 20, 2020) ............................................21

*Solis v. OrthoNet LLC*,
    2021 WL 2678651 (S.D.N.Y. June 30, 2021) .....................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................28

**Statutes, Rules, and Regulations**

15 U.S.C.
   §78u-4(a)(4).....................................................................................................22
   §78u-4(a)(7).......................................................................................................9

Federal Rules of Civil Procedure
   Rule 23 ...................................................................................7, 9, 28, 29
   Rule 23(e)...............................................................................................14, 28
   Rule 23(e)(1)....................................................................................................15
   Rule 23(e)(2)..............................................................................................15, 16
   Rule 23(e)(2)(A)...............................................................................................16
   Rule 23(e)(2)(B)...............................................................................................18
   Rule 23(e)(2)(C)(i)..........................................................................18, 23, 27
   Rule 23(e)(2)(C)(ii).........................................................................................20
   Rule 23(e)(2)(C)(iii)........................................................................................21
   Rule 23(e)(2)(C)(iv)........................................................................................22
   Rule 23(e)(2)(D)..............................................................................................23
   Rule 23(e)(3)....................................................................................................16

**Other Authorities**

4 Alba Conte & Herbert B. Newberg,
   NEWBERG ON CLASS ACTIONS §11:53 (4th ed. 2002)...........................................28

Class Representative Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Class Representative") respectfully submits this memorandum of law in support of its motion for an Order, pursuant to Federal Rule of Civil Procedure 23: (i) preliminarily approving a proposed settlement (the "Settlement") of the above-captioned action between Class Representative, on behalf of itself and the Class, as defined below, and Defendants Olo Inc. ("Olo" or the "Company"), Noah H. Glass ("Glass"), and Peter J. Benevides ("Benevides" and together with Glass, "Individual Defendants" and collectively with Olo and Glass, "Defendants"); (ii) approving the form and manner of providing notice of the proposed Settlement to the Settlement Class, including the procedures and deadlines for objecting, seeking exclusion from the Settlement Class, and submitting Claim Forms; (iii) scheduling a date for a hearing (the "Settlement Fairness Hearing") to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed plan of allocation for the Settlement proceeds (the "Plan of Allocation"), Class Counsel's application for an award of attorneys' fees and expenses, and Class Representative's request for an award for the time and expenses it incurred prosecuting the above-captioned action; (iv) appointing Kroll Settlement Administration ("Kroll") as the Claims Administrator to administer the Settlement; and (v) granting such other and further relief as the Court may deem fair and proper.

## I.    INTRODUCTION

Class Representative, on behalf of the Class, and Defendants (together, the "Parties") have reached an agreement to resolve this securities fraud action (the "Action") for $9 million

(the "Settlement Amount").  The Settlement's terms are set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), filed simultaneously herewith.[1]

The Parties reached this Settlement just days before summary judgment motions were due, following the completion of discovery, which included 18 fact and expert depositions, the exchange and review of over 100,000 documents (consisting of approximately 530,000 pages of material), the Court's order certifying the Class, the Court's orders on Defendants' two motions to dismiss, a full-day in-person mediation session with an experienced mediator, the filing of two amended complaints, and Class Counsel's extensive investigation of the claims.  There can be no doubt that by the time the Settlement was reached, Class Counsel and Class Representative were fully informed about the strengths and weaknesses of the case.

Class Representative and Class Counsel, based on their experience, evaluation of the facts and applicable law, their recognition of the Settlement Amount, and the risk and expense of continued litigation, submit that the proposed Settlement is fair, reasonable, and adequate. The Settlement constitutes an excellent result and is in the best interests of the Class.

Accordingly, Class Representative respectfully requests that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Class Representative requests that this Court enter the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith as Exhibit A to the Stipulation, which, among other things, will:

     1.     Preliminarily approve the Settlement on the terms set forth in the Stipulation.

---

[1]     Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation, citations are omitted, and emphasis is added.

2.      Approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation, respectively.

3.      Appoint Kroll as the Claims Administrator to supervise and administer the notice procedure in connection with the Proposed Settlement, as well as the processing of Proofs of Claim.

4.      Find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and §21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

5.      Set a schedule and approve procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation, Class Counsel's application for attorneys' fees and expenses, and/or Class Representative's request for an award for the time and expenses incurred prosecuting the Action; submitting papers in support of final approval of the Settlement; and the Settlement Fairness Hearing.

## II.     SUMMARY OF THE ACTION

The initial complaint in this Action was filed on September 26, 2022, by Pompano Beach Police and Firefighters' Retirement System in the United States District Court for the Southern

District of New York (the "Court").  ECF No. 1.  On December 21, 2022, the Court appointed STA-ILA as Lead Plaintiff and Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel.  ECF No. 30.

On January 13, 2023, STA-ILA filed the Amended Class Action Complaint for Violations of Federal Securities Laws (the "FAC") on behalf of all persons and entities that purchased shares of Olo's common stock between August 10, 2021 and August 11, 2022, inclusive.  ECF No. 38. The FAC alleged that Defendants made materially false and misleading statements about "active locations," one of Olo's "key business metrics" and made materially false and misleading statements and/or material omissions with respect to Olo's relationship with Subway restaurants ("Subway").  On February 3, 2023, Defendants moved to dismiss the FAC, ECF No. 39, which STA-ILA opposed on February 24, 2023, ECF No. 44, and on March 3, 2023, Defendants filed a reply in support of their motion, ECF No. 45.  The Court heard oral arguments on Defendants' motion to dismiss the FAC on March 28, 2023.

On April 10, 2023, the Court issued a "bottom-line" order denying Defendants' motion to dismiss the FAC.  ECF No. 50.  Discovery then commenced immediately, resulting in the production of 338 documents by STA-ILA (roughly 11,000 pages), approximately 75,000 documents by Defendants (roughly 435,000 pages), and over 25,200 documents by eight third parties (roughly 83,000 pages).  The Parties began taking depositions in June 2023 and in total took 18 depositions, comprised of depositions of the Individual Defendants, nine additional current and former Olo employees, two representatives of STA-ILA, a representative of STA-ILA's investment manager, two depositions of STA-ILA's market efficiency/damages expert, a deposition of Defendants' loss causation and damages expert, and a deposition of Defendants' investments expert.  Further, the Parties filed or exchanged eight expert reports on market

efficiency, loss causation, damages, trends in the enterprise restaurant market, and information available to Olo's investors.

On June 5, 2023, STA-ILA filed a motion for class certification, ECF No. 57, which Defendants opposed on June 26, 2023, ECF No. 64. On July 17, 2023, STA-ILA filed a reply in support of its motion. ECF No. 69.

On July 6, 2023, the Parties held an in-person mediation session with experienced mediator, Robert A. Meyer, Esq., of JAMS (the "Mediator"), in Los Angeles, California. Though the Parties did not reach an agreement to settle the Action during the mediation session, they continued their negotiations through the Mediator.

On July 25, 2023, the Court issued its full order on Defendants' motion to dismiss the FAC, reconfirming its April 10, 2023 bottom-line order, while dismissing the FAC's Subway allegations and sustaining the FAC's active locations allegations against all Defendants. ECF No. 71.

STA-ILA filed the Second Amended Class Action Complaint for Violations of Federal Securities Laws ("SAC") on August 9, 2023, expanding the Class Period to the period between March 17, 2021 and August 11, 2022, inclusive, encompassing Olo's initial public offering. ECF No. 72. The SAC realleged both of the FAC's two principal allegations – (i) the prior, sustained active locations allegations and (ii) the dismissed Subway allegations, repleaded as a theory predicated on Defendants' issuance of a risk disclosure that STA-ILA alleged had already come to pass – and added two new categories of allegations: (iii) that Defendants materially misled investors about Olo's likelihood of success in the enterprise market; and (iv) Defendants materially misled investors about the Company's financial position and prospects.

On August 24, 2023, Defendants moved to dismiss the SAC, ECF No. 74, which STA-ILA opposed on September 7, 2023, ECF No. 79, and on September 14, 2023, Defendants filed a reply

in support of their motion, ECF No. 83.  On September 20, 2023, the Court heard oral arguments on Defendants' motion to dismiss the SAC.  On September 26, 2023, the Court issued a "bottom-line" order sustaining the SAC's active locations allegations and dismissing the re-pled Subway allegations, as well as dismissing the newly-pled allegations about Olo's prospects in the enterprise market and financial prospects.  ECF No. 84.  The Court also dismissed the remaining §10(b) claim against Benevides, while sustaining the surviving allegations against the Company and Defendant Glass.

On October 6, 2023, STA-ILA filed an amended class certification motion, ECF No. 90, which Defendants opposed on October 13, 2023, ECF No. 94, and STA-ILA filed a reply in support of the motion on October 20, 2023, ECF No. 95.  On October 27, 2023, the Court heard oral arguments on the motion.  On October 30, 2023, the Court issued an order directing the Parties to brief the issue of whether STA-ILA's market efficiency/damages expert would be able to disaggregate the dismissed Subway allegations from a class-wide damages calculation.  ECF No. 98.  On November 13, 2023, STA-ILA's market efficiency/damages expert filed a report in further support of class certification, demonstrating his methodology for how to calculate damages on a class-wide basis that disaggregated the drop in Olo's common stock price attributable to the Subway-specific portion of the August 11, 2022 disclosure that STA-ILA had alleged constituted a corrective disclosure and/or materialization of an undisclosed risk.  ECF No. 102-1.  On November 20, 2023, Defendants filed a supplemental brief in further opposition to STA-ILA's class certification motion, ECF No. 103, and on November 27, 2023, STA-ILA filed a supplemental reply in further support of its motion, ECF No. 104.

On December 1, 2023, the Court issued a full order on Defendants' motion to dismiss the SAC, confirming its September 26, 2023 ruling.  ECF No. 105.  That same day, the Court issued a "bottom-line" order granting STA-ILA's motion for class certification.  ECF No. 106.

On December 15, 2023, the Mediator issued a "mediator's proposal" to settle the Action for $9 million, which the Parties thereafter accepted.  On December 18, 2023, the Court entered an order staying all case deadlines, directing the Parties to file a stipulation of settlement no later than January 16, 2024, and confirming that "[t]he Court's bottom-line ruling of December 1, 2023, certifying the class will stand."  ECF No. 112.

## III.   SUMMARY OF THE SETTLEMENT

The Settlement provides for a cash payment of $9 million.  That payment is non-reversionary.  Stipulation, ¶10.n.  In exchange for payment of the Settlement Amount, the Action will be dismissed, and all Releasing Parties will release their claims.  *Id.*, ¶4.

Further, the Plan of Allocation developed by Class Counsel, in conjunction with Class Representative's damages expert, allocates the proceeds of the Settlement – net of any Court-approved fees and expenses, and the costs of administration – in a *pro rata* fashion among the Settlement Class.  *See id.*, Ex. A-1 (Notice) at 5-9.  The recovery of individual Class Members under the Plan of Allocation will depend on several variables, including: the aggregate value of the Recognized Claims from valid Proofs of Claim submitted by Class Members; when the Class Member's shares were purchased and/or acquired and the price at the time of purchase and/or acquisition; and whether the shares were sold, and if so, when they were sold and for how much. *See id.*

The Notice, attached as Exhibit A-1 to the Stipulation, explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit

valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation (which is also included in the Notice). *See generally* Stipulation, Ex. A-1. The Notice also advises Class Members of, among other information: (i) Class Counsel's application for attorneys' fees and expenses and Class Representative's request for an award for the time and expenses it incurred prosecuting the Action; (ii) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses and Class Representative's requested award; (iii) the means by which Class Members can exclude themselves from the Settlement; and (iv) the date, time, and location of the Settlement Fairness Hearing. *See id.*

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (Exhibits A-1 and A-2 to the Stipulation) to Class Members who can be reasonably identified, using information provided by Defendants and the Claims Administrator's proprietary list of institutions that hold securities on behalf of investors such as those that make up the Class. Additionally, the Claims Administrator will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in *The Wall Street Journal* and once over *Business Wire*, a national newswire service. *See* Stipulation, Ex. A (Preliminary Approval Order), ¶5(b).

As discussed below (at §IV.C.5), the proposed Settlement is an excellent result for the Class because the $9 million recovery equals the median Exchange Act §10(b) settlement amount from 2013 through 2022. It therefore provides a significant recovery in a case where Class Representative and Class Counsel were well-positioned to assess the Action's strengths and weaknesses.

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Standards for Preliminary Approval of a Proposed Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action. "Review of a proposed class action settlement generally

involves a two-step process: preliminary approval and a 'fairness hearing'" at which Class Members will "have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is 'fair, reasonable and adequate.'" *In re IPO Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). At this stage, Class Representative seeks preliminary approval of the Settlement, authorization of notice of the Settlement to be given to the Class, scheduling of the Settlement Fairness Hearing, appointment of Kroll as the Claims Administrator, and the granting of such other and further relief as the Court may deem fair and proper. *See Karimi v. Deutsche Bank Aktiengesellschaft*, Case No. 1:22-cv-02854 (S.D.N.Y. Oct. 20, 2022), ECF No. 102 (Rakoff, J.).

The present stage requires only that the Court "find that the proposed settlement fits 'within the range of possible approval.'" *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995). Pursuant to Rule 23(e)(1), at this stage, the issue is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) lists a set of factors that the Court must consider in determining whether the settlement is "fair, reasonable, and adequate":

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Further, the Second Circuit in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) articulated nine factors that district courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See also In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.) (following the 2018 amendments to Fed. R. Civ. P. 23, Courts now consider both the prior *Grinnell* factors and the newly-added Rule 23(e)(2) factors).

As explained below, Class Representative has met all of the requirements imposed by Rule 23(e)(2) and, therefore, respectfully requests that the Court grant preliminary approval.

**B.    The Settlement Satisfies Each of the Rule 23(e)(2) Factors**

    1.    Class Representative and Class Counsel Have Adequately Represented the Class

As required by Rule 23(e)(2)(A), Class Representative and Class Counsel have adequately represented the Class by vigorously prosecuting the Action, including, among other things: (1) investigating the relevant factual background; (2) drafting multiple amended

10

complaints; (3) opposing Defendants' two motions to dismiss; (4) obtaining class certification; (5) completing discovery, which included: (i) taking depositions of the Individual Defendants and six additional current and former Olo employees and depositions of each of Defendants' damages and investment experts; (ii) defending three fact depositions of Olo's former employees who provided information in the amended complaints, two depositions of STA-ILA's representatives, and two depositions of STA-ILA's market efficiency/damages expert; (iii) searching for and producing to Defendants 338 documents (comprising roughly 11,000 pages of material); (iv) reviewing over 100,000 documents produced by Defendants and eight third parties (comprising roughly 520,000 pages of material); (iv) drafting and reviewing six expert reports on market efficiency, damages, and trends in the enterprise restaurant market; and (v) reviewing Defendants' expert reports on loss causation, damages, and information available to Olo's investors; and (6) preparing a detailed mediation statement in advance of – and then attending – an in-person mediation session, followed by numerous conversations with the Mediator.

Further, as discussed below (at §IV.C.5), Class Representative and Class Counsel's achievement of a $9 million cash Settlement represents an excellent result for the Class. Among other things, it equals the median Exchange Act §10(b) settlement amount from 2013 through 2022. *See infra* §IV.C.5.

2.     The Proposed Settlement Was Negotiated at Arm's Length

That the mediation took place before an experienced, nationally-recognized mediator in July 2023, while the Parties were heavily engaged in discovery, and the Settlement was reached in mid-December 2023, after months of hard-fought litigation and just days before summary judgment motions were due, strongly indicates that the Settlement is the result of

an arm's-length negotiation and not the product of collusion.  Fed. R. Civ. P. 23(e)(2)(B);
*Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *5 (S.D.N.Y. Dec. 18, 2019)
(approving class action settlement following mediation and noting that settlements "enjoy[] a
strong 'presumption of fairness' where [they are] the product of arm's-length negotiations
conducted by experienced, capable counsel after meaningful discovery.").

> 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and
>        Delay of Trial and Appeal

In assessing the adequacy of a proposed settlement, courts balance the benefits
afforded to the class – including the immediacy and certainty of a recovery – against the
significant costs, risks, and delay of proceeding with the action through trial and inevitable
appeal.  Fed. R. Civ. P. 23(e)(2)(C)(i).  Securities class actions present numerous hurdles to
proving liability that are difficult for plaintiffs to meet.  *In re Alloy, Inc. Sec. Litig.*, 2004 WL
2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (approving settlement and noting that the action
involved complex securities issues "that were likely to be litigated aggressively, at substantial
expense to all parties"); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr.
6, 2006) (due to their "notorious complexity," securities class actions often settle to
"circumvent[] the difficulty and uncertainty inherent in long, costly trials.").

The instant Action faced numerous risks.  While Class Representative believes its
claims as to "active locations" (the only claims remaining in the case) would be borne out by
the evidence presented at trial, it recognizes that there are significant hurdles to proving
liability or even proceeding to trial.  In their motions to dismiss, answer, and expert reports,
Defendants articulated defenses to the SAC that the Court, at summary judgment, or a jury,
at trial, may have accepted.  Importantly, Defendants contended that the evidence reflected
that their active locations counts were not, in fact, inflated.  Additionally, Defendants

continued to challenge the allegations surrounding loss causation, arguing, among other things, that the materialization of the risk theory was not well founded and that Olo did not issue any corrective disclosures because its active location counts were accurate.  They likewise argued that Defendants did not act with scienter.  If Defendants prevailed on any one of these grounds, the entire case would be lost.

Moreover, even if Class Representative succeeded in establishing liability, Defendants were prepared to challenge Class Representative's damages expert's proposed damages methodology as unreliable.  As Defendants' experts stated in their reports and at their depositions (and was likewise made clear at the deposition of Class Representative's expert), Defendants would argue that macroeconomic and other events unrelated to Class Representative's remaining active locations claim led to the stock price decline, and that numerous separate disaggregation steps would be required.  Resolving the Parties' damages dispute would likely have come down to an unpredictable and hotly disputed "battle of the experts."  And, Defendants had informed Class Representative that they intended to imminently file a *Daubert* challenge of Class Representative's damages expert, which, if granted by the Court, would have seriously imperiled the Action.

Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total Settlement Amount – or nothing at all.  *See Grinnell*, 495 F.2d at 463 (in assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a significant recovery, against the risk of trial).  Furthermore, if Class Representative and Class Counsel managed to obtain any recovery at trial, almost certain appeals from Defendants would likely have put that recovery at risk, while entailing further delay and expense.  *In re Advanced*

*Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014) (approving settlement in light of including "the risks, complexity, duration, and expense of continuing litigation[,]" including defendants' likelihood of appeal).  For all of the preceding reasons, when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, the $9 million Settlement Amount strongly weighs in favor of preliminary approval of the Settlement.

4.      The Proposed Method for Distributing Relief Is Effective

As discussed further below, the methods of the proposed notice and of the claims administration process are effective and satisfy Rule 23(e)(2)(C)(ii).  The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *The Wall Street Journal* and on *Business Wire*, a national newswire service.  In addition, a Settlement-specific website, www.OloSecuritiesLitigation.com, will be created where Settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, Preliminary Approval Order, and any other relevant updates that need to come to the Class' attention.

The claims process is also effective and includes a standard claim form which requests the information necessary to calculate a Claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation, which is explained in detail in the Notice, will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of a damages consultant and is based primarily on an analysis estimating the amount of alleged artificial inflation in the price of Olo's Class A common stock during the Class Period and Class Members' transactions.

The proposed notice and claims administration processes here are substantially similar to those commonly approved in other securities cases, and merit approval here as well. *Karimi*, Case No. 1:22-cv-02854, ECF No. 102; *Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, Case No. 1:19-cv-03354 (S.D.N.Y. July 20, 2020), ECF No. 83.

5.    Class Counsel's Maximum Potential Requested Attorneys' Fees and Expenses Are Reasonable and in Line with Similar Recent Cases

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  As stated in the Notice (Ex. A-1 at 10), Class Counsel intend to seek an award of attorneys' fees in an amount up to one-third of the Settlement Amount and expenses in an amount not to exceed $900,000, plus interest on both amounts. *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million."); *Micholle v. Ophthotech Corp.*, 2022 WL 1158684, at *2 (S.D.N.Y. Mar. 14, 2022) (preliminarily approving settlement where counsel sought "litigation expenses in an amount not to exceed $500,000").  This fee request is in line with other settlements approved in recent cases in this District.  *See, e.g.*, *Guevoura Fund*, 2019 WL 6889901, at *21 (awarding 33 1/3% of $7.5 million settlement and noting it "is consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 Fed. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33 1/3% of $6.75 million settlement); *see also Solis v. OrthoNet LLC*, 2021 WL 2678651, at *2 (S.D.N.Y. June 30, 2021) (in approving 33% fee in Fair Labor Standards

15

Act case, noting that '"[c]ourts in this Circuit typically approve attorneys' fees that range between 30% and 33%.'").

Further, the Stipulation provides that all expenses and attorneys' fees awarded by the Court shall be paid to Class Counsel immediately after the Court executes orders awarding such fees and expenses.  Stipulation, ¶11.c.  As reflected in the [Proposed] Final Order and Judgment Granting Final Approval of Class Action Settlement (Ex. B), filed simultaneously herewith, Class Representative and Class Counsel propose that Class Counsel be paid 50% of all attorneys' fees and 100% of all expenses upon the Court's execution of a Final Order and Judgment Granting Final Approval of Class Action Settlement and an Order on the proposed Plan of Allocation for the Net Settlement Fund, with the balance of attorneys' fees awarded by the Court paid to Class Counsel when the Court executes an order authorizing the Claims Administrator to distribute the net settlement fund (less remaining attorneys' fees, any taxes, and claims administration expenses) to the Settlement Class.  *Id.*  Further, as explained in the Notice, Class Representative intends to request an award not to exceed $50,000, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with the work it performed and expenses it incurred in representing the Class.

> 6.    The Parties Have No Side Agreements Aside from a Standard Confidential Addendum Regarding Exclusions

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement.  The Parties have no side agreement here, apart from a standard confidential addendum which provides that in the event Class Members with a certain aggregate amount of Recognized Claims exclude themselves (*i.e.*, opt-out) of the Settlement, Defendants shall have the option to terminate the Stipulation.  "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."  *In re Signet Jewelers Ltd. Sec.*

*Litig.*, 2020 WL 4196468, at \*13 (S.D.N.Y. July 21, 2020).  As is customary, the Parties have kept the addendum confidential in order to prevent potential opt-outs from seeking to gain undue leverage.  The Parties are prepared to provide that supplemental agreement to the Court upon request, but for the foregoing reasons would respectfully ask that it remain confidential.

### 7.    Class Members Are Treated Equitably

The final factor – Rule 23(e)(2)(D) – looks at whether Class Members are treated equitably.  As reflected in the Plan of Allocation set forth in the Notice (Ex. A-1), the Settlement treats Class Members equitably relative to each other by: (i) applying the same standards to all Class members under the common Plan of Allocation; and (ii) distributing the Net Settlement Funds on a *pro rata* basis based on each Authorized Claimant's (Class Members who submit valid claims) share of the total recognized losses.

### C.    The Settlement Also Satisfies the *Grinnell* Factors

#### 1.    The Complexity, Expense, and Likely Duration of the Litigation, the Risks of Establishing Liability, and the Risks of Establishing Damages All Support Preliminary Approval

*Grinnell* factors one, four, five, and six are: (1) the complexity, expense, and likely duration of the Action; (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through the trial.  These factors overlap with the requirement that courts consider "the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C)(i); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

As set forth above (at §IV.B.3), the Rule 23(e)(2)(C)(i) considerations all militate in favor of granting preliminary approval here.  For the same reasons, the overlapping *Grinnell* factors support preliminary approval as well.

17

2.      The Reaction of the Class to the Settlement

The second *Grinnell* factor, the Class' reaction to the proposed Settlement, is premature at this stage because the Notice, Proof of Claim, and Summary Notice have yet to be disseminated to the Class. *GSE Bonds*, 414 F. Supp. 3d at 699 n.1.

3.      The Stage of the Proceedings Supports Preliminary Approval

The third *Grinnell* factor, the stage of the proceedings, strongly militates in favor of preliminary approval because Class Representative and Class Counsel possess firm knowledge of the Action's merits and potential weaknesses, based on: (1) Class Counsel's investigation conducted in advance of the filing of both amended complaints; (2) Defendants' vigorous motions to dismiss, followed by the Court's Order granting in part and denying in part the motions; (3) the volume of discovery taken in the Action (18 depositions, eight expert reports, and the production and review of over 100,000 documents, consisting of approximately 530,000 pages of material); (4) the original and amended class certification briefings, followed by the Court's Order certifying the Class; and (5) an in-person mediation session conducted by an experienced, nationally-respected mediator, including detailed mediation statements and exhibits prepared by the Parties in advance of the session.

The resultant accumulation of information permitted Class Representative and Class Counsel to weigh the strengths and weaknesses of the case and engage in effective settlement discussions. In fact, the Settlement here occurred at a later stage than many cases where this factor is satisfied. Here, a pre-trial hearing date of January 25, 2024, was fast approaching. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information

about their claims.").   Therefore, this *Grinnell* factor also strongly supports preliminary approval of the Settlement.

> 4.    Defendants' Ability to Withstand a Greater Judgment Supports Preliminary Approval, or at the Least, Does Not Undermine It

The seventh *Grinnell* factor, Defendants' ability to withstand a greater judgment, also supports preliminary approval here, or at the least, "does not undermine the reasonableness of the instant settlement." *GSE Bonds*, 414 F. Supp. 3d at 696 (quoting *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012)).  Olo went public at an offering price of $25.00 per share.  SAC, ¶40.  At the time the SAC was filed, Olo traded below $7.00 per share.  *Id.*, ¶197.  As of the date of the filing of this Memorandum of Law, Olo trades at approximately $5.00 per share.[2]  On August 11, 2022, the last day of the Class Period, Olo disclosed a net loss of $11.67 million for 2Q 2022, compared to its 2Q 2021 net loss of $2.44 million.[3]  Ultimately, Olo experienced a net loss of $46 million in 2022.[4]  Olo's net loss has grown, totaling $42.5 million through the end of 3Q 2023, the most recent quarter for which data is available.[5]  Further, to date, Olo's "cash and cash equivalents" has decreased by almost $200 million from 1Q 2021 (at $587 million) through 3Q 2023 (at $398 million).[6]  The SAC also contained allegations concerning Olo's lowered FY 2022 revenue guidance and the departure of Olo's enterprise customer, Subway, which transitioned to in-house software.

---

[2]    Olo       Inc.,       Markets       Data,       BLOOMBERG       L.P.,       accessible       at https://www.bloomberg.com/quote/OLO:US (last visited Jan. 16, 2024).

[3]    Olo Inc., Quarterly Report (Form 10-Q) at 2 (Aug. 11, 2022).

[4]    Olo Inc., Annual Report (Form 10-K) at 57 (Feb. 24, 2023).

[5]    Olo Inc., Quarterly Report (Form 10-Q) at 2 (Nov. 6, 2023).

[6]    *Compare id.* at 36 (noting Olo's cash and cash equivalents totaled approximately $398 million) *with* Olo, Inc., Quarterly Report (Form 10-Q) at 33 (May 11, 2021) (noting Olo's cash and cash equivalents totaled approximately $587 million).

*See generally* ¶¶76-86, 101-15.  Therefore, while the danger of loss of assets necessary to satisfy a larger judgment is not as great as in other actions – and Defendants maintained insurance – "[t]he possibility therefore exists that the [] Defendants might be unable to satisfy a judgment in the [A]ction.  By entering into the Settlement Agreement and obtaining the payment of the Settlement funds . . . the risk of nonpayment in the event of a judgment [i]s eliminated." *In re Prudential Sec., Inc.*, 1995 WL 798907, at *14 (S.D.N.Y. Nov. 20, 1995).

In any event, should the Court find that "Defendants here could afford to pay more than the $[9] million Settlement Amount, this does not prevent the Court from approving this Settlement as fair and reasonable," *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016), because "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  *See also GSE Bonds*, 414 F. Supp. 3d at 696 ("[T]his factor, standing alone is not enough to require disapproval . . . at this stage.").

5.     The Reasonableness of the Proposed Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation Support Preliminary Approval

In assessing the eighth and ninth *Grinnell* factors, the reasonableness of the Settlement in light of the best possible recovery and the risks of litigation, the Court must view the Settlement Amount "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  To do so, the Court need only determine whether the Settlement falls within a "range of reasonableness," which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation

to completion[.]"  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in the full amount of damages claimed). Further, the Court should consider that the Settlement provides for payment to the Class now, rather than the possibility of a payment years down the road.  *AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Taking these considerations into account, the Settlement here represents an excellent result for the Class.  As noted above (at §IV.B.3), the Rule 23(e)(2)(C)(i) considerations all militate in favor of granting preliminary approval here.  Moreover, the $9 million Settlement Amount here equals the median Exchange Act §10(b) settlement amount from 2013 through 2022.  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2022 Review and Analysis*, CORNERSTONE RESEARCH (2022), https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf, at 7 (listing $9.0 million as the median Rule 10b-5 Only settlement from 2013-2022).   The Settlement Amount therefore supports preliminary approval.

## V.   THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED

As set forth in the proposed Preliminary Approval Order, Class Representative proposes to give notice to Settlement Class Members by: (1) mailing the Notice and Proof of Claim Form (Exhibits A-1 and A-2) to the Settlement Class by first-class mail; and (2) publishing the Summary Notice (Exhibit A-3) in *The Wall Street Journal* and on *Business*

*Wire*, a national newswire service.  This notice program – individual notice by mail to all Settlement Class Members who reasonably can be identified, together with publication notice in business-oriented publications – has been widely recognized to satisfy the requirements of Rule 23 and due process in other securities cases on behalf of public company investors.  *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 Fed. App'x. 41, 44 (2d Cir. 2008) (notice satisfied due process where "notice of the settlement was reasonably provided through individually mailed notice to all known and reasonably identifiable class members, publication in several major newspapers, and entered on the district court's docket sheet"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106, 114-16 (2d Cir. 2005) (affirming reasonableness of notice; notice mailed to class members and published in widely-distributed publications); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, Case No. 1:20-cv-02031 (S.D.N.Y. June 30, 2021), ECF No. 119 (Rakoff, J.) (notice sufficient when mailed "to all potential Settlement Class Members who could be identified through reasonable effort" and "published in *The Wall Street Journal* and transmitted over *PR Newswire*"); *In re Facebook, Inc. IPO Sec & Derivative Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018).

With respect to the form of the notice, "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart Stores, Inc.*, 396 F.3d at 114.  "Notice is 'adequate if it may be understood by the average class member.'"  *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11:53, at 167 (4th ed. 2002)).  The proposed Notice satisfies

this standard.  It advises Settlement Class Members of the essential terms of this Settlement, the Plan of Allocation, and information regarding Class Counsel's motion for attorneys' fees and expenses and Class Representative's request for an award for the time and expenses it incurred prosecuting the Action.  Among other things, the Notice also will provide specifics on the date, time, and place of the Settlement Fairness Hearing and set forth the procedures for objecting to, or requesting exclusion from, the Settlement.  Moreover, the Notice provides this information in a format that is accessible to the reader and is also available, along with all other relevant documents, on the Settlement website, www.OloSecuritiesLitigation.com.

Additionally, the PSLRA imposes specific disclosure requirements in securities cases, summarized by one court within this Circuit as consisting of:

> (1) a statement of plaintiff recovery; (2) a statement of potential outcome of the case; (3) a statement of attorneys' fees and costs sought; (4) identification of lawyers' representatives; (5) the reasons for settlement; and (6) a cover page summarizing the information contained in the foregoing statements.

*Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105 (D. Conn. 2010) (citing Exchange Act, §21D(a)(7), footnotes omitted).  The Notice prominently sets forth all of this information.

Accordingly, the proposed form and manner of notice satisfy the requirements of Rule 23 and due process and should be approved as provided in Paragraphs 4, 5, 6, and 9 of the Preliminary Approval Order.

Further, Paragraph 5 of the Proposed Preliminary Approval Order also provides for the retention of Kroll as Claims Administrator.  As shown in its firm résumé, *see* Declaration of Jeffrey P. Jacobson in Support of Class Representative's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, Ex. 2, Kroll's employees have substantial experience administering large securities class action settlements and Kroll is well qualified to serve as Claims Administrator here.  Kroll was also subjected to a competitive

bidding process to ensure its rates were fair and reasonable for the Class.  *See also Teligent*, Case No. 1:19-cv-03354, ECF No. 83 (in granting preliminary approval of Exchange Act settlement, appointing Kroll claims administrator).

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Class Representative respectfully requests that the Court set a proposed schedule of events leading to the Settlement Fairness Hearing as listed forth below.  This schedule is reflected in the proposed Preliminary Approval Order.

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the mailing of the Notice and Proof of Claim to Class Members (the "Notice Date") | 20 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over *Business Wire*, a national newswire service | 10 calendar days after the Notice Date |
| Deadline for posting and serving of memoranda in support of approval of the Settlement and Plan of Allocation, Class Counsel's application for an award of attorneys' fees and expenses, and Class Representative's request for an award for the time and expenses it incurred prosecuting the Action | 14 calendar days before the deadline for objections to be filed |
| Deadline for submitting exclusion requests or objections | 21 calendar days before the Settlement Fairness Hearing |
| Deadline for filing Proofs of Claim | 120 calendar days after the Notice Date |
| Deadline for posting and filing of reply memoranda in further support of the Settlement and Plan of Allocation, Class Counsel's application for an award of attorneys' fees and expenses, and Class Representative's request for an award for the time and expenses it incurred prosecuting the Action | 7 calendar days before the Settlement Fairness Hearing |
| Settlement Fairness Hearing | At the Court's convenience; the Settling Parties respectfully suggest approximately 90 days from the date notice is given |

| Event | Time for Compliance |
|-------|--------------------|
| | pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 |

## VII.   CONCLUSION

Based on the foregoing, Class Representative respectfully requests that the Court enter the Preliminary Approval Order in connection with the settlement proceedings, which will: (i) preliminarily approve of the proposed Settlement; (ii) approve the proposed form and manner of providing notice to the Class; (iii) schedule the Settlement Fairness Hearing to consider the fairness, reasonableness, and adequacy of the Settlement, and the proposed Plan of Allocation; (iv) appoint Kroll as the Claims Administrator; and (v) grant such other and further relief as the Court may deem fair and proper.

DATED: January 16, 2024

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 *s/ Amanda F. Lawrence*
Amanda F. Lawrence
Donald A. Broggi
Jeffrey P. Jacobson
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
alawrence@scott-scott.com
dbroggi@scott-scott.com
jjacobson@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on January 16, 2024, on all counsel or parties of record.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*s/ Amanda F. Lawrence*
Amanda F. Lawrence
