**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>    v.<br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br>                        Defendants. | Case No. 1:22-cv-08228-JSR<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE, AND WARRANTS FINAL APPROVAL.....................................3

        A.      The Law Favors and Encourages Settlement of Class Action Litigation ...............3

        B.      The Standards for Final Approval..........................................................................3

        C.      Class Representative and Class Counsel Have Adequately Represented the
                Settlement Class...................................................................................................5

        D.      The Settlement Was Reached After Robust Arm's-Length Negotiations ..............7

        E.      The Relief Provided by the Settlement Is Adequate .............................................8

                1.      The Complexity, Expense, and Likely Duration of the Litigation
                        Support Approval of the Settlement .........................................................9

                2.      The Risks of Establishing Liability and Damages Support
                        Approval of the Settlement ....................................................................10

                        a.      Risks to Proving Liability ...........................................................11

                        b.      Risks Related to Proving Loss Causation and Damages .............12

        F.      The Effective Process for Distributing Relief to the Settlement Class.................13

        G.      The Anticipated Attorneys' Fees and Expenses Are Reasonable.........................14

        H.      The Relief Provided in the Settlement Is Adequate Taking into Account
                All Agreements Related to the Settlement............................................................15

        I.      Application of the Remaining *Grinnell* Factors Support Approval of the
                Settlement ..........................................................................................................15

                1.      The Ability of Defendants to Withstand a Greater Judgment..................15

                2.      The Reaction of the Settlement Class to the Settlement ..........................16

                3.      The Stage of the Proceedings and the Amount of Information
                        Available to Counsel Support Approval of the Settlement.......................17

                4.      The Range of Reasonableness of the Settlement Amount in Light
                        of the Best Possible Recovery and All the Attendant Risks of
                        Litigation Support Approval of the Settlement.........................................18

III.    THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE
        SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE
        APPROVED ........................................................................................................19

IV.     NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23
        AND DUE PROCESS .........................................................................................20

V.      CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)....................................................................................................6

*City of Detroit v. Grinnell Corp.*
   495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v.*
   *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)......................................4, 10, 15, 18

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub*
   *nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)....................................8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)........................................................................................8

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..................................................................................................12

*In re AOL Time Warner, Inc.*,
   No. 02 cv 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................11

*In re Barrick Gold Sec. Litig.*,
   314 F.R.D. 91 (S.D.N.Y. 2016) ...............................................................................5

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................ *passim*

*In re Citigroup Inc. Sec. Litig.*,
   No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ..................4

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x
   37 (2d Cir. 2016)....................................................................................................7, 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   Master File No. 02–CV–3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y.
   Nov. 8, 2010) .....................................................................................................18, 19

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................20

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ............................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................15

*In re GSE Bonds Antitrust Litig.*,
    No. 19- CV-1704, 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.)........................9

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................4, 13, 19

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009).....................................................9, 19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................22

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................5, 9

*In re Prudential Sec., Inc.*,
    MDL No. 1005, M–21–67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ...................16

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................10, 11, 13

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 411582007 WL 4115809 (S.D.N.Y.
    Nov. 7, 2007) ......................................................................................8

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2009 WL 2025160 (S.D.N.Y. July 10, 2009)...............17

*Ret. Sys. of La. v. A.C.L.N., Ltd*,
    No. 01-cv-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)...............15, 18

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .........................................................................10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................ *passim*

**Statutes, Rules & Regulations**

United States Code
15 U.S.C. §78u-4(e) .................................................................................................20

Federal Rules of Civil Procedure
    Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................22
    Fed. R. Civ. P. 23(e) ...............................................................................1, 3, 5, 20
    Fed. R. Civ. P. 23(e)(2) ......................................................................................4, 5
    Fed. R. Civ. P. 23(e)(2)(A) .....................................................................................5
    Fed. R. Civ. P. 23(e)(2)(B) .....................................................................................7
    Fed. R. Civ. P. 23(e)(2)(C) ..............................................................................8, 13
    Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................................9
    Fed. R. Civ. P. 23(e)(2)(C)(ii) .......................................................................13, 14
    Fed. R. Civ. P. 23(e)(2)(C)(iv) .............................................................................15
    Fed. R. Civ. P. 23(e)(3) ...........................................................................................4

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Representative Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Class Representative"), on behalf of itself and all other members of the proposed Settlement Class,[1] respectfully submits this memorandum of law in support of its motion for final approval of the proposed Settlement of the above-captioned class action (the "Action"), approval of the proposed plan of allocation for the proceeds of the Settlement (the "Plan of Allocation").

## I.    INTRODUCTION

As detailed in the Stipulation, Class Representative, Defendants Olo Inc. ("Olo" or the "Company"), Noah H. Glass ("Glass"), and Peter J. Benevides ("Benevides" and together with Glass, "Individual Defendants" and collectively with Olo and Glass, "Defendants") have agreed to a settlement of the claims in the Action, and the release of all Released Claims, in exchange for a payment of $9,000,000 in cash.  The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court.  ECF No. 115-1.

As detailed in the accompanying Lawrence Declaration filed herewith, Class Counsel has investigated the relevant factual background; (2) drafted multiple amended complaints; (3) opposed Defendants' two motions to dismiss; (4) obtained class certification; (5) completed discovery, which included 18 depositions, production of documents, and review of over 520,000 pages of documents produced by Defendants and third parties, service of seven expert reports and

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as those set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), dated January 16, 2024 (ECF No. 115-1).  Unless otherwise noted, citations to "Ex. __" herein refer to exhibits attached to the Declaration of Amanda F. Lawrence in Support of Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation and (2) Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Class Representative for its Costs and Expenses ("Lawrence Declaration").

review of Defendants' expert reports; and (6) prepared a detailed mediation statement in advance of – and then attending – an in-person mediation session, followed by numerous conversations with the Mediator.  And as detailed in the Declaration of Richard P. Krueger, III, on Behalf of Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund in Support of Motions for: (1) Final Approval of Class Action Settlement and Plan of Allocation; and (2) Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Class Representative for its Costs and Expenses ("STA-ILA Declaration") (Ex. 3), Class Representative – and its two outside counsel ("Fund Counsel") – spent a significant amount of time monitoring Class Counsel and prosecuting the Action.  At the time the Settlement was reached, Class Representative and Class Counsel had a thorough understanding of the strengths and weaknesses of the Action.

The Settlement is also the product of extensive arm's-length negotiations between the Parties, which included an in-person mediation session under the auspices of a respected and experienced mediator, Robert Meyer, Esq., of JAMS.  Only months later and after repeated calls with the Mediator, the Parties agreed, in principle, to a settlement based on the Mediator's recommendation, subject to the negotiation of a mutually acceptable long form stipulation of settlement.  Lawrence Declaration, ¶¶41-45.

The Settlement is a very favorable result in light of the risks of continued litigation.  While Class Representative and Class Counsel believe that the claims asserted against Defendants are strong, they recognize that the Action presented a number of substantial risks, including surviving summary judgment, proving liability, rebutting Defendants' loss causation arguments, and establishing damages, among other risks.  While Class Representative would advance credible counter arguments to Defendants'  defenses, it nonetheless recognizes a substantial risk that

Defendants' anticipated summary judgment and *Daubert* motions might be granted. These risks are in addition to the genuine risk of a much smaller recovery, or no recovery at all.

In light of the recovery for the Settlement Class and the risks to continued litigation, as discussed further below and in the Lawrence Declaration, Class Representative respectfully submits that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court.

Additionally, Class Representative requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Settlement Class Members. The Plan of Allocation, which was developed by Class Counsel in conjunction with Class Representative's damages consultants, provides a reasonable and equitable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims. The Plan of Allocation is fair and reasonable and should likewise be approved.

## II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

### A.    The Law Favors and Encourages Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"). This policy would be well-served by approval of the Settlement of this complex securities class action, that absent resolution, could consume years of additional time of this Court and the Appellate Court.

### B.    The Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds

it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed ward of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

In *City of Detroit v. Grinnell Corp.*, the Second Circuit held that the following factors should be considered in evaluating a class action settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res.,*
*Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117; *In re Bear Stearns Cos., Inc. Sec.,*
*Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265-66 (S.D.N.Y. 2012).

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil
Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any
factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers
on the core concerns of procedure and substance that should guide the decision whether to approve
the proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Committee Notes to 2018 Amendments. Indeed,
"[t]he Court understands the new Rule 23(e) factors to add to, rather than displace, the Grinnell
factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29
(E.D.N.Y. 2019). Accordingly, Class Representative will discuss the fairness, reasonableness, and
adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2), and
will also discuss the application of relevant, non-duplicative factors traditionally considered by the
Second Circuit.

### C. Class Representative and Class Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the court should consider
whether the "class representatives and class counsel have adequately represented the class." Rule
23(e)(2)(A). *See also In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016) (noting
that "the adequacy requirement 'entails inquiry as to whether: 1) plaintiffs' interests are
antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified,
experienced and able to conduct the litigation'").

Here, there is no antagonism or conflict between Class Representative and the Settlement
Class. Class Representative, and the other Settlement Class Members, purchased Olo common

stock during the Class Period and they were all injured by the same alleged misstatements.  STA-ILA Declaration, ¶4.  If Class Representative proved its claims at trial, it would therefore also prove the Settlement Class's claims.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Next, it is respectfully submitted that Class Representative and Class Counsel vigorously represented the Settlement Class and successfully prosecuted the Action through the close of fact and expert discovery and to the very eve of summary judgment.  Lawrence Declaration, ¶¶31-35.  The numerous actions that Class Representative and Class Counsel have undertaken here include: a thorough investigation of Olo and the alleged misstatements, including researching and contacting former Olo employees; preparing two amended complaints; partially defeating Defendants' motions to dismiss; preparing two STA-ILA representatives for their depositions and then defending those depositions; obtaining class certification; completing fact discovery (including the review of over 520,000 pages of documents produced by Defendants and eight third parties and taking and/or defending 18 depositions); working with multiple experts to complete seven expert reports; preparing a detailed mediation statement (and exhibits thereto) and then engaging in an all day, in-person mediation session; and preparing the proposed Settlement and preliminary approval papers.  *Id.*, ¶¶20-40.  In addition to the above, Class Representative and its Fund Counsel closely supervised Class Counsel, including through regular communications with Class Counsel and by reviewing, editing, and approving pleadings and filings, and also attended multiple court hearings and almost all fact and expert depositions.  STA-ILA Declaration, ¶¶6-9. In sum, Class Representative and Fund Counsel have spent 364 hours prosecuting the Action,

including 158 hours spent by Fund Counsel, which STA-ILA has paid $59,250 for their time spent to date. *Id.*, ¶14.

Finally, the result obtained – a favorable $9,000,000 cash Settlement, in light of the significant risks of further litigation (*infra* §E.2; *see also* Lawrence Declaration, ¶¶51-61) – also supports approval. Class Counsel also note that they are well qualified and highly experienced in securities litigation and achieved a favorable result here against highly regarded opposing counsel. *See* Declaration of Daryl F. Scott on Behalf of Scott+Scott Attorneys at Law LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Scott+Scott Declaration"), Ex. 2; Fee and Expense Motion at 12; Lawrence Declaration, ¶¶76-78. Accordingly, Class Representative and Class Counsel have adequately represented the Settlement Class.

### D.     The Settlement Was Reached After Robust Arm's-Length Negotiations

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x 37 (2d Cir. 2016).

First, the Settlement here merits such a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel, under the supervision of an experienced Mediator, Robert A. Meyer of JAMS, and after an extensive investigation into the claims. The Parties engaged in one formal mediation session —on July 6, 2023 — and numerous follow-up discussions with the Mediator. Lawrence Declaration, ¶¶41-45. In advance of the mediation, the parties exchanged detailed mediation statements (and exhibits thereto) highlighting the factual and legal issues in dispute. *Id.*, ¶42. These facts support a finding

that the Settlement is procedurally fair and free of collusion. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Next, as noted above and in the Lawrence Declaration (¶5), given the advanced stage of the Action, the Parties and their counsel were well informed about the strengths and weaknesses of each party's arguments with respect to liability, damages, and other issues. The numerous follow-up discussions with the Mediator were conducted against the background of the Court's Orders granting in part and denying in part Defendants' motions to dismiss, the Court certifying Plaintiff's Class, the completion of fact and expert discovery, and just days before the filing of opening summary judgment briefs. *Id.*, ¶¶20-40.

The judgment of Class Counsel – a law firm that is highly experienced in securities class action litigation – that the Settlement is in the best interests of the Settlement Class is entitled to "great weight." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Finally, Class Representative took an active role in supervising the litigation, as envisioned by the PSLRA, and endorses the Settlement. STA-ILA Declaration, ¶¶11-12. A settlement reached "with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

### E.    The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "This inquiry overlaps significantly with a number of Grinnell factors, which help

guide the Court's application of Rule 23(e)(2)(C)(i)." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.). Indeed, "[t]his assessment implicates several Grinnell factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Payment Card*, 330 F.R.D. at 36.

### 1. The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement

Securities class actions like this one are by their nature complicated, and district courts in this Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Facebook*, 2015 WL 6971424, at *3; *Bear Stearns*, 909 F. Supp. 2d at 266; *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

This case was no exception. As discussed in the Lawrence Declaration, the case involved complicated and intricate issues related to loss causation, falsity, scienter, and damages. *See* Lawrence Declaration, ¶¶51-60. Prevailing on summary judgment and then succeeding at trial (and sustaining any such verdict in the appeals that would inevitably ensue) would have been a very complex and risky undertaking that would have required substantial additional time and expense. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued litigation supports final approval where, among other things, "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

Indeed, the trial of the Action here would have required extensive expert testimony on numerous contested issues, including falsity, scienter, causation, and damages. Courts routinely observe that these sorts of disputes – requiring dueling testimony from experts – are particularly difficult for plaintiffs to litigate. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited[.]").

Of course, even if Class Representative had prevailed at trial, Defendants would most assuredly have appealed the verdict, which would have, at best, substantially delayed any recovery for the Settlement Class. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."). There is always a risk that the verdict could be reversed by the trial court or on appeal. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action).

### 2. The Risks of Establishing Liability and Damages Support Approval of the Settlement

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. In most cases, this will be the most important factor for the Court to consider in its analysis of the proposed settlement. *See id.* at 455 ("The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement."). While Class Representative and Class Counsel believe the claims asserted against Defendants are

meritorious, they recognize that the Action presented several substantial risks to establishing both liability and damages.  Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.  *See In re AOL Time Warner, Inc.*, No. 02 cv 5575, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation").  Here, in particular, Defendants would have vigorously challenged Class Representative on falsity, scienter, loss causation, and damages.

### a.    Risks to Proving Liability

**Falsity**.  At summary judgment and trial, Defendants would have maintained that Class Representative failed to establish that Defendants' statements were false and misleading.  Plaintiff alleged that, throughout the Class Period, Defendants made materially false and misleading statements  by (a) prematurely including individual restaurant locations in the Company's active locations count before those locations had actually begun utilizing any of Olo's technology, (b) failing to remove inactive locations from the Company's active locations count, and (c) including individual restaurant locations in the Company's active locations count that opted not to utilize Olo's technology.  Lawrence Declaration, ¶¶23, 30, 53-56.    Defendants contended throughout the Action that the evidence reflected that their active locations counts were not, in fact, inflated.  *Id.*, ¶¶24, 29.

**Scienter**.    Class Representative also faced a significant challenge in proving that Defendants acted with scienter as "[p]roving a defendant's state of mind is hard in any circumstances."  *Telik*, 576 F. Supp. 2d at 579.  While Defendant Glass's alleged involvement and frequent interactions with Olo's clients were deemed sufficient to infer a finding of scienter at the motion to dismiss stage, Defendants would likely introduce evidence at summary judgment and at trial to rebut this inference.  Lawrence Declaration, ¶60.  Indeed, on September 26, 2023, the Court dismissed claims against Defendant Benevides for failure to allege scienter.  ECF No. 84.

11

Furthermore, Class Representative must establish that Defendant Glass knew (or believed) or was reckless in not knowing (or reckless in not believing) that the active locations counts were false. Defendants would likely have strong arguments that the active locations count, provided by Olo's Financial Planning and Analysis team, was not made with the requisite intent to deceive. Lawrence Declaration, ¶¶23, 30, 53-56, 60.

In short, it was far from certain that Class Representative would be able to prove the falsity of Defendants' statements and scienter through summary judgment and at trial.

### b.    Risks Related to Proving Loss Causation and Damages

Another principal challenge in continuing the litigation is the difficulty of proving loss causation and damages, which would have been hotly contested by Defendants, particularly in the context of summary judgment, and would continue to be challenged in Daubert motions, at trial, in post-trial proceedings, and appeals. To succeed at trial "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

Defendants were prepared to challenge Class Representative's damages expert's proposed damages methodology as unreliable. As Defendants' experts stated in their reports and at their depositions, Defendants would argue that macroeconomic and other events unrelated to Class Representative's remaining active locations claim led to the stock price decline, and that numerous separate disaggregation steps would be required. Lawrence Declaration, ¶57. Resolving the Parties' damages dispute would likely have come down to an unpredictable and hotly disputed "battle of the experts." And, Defendants had informed Class Representative that they intended to imminently file a *Daubert* challenge of Class Representative's damages expert, which, if granted by the Court, would have seriously imperiled the Action. *Id.*

While Class Representative would advance a number of arguments in response, including that the relevant disclosure in fact revealed new, previously concealed information about the alleged fraud, there is no certainty as to how the Court or a jury would decide these issues. If Defendants' loss causation arguments were sustained, and the sole alleged corrective disclosure was eliminated, the Class would receive nothing.

While Class Counsel would work extensively with Class Representative's damages expert with a view towards presenting compelling arguments to the jury and prevailing on these matters at trial, Defendants would have put forth well-qualified experts of their own who were likely to opine at trial that the Settlement Class suffered little or no damages. As Courts have long recognized, the substantial uncertainty as to which side's experts' view might be credited by the jury presents a serious litigation risk. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *Telik*, 576 F. Supp. 2d at 579-80 (in this "'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found"). Given all of these risks with respect to liability, loss causation, and damages, Class Representative and Class Counsel respectfully submit that it is in the best interests of the Settlement Class to accept the certain and substantial benefit conferred by the Settlement.

F.     **The Effective Process for Distributing Relief to the Settlement Class**

Rule 23(e)(2)(C) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential Class member will submit, either by mail

or online using the Settlement website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's pro rata portion of the Net Settlement Fund.  *See* Stipulation, ¶10.  Class Representative's claim will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims.  *Id.*, ¶10(f).  Any claim disputes that cannot be resolved will be presented to the Court for a determination.  *Id.*

After the Settlement reaches its Effective Date (*id.*, ¶10(b)) and the claims process is completed, Authorized Claimants will be issued payments.  If there is any balance remaining in the Net Settlement Fund after three months from the initial date of the distribution of the Net Settlement Fund, Class Counsel shall, if feasible, reallocate such balance amongst Authorized Claimants in an equitable and economic fashion.  Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  At this point, if there are unclaimed funds, Class Representative shall donate the balance to Legal Services NYC.  *Id.*, ¶10(p).

### G.    The Anticipated Attorneys' Fees and Expenses Are Reasonable

As discussed in the accompanying Fee Memorandum, the proposed attorneys' fees of 25% of the Settlement Fund, to be paid when ordered by the Court, are reasonable in light of the efforts of Class Counsel and the risks in the litigation.  Most importantly, with respect to the Court's consideration to the fairness of the Settlement, is the fact that approval of attorneys' fees are entirely separate from approval of the Settlement, and neither Class Representative nor Class Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

### H. The Relief Provided in the Settlement Is Adequate Taking into Account All Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv). On January 16, 2024, the Parties entered into a Confidential Addendum to Stipulation and Agreement of Settlement and Release (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement and Stipulation are the only agreements concerning the Settlement entered into by the Parties.

### I. Application of the Remaining *Grinnell* Factors Support Approval of the Settlement

#### 1. The Ability of Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in settlement is relevant to whether the settlement is fair. *Grinnell*, 495 F.2d at 463. Class Representative understands that Defendants have the ability to fund a settlement given available insurance. Continued litigation of STA-ILA's claims, however, would put that insurance at risk of dwindling. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (ability to withstand a greater judgment supports final approval where the "main settlement funds available to the individuals are the insurance proceeds" which "would be largely consumed by defense costs if this litigation were to continue"); *Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd*, No. 01-cv-11814

(MP), 2004 WL 1087261, at *4 (S.D.N.Y. May 14, 2004) (likely depletion of insurance supports settlement approval).

Further, Olo went public at an offering price of $25.00 per share. SAC, ¶40. At the time the SAC was filed, Olo traded below $7.00 per share. *Id.*, ¶197. As of May 3, 2023, Olo traded at approximately $4.79. The SAC also contained allegations concerning Olo's lowered FY 2022 revenue guidance and the departure of Olo's enterprise customer, Subway. *Id.*, ¶¶76-86, 101-15. Therefore, while the danger of loss of assets necessary to satisfy a larger judgment is not as great as in other actions, "[t]he possibility therefore exists that the [] Defendants might be unable to satisfy a judgment in the [A]ction. By entering into the Settlement Agreement and obtaining the payment of the Settlement funds . . . the risk of nonpayment in the event of a judgment [i]s eliminated." *In re Prudential Sec., Inc.*, MDL No. 1005, M–21–67 (MP), 1995 WL 798907, at *14 (S.D.N.Y. Nov. 20, 1995).

### 2.    The Reaction of the Settlement Class to the Settlement

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67. Pursuant to the Preliminary Approval Order (*see* ECF No. 118), the Court-appointed Claims Administrator, Kroll Settlement Administration ("Kroll"), mailed copies of the Claim Packages (consisting of the Notice and Claim Form) to record holders identified in the Company's transfer records and potential Settlement Class Members and their nominees. *See* Declaration of Robert Cormio Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Cormio Declaration"), Ex. 1. As of May 6, 2024, Kroll has mailed 24,346 copies of the Notice Packet to potential Settlement Class Members. *Id.*, ¶11. In addition, the Summary Notice was published in *The Wall Street Journal* and *Business Wire* on March 14, 2024. *Id.*, ¶12. While the deadline set by the Court for Settlement Class Members to object or request exclusion (May 20,

2024) has not yet passed, to date, no objections or requests for exclusions have been received.  *See*

*In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2009 WL 2025160, at *2

(S.D.N.Y. July 10, 2009) (no class member objections since preliminary approval supported final

approval).  As provided in the Preliminary Approval Order, Class Representative will file reply

papers no later than June 3, 2024, addressing any objections and any other requests for exclusion.

### 3.    The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

As detailed in the Lawrence Declaration, Class Counsel (1) investigated the relevant factual

background; (2) drafted multiple amended complaints; (3) opposed Defendants' two motions to

dismiss; (4) obtained class certification; (5) completed discovery, which included: (i) taking

depositions of the Individual Defendants and six additional current and former Olo employees and

depositions of each of Defendants' damages and investment experts; (ii) defending three fact

depositions of Olo's former employees who provided information in the amended complaints, two

depositions of STA-ILA's representatives, one deposition of STA-ILA's asset manager, and two

depositions of STA-ILA's market efficiency/damages expert; (iii) searched for and produced to

Defendants 338 documents (comprising roughly 11,000 pages of material); (iv) reviewed over

100,000 documents produced by Defendants and eight third parties (comprising roughly 520,000

pages of material); (v) drafted and reviewed seven expert reports on market efficiency, damages,

and trends in the enterprise restaurant market; and (vi) reviewed Defendants' expert reports on loss

causation, damages, and information available to Olo's investors; and (6) prepared a detailed

mediation statement in advance of – and then attended – an in-person mediation session, followed

by numerous conversations with the Mediator.  *See generally* Lawrence Declaration, ¶70.

As a result of Class Counsel and Class Representative's efforts, STA-ILA was in a position

to balance the proposed settlement with a well-educated assessment of the likelihood of

overcoming the risks of litigation.    Accordingly, Class Counsel and Class Representative respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial.  *Tchrs.' Ret. Sys. of La.*, 2004 WL 1087261, at *3. The Court thus should find that this factor also supports approval.

> ### 4.    The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement

Courts typically analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, Master File No. 02–CV–3400 (CM)(PED), 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010).  A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery 'does not involve the use of a mathematical equation yielding a particularized sum.'"  *Bear Stearns*, 909 F. Supp. 2d at 269.  Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Visa*, 396 F.3d at 119.

In this Action, the proposed Settlement provides an all-cash payment of $9,000,000 for the benefit of the Settlement Class.  This is a favorable result in light of the significant risks of continued litigation.  From 2014 through 2023, the median class action securities settlement amount in the Second Circuit was $8.9 million.  Lawrence Declaration, ¶49.  Therefore, when compared against other similarly situated securities actions, the proposed Settlement represents an above-average recovery.

III.    **THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED**

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate.  *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270.  A plan of allocation with a "rational basis" satisfies this requirement.  *FLAG Telecom*, 2010 WL 4537550, at *21; *I.P.O.*, 671 F. Supp. 2d at 497.  A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable.  *See IMAX*, 283 F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

The proposed Plan of Allocation in this Action was developed by Class Representative in consultation with its damages expert.  The Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid Claim Forms.  The Plan is set forth in full in the Notice.  *See* Cormio Declaration, Ex. A at 5-8.  The Plan provides for the distribution of the Net Settlement Fund based upon each Settlement Class Member's "Recognized Claim," as calculated by the formulas described in the Notice.  In developing the Plan, Class Representative's damages expert considered the amount of artificial inflation in the per share prices of Olo shares that allegedly was proximately caused by Defendants' alleged false and misleading statements and omissions.  Lawrence Declaration, ¶¶62-65.

Kroll, as the Court-approved Claims administrator, will determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants, as calculated according to the Plan of Allocation.  A claimant's total Recognized Claim will depend on, among other things, when their shares were purchased and/or sold during the Class Period in

relation to the disclosure dates alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, *see* 15 U.S.C. §78u-4(e) (providing methodology or limiting damages in securities fraud actions), and the value of the shares when they were sold or held. Accordingly, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Settlement Class.

For these reasons, Class Representative believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel") (brackets in original). Moreover, as noted above, as of May 6, 2024, 24,346 copies of the Notice, which contains the Plan of Allocation and advises Settlement Class Members of their right to object to the proposed plan, have been sent to potential Settlement Class Members and their nominees (*see* Cormio Declaration, ¶11) and, to date, no objections to the proposed plan have been received.

## IV.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23(e) and due process together require that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely

to inform potential class members.").  The notice program's method of dissemination, as well as its substance, satisfy the applicable standards.

The Notice provided all of the necessary information for Settlement Class Members to make an informed decision regarding the Settlement, the Fee and Expense Application, and the Plan of Allocation.  The Notice informed Settlement Class Members of, among other things: (i) the amount of the Settlement; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share of Olo; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for the representatives of Class Counsel who are reasonably available to answer questions from Settlement Class Members concerning matters contained in the Notice; (vi) the right of Settlement Class Members to object to the Settlement; (vii) the binding effect of a judgment on Settlement Class Members; and (viii) the dates and deadlines for certain Settlement-related events.  The Notice also contained the Plan of Allocation and provided Settlement Class Members with information about how to submit a Claim Package in order to be eligible to receive a distribution from the Net Settlement Fund.  Cormio Declaration, Ex. A.

In addition, Kroll caused the Summary Settlement Notice to be published in *The Wall Street Journal* and *Business Wire*.  *Id.*, ¶12.  Kroll also created a Settlement website for this case, www.OloSecuritiesLitigation.com, to provide members of the Settlement Class and other interested persons with information about the Settlement and the applicable deadlines, as well as access to copies of the Notice, the Claim Form, Stipulation, and the Preliminary Approval Order (*id.*, ¶14), and Class Counsel posted copies of the Notice and Claim Form on its website.

This combination of individual first-class mail to those who could be identified with reasonable effort, supplemented by publication and internet notice, was "the best notice . . .

21

practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## V.    CONCLUSION

For the foregoing reasons, Class Representative respectfully requests that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate.  Proposed orders will be submitted with Class Representative's reply papers, after the deadlines for objections and seeking exclusion have passed.

Dated:  May 6, 2024                                        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Amanda F. Lawrence*
Amanda F. Lawrence
Donald A. Broggi
Jeffrey P. Jacobson
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
alawrence@scott-scott.com
dbroggi@scott-scott.com
jjacobson@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Steamship Trade*
*Association of Baltimore – International*
*Longshoremen's Association Pension Fund*

### CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

*s/ Amanda F. Lawrence*
Amanda F. Lawrence
