## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>    v.<br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br>                              Defendants. | Case No. 1:22-cv-08228-JSR<br><br>CLASS ACTION<br><br><br>Judge: Hon. Jed S. Rakoff<br>Date:   June 10, 2024<br>Time:  4:00 PM |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND AWARD TO CLASS REPRESENTATIVE FOR ITS COSTS AND EXPENSES

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF LITIGATION AND CLASS COUNSEL'S WORK ............................ 4

      A.    Period One: January to July 2023 .......................................................... 4

      B.    Period Two: July 2023 to December 2023 ............................................. 5

III.  ARGUMENT ..................................................................................................... 7

      A.    The Requested Attorneys' Fees Should Be Approved as Fair and
            Reasonable ............................................................................................ 7

            1.    The *Goldberger* Factors Support Awarding Class Counsel's 25%
                  Fee Request ................................................................................. 8

                  a.    Class Counsel Invested Substantial Time and Resources to
                        Prosecute This Action ......................................................... 9

                  b.    The Magnitude and Complexity of the Case Justify the Fee
                        Request ............................................................................... 9

                  c.    The Fee Request Is Warranted Based on the Level of Risks
                        in This Action ..................................................................... 10

                  d.    Class Counsel Provided High-Quality Representation ............... 12

                  e.    The 25% Fee Request Is Reasonable in Relationship to the
                        Settlement .......................................................................... 14

                  f.    Public Policy Supports Approval of the Fee Request ................. 15

            2.    The Lodestar Cross-Check Supports the Requested Fee Award ............ 16

            3.    The Reaction of the Settlement Class to Date Supports the
                  Requested Fee ............................................................................ 18

            4.    The Fee Request Is Supported by Class Representative .......................... 18

      B.    Class Counsel's Expenses Are Reasonable and Were Necessarily Incurred
            to Achieve the Benefit Obtained ........................................................... 18

      C.    Class Representative Should Be Awarded Its Requested Reimbursement
            Under 15 U.S.C. §78u-4(a)(4) ............................................................. 20

IV.   CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  No. 14-CV-7126, 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)...........................................21

*Asare v. Change Grp. of N.Y., Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013).........................................................................17

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ..........................................................................................17

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)...........................................................................8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................................................7

*City of Birmingham Ret. and Relief Sys. v. Credit Suisse Grp. AG*,
  No. 17 Civ. 10014, 2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020)........................................15

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)............................................11

*Fishoff v. Coty Inc.*,
  No. 09 Civ. 628, 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)..............................................11

*Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02–CV–3400, 2010 WL 4537550 (S.D.N.Y. 2010) ................................................ *passim*

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).........................................................................3, 8, 10, 16

*Gruber v. Gilbertson*,
  No. 16-cv-9727, 2022 WL 17828609 (S.D.N.Y. Dec. 21, 2022) (Rakoff, J.)........................14

*Hicks v. Stanley*,
  No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................21

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  No. 03 MDL 1529, 2006 WL3378705 (S.D.N.Y. Nov. 16, 2006).........................................13

*In re AOL Time Warner, Inc.*,
  No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..................................................10

*In re Bank of Am. Corp. Sec. Deriv. & ERISA Litig.*,
    772 F.3d 125 (2nd Cir. 2014).............................................21

*In re Bayer AG Sec. Litig.*,
    No. 03 Civ. 1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008)...........................12

*In re Bisys Sec. Litig.*,
    No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007)
    (Rakoff, J.) ...........................................17

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005)...........................................8

*In re China Sunergy Sec. Litig.*,
    No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...........................19

*In re Citigroup Inc. Bond Litig.*,
    988 F. Supp. 2d 371 (S.D.N.Y. 2013)...........................................9

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014)...........................................16

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06–CV–1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)...........................10

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13-md-2476, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)...........................7, 16

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
    No. 13 Civ. 7789, 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) ...........................16

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................12

*In re GSE Bonds Antitrust Litig.*,
    No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020)
    (Rakoff, J.) ...........................................21

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)...........................................10

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-2237 (JSR), 2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008)
    (Rakoff, J.) ...........................................14, 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...........................................................................10, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 1:05-md-01720 (E.D.N.Y. Dec. 16, 2019), ECF No. 7823 .............................................21

*In re Petrobras Sec. Litig.*,
    317 F. Supp. 3d 858 (S.D.N.Y. 2018) (Rakoff, J.) ...........................................................8, 21

*In re Veeco Instruments Inc. Sec. Litig.*,
    MDL No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..............................12, 18, 19

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    No. 03–CV–4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................................................10

*Lea v. TAL Educ. Grp.*,
    No. 18-CV-5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)...........................................16

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998).................................................................................................16

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................7, 13, 15, 17

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)...................................................................................14

*Mo. v. Jenkins by Agyei*,
    491 U.S. 274 (1989).............................................................................................................16

*Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 385 (2019) ..............................................7

*Ret. Assoc. v. Bankrate, Inc.*,
    No. 1:13-cv-07183 (S.D.N.Y. Nov. 25, 2014) (Rakoff, J.) ...................................................14

*Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01–CV–11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................11

*Ret. Sys. v. Lockheed Martin Corp.*,
    954 F. Supp. 2d 276 (S.D.N.Y. 2013)..................................................................................14

*Rosi v. Aclaris Therapeutics, Inc.*,
    No. 1:19-cv-07118 (S.D.N.Y. Dec. 9, 2021), ECF No. 76.....................................................13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................................17

iv

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................................7

*Wilson v. LSB Indus., Inc.*,
   No. 1:15-cv-07614, 2019 WL 3542844 (S.D.N.Y. June 28, 2019)........................................14

**Statutes, Rules & Regulations**

15 U.S.C. §78u-4(a)(4) .........................................................................................................20

Federal Rules of Civil Procedure Rule 23(h).......................................................................1

**Other Authorities**

Theodore Eisenberg, Geoffrey Miller, and Roy Germano, Attorneys' Fees in
   Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937 (2017).......................................17

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Scott+Scott Attorneys at Law LLP ("Scott+Scott" or "Class Counsel") respectfully moves for an award of 25% plus interest in attorneys' fees from the $9,000,000 Settlement Fund established by the proposed Settlement reached between Class Representative, Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Class Representative"), and Defendants in this Action.[1]  Class Counsel also seeks payment of $731,204.77 in litigation expenses that Class Counsel reasonably incurred in prosecuting the Action, as well as an award of $50,000 to Class Representative as reimbursement for its time and expenses monitoring Class Counsel and prosecuting the Action (including through use of outside counsel ("Fund Counsel")), as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.    INTRODUCTION

The proposed Settlement, which provides for a non-reversionary cash payment of $9,000,000 in exchange for resolution of the Action, represents an excellent result for the Settlement Class, especially when placed in the context of the significant hurdles that Class Representative would have needed to overcome in order to prevail in this complex securities fraud class action.  There were real risks here that the Settlement Class would recover less (or nothing) if litigation continued.  While the case survived the motion to dismiss stage, the strongest allegations in the Second Amended Class Action Compliant for Violations of Federal Securities Laws, ECF No. 72 ("SAC"), concerning Subway, Olo's largest client, were dismissed by the

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as those set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), dated January 16, 2024 (ECF No. 115-1).  Unless otherwise noted, citations to "Ex. __" herein refer to exhibits attached to the Declaration of Amanda F. Lawrence in Support of Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation and (2) Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Class Representative for Its Costs and Expenses ("Lawrence Declaration").

Court, along with the SAC's allegations regarding certain trends at Olo and prospects in the enterprise market. As a result, the Action was limited to allegations that, while Class Representative and Class Counsel believed were compelling, faced multiple issues, particularly with loss causation. Therefore, there was a substantial risk that Defendants' upcoming motion for summary judgment and *Daubert* challenges might result in the elimination of a significant portion – or even all – of the Class's damages. Even if the Action was able to survive summary judgment and trial on the remaining allegations, Defendants almost assuredly would have pursued appeals, which would have further delayed and threatened any recovery at all. The proposed Settlement eliminates these risks while still providing a recovery to the Settlement Class.

The Settlement was achieved only after extremely hard-fought litigation and extended negotiations. Class Counsel worked relentlessly in the face of an impending trial date, and did all such work on a fully contingent basis. Among other work detailed in the accompanying Lawrence Declaration filed herewith, Class Counsel filed the initial Amended Class Action Complaint for Violations of Federal Securities Laws, ECF No. 38 ("FAC"), after in depth research into Defendants and Defendants' actions, including collecting and thoroughly reviewing Olo's filings made with the U.S. Securities and Exchange Commission ("SEC") and researching and contacting former Olo employees. *See* Lawrence Declaration, ¶¶21-22. Once the FAC was filed, Class Counsel briefed and argued a motion to dismiss, which enabled a portion of the case to proceed. *Id.*, ¶¶23-25. Cognizant of the value of the claims dismissed, Class Counsel sought leave from this Court to file a detailed and robust SAC, then briefed and argued Defendants' separate second motion to dismiss. *Id.*, ¶¶26-28. Class Counsel also undertook rapid-paced discovery and briefing a motion for class certification. *Id.*, ¶¶31-39. As to discovery, and as set forth in more detail in the Lawrence Declaration, Class Counsel took and defended a total of 18 depositions (including

experts), and reviewed and analyzed over 100,000 documents produced by Defendants and eight third parties (totaling approximately 520,000 pages). *Id.*, ¶¶33-34. As to class certification, Class Counsel (twice) briefed that motion, and successfully argued it. *Id.*, ¶¶36-39. Class Counsel only agreed to settle the matter once all depositions had been scheduled and taken, all documents had been reviewed, and the Parties were on the eve of summary judgment and *Daubert* proceedings. *Id.*, ¶¶57, 59.

The settlement negotiations were equally hard fought and included a full-day (unsuccessful) in-person mediation before an experienced mediator, Robert A. Meyer, Esq., of JAMS (the "Mediator"), numerous follow-up telephone conversations with the Mediator, and ultimately resulted in a mediator's proposal. *Id.*, ¶¶41-44. In total, Class Counsel devoted over 7,200 attorney and staff hours and over $730,000 in out-of-pocket costs to prosecute this Action. *Id.*, ¶¶71, 80. As detailed below, Class Counsel respectfully submits that the requested award of attorneys' fees and Litigation Expenses are reasonable under either the percentage of the fund method or lodestar method, satisfies the six factors established in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and is consistent with awards in other complex contingency fee cases.

Finally, Class Representative respectfully requests an award of $50,000 to compensate it for the time and effort it expended on behalf of the Settlement Class. As set forth in the Declaration of Richard P. Krueger, III, on Behalf of Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund in Support of Motions for: (1) Final Approval of Class Action Settlement and Plan of Allocation; and (2) Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Class Representative for its Costs and Expenses ("STA-ILA Declaration") (Ex. 3), STA-ILA's outside Fund Counsel assisted STA-ILA in monitoring the work of

Scott+Scott, and billed STA-ILA accordingly ($59,250 for the 158 hours they spent assisting STA-ILA in prosecuting the Action). *Id.*, ¶14. At the same time, STA-ILA was itself very actively involved in the case and spent 206 hours on the Action.

For the reasons set forth herein and in the Lawrence Declaration., Class Counsel respectfully requests that the Court award it 25% of the Settlement Fund, approve reimbursement of $731,204.77 in litigation expenses, and grant an award of $50,000 to Class Representative.

## II.    SUMMARY OF LITIGATION AND CLASS COUNSEL'S WORK

While the work undertaken by Class Counsel is set forth in further detail in the Lawrence Declaration, a summary of it by time period is as follows:

### A.    Period One: January to July 2023

After being appointed lead counsel in this Action, Class Counsel began immediately to work under the tight schedule imposed by the Court. Lawrence Declaration, ¶¶20-22. It filed the FAC less than one month after appointment that included detailed factual allegations concerning two "buckets" of claims: those related to "active locations" at Olo and those related to its largest client, Subway. *Id.* At the same time, the FAC set forth scienter and loss causation allegations as to both. *Id.*, ¶¶17, 20-22, 58. Defendants moved to dismiss that complaint and identified myriad issues upon which to base a dismissal of the case. *Id.*, ¶23. Class Counsel briefed the opposition to Defendants' arguments and prepared for oral argument on every issue. *Id.* While the Court sustained the FAC on April 10, 2023, it did so in a "bottom-line order." *Id.*, ¶24.

The Parties immediately launched into intense and rapid discovery, noticing and taking depositions back-to-back, if not on the same day. *Id.*, ¶¶31-35. While this discovery was underway, Class Counsel also prepared to file for class certification, including by retaining a market efficiency expert who penned a report in support of class certification. *Id.*, ¶36. Class Counsel then prepared him for and defended his deposition. *Id.* Class Certification was fully

briefed as of July 17, 2023.  *Id.*  On July 25, 2023, while still undertaking fact discovery, Class Counsel also helped to prepare and served two merits expert reports, one on damages and another on trends in the enterprise market.  *Id.*, ¶35.  The same day those merits expert reports were served, this Court issued its full decision on the motion to dismiss.  *Id.*, ¶¶25, 35.  In that decision, the Court dismissed the claims related to Subway.  *Id.*, ¶25.  Up to that point, the Parties had been operating on the conclusion that the case included all allegations.

### B.    Period Two: July 2023 to December 2023

Not content with the full decision on the motion to dismiss, Class Counsel immediately sought leave to amend the pleadings, which the Court granted.  *Id.*, ¶26.  On August 9, 2023, Class Counsel filed the SAC.  *Id.*  It contained detailed allegations (many of which were obtained from documents produced in discovery) concerning the active locations and Subway claims, but also regarding certain trends at Olo and Olo's prospects in the enterprise market.  *Id.*, ¶27.  This complaint also expanded the class period back to Olo's initial public offering.  *Id.*, ¶26.  Defendants again moved to dismiss the complaint and full briefing and oral argument occurred in August and September 2023.  *Id.*, ¶28.  Ultimately, despite Class Counsel's best efforts, the Court opted to keep in only the active locations claims.  *Id.*, ¶¶29-30.

Given the new class period, class certification needed to be re-briefed, which was completed on October 20, 2023.  *Id.*, ¶37.  On October 30, 2023, the Court issued an order directing the Parties to brief the issue of whether STA-ILA's market efficiency/damages expert would be able to disaggregate the dismissed Subway allegations from a class-wide damages calculation.  *Id.*, ¶38.  On November 13, 2023, STA-ILA's market efficiency/damages expert filed a report in further support of class certification, demonstrating his methodology for how to calculate damages on a class-wide basis that disaggregated the drop in Olo's common stock price attributable to the Subway-specific portion of the August 11, 2022 disclosure.  *Id.*  On November 20, 2023,

Defendants filed a supplemental brief in further opposition to STA-ILA's Motion for Class Certification, and on November 27, 2023, STA-ILA filed a supplemental reply in further support of its Motion. *Id.* On December 1, 2023, the Court issued a "bottom-line" order certifying the Class and appointing STA-ILA as Class Representative and Scott+Scott as Class Counsel. *Id.*, ¶39.

While class certification briefing was underway, expert discovery took place. In total, the Parties exchanged nine expert reports, including six reports in the months of October, November, and December 2023 and took or defended four expert depositions. *Id.*, ¶35. On December 15, 2023, two days after the close of expert discovery, counsel for all Parties called Chambers to obtain a schedule for filing *Daubert* motions, which the Parties were preparing. That very same evening, the Mediator made a proposal which all parties ultimately accepted. *Id.*, ¶44.

In sum, given the nuances of the timeline in this case, in less than a year, Class Counsel and Class Representative:

      (a)     took or defended 18 depositions;

      (b)     collected, reviewed, and produced 338 documents (consisting of roughly 11,000 pages of material);

      (c)     reviewed over 100,000 documents (consisting of approximately 520,000 pages of documents);

      (d)     filed two detailed amended complaints;

      (e)     completed and partially survived two rounds of motions to dismiss briefing;

      (f)     completed two rounds of class certification briefing and obtained certification of the Class;

      (g)     completed seven expert reports and reviewed Defendants' two expert reports; and

      (h)     took the Action to the eve of summary judgment and *Daubert* motions.

*Id.*, §II.B. This was all at a blistering pace, as the following examples demonstrate:

(a)     between June 5 and 8, 2023, Class Counsel filed for class certification complete with an expert report and prepared for and defended two separate depositions of STA-ILA's representatives (*id.*, ¶36);

(b)     between July 20 and 25, 2023, Class Counsel took Defendant Glass's deposition and an Olo financial officer's deposition (on the same day), filed two expert reports, and prepared for the imminent class certification hearing (*id*, ¶¶34-36); and

(c)     between December 11 and 15, 2023, Class Counsel took two expert depositions and prepared and defended its market efficiency/damages expert at his deposition and began work on offensive *Daubert* motions (*id., ¶¶*34, 57).

## III.   ARGUMENT

### A.     The Requested Attorneys' Fees Should Be Approved as Fair and Reasonable

When "a class plaintiff successfully recovers a common fund for the benefit of a class, the costs of litigation should be spread among the fund's beneficiaries." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).[2]  Under this principle, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476, 2016 WL 2731524, at *16 (S.D.N.Y. Apr. 26, 2016) ("*CDS Litig.*") (same).

Courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method" although "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The percentage method is preferred as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Id.*; *accord Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 71 (2d Cir.

---

[2]     Unless otherwise indicated, citations are omitted and emphasis is added.

2019), *cert. denied*, 140 S. Ct. 385 (2019) ("[O]nce the parties have agreed to settle, the percentage-of-the-fund methodology serves as important motivation for counsel to maximize the class's recovery, and, a fortiori, counsel's fee"). The weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See In re Bristol-Myers Squibb Sec. Litig.,* 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Bellifemine v. Sanofi-Aventis U.S. LLC,* 2010 WL 3119374, at \*6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'").

Here, under either the percentage method or the lodestar approach, Class Counsel's fee request of 25% of the Settlement Fund is reasonable because it strikes a balance; it rewards Class Counsel, which have invested its time and firm resources to represent the Settlement Class in a complex, fast paced and high-risk litigation, but does not confer a windfall upon Class Counsel. *See In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 874 (S.D.N.Y. 2018) (Rakoff, J.) ("Fee awards also 'serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons[.]' . . . At the same time, counsel are not entitled to reap a windfall.").

### 1. The *Goldberger* Factors Support Awarding Class Counsel's 25% Fee Request

Courts evaluating whether a fee is "reasonable" must consider: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. Each *Goldberger* factor weighs in favor of the reasonableness of Class Counsel's fee request in this Action.

a.      **Class Counsel Invested Substantial Time and Resources
to Prosecute This Action**

The first *Goldberger* factor, the time and labor expended by counsel, weighs in favor of

Class Counsel's fee request.  From inception through February 20, 2024, Class Counsel spent over

7,200 hours prosecuting this Action, devoting more than 16 attorneys (some virtually full time) to

this matter since Scott+Scott's leadership appointment.  Lawrence Declaration, ¶71; Ex. A to the

Declaration of Daryl F. Scott on Behalf of Scott+Scott Attorneys at Law LLP in Support of

Application for Award of Attorneys' Fees and Expenses ("Scott+Scott Declaration").  *See* Ex. 2.

As discussed above and set forth in further detail in the Lawrence Declaration, Class Counsel

worked tirelessly on this case, including, *inter alia*: a comprehensive initial investigation of the

claims resulting in a detailed amended complaint and then a subsequent detailed second amended

complaint; defending against two rounds of Defendants' motions to dismiss; engaging in rigorous

and expedited fact and expert discovery (seven expert reports, 18 depositions, review of over

520,000 pages of documents); twice moving for and successfully achieving class certification;

preparing to brief *Daubert* motions and summary judgment papers; and engaging in extensive

settlement negotiations with Defendants' counsel.  *Id.*, §II.B.

At all times, Class Counsel took care to staff the matter efficiently and to avoid unnecessary

duplication of efforts.  Accordingly, this factor supports the requested fee.

b.      **The Magnitude and Complexity of the Case Justify the
Fee Request**

The second *Goldberger* factor, the magnitude and complexity of the Action, supports Class

Counsel's fee request.  "Class actions have a well-deserved reputation as being most complex," *In

re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*")

(internal quotations omitted).  In cases that require more expertise, a larger percentage of the fund

should be awarded to the lawyers who can competently bring and prosecute the case.  *See In re*

*Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award"). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). Courts have repeatedly recognized the "notorious complexity" of securities fraud class actions like this one. *In re AOL Time Warner, Inc.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03–CV–4372, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex.").

Class Representative's remaining claims concerned accounting for online restaurant locations in a discreet and nuanced market. Lawrence Declaration, ¶29. The Action raised particularly difficult questions concerning loss causation on a materialization of the risk theory. *Id.*, ¶¶57-58. Prosecuting the Class's claims required skill and perseverance, dependent on expert evidence, within a very aggressive schedule. *Id.*, ¶57. Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable here.

### c. The Fee Request Is Warranted Based on the Level of Risks in This Action

The third *Goldberger* factor, the risk of the litigation, is perhaps "the most important *Goldberger* factor." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("*Payment Card*"); *see also Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."). Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06–CV–1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). *See also*

*Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400, 2010 WL 4537550, at \*27 (S.D.N.Y. 2010) ("[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'"); *Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01–CV–11814, 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

As discussed in detail in the accompanying memorandum in support of final approval of the Settlement, and summarized here, Class Representative faced significant litigation risks in proving liability and damages. Final Approval Motion §II.E; *see also* Lawrence Declaration, §III.B. While Class Representative was successful in partially defeating Defendants' motions to dismiss, the only claims that remained in the case related to active locations. *Id.*, ¶¶29-30. Proving the elements of this claim remained a significant challenge, particularly as they related to loss causation. *Id.*, §III.B.2. The materialization of the risk and the tying of the disclosure to the risk was heavily expert-dependent and would face serious *Daubert* and summary judgment motions as well as trial and appeals. *Id.* Plus, Defendants also argued that the alleged false and misleading statements were not false nor made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. *Id.*, §III.B.1. While Class Representative and Class Counsel believed the scienter allegations were strong, scienter is commonly regarded to be the most difficult element to prove in a securities fraud case. *See, e.g.*, *Fishoff v. Coty Inc.*, No. 09 Civ. 628, 2010 WL 305358, at \*2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim.").

In the face of the many uncertainties, Class Counsel undertook this case on a wholly contingent basis, with Class Counsel bearing all of the financial risk. *Id.*, ¶74; *see City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at \*14 (S.D.N.Y. May 9,

2014) ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award.").  In short, the contingency fee risk in this case was high and, consequently, this factor militates in favor of the requested fee.

<strong>d.    Class Counsel Provided High-Quality Representation</strong>

The fourth *Goldberger* factor, the quality of representation, supports Class Counsel's fee request.  Class Counsel respectfully suggests that the quality of its representation is best evidenced by the progress of the litigation and the result achieved despite the hurdles.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, MDL No. 05-1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  The result obtained for the Settlement Class is very favorable, particularly given the serious risks of continued litigation discussed herein.  Lawrence Declaration, §III.B.  The decisions on the motions to dismiss excised what Class Representative believed to be the strongest claims (liability-wise) from the Action, leaving the active locations claims.  *Id.*, ¶¶29-30.  While Class Representative believed those claims to be strong, it also recognized the hurdles to those claims, particularly surrounding loss causation.  *Id.*, §III.B.2.  The maximum damages for the case was also diminished by the Motion to Dismiss decision, and Defendants vigorously argued that the remaining damages (for the active locations claims) would need to be severely disaggregated from the stock price declines related to the alleged corrective disclosure.  *Id.*  Such disaggregation steps would greatly reduce the aggregate damages available to Class Members.  *Id.*  Taking these issues together, there was a serious risk that the Class's recovery could be reduced to almost nothing.  *See, e.g.*, *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting the "difficulty of establishing loss causation . . . and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards.").

12

Since the passage of the PSLRA, courts have regularly approved settlements that recover perceived small amounts of damages for investors. *See, e.g.*, Final Approval Order, *Gong v. Neptune Wellness Sols. Inc.*, No. 2:21-cv-01386 (.E.D.N.Y. Sept. 7, 2023), ECF No. 80 (approving $4 million all-cash settlement and granting attorneys' fees of 33 and 1/3% with a per share recovery after fees and expenses of either $0.025 or $0.027); Op. and Order, *Rosi v. Aclaris Therapeutics, Inc.*, No. 1:19-cv-07118 (S.D.N.Y. Dec. 9, 2021), ECF No. 76 (approving $2.65 million settlement and granting attorneys' fees of 30% with a per share recovery of $0.052); J. and Order, *Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, No. 1:19-cv-03354 (S.D.N.Y. Dec. 1, 2021), ECF No. 102 (approving $6 million settlement and granting attorneys' fees of 33 and 1/3% with a per share recovery of $0.23); Final J. and Order, *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192 (S.D.N.Y. Dec. 18, 2019), ECF No. 202 (approving $7.5 million settlement and granting attorneys' fees of 33 and 1/3% with a per share recovery of $0.26); Mem. and Order, *In re Fuqi Int'l, Inc. Sec. Litig.*, No. 1:10-cv- 02515 (S.D.N.Y. Feb. 19, 2016), ECF No. 115 (approving $7.5 million settlement and granting attorneys' fees of 33% with a per share recovery of either $0.19 for shareholders trace their shares to the offering or $0.08 for those who cannot); *see also* Ex. 4.

Furthermore, Class Counsel is a nationally recognized leader in the field of securities class action litigation and has substantial experience litigating securities class actions in courts throughout the country. *See* Scott+Scott Firm Resume, attached as Ex. F. And an additional factor for assessing the quality of the representation is "[t]he quality of opposing counsel" in the case. *Maley*, 186 F. Supp. 2d. at 373; *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2006 WL3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."). Here,

13

Defendants are represented by Goodwin Procter LLP, a large, well-regarded law firm with an impressive track record. Lawrence Declaration, ¶78. The individual partners and associates working on this case on behalf of the Defendants are some of the best. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015) (noting that counsel's achievement in "obtaining valuable recompense . . . for its clients is particularly noteworthy given the caliber and vigor of its adversaries"). This factor thus also weighs in favor of approval.

### e.    The 25% Fee Request Is Reasonable in Relationship to the Settlement

The fifth *Goldberger* factor, the relation of the fee to the settlement, weighs in favor of Class Counsel's fee request. Courts evaluate the requested fee in relation to the settlement by looking to "comparable cases" for "guideposts." *See Payment Card*, 991 F. Supp. 2d at 443-44. This Court has previously described a fee of 25% of a settlement as the "increasingly used benchmark." *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013). Furthermore, the requested 25% fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. *See, e.g.*, Final J. and Order, *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 1:22-cv-02854-JSR (S.D.N.Y. Feb. 6, 2023), ECF No. 110 (Rakoff, J.) (awarding plaintiffs' counsel fees of 30%); *Gruber v. Gilbertson*, No. 16-cv-9727, 2022 WL 17828609, at *20 (S.D.N.Y. Dec. 21, 2022) (Rakoff, J.) (awarding 33 and 1/3%); *Ark. Tchr. Ret. Sys. and Fresno Cnty Emps.' Ret. Assoc. v. Bankrate, Inc.*, No. 1:13-cv-07183 (S.D.N.Y. Nov. 25, 2014) (Rakoff, J.) (awarding 25%); *Lockheed Martin*, 954 F. Supp. 2d 276 (S.D.N.Y. 2013) (Rakoff, J.) (awarding 25%); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-2237 (JSR), 2008 WL 9019514, at *1-2 (S.D.N.Y. Nov. 25, 2008) (Rakoff, J.) (awarding 25%); *see also Wilson v. LSB Indus., Inc.*, No. 1:15-cv-07614, 2019 WL 3542844,

at *1 (S.D.N.Y. June 28, 2019) (awarding 33 and 1/3%).  Accordingly, the requested fee is reasonable in relation to the Settlement.

**f.      Public Policy Supports Approval of the Fee Request**

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373.  A strong public policy favors rewarding firms for bringing successful securities litigation.  *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."); *City of Birmingham Ret. and Relief Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014, 2020 WL 7413926, at *2 (S.D.N.Y. Dec. 17, 2020) ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'").

Here, Class Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoings by a public company, and they did so entirely on a contingent basis. Lawrence Declaration, ¶74; Exs. A-B to the Scott+Scott Declaration.  Moreover, Class Counsel's efforts obtained relief for the Settlement Class in an efficient and effective manner, reaching the Settlement within a year while in most cases, many years can transpire.  This ensures any relief gets quickly out to Class members.  *See City of Birmingham*, 2020 WL 7413926, at *2 ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (alteration in original).

15

## 2.    The Lodestar Cross-Check Supports the Requested Fee Award

Class Counsel's fee request is also reasonable under the lodestar method, which has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). Courts in this Circuit use the lodestar calculation "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall," for example, if the multiplier is too large and "grossly disproportionate to the percentage fee award. . . ." *Id.* When used as a cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

Lodestar is calculated by "multipl[ying] the reasonable hours billed by a reasonable hourly rate." *Colgate-Palmolive*, 36 F. Supp. 3d at 347. "The lodestar should be based on 'prevailing market rates' and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (citing *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989)).

Class Counsel dedicated a total of 7,279.4 hours to this case through February 20, 2024, with a total lodestar value of $6,237,999.50, and Class Counsel has submitted a declaration that reflects the firm's lodestar calculations based on current billing rates. *See* Scott+Scott Declaration, Ex. A. Billing rates in the same range have been previously accepted as reflective of market rates in New York for work of comparable size and complexity. *See, e.g.*, *CDS*, 2016 WL 2731524, at *17; *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2018 WL 5839691, at * 5 (S.D.N.Y. Nov. 8, 2018); *Lea v. TAL Educ. Grp.*, No. 18-CV-5480, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021). Moreover, Class Counsel has audited the hours worked to confirm that they reflect time and effort properly and reasonably attributable to this Action. Scott+Scott Declaration, Ex. B; *see LeBlanc-Sternberg*, 143 F.3d at 764 ("The court

16

should include the number of hours claimed by plaintiffs' attorneys that are supported by time records, that are not excessive or duplicative, and that do not reflect work done only in connection with unrelated claims on which plaintiffs did not succeed.").

Accordingly, Class Counsel's fee request of 25% reflects a "negative" multiplier on the total lodestar of 0.36 – that is, it would be less than the lodestar Class Counsel incurred in securing this recovery for the Settlement Class. By contrast, courts routinely award positive multipliers of counsel's lodestar following the successful resolution of a case. *FLAG Telecom*, 2010 WL 4537550, at *26 ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."). Class Counsel's multiplier is reasonable, and is therefore well below the range accepted by courts. *See, e.g.*, *Monster Worldwide*, 2008 WL 9019514, at *1-2 (awarding multiplier of 1.3); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (approving a multiplier of 6.3 in class action, explaining that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Maley*, 186 F. Supp. 2d at 371 (holding that a 4.65 lodestar multiplier is modest, fair, and reasonable); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where the lodestar multiplier ranged up to 8.5); Theodore Eisenberg, Geoffrey Miller, and Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937, 965-67 (2017) (reporting a mean multiplier in the Second Circuit of 1.93); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (Rakoff, J.) (awarding 30% fee representing a 2.99 multiplier); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers

of 2 to 6 times the lodestar"). The lodestar in this Action supports the requested fee award and demonstrates there is no windfall here.

### 3. The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the fee request. Through May 6, 2024, the Claims Administrator has mailed 24,346 copies of the Notice to potential Settlement Class Members informing them that, among other things, Class Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and up to $750,000 in expenses. While the time to object to the Fee and Expense Application does not expire until May 20, 2024, to date zero objections have been received. Class Counsel will address any that are submitted in its reply papers, which will be filed on or before June 3, 2024.

### 4. The Fee Request Is Supported by Class Representative

The requested fee of 25% is made with the full support of Class Representative. *See* STA-ILA Declaration, ¶11. STA-ILA is a sophisticated and financially interested investor that was heavily involved in the litigation, and saw the time and efforts put forth by Class Counsel. *Id.*, ¶7; Lawrence Declaration, ¶92. Accordingly, STA-ILA's endorsement of the fee request lends further support for its approval. *See Veeco*, 2007 WL 4115808, at *8 ("Public policy considerations support the award in this case because the Lead Plaintiff . . . –a large public pension fund– conscientiously supervised the work of lead counsel and has approved the fee request.").

### B. Class Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Class Counsel also requests reimbursement of $731,204.77 in expenses incurred while prosecuting the Action. As set forth in the Scott+Scott Declaration (¶6), these expenses were reasonably incurred and necessary to prosecute the Action.

The amount of litigation expense is consistent with the stage of the litigation. Class Counsel has incurred considerable expenses related to, among other things, expert fees and deposition reporting and transcripts. A complete breakdown by category of the expenses incurred by Class Counsel is set forth in the Scott+Scott Declaration. *Id.* Class Counsel respectfully submits that the expenses are properly recoverable by counsel. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expense that they advanced to a class."); *In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (class action attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation.'").

In this case, the most significant portion of the expenses were incurred for professional services rendered by the experts retained. While the parties were operating under the belief that all claims remained in the case, Class Representative submitted three separate expert reports (one for class certification and two on the merits). Lawrence Declaration, ¶¶35, 70. Once the full decision on the motion to dismiss was released and the class period and claims were defined, Class Representative then submitted an updated class certification expert report as well as a supplemental expert report requested by this Court. *Id.*, ¶37. Class Representative also submitted a subsequent expert merits report focused on the remaining claims and a reply merits report. *Id.*, ¶35. This resulted in seven separate expert reports and two expert deposition defenses, and a majority of the expenses being sought. Scott+Scott Declaration, ¶6.

The remaining expenses consist of costs related to discovery (including the 18 depositions taken or defended), costs of electronic discovery for the approximately 530,000 pages of produced documents, legal fees for representation of confidential witnesses cited in the complaints, mediator

19

fees, and other miscellaneous fees. *Id.*, ¶84. Overall, the expenses sought are the types of expenses that are necessarily incurred in litigation and routinely charged to clients.

### C. Class Representative Should Be Awarded Its Requested Reimbursement Under 15 U.S.C. §78u-4(a)(4)

Class Counsel also respectfully requests a PSLRA award of $50,000 for Class Representative to compensate it for the time and effort it expended on behalf of the Settlement Class. Scott+Scott Declaration, ¶91. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

Here, not only did Class Representative take an active role in the litigation, but it also employed outside Fund Counsel that assisted it in overseeing the efforts of Scott+Scott and ensuring its interests and those of the Class were protected and pursued in the best possible manner. STA-ILA Declaration, ¶6. Fund Counsel's fees here total $59,250. *Id.*, ¶14. Fund Counsel was included in most emails and videoconferencing communications between Scott+Scott and STA-ILA, helped review and edit legal filings, assisted Scott+Scott in preparing two STA-ILA representatives for their depositions, and advised STA-ILA about the adequacy of the proposed Settlement. *Id.*, ¶¶6-7; Lawrence Declaration, ¶92. In total, STA-ILA has paid Fund Counsel $59,250 for the 158 hours they spent assisting STA-ILA in prosecuting the Action. Lawrence Declaration, ¶93; STA-ILA Declaration, ¶14.

As to itself, STA-ILA was also very active in the case, including: (i) regularly communicating with Class Counsel during the case; (ii) producing documents; (iii) sitting for two depositions; (iv) attending numerous depositions taken in the case; (v) reviewing, editing, and approving all pleadings in the case; (vi) advising Class Counsel on strategy and potential third

party discovery; (vii) consulting with Class Counsel regarding settlement; and (viii) evaluating and ultimately approving the proposed Settlement.  STA-ILA Declaration, ¶7.

Courts "award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).  Numerous cases from within this Circuit have approved payments to compensate lead plaintiffs.  *See, e.g.*, *In re Bank of Am. Corp. Sec. Deriv. & ERISA Litig.*, 772 F.3d 125, 132-34 (2nd Cir. 2014) (affirming over $450,000 award to representative plaintiffs for time spent by their employees); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *6 (S.D.N.Y. June 16, 2020) (Rakoff, J.) (respectively awarding two class representatives $50,000 each and one class representative, that maintained separate counsel "which provided independent advice . . . in its role as class representative," an award of $300,000); Order, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 1:05-md-01720 (E.D.N.Y. Dec. 16, 2019), ECF No. 7823 (awarding class representatives between $53,600 and $208,000 for out-of-pocket expenses and as a service award); *Petrobras*, 317 F. Supp. 3d at 879 (Rakoff, J.) (awarding lead plaintiffs $300,000, $50,000, and $50,000); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (granting six named plaintiffs incentive awards of $50,000 each, and $100,000 to two other named plaintiffs); *FLAG Telecom*, 2010 WL 4537550, at *31 (award of $100,000 to lead plaintiff for time spent on the litigation).

## IV.    CONCLUSION

Based on the foregoing, Class Counsel respectfully requests that the Court award it attorneys' fees in the amount of 25% of the Settlement Fund, which includes accrued interest; $731,204.77 in litigation expenses incurred by Class Counsel; and an award of $50,000 as

reimbursement to Class Representative.  A proposed order will be submitted with Class Counsel's reply papers, after the deadline for objecting has passed.

DATED: May 6, 2024                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

   *s/ Amanda F. Lawrence*
Amanda F. Lawrence
Donald A. Broggi
Jeffrey P. Jacobson
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
alawrence@scott-scott.com
dbroggi@scott-scott.com
jjacobson@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

*s/ Amanda F. Lawrence*
Amanda F. Lawrence
