**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> v.<br><br>OLO INC., NOAH GLASS, and PETER BENEVIDES,<br><br>      Defendants. | Case No. 1:22-cv-08228-JSR<br><br>CLASS ACTION<br><br><br>Judge: Hon. Jed S. Rakoff<br>Date: June 10, 2024<br>Time: 4:00 PM |

**DECLARATION OF AMANDA F. LAWRENCE IN SUPPORT OF MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (2) AWARD OF ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND AWARD TO CLASS REPRESENTATIVE FOR ITS COSTS AND EXPENSES**

I, Amanda F. Lawrence, declare as follows pursuant to 28 U.S.C. §1746:

1.  I am a partner at Scott+Scott Attorneys at Law LLP ("Scott+Scott" or "Lead Counsel"), Court-appointed Lead Counsel for Class Representative Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Class Representative") in the above-captioned securities class action (the "Action").[1]  I have personal knowledge of the matters set forth herein based on my participation in the prosecution and settlement of the claims asserted on behalf of the Settlement Class in this Action.

---

[1]  All capitalized terms not otherwise defined herein have the same meaning as those set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), dated January 16, 2024 (ECF No. 115-1).  Citations to "Ex. __" herein refer to exhibits attached to this declaration.

2.     I submit this declaration in support of: (1) Class Representative's Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion"); and (2) Class Representative's and Class Counsel's Motion for Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Class Representative for its Costs and Expenses ("Fee and Expense Motion").

## I.    PRELIMINARY STATEMENT

3.     After a year of hard-fought litigation, Class Representative and Class Counsel have succeeded in obtaining a recovery for the Class of $9,000,000.

4.     The accompanying Final Approval and Fee and Expense Motions come after the Court preliminarily approved the settlement and ordered notice thereof to the Class.   Order Preliminarily Approving Settlement and Providing for Notice, ECF No. 118 ("Preliminary Approval Order").   As set forth in those Motions, the Court-ordered notice program has been completed, informing Class Members of the proposed settlement, as well as its terms, their rights and options in light of the settlement, and key dates for the effectuation of those rights.

5.     Class Representative and Class Counsel respectfully submit that the proposed Settlement is an excellent result.   As explained herein, and in the accompanying Motions, the proposed Settlement was reached just days before opening summary judgment briefs were due to be filed, after the completion of fact and expert discovery, and following this Court's orders granting class certification, but dismissing several core allegations.   Therefore, Class Representative and Class Counsel had a clear understanding of the strengths and weaknesses of the surviving claims.

6.     Further, this recovery was achieved notwithstanding the absence of events that often accompany similarly successful securities class action settlements, such as restatements of financial results or criminal indictments of defendants.

7.      Also militating in favor of the Settlement is the fact that it was accomplished through extensive arm's-length settlement discussions, including an all day, in-person mediation session and months of follow up discussions, all facilitated by an experienced mediator, Robert A. Meyer, Esq. ("the Mediator").

8.      Class Representative supports the Settlement, as set forth in the attached Declaration of Richard P. Krueger, III on Behalf of Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund in Support of Motions for: (1) Final Approval of Class Action Settlement and Plan of Allocation; and (2) Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Class Representative for its Costs and Expenses ("STA-ILA Declaration").  *See* Ex. 3.

9.      For all of the reasons set forth herein, and in light of the result obtained, notwithstanding the significant risks of the litigation detailed below, Class Representative and Class Counsel respectfully submit that the proposed Settlement is fair, reasonable, and adequate in all respects and that the Court should enter final approval of same.

10.      In addition to seeking final approval of the Settlement, Class Representative also seeks approval of the proposed Plan of Allocation, which is similar to allocation plans that courts have approved in other securities class actions.  The Plan of Allocation was developed by Class Representative's damages expert.  It allocates the proceeds of the Settlement – net of any Court-approved fees and expenses, and the administration costs – in a *pro rata* fashion among the Settlement Class and provides for the equitable distribution of the Net Settlement Fund to Class Members who submit valid Claim Forms.  Accordingly, it is fair and reasonable, and merits approval.

11.     Finally, Class Counsel respectfully submits that the requested fee of 25% of the Settlement Fund, plus accrued interest, for its work in this case is fair and reasonable and merits approval as well.   Attached hereto is an exhibit demonstrating that this fee request is at the benchmark that courts in this circuit approve.  *See* Ex. 4.  It is also consistent with awards in similar securities class actions, as well as the nature and extent of the work Class Counsel performed here. Moreover, this award is below the lodestar value of Class Counsel's time dedicated to this case and represents a negative multiplier of approximately 0.36.  Class Counsel also seeks payment of its litigation expenses totaling $731,204.77 for costs necessary to prosecute the Action, including experts, mediation, legal research, electronic discovery support, and case-related travel, including traveling to and from numerous depositions.  Class Representative supports these requests.  In addition, Class Representative requests an award of $50,000 for the work it performed and the expenses it incurred (including in fees for Fund Counsel) representing and serving the interests of the Settlement Class, an amount also within the range typically granted to plaintiffs in similar class actions.

## II.    HISTORY OF THE ACTION AND SUMMARY OF THE WORK PERFORMED BY CLASS COUNSEL

### A.    Summary of the Allegations

12.     Olo Inc. ("Olo" or the "Company"), short for "online ordering," is a New York software company that connects individual restaurant locations to consumers directly through mobile and online ordering and/or indirectly through third-party applications, including DoorDash, Grubhub, and Uber Eats.  *See* Second Amended Class Action Compliant for Violations of Federal Securities Laws, ECF No. 72 ("SAC"), ¶¶6, 39.  At all relevant times, the defendants in this Action were Olo, Olo's founder and Chief Executive Officer ("CEO") Noah H. Glass ("Glass"), and Olo's

Chief Financial Officer ("CFO") Peter J. Benevides ("Benevides") (Glass and Benevides are together referred to as "Individual Defendants" and with Olo, "Defendants"). *Id.*, ¶¶34-36.

13.      Olo's success depends on its ability to sign up and maintain relationships with its restaurant clients, who utilize Olo's technology via one or more of Olo's "modules" and pay Olo through subscription and/or transaction-based fees. *See id.*, ¶¶41-47.  Olo's major clients included Subway, Dairy Queen, Jack in the Box, and CKE Restaurants, parent company of Hardee's and Carl's Jr. *Id.,* ¶¶46, 71.  Subway utilized Olo's "Rails" module, which enables the integration of a restaurant's menu and pricing into a third-party application or website for pick-up or delivery by that third party, and represented Olo's largest brand partner and a large source of annual recurring revenue. *Id.,* ¶¶43, 87-88.  At all relevant times, Defendants kept track of, and publicly-reported, a "key metric" they called "active locations," which they stated represented the number of "unique restaurant location[s] *live* on the platform with at least one product module." *Id.,* ¶48.  Defendants' statements with respect to its client base, active locations, as well as its growth prospects, gave rise to the issues in this Action.

14.      ***First***, the SAC alleges that throughout the Class Period, Defendants made materially false and misleading statements about the number of Olo's active locations by (a) prematurely including individual restaurant locations in the Company's active locations count before those locations had actually begun utilizing any of Olo's technology, (b) failing to remove inactive locations from the Company's active locations count, and (c) including individual restaurant locations in the Company's active locations count that declined to utilize Olo's products. *Id.,* ¶¶60-75.  The SAC alleges that examples of Olo's false active locations metrics includes locations from Subway, Dairy Queen, Jack in the Box, Hardee's, and Carl's Jr. *Id.,* ¶¶61, 63, 71.

15.    **Second**, the SAC alleges that Subway informed Defendants in January 2022 that it intended to discontinue its relationship with Olo in favor of an in-house platform and that as a result, all Subway locations would cease their use of Olo's module by 4Q 2022 or 1Q 2023 at the latest. *Id.,* ¶¶94-97, 171. The SAC alleges that while in possession of this information, Defendants issued a Form 10-K on February 25, 2022, that not only failed to mention Subway's departure but merely warned about the hypothetical risk that Olo's clients "may not renew their contracts with us or reduce their use of our platform for any number of reasons, including . . . **if** they decide to build their own solution internally." *Id.,* ¶165.

16.    **Third**, the SAC also alleges that at the time, Subway's departure did not present the only issue for Olo. The SAC alleges that Defendants were aware of serious concerns about the Company's revenue, performance, and future prospects that they did not disclose to investors.

17.    The SAC alleges that Defendants made all of the misstatements (*id.,* ¶¶118-46, 150, 152, 154-56, 159-63, 165, 167-68) with scienter. *Id.,* ¶¶182-92.

18.    The SAC alleges that the truth emerged after the market closed on August 11, 2022, when Defendants disclosed Subway's decision to end its contract, zero active locations growth in 2Q 2022, and lowered Olo's FY 2022 active locations and revenue guidance, blaming "macroeconomic challenges," when, the SAC alleges, the revised guidance was a materialization of the undisclosed risk of Defendants' repeated misreporting of Olo's active locations count. *Id.,* ¶¶170-80. As a result, the SAC alleges that the following day Olo's Class A common stock ("Olo's common stock") fell approximately 36%, erasing over $480 million of shareholder value. *Id.,* ¶181.

19.    Defendants have denied, and continue to deny, all of Class Representative's allegations, and any liability therefrom.

**B.** **Procedural History of the Action**

    **1.** **STA-ILA and Scott+Scott Investigated the Claims, Prepared the Amended Complaints, and Succeeded in Obtaining from the Court Orders Denying in Part Defendants' Motions to Dismiss**

20.    On September 26, 2022, Pompano Beach Police and Firefighters' Retirement System filed the initial complaint in the Action. ECF No. 1. Following an application to serve as Lead Plaintiff, on December 21, 2022, the Court appointed STA-ILA to that role, and appointed Scott+Scott as Lead Counsel. ECF No. 30.

21.    Thereafter, STA-ILA undertook an extensive investigation before filing an amended complaint. Among other things, this included:

    (a)    collecting and thoroughly reviewing Olo's filings made with the U.S. Securities and Exchange Commission ("SEC");

    (b)    collecting and thoroughly reviewing analyst reports and news stories regarding Olo;

    (c)    collecting and thoroughly reviewing transcripts of press conferences, analyst conference calls, and industry conferences regarding Olo; and

    (d)    identifying, locating, and contacting former Olo employees who may have relevant information.

22.    On January 13, 2023, STA-ILA filed the Amended Class Action Complaint for Violations of Federal Securities Laws ("FAC") alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants Olo, Glass, and Benevides on behalf of itself and all persons and entities that purchased shares of Olo's common stock between August 10, 2021 and August 11, 2022, inclusive. ECF No. 38. The FAC alleged Defendants made materially false and misleading statements and/or material omissions relating to Olo's active locations and Olo's relationship with Subway. *Id.*

23.    On February 3, 2023, Defendants moved to dismiss the FAC, asserting that the FAC fails to allege a strong inference of scienter, any actionably false or misleading statements or omissions, and plead loss causation.  ECF Nos. 39-40.  STA-ILA filed its opposition on February 24, 2023, ECF No. 44, and on March 3, 2023, Defendants filed a reply in support of their motion, ECF No. 45.  On March 28 and 29, 2023, the Court heard oral arguments on Defendants' Motion to Dismiss the FAC.

24.    On April 10, 2023, the Court issued a "bottom-line" order denying Defendants' Motion to Dismiss the FAC.  ECF No. 50.

25.    On July 25, 2023, the Court issued a full order on Defendants' Motion to Dismiss the FAC, reconfirming its April 10, 2023 bottom-line order, while dismissing the FAC's Subway allegations and sustaining the FAC's active locations allegations against all Defendants.  ECF No. 71.

26.    After the Court granted STA-ILA leave to amend the pleadings, on August 9, 2023, STA-ILA filed the SAC on behalf of itself and all persons and entities that purchased shares of Olo's common stock between March 17, 2021 and August 11, 2022, inclusive, a Class Period that encompassed Olo's IPO.  ECF No. 72.  In advance of the filing of the SAC, STA-ILA pursued further investigation of Defendants, and reviewed and analyzed the extensive document and deposition discovery that was then underway, incorporating its findings into the SAC and conforming the complaint to the evidence.  *Infra* §II.B.2.

27.    The SAC realleged the FAC's two principal allegations – (i) the prior, sustained active locations allegations, and (ii) the dismissed Subway allegations, repleaded as a theory predicated on Defendants' issuance of a risk disclosure that STA-ILA alleged had already come to pass – and added two new categories of allegations: (iii) that Defendants materially misled

investors about Olo's likelihood of success in the enterprise market, particularly in light of what STA-ILA alleged as the then allegedly existing trend of large restaurants opting to build their own software in-house, and (iv) that Defendants materially misled investors about the Company's financial position and prospects.  ECF No. 72.

28.     On August 24, 2023, Defendants moved to dismiss the SAC, again asserting that the SAC failed to plead any actionably false or misleading statements or omissions, a strong inference of scienter, and loss causation.  ECF Nos. 74-75.  STA-ILA filed its opposition on September 7, 2023, ECF No. 79, and on September 14, 2023, Defendants filed a reply in support of their motion, ECF No. 83.  On September 20, 2023, the Court heard oral arguments on Defendants' Motion to Dismiss the SAC.

29.     On September 26, 2023, the Court issued a "bottom-line" order sustaining only the SAC's active locations allegations, dismissing all other allegations, including the re-pled Subway allegations and the newly-pled allegations about Olo's prospects in the enterprise market and financial prospects.  ECF No. 84.  The Court also dismissed the remaining §10(b) claim against Defendant Benevides, while sustaining the surviving active locations allegations against the Company and Defendant Glass.  *Id.*

30.     On December 1, 2023, the Court issued a full order on Defendants' Motion to Dismiss the SAC, confirming its September 26, 2023 ruling.  ECF No. 105.

### 2.     STA-ILA and Scott+Scott Navigated the Action Through the Completion of Fact and Expert Discovery

31.     Immediately after the Court issued its (first) "bottom-line" order denying Defendants' Motion to Dismiss the FAC on April 10, 2023 (ECF No. 50), discovery began in earnest as STA-ILA issued requests for production of documents ("RFPs") to all Defendants and subpoenas for documents to six third parties, comprised of multiple of Olo's enterprise restaurant

clients, Olo's public accounting firm, Olo's investor relations firm, and an investment group, whose CEO is a member of Olo's Board of Directors and at which Olo CEO Glass previously worked. Simultaneously, Defendants issued RFPs to STA-ILA and subpoenas to STA-ILA's investment manager (Brown Capital Management, LLC) and investment advisor (Investment Performance Services, LLC), in connection with STA-ILA's then-forthcoming class certification motion. *Infra* §II.B.3.

32.    At the same time, the Parties served interrogatories on each other (and shortly after provided responses and objections thereto) and provided initial disclosures.

33.    Over the course of April through September 2023, STA-ILA, Defendants, and the third parties made numerous document productions. In sum, STA-ILA produced 338 documents (roughly 11,000 pages), Defendants produced approximately 75,000 documents (roughly 435,000 pages), and the eight third parties produced over 25,200 documents (roughly 83,000 pages). In total, over 100,000 documents, comprising approximately 530,000 pages of material, were produced and reviewed.

34.    Between May and December 2023, the Parties took 18 depositions in the Action (including multiple on consecutive days and, with respect to Defendant Glass and an Olo financial officer, simultaneously on the same day), which comprised of: (a) depositions of two representatives of STA-ILA; (b) a representative of STA-ILA's investment manager; (c) depositions of the two Individual Defendants; (d) depositions of nine current and former Olo employees; (e) two depositions of STA-ILA's market efficiency/damages expert; (f) a deposition of Defendants' loss causation and damages expert, and (g) a deposition of Defendants' investments expert.

35.    The Parties also filed or exchanged nine expert reports between June and December 2023, comprised of: (a) STA-ILA's three market efficiency reports in support of its class certification motion (*infra* §II.B.3); (b) STA-ILA's three damages/loss causation reports; (c) STA-ILA's trends in the enterprise market report; (d) Defendants' damages/loss causation report; and (e) Defendants' information available to Olo's investors' report.[2]

### 3.    The Court Certified the Class and Appointed STA-ILA as Class Representative and Scott+Scott as Class Counsel

36.    On June 5, 2023, STA-ILA filed a motion for class certification. ECF No. 57. As noted above, accompanying STA-ILA's Motion was an expert report in support, and two representatives of STA-ILA and one of STA-ILA's investment manager were deposed.[3]  On June 14, 2023, STA-ILA's market efficiency/damages expert was deposed for the first (of two) times in the Action. On June 26, 2023, Defendants filed their opposition to STA-ILA's Motion, ECF No. 64, and on July 17, 2023, STA-ILA filed a reply in support of its Motion, ECF No. 69. Oral argument, for which Class Counsel had begun preparing, was scheduled for July 28, 2023.

37.    Following the Court's July 25 and September 26, 2023 orders on Defendants' motions to dismiss and the filing of the SAC, on October 6, 2023, STA-ILA filed an amended class certification motion, incorporating the new class period. ECF No. 90. Accompanying the

---

[2]    STA-ILA's Original Market Efficiency Report was filed on June 5, 2023. Two of STA-ILA's expert reports – STA-ILA's Damages and Trends in the Enterprise Market reports – were filed on July 25, 2023, the same day the Court issued its full order on Defendants' Motion to Dismiss the FAC. And six of the Parties' expert reports – STA-ILA's October 6, 2023 supplemental market efficiency report, October 27, 2023 supplemental revised damages report, November 13, 2023 Second Supplemental Market Efficiency Report and December 6, 2023 Expert Reply Report of Micah S. Officer, and Defendants' November 22, 2023 Damages and Information Available to Olo's Investors reports – were filed in the months of October, November, and December 2023.

[3]    The two STA-ILA representatives were deposed on June 7 and 8 and the investment manager was deposed on June 20.

amended motion was another expert report in support. Defendants filed their opposition on October 13, 2023, ECF No. 94, and STA-ILA filed a reply in support on October 20, 2023, ECF No. 95. On October 27, 2023, the Court heard oral arguments on STA-ILA's Class Certification Motion.

38.    On October 30, 2023, the Court issued an order directing the Parties to brief the issue of whether STA-ILA's market efficiency/damages expert would be able to disaggregate the dismissed Subway allegations from a Class-wide damages calculation. ECF No. 98. On November 13, 2023, STA-ILA's market efficiency/damages expert filed a report in further support of class certification, demonstrating his methodology for how to calculate damages on a Class-wide basis that disaggregated the drop in Olo's common stock price attributable to the Subway-specific portion of the August 11, 2022 disclosure that STA-ILA had alleged constituted a corrective disclosure and/or materialization of an undisclosed risk. ECF No. 102-1. On November 20, 2023, Defendants filed a supplemental brief in further opposition to STA-ILA's Motion for Class Certification, ECF No. 103, and on November 27, 2023, STA-ILA filed a supplemental reply in further support of its Motion, ECF No. 104.

39.    On December 1, 2023, the Court issued a "bottom-line" order certifying the Class and appointing STA-ILA as Class Representative and Scott+Scott as Class Counsel. ECF No. 106. The certified Class is defined as all persons and entities that purchased or otherwise acquired shares of Olo's Class A common stock between March 17, 2021 and August 11, 2022, inclusive, and who were damaged thereby. Excluded from the Class are any of the Defendants, Olo's officers and directors, members of their immediate families, legal representatives, heirs, successors or assigns, and any entity in which they have or had a controlling interest.

40.     Following the Parties' settlement-in-principle (*infra* §II.B.4), on December 18, 2023, the Court entered an order confirming that "[t]he Court's bottom-line ruling of December 1, 2023, certifying the class will stand."  ECF No. 112.

### 4.     STA-ILA and Scott+Scott Participated in an All-Day Mediation Session that Culminated in the Proposed Settlement

41.     Shortly after the Court issued the April 10, 2023 Order on Defendants' Motion to Dismiss, the Parties agreed to retain Robert A. Meyer, Esq., of JAMS (the "Mediator"), a mediator with extensive experience in complex litigation, including securities class actions.

42.     In advance of the mediation, the Parties exchanged detailed mediation statements (and exhibits thereto) highlighting the factual and legal issues in dispute and had pre-mediation calls and emails with the Mediator.  In connection with the mediation, Class Counsel also consulted with STA-ILA's damages consultants.

43.     On July 6, 2023, the Parties held an in-person mediation session with the Mediator in Los Angeles, California.  Though the Parties did not reach an agreement to settle the Action at that mediation session, they continued their negotiations through the Mediator in the months thereafter while they simultaneously litigated the Action, as described above.

44.     On Friday, December 15, 2023, the Mediator issued a "mediator's proposal" to settle the Action for $9,000,000, which the Parties thereafter accepted.

45.     The following Monday, December 18, 2023, the Court entered an order staying all case deadlines, directing the Parties to file a stipulation of settlement no later than January 16, 2024, and, as discussed above, confirming the Court's prior order certifying the Class.  ECF No. 112.

### 5. STA-ILA and Scott+Scott Finalized the Stipulation, Sought and Obtained Preliminary Approval of the Proposed Settlement, and if Approved, Will Oversee Administration of the Proposed Settlement

46. Following their agreement to settle in principle, the Parties negotiated formal settlement documentation, including the Stipulation, Class and Summary Notices, Proof of Claim and Release Form ("Proof of Claim"), and proposed orders, which were filed with the Court in connection with Class Representative's Unopposed Motion for Preliminary Approval of Class Action Settlement on January 16, 2024. ECF Nos. 113-116.

47. Pursuant to the Court's February 20, 2024 Preliminary Approval Order, in which the Court granted preliminary approval of the proposed Settlement and appointed Kroll Settlement Administration ("Kroll" or the "Claims Administrator") as the Claims Administrator, Kroll, under Class Counsel's supervision, carried out the approved notice program. As further detailed in the accompanying Declaration of Robert Cormio Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Cormio Declaration") (Ex. 1), on behalf of Kroll, this included: mailing the Notice and Proof of Claim to potential Class Members and their nominees identified through records, publishing the Summary Notice in *The Wall Street Journal* and transmitting it over the *Business Wire*, and establishing a website for Class Members regarding the Settlement along with a toll-free number for Class Members to contact the Claims Administrator with any inquiries.

48. Finally, Class Counsel has prepared and coordinated all the filings in support of the pending Final Approval Motion and will continue to oversee the Settlement should that Motion be approved.

**III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND MERITS FINAL APPROVAL**

    **A.    The Proposed Settlement Comports with Other Settlements in This Circuit**

49.    As noted above, after prosecuting this Action through the close of fact and expert discovery, the Parties reached a $9.0 million Settlement.  From 2014 through 2023, the median class action securities settlement amount in the Second Circuit was $8.9 million.  Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2023 Review and Analysis*, CORNERSTONE RESEARCH, https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf, at 20.    Therefore, when compared against other similarly situated securities actions, the proposed Settlement represents an above-average recovery.

50.    The result is also notable when viewed in light of the substantial risks that this Action and continued litigation entail (discussed below), which, absent the proposed Settlement, could readily result in a smaller recovery or no recovery at all.

    **B.    The Proposed Settlement Provides a Very Favorable Recovery in Light of the Significant Litigation Risks Faced by Class Representative and Class Counsel**

51.    While Class Representative and Class Counsel believe that the claims against Defendants have substantial merit, they also recognize that there are considerable risks involved in pursuing the Action through the completion of summary judgment, trial, and appeal.

52.    As noted above, all elements of liability were vigorously disputed by Defendants and at the motion to dismiss stage, Defendants succeeded in obtaining dismissal of all claims beyond the SAC's active locations allegations and achieved dismissal of Defendant Benevides. As the Court noted in its December 1, 2023 Order on Defendants' Motion to Dismiss, at that stage of an action, "[t]he Court must 'constru[e] the compliant liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'"  ECF No.

105 at 3-4 (quoting *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).  The stages in which the Court and finders of fact would test the legal sufficiency of and resolve the factual disputes in the case – summary judgment and later trial – presented Class Representative with serious risks that weighed in favor of settlement.

### 1.    Risks of Proving Liability

53.    As discussed in ¶¶23, 28, *supra*, Defendants vigorously disputed whether any of the alleged misstatements and omissions were material or even misleading.

54.    Throughout litigation, Defendants consistently and vigorously asserted that the challenged statements are accurate statements of fact, inactionable puffery or opinions, and that STA-ILA's active locations allegations and calculations are incorrect.

55.    For similar reasons, Defendants maintained that the SAC failed to allege that the challenged statements were made with scienter.  Instead, Defendants adamantly asserted that they believed their statements were truthful when made and that the statements were not made with an intent to deceive or severe recklessness.

56.    While Class Representative and Class Counsel have substantial responses to Defendants' arguments, a successful outcome was not guaranteed, and the uncertainty of establishing false and untrue statements, along with scienter, weighs strongly in favor of approving the Settlement.

### 2.    Risks Related to Loss Causation and Damages

57.    Even if Class Representative and Class Counsel were able to establish falsity and scienter, there is also the risk that they would not prevail on the important issues of loss causation and damages.  At summary judgment, Defendants were prepared to challenge STA-ILA's damages expert's proposed damages methodology as unreliable.  As Defendants' experts stated in their reports and at their depositions, Defendants would argue that macroeconomic and other events

unrelated to Class Representative's remaining active locations claim led to the stock price decline, and that numerous separate disaggregation steps would be required. Resolving the Parties' damages dispute would likely have come down to an unpredictable and hotly disputed "battle of the experts." And, Defendants had informed Class Representative that they intended to imminently file a *Daubert* challenge of Class Representative's damages expert, which, if granted by the Court, would have seriously imperiled the Action.[4]

58.     Class Representative and Class Counsel have strong responses to these arguments, including that the SAC properly alleges loss causation due to both corrective disclosures and materialization of concealed risks, and that the damages methodology outlined by STA-ILA's damages/loss causation expert, adequately established damages. However, had Defendants prevailed on any of these arguments, it would have dramatically reduced or eliminated recoverable damages. This uncertainty also militates strongly in favor of approving the Settlement.

### 3.     Risks at Summary Judgment and Trial

59.     The Parties informed the Court that they had reached a settlement in principle just two days before the filing of opening summary judgment briefs and the final pre-trial conference was scheduled for February 1, 2024.

60.     As noted herein, summary judgment and trial each presented Class Representative and Class Counsel with multiple risks, including that the finder of fact would agree with Defendants and that damages would be substantially lower than the Settlement Amount – or even zero.

---

[4]     Two days after the cut-off of expert discovery, the Parties held a joint call with the Court on December 15, 2023, in which the Parties sought to obtain a briefing schedule for filing *Daubert* motions.

### 4. Appellate Risks

61.    Finally, even if Class Representative and Class Counsel overcame all of the foregoing risks before this Court and at trial, if the Parties' litigation experience in this hard-fought case is any guide, it is extremely likely that Defendants would then file post-verdict motions, followed by further appeals on all of these issues. This not only increases the overall litigation risk, but also highlights the extent to which, absent a settlement, litigating this case to finality would have required the Settlement Class to potentially wait additional years and undertake additional expense before being able to collect any recovery. By comparison, the proposed Settlement represents a favorable recovery, as well as a certain and immediate one.

## IV. THE PLAN OF ALLOCATION IS CUSTOMARY, FAIR, AND REASONABLE

62.    To receive a distribution from the Net Settlement Fund, Class Members will be required to submit a Proof of Claim form. The Proof of Claim form was mailed with the Notice and is also available on the Settlement website.[5] Claimants will have the option of completing the form online and uploading supporting documentation, or emailing or mailing them to the Claims Administrator. Kroll will review the claim forms and supporting documentation submitted, provide an opportunity to cure any deficiencies, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund in accordance with the proposed Plan of Allocation.

63.    The proposed Plan of Allocation was developed by STA-ILA's damages consultants and is similar to the plans approved in other securities fraud cases. The recovery of individual Settlement Class Members under the Plan of Allocation will be applied in the same manner to all Settlement Class Members. That common application will depend on several factors,

---

[5]    Notice by U.S. mail and publication plainly satisfies Fed. R. Civ. P. 23(c)(2)'s requirement that class members receive "'the best notice practicable under the circumstances.'" *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992).

including: the aggregate value of the Recognized Claims from valid Proofs of Claim submitted by Class Members; when the Class Member's shares were purchased and/or acquired and the price at the time of purchase and/or acquisition; and whether the shares were sold, and if so, when they were sold and for how much.  Thus, the Plan of Allocation is fair and equitable.

64.     After deducting any attorneys' fees and expenses approved by the Court, notice and administration costs, and any taxes, the Net Settlement Fund will be distributed to authorized Claimants (Class Members who submit timely and valid Proof of Claims) on a *pro rata* basis in accordance with the Plan of Allocation.  If there is sufficient money left in the Net Settlement Fund from unclaimed payments after the initial distribution, Kroll will make successive distributions under the same methodology as long as it is economically feasible to do so.  Any balance that still remains in the Net Settlement Fund after such distributions, which is not feasible or economical to reallocate, will be contributed to Legal Services NYC, or any other such non-profit organization as the Court may designate.  (Neither Class Representative nor Class Counsel has any relationship to Legal Services NYC).

65.     To date, there have been no objections filed to the Plan of Allocation, and Class Representative and Class Counsel respectfully submit that the Plan of Allocation is fair and reasonable and should be approved.

## V.     CLASS COUNSEL'S FEE APPLICATION IS REASONABLE

66.     Class Counsel respectfully requests an attorneys' fee award of 25% of the Settlement, and the accrued interest thereon.  The request is consistent with the noticed amount, the excellent result achieved, the complex and extensive work performed, and is fully supported by Plaintiff, who is a sophisticated institutional investor.  As further detailed in the accompanying Fee and Expense Motion, an award of 25% of the Settlement amount is commonly granted by New York federal courts, and other courts throughout the country, in similar securities cases.  *See also*

Ex. 4 (listing recent securities settlements in which the court granted fees of 25% or more and in which the settlement class recovered as low as $0.025 per share).

67.    As further detailed in the accompanying Fee and Expense Motion, the fee request satisfies all of the factors that courts commonly consider when assessing such requests.

### A.    The Result Obtained

68.    The result achieved is an important factor to be considered in making a fee award. Here, the Settlement Amount of $9,000,000 is a very favorable recovery both from the perspective of other securities class actions in this Circuit (*supra* ¶49) and in light of the significant risks that continued litigation entails.

69.    The significance of the Settlement is also demonstrated by the numerous obstacles that Class Counsel overcame in order to achieve it, including Defendants' attempts to dismiss the case, the complexity of the claims, and the considerable risks and costs that the litigation already entailed.  *See supra* §§II., III.B; Final Approval Motion §II.E.

### B.    Time, Labor, and Fee Percentage Requested

70.    Over the course of litigating the Action to the point of opening summary judgment briefs, Class Counsel's vigorous prosecution included such numerous tasks as:

(a)    reviewing and analyzing the representations made by Defendants in SEC filings, investor and industry presentations, on conference calls, and in press releases before, during, and after the Class Period;

(b)    reviewing and analyzing securities analyst reports and comprehensive news reports, press releases, and other media files concerning Olo;

(c)    researching and communicating with former Olo employees;

(d)    reviewing, analyzing, researching, and filing two detailed amended complaints;

(e)     drafting responses to Defendants' two motions to dismiss the Action, preparing and appearing for oral arguments on them, and prevailing in part;

(f)     issuing document requests and interrogatories to Defendants, undertaking extensive meet and confers with the Defendants to ensure that they undertook a satisfactory search and production of documents, and issuing subpoenas for documents to six third parties (and related meet and confer conversations);

(g)     reviewing over 100,000 documents (comprising approximately 520,000 pages of material) produced by Defendants and numerous third parties;

(h)     drafting responses to Defendants' document requests and interrogatories and collecting, reviewing, and producing to Defendants on behalf of STA-ILA 338 documents (comprising approximately 11,000 pages of material);

(i)     preparing two representatives of STA-ILA for their depositions and defending those depositions;

(j)     preparing STA-ILA's market efficiency/damages expert for two depositions and defending those depositions; preparing for, attending, and defending STA-ILA at the deposition of a representative of STA-ILA's investment manager;

(k)     drafting (twice) STA-ILA's Class Certification Motion and amendment thereto (and working closely with STA-ILA's market efficiency/damages expert in drafting multiple expert reports in support of), drafting replies in support of the Motion following the filing of Defendants' oppositions to the Motion, appearing for oral arguments thereto, and prevailing;

(l)     working with STA-ILA's market efficiency/damages expert in drafting multiple damages reports;

(m)    working with STA-ILA's enterprise restaurants technology expert in drafting a

report on trends in the enterprise market;

(n)    preparing for and taking (and/or defending STA-ILA at) the depositions of nine

current and former Olo employees, and Defendants' damages expert and

Defendants' investments expert;

(o)    preparing a detailed mediation statement (and exhibits thereto) highlighting the

factual and legal issues in dispute and attending pre-mediation calls and emails with

the Mediator;

(p)    preparing for and participating in an all day, in-person mediation session on July 6,

2023, with the Mediator;

(q)    participating in follow-up negotiations with the Mediator culminating in the

proposed Settlement; and

(r)    preparing the proposed Settlement and preliminary approval papers, the final

approval papers, and overseeing the notice and claims process.

71.    While Class Counsel makes this fee request based on a percentage-of-recovery

methodology, using the lodestar approach as a cross-check further establishes the reasonableness

of the requested fee. *See* Fee and Expense Motion §III.2. In total, Class Counsel and their

paraprofessionals expended 7,279.4 hours prosecuting the Action through February 20, 2024, the

date the Court issued the Preliminary Approval Order, which resulted in a lodestar of

$6,237,999.50. Declaration of Daryl F. Scott on Behalf of Scott+Scott Attorneys at Law LLP in

Support of Application for Award of Attorneys' Fees and Expenses ("Scott+Scott Declaration"),

¶4. *See* Ex. 2. The requested fee of 25%, or $2,250,000, represents a "negative" multiplier of

approximately 0.36.  That is, the requested fee would award Class Counsel less than the lodestar they expended in hard-fought litigation securing the proposed Settlement for the Class.

### C.    The Risk, Magnitude, and Complexity of the Litigation

72.    The Action involved complex issues of law and fact that presented considerable obstacles to prevailing on the claims.  As noted above (at §III.B) and in the accompanying Memoranda, this Action was subject to substantial risks, including liability, causation, and damages.  Given these and other risks, along with Defendants' commitment to advocating their position and the complexity of the claims, a favorable resolution was never assured in this Action, and certainly not a quick or substantial one.

73.    When Class Counsel undertook this representation, there was no assurance that the Action would survive multiple motions to dismiss and contentious briefing on class certification, and then summary judgment, trial, and/or any appeals.  There was no assurance that Class Counsel would recover any payment whatsoever for its services.

74.    Class Counsel prosecuted this Action on a contingent-fee basis, assuming a significant risk that the Action would not result in any recovery and that it would not receive any compensation.  To date, Class Counsel has not been compensated for any time or expense since the Action's inception.

75.    Therefore, the contingent nature of Class Counsel's representation, especially under the foregoing circumstances, supports the percentage fee requested.  It is also notable that, unlike many class actions where risk is spread and expenses are shared by several firms working on a case, Scott+Scott investigated, filed, and prosecuted this case entirely by itself, and bore the entire risk of non-payment by itself.

### D.    Quality of the Representation

76.    Class Counsel worked diligently to obtain an exceptional result for the Class.  From the outset, Class Counsel devoted significant time and resources to researching and investigating the facts to support a pleading that could survive a motion to dismiss and obtain class certification. Class Counsel also spent significant time navigating this Action through discovery, while simultaneously analyzing potential defenses and preparing for summary judgment and trial.  The theories of damages and financial and technological issues that were articulated in both amended complaints and explored in discovery and numerous expert reports were complex, and Class Counsel's success in litigating this case up to the point of summary judgment speaks to its quality of representation.

77.    As noted above and in the Firm Resume, attached as Ex. F to the Scott+Scott Declaration, Class Counsel has extensive and significant experience in the highly specialized field of securities class action litigation.  This experience was evident in the diligent and rigorous work undertaken by Class Counsel in prosecuting this Action and arriving at the proposed Settlement in the face of Defendants' strong opposition and the many hurdles to success.

78.    The quality of work performed by Class Counsel in attaining the proposed Settlement should also be evaluated in light of the quality of the opposition.  Defendants were represented by skillful and experienced counsel, Goodwin Procter LLP.  Defense Counsel presented a thorough and thoughtful defense, and challenged Class Counsel at every turn in the Action.  Class Counsel was nevertheless able to achieve a favorable proposed Settlement for the Class.

### E.    Class Representative's Informed Consent to the Fee Request

79.    Class Counsel's fee and expense request has the full support of Class Representative, who is a sophisticated institutional investor.  STA-ILA Declaration, ¶¶11-12.

When Class Representative retained Class Counsel to prosecute the Action, both Class Representative and Class Counsel understood that Class Counsel would be compensated on a purely contingent basis and would only be paid if successful, subject to Court approval. Class Representative supports the request for a fee award as fair and reasonable, in light of the favorable result achieved, and substantial effort necessary to achieve it. *Id.*

## VI.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY LITIGATION EXPENSES IS REASONABLE

80.    Class Counsel also requests payment of expenses incurred in connection with the prosecution of this Action in the amount of $731,204.77, plus accrued interest, which it incurred on behalf of the Class. *See* Scott+Scott Declaration ¶6 and Ex. D to the Scott+Scott Declaration. This amount is below the $750,000 maximum expense amount that the Settlement Class was advised could be requested in the Notice. Class Counsel has not received any reimbursement for these expenses to date. Again, Class Representative supports this request. *See* STA-ILA Declaration ¶¶11-12.

81.    From the beginning of this Action, Class Counsel was aware that it might not recover any of its expenses and, at the very least, would not recover anything until this Action was successfully resolved. Class Counsel closely managed its expenses throughout the Action, including negotiating strict fee caps with its expert consultants, while always ensuring they took all steps necessary to aggressively prosecute Class Representative's claims.

82.    The requested expenses reflect typical expenditures incurred in the course of litigation.

83.    For example, of the total amount of expenses, $472,710.00, or approximately 65%, was expended on experts and consultants. To that point, on behalf of STA-ILA, Class Counsel retained an expert to opine on market efficiency and damages, Dr. Micah S. Officer ("Dr. Officer"),

who wrote three reports on market efficiency, all in support of Class Representative's Class Certification Motions, and three reports on damages, and sat for two depositions. Dr. Officer was also supported by Forensic Economics, Inc. ("Forensic Economics"), a consulting firm that also provided damages analysis for Class Representative and Class Counsel and helped prepare the Plan of Allocation. Further, Class Counsel also retained Peter Nagel, an enterprise restaurants technology expert, to analyze technology trends in large restaurant chains and prepare an expert report. All of this work was critical to the overall prosecution of the Action.

84.     Another significant area of expenses relates to discovery costs. As noted above, STA-ILA, Defendants, and eight third parties collectively produced over 100,000 documents, comprising approximately 530,000 pages of material. Class Counsel therefore seeks $28,579.03 (approximately 4% of total expenses) relating to litigation support services, such as the costs associated with electronic discovery. Additionally, one third party that Class Representative issued a subpoena to requested partial reimbursement for costs incurred in locating, reviewing, storing, and producing the sought-after documents. Class Counsel, on behalf of Class Representative, negotiated a cost structure with that third party, resulting in payments of $48,943.33 to the third party (approximately 7% of total expenses). Finally, deposition costs, including payment for court reporters, videographers, and transcripts, totaled $74,251.74 (approximately 10% of total expenses).

85.     Mediation fees were an additional $11,946.20 (approximately 2% of total expenses).

86.     Class Counsel also seeks reimbursement in the amount $36,399.74 (approximately 5% of total expenses) for its case-related travel, including round-trip air and train fare to and from

multiple meetings with STA-ILA, numerous depositions, court appearances, and an in-person mediation.

87.    Additionally, as noted above, the Parties took nine depositions of current and former Olo employees.  Included in these deponents were multiple of the amended complaints' confidential witnesses, two of whom were represented by McManis Faulkner PC ("McManis").  Following the confidential witnesses' receipt of the deposition subpoenas, Class Counsel offered to pay all of the attorneys' fees incurred by the confidential witnesses in connection with their depositions.  As a result, Class Counsel seeks reimbursement in the amount of $28,772.57 (approximately 4% of total expenses) for the attorneys' fees paid to McManis for that firm's representation of the confidential witnesses in this Action.

88.    The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  The expenses include filing and service of process fees, online legal and factual research fees, mailing and delivery fees, and printing and duplicating fees.

89.    As set forth in the Scott+Scott Declaration, these expenses are reflected in the books and records of Class Counsel, which are accurately prepared from invoices and similar materials.

90.    Accordingly, as these expenses were reasonably necessary to the prosecution of the Action, Class Counsel respectfully submits that they merit reimbursement.  Additionally, Class Representative supports these requests as well.  *See* STA-ILA Declaration ¶¶11-12.

## VII.    CLASS REPRESENTATIVE'S REQUESTED AWARD IS FAIR AND REASONABLE

91.    Class Representative requests an award for the time and expenses it incurred prosecuting the Action on behalf of the Settlement Class in the amount of $50,000.  Of note, Class

Representative employed Fund Counsel to provide a cross-check on Class Counsel and to ensure its interests' were represented.

92.     As discussed in the STA-ILA Declaration, Class Representative has diligently fulfilled its obligations to the Settlement Class since the Action's inception, including:

(a)     responding to Defendants' requests for production of documents and interrogatories;

(b)     searching for and producing 338 documents (totaling roughly 11,000 pages);

(c)     preparing for and then sitting for two class representative depositions;

(d)     attending five depositions of Defendants' current and former employees;

(e)     attending the deposition of STA-ILA's market efficiency expert;

(f)     conferring with Lead Counsel concerning mediation;

(h)     reviewing the expert reports filed in the Action;

(i)     communicating regularly with Scott+Scott and STA-ILA's outside counsel ("Fund Counsel") telephonically and via email regarding the status of the Action, as well as receiving and reviewing status reports provided to STA-ILA by Scott+Scott;

(j)     reviewing, editing, and approving pleadings and filings, including the SAC and the Oppositions to Defendants' Motion to Dismiss the SAC; and

(k)     reviewing and approving the preliminary approval filings, including the Stipulation and Agreement of Settlement and Release, and preparing for and attending one of the preliminary approval hearings.

*Id.,* ¶¶7.  In total, STA-ILA staff, members of its Board of Trustees, STA-ILA's President, and STA-ILA's Co-Administrator spent a collective 206 hours prosecuting the Action, costing in excess of $30,000 of STA-ILA's time.  These efforts required STA-ILA to dedicate time and

resources to this Action that it would have otherwise devoted to STA-ILA's primary duties – operating a multi-employer defined benefit pension plan.

93.     Additionally, STA-ILA's Fund Counsel was included in most emails and videoconferencing communications between Scott+Scott and STA-ILA, helped review and edit legal filings, assisted Scott+Scott in preparing two STA-ILA representatives for their depositions, attended major arguments, and advised STA-ILA about the adequacy of the proposed Settlement. *Id.,* ¶6.  In total, STA-ILA has paid Fund Counsel $59,250 for the 158 hours they spent assisting STA-ILA in prosecuting the Action.  *Id.,* ¶14.  Therefore, between Fund Counsel fees and its own costs, STA-ILA has expended almost $90,000 in this Action, well above what it seeks.

94.     The Notice informed potential Settlement Class Members of Class Representative's intent to request reimbursement for its time and expenses prosecuting this Action of up to $50,000, and the requested amount not only does not exceed that amount, but does not cover the entirety of STA-ILA's out-of-pocket payments to Fund Counsel, let alone that amount combined with the time its staff spent on the Action.

95.     The efforts expended by Class Representative during the course of this Action are precisely the types of activities courts have found merit reimbursement, and the amount sought is fair and reasonable.  Such requests have been granted in similar cases and are supportive of the broad public policy that encourages institutional investors to take an active role in commencing and supervising private securities litigation.

## VIII.   THE REACTION OF THE CLASS TO DATE SUPPORTS FINAL APPROVAL, CLASS COUNSEL'S FEE AND EXPENSE APPLICATION, AND THE PROPOSED SERVICE AWARD FOR CLASS REPRESENTATIVE

96.     The Court-ordered notice program, described above, informed Class Members of the proposed Settlement's material terms, the Plan of Allocation, the potential amounts of fees and reimbursement that Class Counsel would seek, the potential award Class Representative would

seek, and of the time and manner by which they could object to any of the above or exclude themselves from the Settlement Class altogether.

97.    As set forth in the accompanying Cormio Declaration, ¶11, 24,346 copies of the Notice and Proof of Claim have been mailed to potential Settlement Class Members and nominees. In addition, copies of the Notice were posted on the Settlement website, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*.

98.    The deadline for submitting objections or exclusions is May 20, 2024.

99.    Although that deadline has not yet passed, as of the date of this Declaration, the Claims Administrator has not received any requests for exclusion from the Settlement Class. Additionally, even though Class Members were instructed to file any objections they may have by the foregoing deadline, to date, no potential Class Member has submitted any objection.[6]

100.    This reaction of the Class indicates support for, and the reasonableness of, finally approving the settlement and approving the fee and expense requests.

IX.    **CONCLUSION**

101.    In light of the significant recovery to the Settlement Class and the substantial risks of continued litigation, as described above and in the accompanying Memoranda, Class Counsel respectfully submits that the proposed Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate.

102.    For the same reasons, and in light of the substantial work performed, Lead Counsel respectfully submits that the Court should award attorneys' fees in the amount of 25% of the

---

[6]    If any objections or exclusions are received prior to the Final Approval Hearing, Class Counsel will inform the Court and address them in reply papers.

Settlement, plus $731,204.77 in expenses, and the interest earned on those amounts at the same rate and for the same period as that earned on the Settlement Fund.

103.    Similarly, Class Representative respectfully submits that the Court should grant its request for $50,000 in reimbursement for the time and expenses it incurred representing the Settlement Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on May 6, 2024.

  *s/ Amanda F. Lawrence*
Amanda F. Lawrence

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

_s/ Amanda F. Lawrence_
Amanda F. Lawrence
