**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMSHIP TRADE ASSOCIATION OF BALTIMORE – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLO INC., NOAH GLASS, and PETER BENEVIDES, <br><br> Defendants. | Case No. 1:22-cv-08228-JSR <br><br> CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**<u>CLASS DISTRIBUTION ORDER</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

I.    CLAIMS ADMINISTRATION TO DATE.................................................................... 2

    A.    Identification of Deficiencies in Claims .................................................. 3

    B.    Issuance of Deficiency Letters................................................................. 4

    C.    Processing of Late Claims and Claims Bar Date .................................... 5

    D.    Quality Assurance Review........................................................................ 6

II.    DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUND...................... 7

III.    RECORD RETENTION AND DESTRUCTION ............................................................ 10

IV.    NOTICE AND ADMINISTRATION EXPESNES.......................................................... 10

V.    PAYMENT OF REMAINING 50% OF ATTORNEYS' FEES ..................................... 10

CONCLUSION................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am., Corp.*,
   No. 14-CV-7126 (JMF), 2020 WL 916853 (S.D.N.Y. Feb. 26, 2020)....................................10

*Blank v. Jacobs*,
   No. 03-cv-2111, 2013 WL 1310503 (E.D.N.Y. Mar. 27, 2013)..................................................4

*In re Bear Stearns Cos., Inc. Sec., Derivative, & Erisa Litig.*,
   No. 08 CIV. 2793, 2014 WL 3401045 (S.D.N.Y. July 10, 2014) ..............................................4

*In re Citigroup Inc. Sec. Litig.*,
   199 F. Supp. 3d 845 (S.D.N.Y. 2016)......................................................................................10

*In re Citigroup Inc. Secs. Litig.*,
   No. 09 MD 2070, 2014 WL 2445714 (S.D.N.Y. May 30, 2014) ..............................................3

*In re Goldome Secs. Litig.*,
   No. 88 Civ. 4765, 1991 WL 113263 (S.D.N.Y. June 20, 1991)............................................4, 5

Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund ("STA-ILA" or "Class Representative"), by and through its undersigned Counsel, respectfully submits this Memorandum of Law in Support of its Motion for Class Distribution Order.[1]  The proposed plan for distributing the Net Settlement Fund is set forth fully in the accompanying Declaration of Robert Cormio in Support of Motion for Class Distribution Order (the "Cormio Declaration" or "Cormio Decl.") on behalf of the Court-approved Claims Administrator, Kroll Settlement Administration LLC ("Kroll").

## INTRODUCTION

On June 17, 2024, the Court entered a Final Order and Judgment Granting Final Approval to Class Action Settlement.  ECF No. 126, *as amended by* ECF No. 130.  Pursuant to the terms of the Stipulation, Defendants have paid $9,000,000 into the Escrow Account for the benefit of the Settlement Class.

As detailed in the accompanying Cormio Declaration, following Notice, the Claims Administrator received 21,793 Claims through January 2, 2025.  Cormio Decl., ¶¶6, 33.  Kroll determined that 8,001 of the Claims are acceptable for payment in whole or in part and that 13,792 Claims should be wholly rejected.  Cormio Decl., ¶33.

The Effective Date set forth in the Stipulation has passed, and all Claims have been processed.  Accordingly, subject to Court approval, the Net Settlement Fund may now be distributed to Authorized Claimants.  Plaintiff respectfully requests that the Court enter the accompanying [Proposed] Class Distribution Order, which approves Kroll's claim determinations

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), filed January 16, 2024 (ECF No. 115-1).

1

and authorizes Kroll to implement the Distribution Plan, as fully set forth fully in the Cormio Declaration.  [Proposed] Class Distribution Order, ¶¶3-4.

## I.    CLAIMS ADMINISTRATION TO DATE

In accordance with the Court's Preliminary Approval Order, Kroll mailed copies of the Notices and Claim Forms (together, the "Notice Packets") to all Settlement Class Members who could be identified through reasonable effort.  Kroll mailed 25,569 Claim Packages to potential Settlement Class Members, brokers, and nominees through June 3, 2024.  Cormio Decl., ¶4.  In addition, Kroll caused the Summary Notice to be transmitted over Business Wire and published in *The Wall Street Journal*.  Cormio Decl., ¶5.  The Notice Packet, Stipulation, Preliminary Approval Order, and other important case documents were posted on the Settlement Website, which Kroll maintained to enable Class Members to access information about the case and Settlement.  *Id*. Kroll also provided support and information to Class Members through a case-specific email address and a toll-free telephone helpline.  *Id*.  The Settlement Website has received over 500 unique hits since it was established, and Kroll has received approximately 135 telephone calls and over 500 emails.  *Id*.

Under the terms of the Preliminary Approval Order and as set forth in the Notice, each Settlement Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to Kroll a properly executed Proof of Claim, postmarked or received no later than July 9, 2024, together with adequate supporting documentation for the transactions and holdings reported therein.  Cormio Decl., ¶6. Additionally, Kroll permitted electronically submitted claims to be submitted via computer drive or email; electronic claims are typically submitted by institutions who may have hundreds or thousands of transactions during the relevant period or may be filing on behalf of many Claimants.  Cormio

2

Decl., ¶11.  All Claims were then uploaded to a database created by Kroll to store Claim details, images of Claims, and supporting documentation.  Cormio Decl., ¶¶8, 10, 12.

The Sections below detail Kroll's work in identifying deficiencies (§§II.A.), notifying Class Members of deficiencies (§§II.B.), processing late claims (§§II.C.), and handling quality assurance review (§§II.D.).

### A.       Identification of Deficiencies in Claims

Kroll undertook an extensive review of the Claims and determined that certain Claims were wholly or partially deficient and flagged those Claims as such.  Cormio Decl., ¶¶9, 10, 14-16. Claims were identified as deficient for the following reasons:

- Claim did not result in a Recognized Loss:  In total, 10,746 Claims were ultimately rejected for this reason.  Cormio Decl., ¶33.

- Claim did not fit the definition of the Settlement Class (e.g., Olo shares were not purchased in the Company's SPO): In total, 1,981 Claims were ultimately rejected for this reason. *Id*.

- Deficient claim never cured: In total, 732 Claims were ultimately rejected for this reason. *Id*.

- Claim withdrawn: In total, 271 Claims were withdrawn after they were filed. *Id*.

- Duplicate claim:  In total, 27 Claims were identified as duplicates. *Id*.

- No documentation provided:  In total, 22 Claims lacked required documentation. *Id*.

- Blank Claim. In total, 13 blank Claims were filed. *Id*.

Kroll notified Claimants of these identified deficiencies and, where possible, helped Claimants to resolve them, as discussed below at §II.B.

The Court should affirm Kroll's rejection of these claims.  *See, e.g.*, *In re Citigroup Inc. Secs. Litig.*, No. 09 MD 2070, 2014 WL 2445714, at *2-3 (S.D.N.Y. May 30, 2014) (upholding claims administrator's rejection of claims where claimants did not hold shares during the necessary

3

time period and therefore "suffered no loss"); *In re Goldome Secs. Litig.*, No. 88 Civ. 4765, 1991 WL 113263, at *1, *3 (S.D.N.Y. June 20, 1991) (accepting claims administrator's rejection of claims where "(1) the purchase took place outside the class period; (2) the claim showed no purchase of the stock; . . . (5) the claim submitted was duplicate of a previously filed claim; (6) the claimant failed to correct a deficiency in the documents provided to the claims administrator after being given notice; or (7) the claimant withdrew the claim."); *In re Bear Stearns Cos., Inc. Sec., Derivative, & Erisa Litig.*, No. 08 CIV. 2793, 2014 WL 3401045, at *13 (S.D.N.Y. July 10, 2014) (affirming claims administrator's rejection of claims that did not report an eligible class period purchase, claims that did not result in a recognized loss, and duplicate and withdrawn claims); *See Blank v. Jacobs*, No. 03-cv-2111, 2013 WL 1310503, at *5 (E.D.N.Y. Mar. 27, 2013) (approving claims administrator's decision to reject claims with no eligible transactions and claims that were not properly documented, unless those deficiencies had been cured by the claimants).

### B.    Issuance of Deficiency Letters

For Claims determined to be wholly or partially deficient for any of the reasons discussed above in §II.A., Kroll mailed Deficiency Notices (to Claimants filing Paper and Web Claims) and emailed Transaction Reports (to Claimants filing Electronic Claims), which:  (i) explained the defect(s) identified by the Claims Administrator, and what, if anything, was necessary to cure the defect(s) in the Claim.; (ii) stated that deficiencies that were not cured would be rejected; and (iii) advised the Claimant of the right to contest the rejection of the Claim by requesting Court review (and the procedures to do so).  Cormio Decl., ¶¶20, 22, 24.

Kroll reviewed all responses to the Deficiency Notices and Transaction Reports and worked with Claimants to resolve deficiencies where possible.  Cormio Decl., ¶¶21, 23.  All Claimants' deficiencies have been resolved or timed out, or the Claimant has accepted that its

Claim, in whole or in part, was properly rejected. Cormio Decl., ¶24. Kroll has not received any requests for Court review of its determinations. *Id.*

### C.    Processing of Late Claims and Claims Bar Date

Of the 21,793 Claims, 305 were received after the claim filing deadline. Cormio Decl., ¶25. Kroll has processed all these late Claims and determined that 29 of them are otherwise eligible (collectively, "Late But Otherwise Eligible Claims"). *Id.* The other 276 late Claims were determined to be fully deficient and therefore ineligible. *Id.* Kroll recommends that the Court accept the 29 Late But Otherwise Eligible Claims for inclusion in the distribution, as no delay has resulted from the provisional acceptance of this Late But Otherwise Eligible Claims. *Id.*; *see In re Goldome Sec. Litig.*, No. 88 CIV. 4765 (JES), 1991 WL 113263, at *2 (S.D.N.Y. June 20, 1991) (accepting plaintiffs' request "that certain untimely filed but otherwise valid claims be accepted for approval by the Court and that such persons be included in the list of authorized claimants entitled to share in the net settlement fund").

There must be a final cut-off date after which no more Claims will be accepted so that there may be a proportional distribution of the Net Settlement Fund, and the distribution may be accomplished. Acceptance of additional Claims or responses to Deficiency Notices or Transaction Reports received during the finalization of the administration and the preparation of this application for distribution of the Net Settlement Fund would necessarily require a delay in the distribution. Accordingly, Kroll requests that no new Claims may be accepted after January 2, 2025, and no further adjustments to Claims received on or before January 2, 2025, that would result in an increased Recognized Loss may be made for any reason after January 2, 2025. Cormio Decl., ¶¶26, 37(d). [Proposed] Class Distribution Order, ¶5.

D.      **Quality Assurance Review**

An integral part of all of Kroll's settlement administration projects is its Quality Assurance review. Kroll's Quality Assurance personnel worked throughout the entire claims administration process to verify that Claims were processed properly; that deficiency and ineligibility message codes were properly applied to Claims; that Deficiency Notices were mailed to the appropriate Claimants; that Transaction Reports were emailed to filers of Electronic Claims; and that Kroll's computer programs were operating properly. Cormio Decl., ¶27.

Once all the Claims were processed, Deficiency Notices were mailed, Transaction Reports were emailed, and responses to those notices and reports were reviewed and processed, Kroll's Quality Assurance team performed a final project wrap up to ensure the correctness and completeness of all Claims. In connection with this Quality Assurance wrap up, Kroll: (i) confirmed that valid Claims have no messages denoting ineligibility; (ii) confirmed that Claims that are ineligible have messages denoting ineligibility; (iii) confirmed that Claims that contained purchases or other acquisitions of Olo common stock made outside of the Company's SPO contain appropriate ineligibility messages; (iv) confirmed that Claim detail (transaction) messages appear only on Claim detail records; (v) confirmed that all Claims requiring Deficiency Notices were sent such notices; (vi) performed a sample review of deficient Claims; (vii) reviewed Claims with large dollar losses; (viii) sampled Claims that had been determined to be ineligible, including those with no calculated Recognized Loss under the Plan of Allocation, in order to verify that all transactions had been captured correctly; and (ix) tested the accuracy of the calculation program. Cormio Decl., ¶28.

Kroll also used a variety of fraud protection controls throughout the claims administration process to identify potential fraudulent Claims. Searches for duplicate Claims (by beneficial owner name, tax identification number, account number and Recognized Loss amounts), high

6

value reviews, spot reviews, and other standard audit reports that examined the information in a variety of ways, were used during Kroll's Quality Assurance review.  Cormio Decl., ¶30.

In addition, Kroll performed various audits of Electronic Claims.  Specifically, Kroll contacted a number of electronic filers and requested that various sample transactions selected by Kroll be documented by providing confirmation slips or other transaction-specific supporting documentation.  This random sampling and request for follow-up verification helped to ensure that electronic data supplied by Claimants did not contain inaccurate information.  Kroll performed this final check on a variety of randomly selected electronic files, as well as on the electronic files with the largest Recognized Claims.  Cormio Decl., ¶16.

Kroll reviewed and compared the entire Settlement Database against its proprietary "Watch List" of known potential fraudulent filers that Kroll has developed throughout its more than 40 years of experience as a claims administrator.  Kroll works with law enforcement to update the Watch List with the latest information.  Cormio Decl., ¶31.

Finally, in accordance with the requirements of the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), Kroll will perform searches on every check that it will issue to identify any potential payees whose names appear on the federal government's restricted person's list or who reside in countries to which payments are prohibited. Kroll regularly monitors changes to OFAC regulations and guidelines.  Cormio Decl., ¶32.

## II.    DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUND

Kroll recommends the following plan for the distribution of the Net Settlement Fund, which is set forth in full at ¶37 of the Cormio Declaration (the "Distribution Plan").

In the Initial Distribution, Kroll will distribute 100% of the Net Settlement Fund, after deducting all payments approved by the Court, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any bank escrow fees, to Authorized Claimants

who would receive at least $10.00 based on their Recognized Loss amount calculated pursuant to the Plan of Allocation.  Also pursuant to the Plan of Allocation, Kroll will eliminate from the distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00.[2] Cormio Decl., ¶37(a)(i)-(iii).

In order to encourage Authorized Claimants to promptly deposit their payments, Kroll proposes that the distribution checks bear the following notation: "**DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 60 DAYS OF DISTRIBUTION.**"  Cormio Decl., ¶37(a)(iv).  In an effort to have as many Authorized Claimants as possible cash their checks, Kroll will follow up with those Authorized Claimants whose checks are initially uncashed, either because they are returned to Kroll as undeliverable or because the Authorized Claimant simply did not cash the check after a period of time elapses (the "Outreach Program"), as further outlined in the Cormio Declaration.  Cormio Decl., ¶37(a)(iv), n.3.

Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or pursuant to further action as part of Kroll's Outreach Program, will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks will be available to be re-distributed to other Authorized Claimants in any subsequent distribution as described below.  Cormio Decl., ¶37(a)(v).

After Kroll has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks pursuant to the Outreach Program, any balance remaining in the Net Settlement Fund three months after the Initial Distribution, or as reasonably

---

[2]    Such "*de minimis*" amounts are regularly established in order to promote cost effective distributions and to avoid incurring costs that surpass the amounts paid to claimants.

soon thereafter, shall, if Lead Counsel, in consultation with Kroll, determines it to be cost effective to do so, be redistributed, after payment of any unpaid fees and expenses incurred in administering the Settlement, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any bank escrow fees, to Authorized Claimants who have cashed their distribution checks and who would receive at least $10.00 from such redistribution. Additional distributions will thereafter occur in three-month intervals, or as reasonably soon thereafter, subject to the conditions previously noted, until Lead Counsel, in consultation with Kroll, determines that further redistribution is not cost effective. Cormio Decl., ¶37(b).

At such time as Lead Counsel, in consultation with Kroll, determines that the redistribution of funds remaining in the Net Settlement Fund is not cost effective, if sufficient funds remain to warrant the processing of any Claims received after January 2, 2025, such Claims will be processed, and any such Claims that are otherwise valid as well as any earlier received Claims for which an adjustment was received after January 2, 2025, which resulted in an increased Recognized Loss will, at the discretion of Lead Counsel, be paid after payment of any unpaid fees or expenses incurred in connection with administering the Settlement, and after the payment of any estimated taxes, the costs of preparing tax returns, and any escrow fees. Such Claimants, at the discretion of Lead Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible. If any funds remain in the Net Settlement Fund after payment of such late or late adjusted Claims, the remaining balance shall be contributed to Legal Services NYC, a certified tax-exempt organization under IRS Code

Section 501(c)(3), subject to Court Approval.[3]    Cormio Decl., ¶37(c)-(d); [Proposed] Class Distribution Order, ¶6; *see also* Stipulation, ¶10(p).    Neither Class Representative nor Lead Counsel has any relationship to Legal Services NYC.    ECF No. 123, ¶64.

### III.    RECORD RETENTION AND DESTRUCTION

Kroll requests that it be permitted to dispose of the paper copies of Claims and all supporting documentation one year from the final distribution date of the Net Settlement Fund and to dispose of electronic copies of the same three years after the final distribution date of the Net Settlement Fund.    Cormio Decl., ¶38(e).    [Proposed] Class Distribution Order, ¶8.

### IV.    NOTICE AND ADMINISTRATION EXPESNES

As disclosed in the Notice, Notice and Administration Expenses were estimated to total approximately $250,000.    *See* Preliminary Approval Order, ECF No. 118, ¶¶5, 20 (authorizing Lead Counsel, prior to the Effective Date, to pay up to $250,000 in Notice and Administration Expenses from the Settlement Fund, consistent with the Stipulation, ¶¶5(b), 5(e)).    To date, Kroll has billed $170,709.02 in Notice and Administration Expenses from March 2024 through December 2024.    Cormio Decl., ¶36.    Kroll estimates an additional $13,654.20 billings from January 2024 through August 2025, including the costs of the Initial Distribution; this includes the cost of printing and mailing checks as well as wire transfer fees.    Cormio Decl., ¶36.

### V.    PAYMENT OF REMAINING 50% OF ATTORNEYS' FEES

The Court previously awarded Lead Counsel 25% of the Settlement Fund, or $2,250,000 (plus interest), as attorneys' fees.    ECF No. 128, ¶6.    However, the Court ordered that 50% of the

---

[3]      "[C]ourts routinely approve *cy pres* awards to non-profit organizations when distributions to the class would not be feasible."  *Alaska Elec. Pension Fund v. Bank of Am., Corp.*, No. 14-CV-7126 (JMF), 2020 WL 916853, at *2 (S.D.N.Y. Feb. 26, 2020) (citing *In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 848 (S.D.N.Y. 2016) ("'[C]y pres* designations should be made only when it is not feasible to make further distributions to class members.'") (alteration in original).

awarded attorneys' fees shall not become payable until the Court executes an order authorizing the Claims Administrator to distribute the Net Settlement Fund.  ECF No. 128, ¶9.  Therefore, Lead Counsel respectfully requests that the Court authorize Lead Counsel to instruct the Escrow Agent to pay the remaining 50% of the awarded attorneys' fees.  [Proposed] Class Distribution Order, ¶9.

**CONCLUSION**

Plaintiff respectfully requests that the Court approve Kroll's administrative determinations accepting 8,001 Authorized Claims in Exhibits B-1 and B-2 to the Cormio Declaration, rejecting 13,792 Unauthorized Claims as set forth in Exhibit B-3 to the Cormio Declaration.  Plaintiff further requests that the Court enter the accompanying [Proposed] Class Distribution Order, which authorizes Kroll to implement the Distribution Plan, as set forth fully in the Cormio Declaration.

Dated:  March 12, 2025

Respectfully submitted,
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/* Amanda F. Lawrence
Amanda F. Lawrence
Patrick Coughlin
Donald A. Broggi
Jeffrey P. Jacobson
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
alawrence@scott-scott.com
pcoughlin@scott-scott.com
dbroggi@scott-scott.com
jjacobson@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Steamship Trade Association of Baltimore – International Longshoremen's Association Pension Fund*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s*/ Amanda F. Lawrence
Amanda F. Lawrence